Jeffrey Willis (ASB#004870)
Sandra L. Jonas (ASB #035824)
SNELL & WILMER L.L.P.
One South Church Avenue
Suite 1500
Tucson, Arizona  85701-1630
Telephone:  520.882.1200
E-Mail: jwillis@swlaw.com
E-Mail: sjonas@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>Plaintiff,<br><br>v.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Dove Mountain CSTEM K-8 is an elementary school under the supervision and control of Marana Unified School District; and Andrea Divijak, in her individual capacity,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rebecca Hartzell, Ph.D., BCBA-D for her Complaint against the above-named Defendants, alleges as follows:

### **PARTIES**

1.     Plaintiff Rebecca Hartzell, Ph.D., BCBA-D is an individual who resides in Pima County, Arizona.

2.     Defendant Marana Unified School District ("District") is a governmental entity organized and existing under the laws of the State of Arizona and operating within Pima County, Arizona. The District is a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

3.      Defendant Dove Mountain CSTEM K-8 School ("Dove Mountain") is an elementary school under the supervision and control of the District.  Dove Mountain is a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

4.      Andrea Divijak ("Divijak") is and at all relevant times was the principal of Dove Mountain. Divijak is sued in her individual capacity.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331.

6.      The Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

7.      The Court has personal jurisdiction over the Defendants as they reside in and conduct business in this District.

8.      Venue is proper under 28 U. S. C. § 1391 because the events giving rise to Dr. Hartzell's claims took place within this District.

## CONDITIONS PRECEDENT

9.      Dr. Hartzell exhausted all administrative remedies prior to filing this lawsuit.

10.     In compliance with A.R.S. § 12-821.01 and Ariz. R. Civ. P. 4.1(h), Dr. Hartzell timely filed a notice of claim letter against the District, Dove Mountain, and Divijak via personal service ("Notice of Claim").

11.     The Notice of Claim included facts sufficient to permit the District and Dove Mountain to understand the basis of Dr. Hartzell's claim, demanded a sum certain to settle the matter, and included facts supporting the amount demanded.

12.     The Notice of Claim was personally served on each of the Governing Board Members of the District, the Superintendent, and Divijak.

13.     The District, Dove Mountain, and Divijak did not respond to Dr. Hartzell's Notice of Claim and over 60 days have passed since it was filed, deeming the claims denied. *See* A.R.S. § 12-821.01(E).

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

## GENERAL ALLEGATIONS

**I.**     **Factual Basis of Claims**

      **A.**     **Dr. Hartzell's Career as a Professor and Board Certified Behavior Analysist.**

14.     Dr. Hartzell holds a doctorate in special education and is a Board Certified Behavior Analyst. She is a professor in the Behavior Analysis Department and the Director of the MA Program in Applied Behavior Analysis at the University of Arizona ("University").

15.     Dr. Hartzell has published peer-reviewed articles and presented at national conferences on topics ranging from social skills interventions for children with autism and emotional behavior disorder to the reentry of youth from juvenile detention centers. She is a board member of the Council for Children with Behavior Disorders.

16.     In addition to her academic career, Dr. Hartzell provides services to families with children exhibiting serious behavior issues. She also provides these services on a voluntary basis to low-income families and families living in remote areas where such services are otherwise unavailable.

17.     Dr. Hartzell has eight children and is actively involved in their education.

      **B.**     **Dr. Hartzell Engages in Protected Speech Regarding Her Children's Education.**

18.     Dove Mountain held its grand opening in August of 2019. According to its website, Dove Mountain is the first school of its kind in Arizona and features a creative and specialized academic experience in an innovative 21st century learning environment.

19.     Approximately 850 students, including five of Dr. Hartzell's children, were enrolled for Dove Mountain's inaugural academic year.

20.     As the parent of eight children, Dr. Hartzell has interacted with many teachers and principals over the years. She found Andrea Divijak, the principal of Dove Mountain, to be unapproachable and dismissive of parental feedback.  She also found the environment at the school to be unwelcoming compared to other schools her children had attended.

21.     Upon information and belief, other parents of students enrolled at Dove Mountain had the same or similar impressions of Divijak and the environment at Dove Mountain.

22.     During the fall 2019 semester, Dove Mountain hosted several events that were open to the public.

23.     At one such event, students presented their projects to parents and other community members.  The presentations, however, were all scheduled to occur over a short timeframe.

24.     As a result, many siblings were presenting at same time in different locations of the school.  Parents were forced to choose which of their children's presentations to attend.

25.     The scheduling conflicts were disappointing for both the students and the parents.

26.     The scheduling also raised safety concerns because the school lacked sufficient parking to accommodate so many people congregating at one time.  Parents and children were left to navigate an overflowing parking lot with vehicles circling in search of a parking space.

27.     Likewise, there was insufficient seating for attendees to observe the presentations, resulting in overcrowded hallways and classrooms. These conditions made it difficult for parents to supervise their (non-presenting) children.

28.     Upon information and belief, many parents were unhappy with the poor planning and scheduling of the event.

29.     In November, 2019, Dr. Hartzell learned that, as with prior events, the schedule for Dove Mountain's upcoming Winter Showcase was densely packed. This event was also open to the public.

30.     Dr. Hartzell emailed Divijak complaining about the poor scheduling.

31.     Divijak invited Dr. Hartzell to share any suggestions for future years.

32.     Dr. Hartzell responded, detailing the issues with event parking, seating, overcrowding, and timing.  She also noted that the dense scheduling, which minimized the

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

after-hours time teachers and staff had to be at the school, benefited the teachers and staff to the detriment of the students and their parents.  Dr. Hartzell also expressed concerns about Divijak's standoffishness and the generally unwelcoming environment at Dove Mountain.

33.     Divijak did not respond.

**B.     Defendants Retaliate Against Dr. Hartzell for Exercising her Free Speech Rights by Interfering with Dr. Hartzell's Parental Rights to Direct the Education of Her Children.**

34.     The following semester, Dr. Hartzell attended another student showcase event at Dove Mountain where her second-grade daughter and fourth-grade son were presenting.

35.     Approximately 850 students were scheduled to present over two timeslots separated by five minutes.

36.     Dr. Hartzell's children were both scheduled to present during the first timeslot, forcing Dr. Hartzell to choose which of her children's presentations she would observe.

37.     When she saw Divijak in the hallway, Dr. Hartzell  complained about the poor scheduling and explained that, yet again, she was forced to choose between her children's presentations.

38.     Dr. Hartzell suggested that the school could minimize conflicts between sibling presentations if the presentations were scheduled consecutively by grade as opposed to non-consecutively.[1]

39.     As Dr. Hartzell was expressing her viewpoint, Divijak became outwardly emotional and rushed past Dr. Hartzell.  In doing so, Divijak made slight contact with Dr. Hartzell's hand while Dr. Hartzell was gesturing naturally while she spoke.

40.     Divijak recoiled her hand and exclaimed loudly, "Don't touch me!" and began walking away from Dr. Hartzell.

41.     Dr. Hartzell replied that she would call the District if Divijak would not speak

---

[1] Dr. Hartzell's point was that it is more common for parents to have children who are two years apart than one year apart.  The school could minimize conflicts between siblings if students in consecutive grades, for example first and second grade, were scheduled present at the same time as opposed to students in non-consecutive grades, such as students in first grade and third grade.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

to her.

42.     Dr. Hartzell then proceeded to her daughter's classroom.

43.     Meanwhile, Dove Mountain called 911 and reported an assault on the principal.

44.     As Dr. Hartzell was listening to her daughter present, Dove Mountain Associate Principal Bronwyn Sternberg and Hall Monitor John McKenna entered the classroom and approached Dr. Hartzell.

45.     They demanded she vacate school property immediately and escorted her out of the classroom in full view of Dr Hartzell's daughter, the other students, the teacher, and other parents.

46.     As Dr. Hartzell was in her vehicle preparing to leave as ordered, a police officer approached her and told her she was not free to leave.

47.     The police officer informed Dr. Hartzell that Dove Mountain was **banning her from being on its property <u>for any reason</u>**. The ban included her son's after-hours school soccer games and even prohibited Dr. Hartzell from picking up and dropping off her children.[2]

48.     When released to leave, Dr. Hartzell drove away without incident and did not return to the school.

49.     According to statements made that were captured on the video of the responding police officer's body camera,[3] the following events occurred during the police officer's response to the 911 call:

> a.     Immediately following her interaction with Dr. Hartzell, Divijak was "balling [her] eyes out" and went into a nearby classroom where her husband was observing their child's presentation. In front of staff member(s) and parents, **Divijak announced that Dr. Hartzell had "put her hands" on Divijak and "grabbed" Divijak.**

---

[2] This was particularly problematic because Dr. Hartzell had a child enrolled in Dove Mountain's preschool. Dove Mountain requires that a parent physically escort a preschooler into the school building and sign the child in or out.

[3] Dr. Hartzell did not receive the body cam video until May 27, 2020.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

b.    Divijak admitted that she cut off Dr. Hartzell by walking away because **she did not think it was "appropriate" to have a verbal disagreement in front of other parents**.

c.    Divijak expressed intent to harass Dr. Hartzell, including calling 911 "immediately" if she saw Dr. Hartzell anywhere in the community. When the police officer warned Divijak that she would have a duty to de-escalate in that situation, Divijak responded, "I'll just get a restraining order."

d.    The District's representative, the Associate Principal, and other District employees mocked Dr. Hartzell's complaints about not being able to attend each of her children's presentations, stating she should just "get over it."

e.    Divijak and the Associate Principal mocked an unnamed parent of a third grader who expressed concerns about the third grader being bullied at Dove Mountain.

f.    Dove Mountain employees mused that Dr. Hartzell's (purported) assault on the Principal was probably "**all over Facebook**."

g.    The District Representative and another District employee discussed the likelihood of Dr. Hartzell withdrawing her children from Dove Mountain because of the "**sheer embarrassment**" of the events of that day.

h.    The Associate Principal characterized Dr. Hartzell's expression of her viewpoint as "verbal diarrhea."

50.    Dr. Hartzell's second-grade daughter told her teacher that she thought her mother had been arrested and was afraid of what would happen to her.

51.    Both of Dr. Hartzell's' children who presented that day were seen crying at school.

52.    Dr. Hartzell was criminally charged with assault based on false allegations by Divijak in retaliation for her protected speech.

**C.    Defendants' Violation of Dr. Hartzell's Due Process Rights.**

53.    Promptly following the incident with Divijak, Dr. Hartzell contacted the District and requested a meeting.  She explained that time was of the essence because her children had to stay home from school under the present ban imposed on Dr. Hartzell.[4]

---

[4] Per the terms of the ban, Dr. Hartzell could not transport her children to and from school or deliver her preschool in accordance with Dove Mountain's rules. Dr. Hartzell's husband was unavailable to pick up or drop off the children as needed due to his work schedule.

54.     Despite Dr. Hartzell's concerns, the District did not meet with Dr. Hartzell for two weeks.

55.     When Dr. Hartzell was finally provided a meeting with Dr. Doug Wilson, the District's Superintendent at the time, and the District's attorney, Dr. Hartzell was under the impression that the purpose of the meeting was for her to tell her side of the story and request that the District lift the ban.

56.     Incredibly, the District's attorney informed Dr. Hartzell that the District had **already decided that the ban would not be lifted** and that the sole purpose of the meeting was **solely** to address the logistics of the Hartzell children returning to school.

57.     Mr. Huffman, Dr. Hartzell's criminal attorney, questioned the basis of the District's decision and noted that Dr. Hartzell had not had her opportunity to tell her side of the story. The attorney for the District conceded that its decision was based only on the Dove Mountain's surveillance footage (the existence of which Dr. Hartzell had not been previously made aware) and certain, unnamed "staff witnesses."

58.     This surprised Dr. Hartzell because no staff members had witnessed the interaction between Dr. Hartzell and Divijak.

59.     Mr. Huffman requested the names of the staff witnesses and a copy of the surveillance footage.  Dr. Wilson and the District's attorney **refused to provide any names** and were non-committal about whether they would provide a copy of the surveillance footage.

60.     Dr. Wilson and the District's attorney stressed that **the decision was final** and that they would only discuss logistics.

61.     Dr. Wilson and the District's attorney informed Dr. Hartzell that, **provided she did not speak to anyone**, she would be permitted to enter school property strictly for the purpose of checking her preschooler out of class and picking up/dropping off her other children if they were ill or had midday appointments.  The District required the Hartzells' seventh grade son to check his sister into preschool.

62.     No explanation was provided for the arbitrary ban on Dr. Hartzell checking

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

her preschooler into class while being permitted to check her out of class.

63.     The District's attorney emphasized that, while on school property, Dr. Hartzell **was prohibited from speaking to anyone** about what they saw or heard about her interaction with Divijak.

64.     When Dr. Hartzell protested the terms of the ban, she was told that the District **had already given her too much leeway** and implied that **other District employees, including at least one District supervisor, would be unhappy** that Dr. Hartzell was being given any access to school property.

65.     The District's attorney stated that the District would send Dr. Hartzell a letter reiterating the terms of the ban and setting a date by which the ban would be reevaluated.

66.     Following this meeting, Dr. Hartzell emailed the District asking whether she, under the terms of the ban, she was permitted to communicate with her children's teachers regarding her children's academic and/or emotional needs.

67.     No one from the District or Dove Mountain responded to Dr. Hartzell's question.

68.     Neither the District nor Dove Mountain provided Dr. Hartzell with the letter (or any other form of communication) reflecting the terms of the ban or the date of its reevaluation.

69.     Due to the unlawful ban, Dr. Hartzell was excluded from numerous school events, some of which occurred after hours and were open to the public.

70.     For example, Dr. Hartzell was prohibited from attending a science fair in which two of her children entered science projects.  Dr. Hartzell had previously arranged to participate as a judge in that science fair.  She also was excluded from participating in the "Fun Run," a fundraiser that she and five of her children were registered to participate in together.

71.     Dr. Hartzell was also excluded from participating in four parent-teacher conferences and Kinder-Roundup, an orientation and placement assessment for her preschooler's transition to kindergarten.

72.    As a result of Defendants' unlawful conduct, Dr. Hartzell and each of her children suffered emotionally.

73.    Dr. Hartzell's daughter who observed Dove Mountain escort Dr. Hartzell out of her classroom during her presentation has had multiple anxiety attacks as a result.

74.    Neither the District nor Dove Mountain ever provided Dr. Hartzell with the letter reiterating the terms of the ban and the date of reevaluation that the District represented it would provide.

75.    As the fall semester approached, Dr. Hartzell had still not received any information from the District or Dove Mountain regarding the terms of the ban, the date it would be re-evaluated, or her ability to communicate with her children's teachers about her children's academic and/or emotional needs.

76.    Dr. Hartzell and her husband subsequently sold their home and relocated to a different school district so that their children could feel safe and comfortable at school and so that Dr. Hartzell could assert her parental rights and participate in her children's education, as well as exercise her constitutional rights without fear of further retaliation.

### D.    Divijak's False and Misleading Statements about Dr. Hartzell to the University of Arizona.

77.    On September 25, 2020, the prosecutor dismissed the criminal charges against Dr. Hartzell that arose from Divijak's false statements.

78.    Divijak was present in the courtroom and vehemently opposed the dismissal of the charges against Dr. Hartzell.

79.    On October 1, 2020, a package was delivered to the main office of Dr. Hartzell's department at the University.

80.    The package contained a misleading copy of the docket of Dr. Hartzell's criminal case containing false statements about Dr. Hartzell ("Misleading and Defamatory Document").

81.    The Misleading and Defamatory Document did not reflect that the prosecutor had dismissed the case. Instead, it showed the most recent activity in the case as an August

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

25, 2020 continuance of the pretrial conference.

82.     Typewritten on the Misleading and Defamatory Document was the following false message, "This occurred at a K-8 school in front of young children. Doesn't seem like this is the kind of person that should be training teachers let alone working with kids."

83.     Upon information and belief, the Misleading and Defamatory Document was delivered by Divijak or at her direction with the intent of harming Dr. Hartzell's professional reputation and possibly even procuring her termination.

84.     Upon information and belief, Divijak has made other offensive, misleading, and/or false statements to staff members of Dove Mountain, parents of students of Dove Mountain, and/or other members of the community regarding Dr. Hartzell, including but not limited to Dr. Hartzell's purported propensity for physical violence.

85.     As a result of Divijak's false statements regarding Dr. Hartzell, information in public records, available by a simple Google search, suggest that Dr. Hartzell physically assaulted an elementary school principal.

86.     Dr. Hartzell's professional reputation as a professor of special education and a licensed Behavior Analyst has been and continues to be harmed as a result of Divijak's false statements regarding Dr. Hartzell.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 First Amendment Retaliation
(*Against All Defendants*)

87.     Dr. Hartzell incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

88.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law .... abridging the freedom of speech, or of the press." U.S. Const. amend I.

89.     The free speech clause of the First Amendment is applicable to the states through the Fourteenth Amendment.

90.     A party may bring suit under 42 U.S.C. § 1983 for deprivations of rights, immunities or privileges of citizenship under color of state law or authority.

91.     Dr. Hartzell has a right to free speech under the First Amendment.

92.     Dr. Hartzell's statements criticizing Divijak and Dove Mountain for the poorly scheduled school events, Dr. Hartzell's statements regarding unwelcoming environment at Dove Mountain, Divijak's standoffishness to parents, and the negative impact of the scheduling on parents and students were all matters of public concern.

93.     Defendants unlawfully retaliated against Dr. Hartzell for exercising her First Amendment rights by, among other things:

    a.     Indefinitely banning Dr. Hartzell from

        (1)     being on Dove Mountain property, including routine transportation of her children to and from school;

        (2)     Attending school events that were open to the public,

        (3)     Communicating with her children's teachers about her children's academic and/or emotional needs;

        (4)     Participating in parent-teacher conferences and other educational matters regarding Dr. Hartzell's children;

    b.     Forbidding Dr. Hartzell from speaking to anyone about her interaction with Divijak while on Dove Mountain property.

94.     The District and Dove Mountain have a custom, practice, or policy that amounts to deliberate indifference toward parents' First Amendment rights.

95.     The adverse actions taken by Defendants were substantially motivated by Dr. Hartzell's protected speech and for which no adequate justification exists and which would not have occurred absent Dr. Hartzell's expression of her First Amendment rights.

96.     Defendants' actions described above had the effect of depriving Dr. Hartzell of her federal constitutional rights, specifically including the free speech clause of the First Amendment.

97.     Defendants' retaliatory conduct described above was of the type likely to deter a person of ordinary firmness from continuing to engage in the protected speech.

98.     Defendants knew or should have known that their retaliatory conduct described above was likely to deter a person of ordinary firmness from continuing to engage in the protected speech and therefore knew or should have known their actions were in

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

violation of Dr. Hartzell's First Amendment rights.

99.     As a result of this conduct, Dr. Hartzell has suffered and continues to suffer damages.

**SECOND CAUSE OF ACTION**
**Ariz. Const. art. II, § 6  Free Speech Retaliation**
(*Against All Defendants*)

100.     Dr. Hartzell incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

101.     The Arizona Constitution guarantees that "[e]very person may freely speak, write, and publish on all subjects, being responsible for abuse of that right." Ariz. Const. art. II, § 6.

102.     The free speech clause in the Arizona Constitution is broader than the free speech clause in the First Amendment to the U.S. Constitution, but is frequently analyzed under the same standards. *See Mountain States Tel. & Tel. Co. v. Ariz. Corp. Comm'n*, 160 Ariz. 350, 354–55 (1989).

103.     Dr. Hartzell has a right to free speech under the Arizona Constitution.

104.     Dr. Hartzell's statements criticizing Divijak and Dove Mountain for the poor scheduling of school events and expressing her viewpoint about the unwelcoming environment at Dove Mountain, Divijak's standoffishness, and negative impact of the scheduling on parents and students were all matters of public concern.

105.     The District and Dove Mountain violated Dr. Hartzell's right to free speech by, among other things:

    a.     Indefinitely banning Dr. Hartzell from

        (1)     being on Dove Mountain property, including routine transportation of her children to and from school;

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

(2)    Attending school events that were open to the public;

(3)    Communicating with her children's teachers about her children's academic and/or emotional needs; and

(4)    Participating in parent-teacher conferences and other educational matters regarding Dr. Hartzell's children; and

b.    Forbidding Dr. Hartzell from speaking to anyone about her interaction with Divijak while on Dove Mountain property.

106.    Defendants' adverse actions against Dr. Hartzell were substantially motivated by Dr. Hartzell's protected speech.

107.    At all relevant times, Defendants were acting under color of law and their actions had the effect of depriving Dr. Hartzell of her Arizona constitutional rights, specifically including her free speech rights.

108.    Defendants knew or should have known that their retaliatory conduct described above was likely to deter a person of ordinary firmness from continuing to engage in the protected speech and therefore knew or should have known their actions were in violation of Dr. Hartzell's free speech rights under the Arizona Constitution.

109.    As a result of this conduct, Dr. Hartzell has suffered and continues to suffer the damages described above.

### THIRD CAUSE OF ACTION
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**Denial of Procedural Due Process**
(*Against The District and Dove Mountain*)

110.    Plaintiff incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

111.    The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of... liberty ... without due process of law." U.S. CONST. amend. XIV, § 1. Which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015).

Snell & Wilmer

L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

112. The District and Dove Mountain deprived Dr. Hartzell of her fundamental right to direct the education of her children without due process of law in several ways, including but not limited to:

    a.    By stalling for two weeks before meeting with Dr. Hartzell knowing her children were unable to attend school during that time;

    b.    By refusing Dr. Hartzell an opportunity to explain her side of the story;

    c.    By reaching the final decision regarding the ban before speaking with Dr. Hartzell;

    d.    By failing to notify Dr. Hartzell of the surveillance footage and names of the purported staff witnesses before making its final decision regarding the ban of Dr. Hartzell from school property, school events open to the public, and parent-teacher conference, and other educational meetings;

    e.    By failing to respond to Dr. Hartzell's email asking if she could contact her children's teacher to discuss their academic and/or emotional needs;

    f.    By failing to provide Dr. Hartzell the follow-up letter (or any other documentation) detailing the terms of the ban and the date by which ban would be reconsidered.

113. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech pursuant to vague standards that grant unbridled discretion.

114. The acts above constitute violations of the Due Process clause of the United States and State Constitutions in violation of 42 U.S.C. § 1983.

115. Dr. Hartzell was damaged by the actions described above.

## FOURTH CAUSE OF ACTION
### Violation of Parents' Bill of Rights A.R.S. § 1-601-60
### *(Against All Defendants)*

116. Dr. Hartzell incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

117. Arizona law provides that the liberty of parents to direct the education of their children is a fundamental right. *See* A.R.S. § 1-601(A).

118. The State of Arizona, any political subdivision of the State of Arizona, or any

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

other governmental entity shall not infringe on this right of parents without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means. *See* A.R.S. § 1-601(B).

119.    All parental rights are reserved to a parent of a minor child without obstruction or interference from this state, any political subdivision of this state, any other governmental entity or any other institution, specifically including the right to direct the education of the minor child. See A.R.S. § 1-602(A)(1).

120.    Defendants interfered and obstructed Dr. Hartzell's protected, fundamental parental rights by, in part, imposing an unreasonably overbroad ban on Dr. Hartzell for an indefinite period of time as described above.

121.    There was no compelling governmental interest justifying Defendants' actions described above.

122.    Defendants' actions described above were not narrowly tailored.

123.    The governmental interest, if any, could have otherwise been served by a less restrictive means.

124.    As a result of Defendants' unlawful conduct, Dr. Hartzell was prohibited from communicating with her children's teachers about her children's academic and/or emotional need.

125.    As a result of Defendants' unlawful conduct, Dr. Hartzell was prohibited from participating in parent-teacher conferences and an orientation and placement assessment.

126.    Dr. Hartzell was damaged by the actions described above.

## FIFTH CAUSE OF ACTION
### Defamation Per Se
### *(Against Defendant Divijak in her Individual Capacity)*

127.    Dr. Hartzell incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

128.    Divijak made multiple false statements of fact about Dr. Hartzell, a private

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

citizen, with knowledge that such statements were false and/or with reckless disregard for the truth of those statements. These statements include but are not limited to:

a.   Statements that Dr. Hartzell physically assaulted her;

b.   Statements that Dr. Hartzell physically assaulted her in front of young children;

c.   Statements that Dr. Hartzell is dangerous and poses a risk to Divijak's safety; and

d.   Statements that Dr. Hartzell is an unfit educator because she physically assaulted Divijak in front of young children.

129.   These and other statements were published to third parties, including but not limited to the District, Dove Mountain staff members, parents of students enrolled at Dove Mountain, other community members, and Dr. Hartzell's superiors at her place of employment the University of Arizona.

130.   The statements constitute Defamation Per Se because they impeach the honesty, integrity, and/or reputation of Dr. Hartzell and are damaging to Dr. Hartzell's professional reputation.

131.   As a result of Divijak's false statements, Dr. Hartzell has suffered harm to her professional reputation.

132.   Damages are presumed and may be awarded without proof of special damages.

**SIXTH CAUSE OF ACTION**
**Invasion of Privacy – False Light**
***(Against Defendant Divijak in her Individual Capacity)***

133.   Dr. Hartzell incorporates by reference the prior paragraphs of this Complaint as if fully alleged herein.

134.   Divijak made false statements about Dr. Hartzell to the public, including but not limited to:

     a.     Statements that Dr. Hartzell physically assaulted her;

     b.     Statements that Dr. Hartzell physically assaulted her in front of young children;

     c.     Statements that Dr. Hartzell is dangerous and poses a safety risk; and

     d.     Statements that Dr. Hartzell is an unfit educator because she physically assaulted Divijak in front of small children.

135.    Divijak placed Dr. Hartzell in a false light by, among other things, delivering or having delivered the Misleading and Defamatory Document to Dr. Hartzell's employer.

136.    Divijak intentionally, knowingly, and/or reckless published false information about Dr. Hartzell that a reasonable person would find highly offensive.

137.    The false light into which Dr. Hartzell was placed was highly offensive to Dr. Hartzell.

138.    The false light in which Dr. Hartzell was placed by Divijak involves a major misrepresentation of Dr Hartzell's professional ability and the quality of her knowledge and skills.

139.    Divijak had knowledge of or acted in reckless disregard as to the falsity of the publicized statements and the false light in which Dr. Hartzell would be placed.

140.    As a direct and proximate result of being placed in a false light before the public, Dr. Hartzell has suffered damages.

**DEMAND FOR JURY TRIAL**

141.    Dr. Hartzell demands a trial by jury on any claims for which fact issues remain by the time of trial.

**PRAYER FOR RELIEF**

WHEREFORE, Dr. Hartzell requests that the Court enter Judgment in favor of Dr. Hartzell as follows:

1.    An award of presumed, special, and general damages;

2.    An award of  the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988 and A.R.S. § 41-1493.01(D); and

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

3.     An award of interest on any award of damages, attorneys' fees and/or costs at the highest rate allowable by law;

4.     Any additional relief, in law or equity, as this Court deems just and proper.

DATED this 4th day of February, 2021.

SNELL & WILMER L.L.P.

By: *s/ Sandra L. Jonas*
Jeffrey Willis
Sandra L. Jonas
One South Church Avenue
Suite 1500
Tucson, Arizona  85701-1630
Telephone: 520.882.1200
Facsimile: 520.884.1294
*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*

4825-9835-6182.1

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200