**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, | No. CV-21-00062-TUC-SHR |
| Plaintiff, | **Order Re: Defendants' Motion for Summary Judgment** |
| v. | |
| Marana Unified School District, et al., | |
| Defendants. | |

Pending before the Court is a Motion for Summary Judgment (Doc. 38) (the "Motion") filed by Defendants Marana Unified School District (the "District") and Andrea Divijak (collectively "Defendants"). This action arises from an interaction between a parent and a principal at a school event and the parent's subsequent ban from the school. For the reasons below, the Motion is granted-in part and denied-in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are derived from the parties' statements of facts and are undisputed for the purpose of summary judgment. In August 2019, the District opened Dove Mountain CSTEM K-8 (the "School"), a new kindergarten through eighth grade school. (DSOF ¶ 1, Exh. 1 at 17–18; PCSOF ¶ 1.)[1] Five of Plaintiff Rebecca Hartzell's children were enrolled at the School. (DSOF ¶ 2; PCSOF ¶ 2.) Divijak is the School's

---

[1] DSOF is Defendants' Statement of Facts and PCSOF is Plaintiff's Controverting Statement of Facts. DSOF is docketed at item 39 in the electronic record (Doc. 39); PCSOF is docketed at item 47 (*See* Doc. 47 at 2–11).

current principal and was the principal during the 2019-2020 academic year.  (DSOF ¶ 3, Exh. 1 at 13; PCSOF ¶ 3.)

A. February 7, 2020 School Event

On February 7, 2020, the School hosted an event where students showcased and presented projects to teachers, parents, and other students.  (DSOF ¶ 4; PCSOF ¶ 4.) Plaintiff's children participated in this event and two of her children were scheduled to present at the same time in the first of two time slots.  (DSOF ¶¶ 5–6; PCSOF ¶¶ 5–6.)  At the event, Plaintiff approached Divijak to discuss and complain about the scheduling of her children's presentations.  (DSOF ¶ 7; PCSOF ¶ 7.)   Divijak spoke to Plaintiff and stated she was not going to discuss the matter at that time.  (DSOF ¶ 9, Exh. 3 at 30–31; PCSOF ¶ 9.)  Divijak then sought to end the interaction by walking away from Plaintiff.  (DSOF ¶¶ 10–11, Ex. 2 ¶¶ 7–8; PCSOF ¶ 10–11.)  As Divijak was walking away, Plaintiff said the conversation was not over and that Divijak should not walk away from her.  (DSOF ¶ 11, Exh. 2 ¶ 8; PCSOF ¶ 11.)  Plaintiff and Divijak then physically made contact,[2] and Divijak told Plaintiff something like, "You will not touch me."  (DSOF ¶¶ 12–14, Exh. 2 ¶¶ 9–10, Exh. 3 at 32–33, 37–38; PCSOF ¶¶ 12–14, Exh. 1, Exh. 4 ¶ 6; PRSOF ¶ 10.)[3]

Divijak walked away and subsequently informed the School Associate Principal Bronwyn Sternberg and School Monitor John McKenna of the interaction.  (DSOF ¶ 16, Exh. 1 at 112–113; PCSOF ¶ 16, Exh. 3 at 1:44–1:57.)  McKenna suggested Divijak call 911 to have a Marana Police Department ("MPD") officer come to the School.  (DSOF ¶ 17, Exh. 1 at 113; PCSOF ¶ 17.)   Before MPD arrived at the School, McKenna and Sternberg approached Plaintiff and asked her to leave the School.  (DSOF ¶ 18, Exh. 3 at 42; PCSOF ¶ 18.)   After a brief verbal exchange, Plaintiff complied with the request.

---

[2]The parties dispute the nature and extent of the physical contact.  (*See* Doc. 38 at 9; Doc. 46 at 1.)  Plaintiff asserts she did not "grab" Divijak for any amount of time and any touching "was no more than incidental and unintentional" contact caused by Divijak charging toward her.  (PCSOF ¶¶ 12–13; PRSOF ¶¶ 1–10, 12.)  Defendants claim Plaintiff reached out and grabbed Divijak's left wrist and Divijak pulled her "left arm away from Plaintiff in an effort to break free from Plaintiff's grasp."  (DSOF, Exh. 2 ¶¶ 9–10.)

[3]PRSOF is Plaintiff's additional Responsive Statement of Facts filed along with her Controverting Statement of Facts.  PRSOF is docketed at item 47 in the electronic record. (*See* Doc. 47 at 11–23.)

(DSOF ¶ 19; PCSOF ¶ 19, Exh. 7 at 1:54:10–1:55:30.)  Around this time, MPD officers arrived and began investigating.  (DSOF ¶ 20, Exh. 1 at 123; PCSOF ¶ 20.)  MPD Officer Jerry Ysaguirre ("Officer Ysaguirre") spoke with Plaintiff.  (DSOF ¶ 21, Exh. 4 at 1; PCSOF ¶ 21.)  Plaintiff told Officer Ysaguirre she "reached out and put [her] hand on Divijak."  (DSOF ¶ 22, Exh. 3 at 37–38, Exh. 4 at 2; PCSOF ¶ 22.)  At the conclusion of Plaintiff's interview, Officer Ysaguirre informed Plaintiff she was trespassed from School property and explained what that meant for her.  (DSOF ¶¶ 24–25, Exh. 3 at 46, Exh. 4 at 2; PCSOF ¶ 24–25.)  The following day, Officer Ysaguirre spoke to the only non-party adult witness who saw the interaction—Mr. Gute.  (DSOF, Exh. 4 at 1–2, 4–5; PCSOF ¶ 20, Exhs. 5, 7; PRSOF ¶ 3, Exh. 4 ¶ 2.)  The matter was referred to the Marana Town Attorney's Office.  (DSOF ¶ 27, Exh. 5; PCSOF ¶ 27.)

B.  The February 24, 2020 Meeting and Follow-up

Plaintiff requested a meeting with the District's Superintendent Dr. Doug Wilson. (DSOF ¶ 32, Exh. 3 at 47–48; PCSOF, Exh. 10 at 2–8.)  On February 24, 2020, Dr. Wilson met with Plaintiff and her counsel, confirmed Plaintiff's restrictions, and continued Plaintiff's ban from the School.  (DSOF ¶¶ 32–33, 36, Exh. 3 at 47–48; PCSOF ¶¶ 32–33, 36; PRSOF ¶¶ 31–32, Exh. 4 ¶¶ 17–18.)  Later that evening, Plaintiff sent an email to Dr. Wilson's secretary asking for clarification from Dr. Wilson about her discussion with him. (DSOF ¶ 40, Exh. 3 at 76, Exh. 8 at 1–2; PCSOF ¶ 40, Exh. 10 at 2–3.)  No one from the District responded to Plaintiff's email.  (DSOF Exh. 3 at 76–77; PCSOF ¶ 40.)  Plaintiff did not follow up with anyone from the District after sending this email.  (DSOF ¶ 41, Exh. 3 at 77–78; PCSOF ¶ 41.)[4]

During the third week of March 2020, the District's spring break occurred.  (DSOF ¶ 42, Exh. 2 ¶ 12; PCSOF ¶ 42.)  After spring break, the School began remote instruction due to COVID-19 and this became the method of instruction for the rest of the academic year. (DSOF ¶¶ 43–44, Exh. 1 at 25–26; PCSOF ¶¶ 43–44.)  Sometime thereafter, Plaintiff moved and enrolled her children in another school district.  (DSOF ¶ 45; PCSOF ¶ 45.)

---

[4]Plaintiff claims to dispute this fact but cites no evidence to support she followed up with the District.  (*See* PCSOF ¶ 41 citing PRSOF ¶ 57.)

C.  <u>Criminal Case</u>

Plaintiff's Criminal Case was initiated on March 30, 2020 and Plaintiff was charged with assault pursuant to A.R.S. § 13-1203(A)(3) in Marana Municipal Court Case No. CM202000276 (the "Criminal Case").  (DSOF ¶¶ 27–28, Exh. 5; PCSOF ¶¶ 27–28.)  At the request of Senior Assistant Town Attorney Libby Shelton, the Criminal Case was dismissed on September 22, 2020.  (DSOF ¶¶ 28–29, Exh. 6; PCSOF ¶ 28–29.)

D.  <u>Documents sent in October 2020 and April 2021</u>

Around October 1, 2020, Plaintiff's supervisor informed Plaintiff that a document ("First Document") regarding Plaintiff was delivered to her department—Plaintiff is employed by the University of Arizona (the "University") College of Education.[5]  (DSOF ¶¶ 46–47, Exh. 3 at 8, 88; PCSOF ¶¶ 46–47.)  This First Document was a printout of the Criminal Case docket with additional statements typed onto the top of the document. (DSOF ¶ 48; PCSOF ¶ 48.)  In late April 2021, Plaintiff became aware of an unsigned note ("Second Document") dated April 23, 2021 that was mailed and delivered to the University's Compliance Office.  (DSOF ¶ 52, Exh. 3 at 101–102, Exh. 9; PCSOF ¶ 52.)

E.  <u>Procedural History</u>

Plaintiff began this action in February 2021 (Doc. 1) and filed her First Amended Complaint ("FAC") in April 2021 (Doc. 16).  Plaintiff's FAC raised the following five counts: (1) 42 U.S.C. § 1983 first amendment retaliation against all Defendants; (2) Ariz. Const. art. II, § 6 free speech retaliation against all Defendants; (3) 42 U.S.C. § 1983 denial of procedural due process against the District; (4) defamation per se against Defendant Divijak in her individual capacity; and (5) false light invasion of privacy against Defendant Divijak in her individual capacity.  (*Id.* at 11–16.)  Defendants filed this Motion (Doc. 38) arguing they are entitled to summary judgment on all five counts and the matter has been fully briefed.[6]  (Doc. 46 (Response); Doc. 56 (Reply).)

---

[5]Plaintiff is employed at the University as the Director of the Master's Program in Applied Behavior Analysis and as an Assistant Professor of Practice.  (DSOF ¶ 46; PCSOF ¶ 46.)

[6]Plaintiff requested oral argument.  (Doc. 46 at 1.)  The Court finds oral argument will not aid in resolution of the issues raised and, therefore, denies this request.  *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(a); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A]

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, upon a party's motion, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of informing the court of the basis for its motion for summary judgment and of indicating those portions of the record and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may succeed on a motion for summary judgment by identifying the absence of evidence supporting an element of the non-movant's claim if the non-movant bears the burden of proof on that claim at trial. *Id.* at 322–23. The evidence of the non-movant is to be taken as true and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

### A.   <u>Counts I and II – Free Speech Retaliation</u>

Defendants argue they are entitled to summary judgment on Counts I and II because Plaintiff cannot satisfy any of the elements required to prevail on a First Amendment retaliation claim. (Doc. 38 at 10.) Specifically, Defendants argue: (1) "physically touching another person is not conduct protected by the First Amendment;" (2) "escorting a parent from a school campus and calling the police to report an alleged assault would not 'chill a person of ordinary firmness' from engaging in protected activity;" and (3) "there is no connection between any of Plaintiff's speech and her removal from campus." (*Id.*) According to Defendants, "Plaintiff cannot produce any evidence that Divijak or any other District employee requested that Plaintiff receive a trespass order from the [MPD] based

---

district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.").

1   on her speech" rather than the contact she made with Divijak.  (*Id.* at 9–10.)

2   Plaintiff argues a reasonable jury could find the ban was substantially motivated by

3   Plaintiff's criticism of the school rather than the physical contact between her and Divijak.

4   (Doc. 46 at 16–18.)  Plaintiff also argues a reasonable jury could conclude Divijak told

5   others Plaintiff grabbed and assaulted her "as a pretext to cover up the true reason for which

6   Defendants wanted to get rid of [Plaintiff]: she was 'very opinionated,' and they did not

7   like hearing her opinions."  (*Id.* at 17.)

8   To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a

9   plaintiff must show "(1) [she] engaged in constitutionally protected activity; (2) the

10  defendant's actions would 'chill a person of ordinary firmness' from continuing to engage

11  in the protected activity; and (3) the protected activity was a substantial motivating factor

12  in the defendant's conduct—i.e., that there was a nexus between the defendant's actions

13  and an intent to chill speech." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d

14  858, 867 (9th Cir. 2016).[7]  "Once a plaintiff has made such a showing, the burden shifts to

15  the [defendant] to show that it would have taken the same action even in the absence of the

16  protected conduct." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) (internal quotation

17  marks omitted).

18  With respect to the first element, the Court finds Plaintiff engaged in constitutionally

19  protected activity.  Defendants' contention Plaintiff did not have a First Amendment right

20  to physically touch Divijak (Doc. 38 at 10) is beside the point.  The protected activity that

21  supports this retaliation claim is Plaintiff's exercise of her First Amendment right to

22  criticize school officials.  Plaintiff argues she was banned from the District's property

23  because she made statements criticizing Divijak and the School for the poor scheduling of

24  School events and expressing her viewpoints about the unwelcoming environment at the

---

26  [7]While the Arizona Constitution is considered to be more protective of free speech
27  rights than the Federal Constitution, Arizona courts have not explored or defined the
    contours of that more expansive right and, therefore, generally rely on federal case law in
    addressing free speech claims under the Arizona constitution.  *See Brush & Nib Studio, LC
    v. City of Phoenix*, 448 P.3d 890, 902–03 (Ariz. 2019).  Because Plaintiff does not cite any
28  case or explain why the analysis should be different under the Arizona Constitution, (Doc.
    46) the court will rely on federal law and conduct the same analysis for Counts I and II.

School.  (DSOF ¶ 30; PCSOF ¶ 30.)   According to Plaintiff, the ban against her was substantially motivated by the District's dislike for her expressed viewpoints "regarding event scheduling, overheated busses, children accessing pornography on school computers, availability of books in the school library, opining that children should be allowed to speak to one another in the cafeteria during lunch, IEP/504 meeting procedures, proper treatment of children with disabilities, special education funding, and the like."  (PRSOF ¶ 13, Exh. 4 ¶ 8.)

Speech is generally protected by the First Amendment, with restrictions on only certain types of speech, such as obscenity, defamation, and fighting words, *R.A.V. v. St. Paul*, 505 U.S. 377, 382–83 (1992), none of which is applicable here.  Defendants have not pointed to any case from the Supreme Court or the Ninth Circuit Court of Appeals holding that parents criticizing school officials is not protected speech.  (*See* Doc. 38 at 8–10; Doc. 56 at 2–4.)  Indeed, cases from other courts seems to suggest the right to criticize public officials is protected by the First Amendment.  *See e.g., Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (recognizing First Amendment protects citizen's right to criticize public officials and policies); *Smith v. Allegheny Valley Sch. Dist.*, No. CV 17-686, 2017 WL 6279345, at *10 (W.D. Pa. Dec. 8, 2017) (parent's critique of school district personnel and their behavior is "speech protected by the First Amendment"); *Flege v. Williamstown Indep. Sch.*, No. CIVA 06-47-DLB, 2007 WL 679022, at *1, 10 (E.D. Ky. Mar. 1, 2007) (parents exercised First Amendment rights by criticizing superintendent and school policies).

With respect to the second element, Defendants' banning of Plaintiff would lead ordinary parents in Plaintiff's position to refrain from criticizing school officials in order to be able to enter the school.  The ban in this case restricted Plaintiff's access to her children's School which prevented her from being able to attend, among other things, parent-teacher conferences, a science fair, and a school fundraiser.  (DSOF ¶ 31; PCSOF ¶ 31; PRSOF ¶¶ 21–23, Exh. 4 ¶¶ 10–12.)  It is entirely plausible that a jury could find these actions reasonably likely to deter an ordinary person from engaging in protected speech.

With respect to the third element, Plaintiff submitted enough circumstantial evidence for a reasonable jury to find that the decision to ban Plaintiff from the School was substantially motivated by her criticism of school officials. *See Pinard v. Clatskanie Sch. Dist. 6J*, No. CIV. 03-172-HA, 2008 WL 410097, at *5 (D. Or. Feb. 12, 2008) ("As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence, and involves questions of fact that normally should be left for trial.") (quoting *Ulrich v. City & Cnty. of San Francisco,* 308 F.3d 968, 979 (9th Cir. 2002)).   As evidence, Plaintiff references various statements District employees made about her on February 7, 2020.  (Doc. 46 at 2–4, 16–18.)  First, Plaintiff references Divijak's statements to Officer Ysaguirre that Plaintiff had sent her a "pretty hateful email" about a winter performance accusing her of "just going through the motions and not caring about the School" and that she did not reply to one of Plaintiff's email expressing complaints because it "attacked her personally."  (PRSOF ¶ 13, Exh. 7 at 57:00–57:40, 58:45–1:00:40.)  Second, Plaintiff references statements Divijak's secretary made—heard in the body-camera footage—characterizing Plaintiff's speech as "a problem all year" and "verbal diarrhea."  (PRSOF ¶¶ 15–16, Exh. 7 at 36:14–36:55.)  Divijak's secretary is seen smiling and giggling while saying this.  (*Id.*)  Third, Plaintiff produced evidence of text messages from two Assistant Superintendents describing the "back story" of Plaintiff to Superintendent Wilson.  (PRSOF ¶¶ 13–14, Exh. 9.)  Those text messages said, among other things, that Plaintiff had "sent some pretty scathing emails to [Divijak]," and that Plaintiff was "very opinionated," "not flexible at all," and "very high maintenance."  (*Id.*)  This evidence in the record suggests there was hostility and antagonism between Defendants and Plaintiff.  Other evidence in the record includes Mr. Gute's characterization of the February 7 incident.  He told Officer Ysaguirre Divijak looked upset while talking to Plaintiff and Divijak appeared to have an "exaggerated" reaction to what appeared to be a touch of the side of her arm; Mr. Gute stated he did not think it was a hit or a grab.  (PRSOF ¶ 4, Exh. 5 at 5:05–10:15.)  Video footage of the interaction does not clearly show the extent of the contact.

However, the Court concludes a reasonable jury could find that the characterization of the contact between Plaintiff and Divijak is a material fact that might affect the outcome of the case.  A jury could conclude the contact was so marginal based on the video footage and the statement from Mr. Gute that the real reason the District trespassed Plaintiff was due to her speech and not the contact with Divijak.  Even if Plaintiff had no entitlement to be on campus, banning her from campus violated her First Amendment rights if Defendants did so with a retaliatory motive.  *See O'Brien*, 818 F.3d at 932 ("Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.").  Determining Defendants' motives for their banning decision requires resolution of disputed facts, including resolving credibility determinations.  Viewing the evidence in the light most favorable to Plaintiff, *Anderson*, 477 U.S. at 255, a reasonable jury could infer Defendants banned Plaintiff because Plaintiff spoke out against and complained about how school officials were running the School.[8]  Therefore, the Court will deny Defendants' Motion for Summary Judgment on this argument.

### 1. *Count II is Time Barred*

Defendants argue even if Plaintiff could establish the elements needed for a First Amendment retaliation claim, Count II is time barred because "Plaintiff's claim accrued when she had sufficient information to form a belief that the ban was retaliation for her speech" which was "as early as February 7 and no later than February 24, 2020."  (Doc. 56 at 8.)  Plaintiff argues accrual for Arizona notice-of-claim purposes is a question for the jury and a reasonable jury could conclude she did not become unquestionably aware that the District was not going to lift her trespass ban until a May 2020 meeting.  (Doc. 46 at 12–13.)  In their Reply, Defendants argue "Plaintiff's claim accrued when she had sufficient information to form a belief that the ban was retaliation for her speech" and "[t]he

---

[8]Defendants fail to explicitly argue Plaintiff would have been banned from the School regardless of her complaints about School officials.  (Doc. 38 at 8–12; Doc. 56 at 2–4.)  For example, they do not offer any evidence of other parents being similarly banned from campus for similar conduct to help suggest this ban would have occurred regardless of prior complaints.  Instead, they just argue the ban was due to Plaintiff's physical touching.  (*See* Doc. 38 at 8–10.)

1    extent of an injury has no bearing on the existence of the injury."  (Doc. 56 at 8.)

2        Arizona law requires that a notice of claim against a public entity or employee be

3    served within one hundred eighty days after a cause of action accrues.  A.R.S. § 12-

4    821.01(A).  Under the statute, "a cause of action accrues when the damaged party realizes

5    he or she has been damaged and knows or reasonably should know the cause, source, act,

6    event, instrumentality or condition that caused or contributed to the damage."  *Id.* at (B).

7    If the notice of claim is not filed within 180 days after accrual, the claim is barred.  *Id.* at

8    (A).

9        "To determine when a cause of action accrues, an analysis of the elements of [the

10   cause of action] is necessary."  *Dube v. Likins*, 167 P.3d 93, 98 (Ariz. Ct. App. 2007).  The

11   elements of free speech retaliation are stated above.  A defendant is entitled to summary

12   judgment on an untimely claim if there is evidence that the plaintiff "unquestionably [was]

13   aware of the necessary facts underlying [her] cause of action."  *Thompson v. Pima Cnty.*,

14   243 P.3d 1024, 1029 (Ariz. Ct. App. 2010).

15       Here, Count II of Plaintiff's FAC relates to Defendants' alleged retaliation against

16   Plaintiff in violation of the Arizona Constitution.  (Doc. 16 at 13.)  The parties agree that

17   180 days prior to the notice of claim is April 26, 2020.  (Doc. 46 at 13; Doc. 56 at 8.)  The

18   Court finds Plaintiff unquestionably was aware of the necessary facts underlying her First

19   Amendment Retaliation claim on February 24.  There is no dispute the constitutionally

20   protected activity Plaintiff references occurred prior to February 24, 2020.[9]  Plaintiff told

21   the investigating MPD officer she had ongoing "conflict" with Divijak "since the

22   beginning." (PRSOF, Exh. 7 at 16:00–16:33.)  Plaintiff also admitted during her deposition

23   that she formed a feeling during the February 24 meeting "that there was a First

24   Amendment retaliation [claim] as a result of [her] expressing [her] opinions in the *past*."

25   (DSOF, Exh. 3 at 72 (emphasis added).)  Because Plaintiff offers no genuine dispute of

26   material fact to prevent summary judgment on Count II, Defendants are entitled to

27

28       [9]Plaintiff does not specifically state when all her relevant complaints against the
     School were made, but based on the context, they all appear to have occurred prior to the
     ban.  (*See* Doc. 16 ¶¶ 19-32; DSOF, Exh. 12–13 (Dec. 2019 emails).)

1    summary judgment as to Count II.

2         **2. *Qualified Immunity for Divijak in Count I***

3         Defendant Divijak argues even if Plaintiff could survive summary judgment on

4    Count I, she "is immune from liability on [this] claim pursuant to the doctrine of qualified

5    immunity." (Doc. 38 at 10.)  Specifically, Divijak argues Plaintiff fails to identify any case

6    putting her on notice that her specific conduct was unlawful.  (Doc. 38 at 11–12; Doc. 56

7    at 12–13.)   Plaintiff argues Divijak is not entitled to qualified immunity because the

8    constitutional right to be free from retaliation is clearly established and Divijak admitted

9    she knew it is not appropriate to retaliate against a community member.  (Doc. 46 at 18.)

10        "Qualified immunity shields government actors from civil liability under 42 U.S.C.

11   § 1983 if 'their conduct does not violate clearly established statutory or constitutional

12   rights of which a reasonable person would have known.'"  *Castro v. Cnty. of Los Angeles*,

13   833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S.

14   800, 818 (1982)).  To determine whether qualified immunity applies, courts must consider

15   whether (1) the government official violated the plaintiff's constitutional right and (2)

16   whether that right was clearly established at the time of the events at issue.  *Seidner v. de*

17   *Vries*, 39 F.4th 591, 595 (9th Cir. 2022) (internal citation and quotation marks omitted).

18   "A right is clearly established when it is 'sufficiently clear that every reasonable official

19   would have understood that what he is doing violates that right.'"  *Rivas-Villegas v.*

20   *Cortesluna*, 142 S. Ct. 4, 7 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).  To

21   be clearly established, there must be existing precedent placing the "constitutional question

22   beyond debate."  *Id.* at 7–8.  "This inquiry 'must be undertaken in light of the specific

23   context of the case, not as a broad general proposition.'"  *Id.* at 8 (quoting *Brosseau v.*

24   *Haugen*, 543 U.S. 194, 198 (2004)).   "[T]he plaintiff bears the burden of proof regarding

25   whether the right is clearly established" and the "defendant must prove that his or her

26   conduct was reasonable."  *DiRuzza v. Cnty. of Tehama*, 206 F.3d 1304, 1313 (9th Cir.

27   2000).

28        The Court concludes Divijak is entitled to qualified immunity for the individual

capacity claim against her in Count I because Plaintiff fails to show the law on this issue is clearly established. Plaintiff points to no authority that would have put a reasonable official on notice that Divijak's conduct was violating a clearly established right. (*See* Doc. 46 at 18.) Instead, Plaintiff only insufficiently and summarily argues the constitutional right to be free from retaliation is clearly established. *See Hirt v. Unified Sch. Dist. No. 287*, No. 2:17-CV-02279-HLT, 2019 WL 1866321, at *18 (D. Kan. Apr. 24, 2019) ("[M]erely asserting the existence of a generic constitutional right is not enough to defeat a claim of qualified immunity."), *aff'd sub nom. Clark v. Unified Sch. Dist. No. 287*, 822 F. App'x 706 (10th Cir. 2020); *cf. Moran v. Washington*, 147 F.3d 839, 847 (9th Cir. 1998) ("Because the underlying determination pursuant to *Pickering* whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity.") Therefore, Divijak is entitled to summary judgment as to Count I.

**B.  Count III – Procedural Due Process under Fourteenth Amendment**

The District argues, among other things, it is entitled to summary judgment on Count III because Plaintiff did not have a constitutionally protected liberty interest. (Doc. 38 at 12–14.) Specifically, the District argues directing the education and upbringing of one's children does not create a right to access school property. (*Id.*) Plaintiff argues she had a fundamental liberty interest based on "the fundamental right to direct the upbringing and education of her children."[10] (Doc. 46 at 4, 7–8.) According to Plaintiff, a reasonable jury could conclude the District's conduct in prohibiting Plaintiff from participating in parent-teacher conferences and an orientation and placement assessment for her

---

[10]Plaintiff also argues her due process claim relates to her fundamental liberty interest based on the First Amendment and First Amendment speech retaliation. (Doc. 46 at 4.) However, as the District points out in its Reply, Plaintiff is raising these claims for the first time on her response to a motion for summary judgment. (Doc. 56 at 5.) Plaintiff's FAC clearly states her procedural due process claim is based on "her fundamental right to direct the education of her children." (Doc. 16 ¶ 111.) Therefore, the Court will limit its analysis to only that liberty interest. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1293 (9th Cir. 2000) (refusing to allow plaintiff to "turn around and surprise" defendant with a new theory at the summary judgment stage and noting plaintiff should have moved to amend the operative complaint).

preschooler violated this fundamental right.  (*Id.* at 7–8.)  In its Reply, the District argues Plaintiff cites no binding authority holding the right to direct the care and upbringing of her children encompasses a right to access school property and the Court must decide this issue as a matter of law.  (Doc. 56 at 5–6.)

Under the Due Process Clause of the Fourteenth Amendment: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993)).  A procedural due process claim only ripens "when it is clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred." *Id.* at 984. In other words, if there is no constitutionally protected interest, no due process is required.

Here, Plaintiff cites general cases holding a family member has a fundamental right to direct the upbringing and education of children under their control.  *See Troxel v. Granville*, 530 U.S. 57, 65, 77 (2000); *see also Zelman v. Simmons–Harris*, 536 U.S. 639, 680 n. 5 (2002) (Thomas, J., concurring); *Johnson v. City of Cincinnati*, 310 F.3d 484, 499 (6th Cir. 2002).  (Doc. 46 at 7–8.)  However, that right is not limitless and Plaintiff fails to cite any binding case holding this fundamental right extends to a parent's ability to be on campus.[11]  (*Id.*)  Indeed, numerous cases suggest otherwise.  *See e.g., T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-CV-01562-HZ, 2014 WL 897123, at *3 (D. Or. Mar. 6, 2014) ("[N]o court has extended a parent's fundamental liberty interest in the care of his or her children to a parental right to physically access a child's school."), *aff'd sub nom. Lowry v. Sherwood Charter Sch.*, 691 F. App'x 310 (9th Cir. 2017); *Flores v. Victory Preparatory Acad.*, 411 F. Supp. 3d 1149, 1162 (D. Colo. 2019) (courts have determined

---

[11]As mentioned above, the Court is not considering cases cited by Plaintiff related to the First Amendment or First Amendment retaliation (Doc. 46 at 6–7) because Plaintiff's FAC clearly states its procedural due process claim only relates to the right to direct her children's education.

1  parents do not have constitutional right to access school property).  Because Plaintiff had

2  no constitutional right to access school property, no procedural due process was required

3  before Plaintiff was banned from the property.  *See T.L. ex rel. Lowry*, 2014 WL 897123,

4  at *3 (finding no procedural due process required regardless of purpose of parent's visit).

5  Therefore, Plaintiff cannot successfully bring a § 1983 violation of due process claim as a

6  matter of law and the District is entitled to summary judgment on Count III.

7  ### C. Count IV – Defamation Per Se

8  Defendant Divijak argues she is entitled to summary judgment on Count IV because

9  Plaintiff cannot establish a prima facie case for defamation with convincing clarity.  (Doc.

10  38 at 18.)  Specifically, Divijak argues Plaintiff's defamation claims related to the First and

11  Second Documents fail as a matter of law because they are either true, substantially true,

12  or unactionable.[12]  (*Id.* at 16–18.)  She also argues Plaintiff's alleged defamatory oral

13  statement fails as a matter of law because it is substantially true that Plaintiff assaulted and

14  grabbed Divijak.  (Doc. 56 at 10.)

15  Plaintiff argues a reasonably jury could find there was false and defamatory

16  statements in the First and Second Documents and when Divijak told District "staff

17  members and her husband that [Plaintiff] 'assaulted' and 'grabbed' her."  (*Id.* at 18–21.)

18  Under Arizona law, a defamatory publication or statement "by a private figure on

19  matters of private concern 'must be false and must bring the defamed person into disrepute,

20  contempt, or ridicule, or must impeach [that person]'s honesty, integrity, virtue, or

21  reputation.'"[13]  *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 462 (Ariz. Ct. App.

22  2017) (quoting *Turner v. Devlin*, 848 P.2d 286, 288–89 (1993)); *Takieh v. O'Meara*, 497

23  P.3d 1000, 1006 (Ariz. Ct. App. 2021).  "To defeat a defendant's motion for summary

---

[12]Defendant Divijak also argues there is insufficient evidence that would allow a jury to find she wrote, mailed, or caused the publication and delivery of the First and Second Documents.  (Doc. 38 at 16.)  For purposes of analysis, the Court will assume, without deciding, that Plaintiff presented sufficient circumstantial evidence that Defendant Divijak wrote the First and Second Documents for Counts IV and V.

[13]Defendant Divijak does not argue she was a public official, public figure, or limited public figure that would be subject to the actual malice standard.  *See New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) (heightened pleading standard requiring Plaintiff to show actual malice in certain situations).

judgment in a defamation case, the plaintiff must present evidence 'sufficient to establish a prima facie case with *convincing clarity*.'" *Sign Here Petitions LLC*, 402 P.3d at 462 (emphasis added) (quoting *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 942–43 (Ariz. 1991)).   This higher burden is imposed "because the expense of defending a meritless defamation case could have a chilling effect on free speech." *Id.*

Before getting to a jury, the trial court must first determine "whether, *under all the circumstances*, a statement is capable of bearing a defamatory meaning." *Sign Here Petitions LLC*, 402 P.3d at 463–64 (quoting *Yetman v. English*, 811 P.2d 323, 331 (Ariz. 1991)) (emphasis in original).   If the statement is capable of such a meaning, it is actionable, and the jury can decide "whether the defamatory meaning of the statement was in fact conveyed." *Id.* (quoting *Yetman*, 811 P.2d at 331) (emphasis omitted).

The key inquiry for the trial court is whether the expression at issue "*would reasonably appear to state or imply assertions of objective fact*." *Yetman*, 811 P.2d at 328. "'In determining whether speech is actionable, courts must additionally consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person' at the time the statement was uttered and under the circumstances it was made." *Sign Here Petitions LLC*, 402 P.3d at 463–64 (quoting *Yetman*, 811 P.2d at 328) (emphasis omitted).   "[A] statement is not actionable if it is comprised of 'loose, figurative, or hyperbolic language' that cannot reasonably be interpreted as stating or implying facts 'susceptible of being proved true or false.'" *Takieh*, 497 P.3d at 1006.

Furthermore, "[s]ubstantial truth is an absolute defense to a defamation action in Arizona." *Read*, 819 P.2d at 941.   A defendant "need not prove the literal truth of every detail" and slight inaccuracies of expression are immaterial if the defamatory charge is true in substance.   *Id.*   When the underlying facts are undisputed, the determination of substantial truth is a matter for the court.   *Id.*

### 1. First Document: Criminal Case Docket

The First Document is a copy of the docket in Plaintiff's Criminal Case.  (DSOF

Exh. 13; PCSOF Exh. 13.)  This Document is dated September 14, 2020 and Plaintiff's supervisor viewed it around October 1, 2020.  (DSOF ¶¶ 47–48, Exh. 3 at 88; PCSOF ¶¶ 47–48.)  Two sentences appear on the top right-hand corner.  (DSOF Exh. 13; PCSOF Exh. 13.)  The first sentence states, "This occurred at a K-8 school in front of young children." (*Id.*)  The second sentence states, "Doesn't seem like this is the kind of person that should be training teachers let alone working with kids."  (*Id.*)

Defendant argues Plaintiff's claim regarding this First Document fail as a matter of law because the first sentence is substantially true and the second sentence is an opinion that cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false.  (Doc. 38 at 16–17.)  In response, Plaintiff makes several claims related to this First Document.  (Doc. 46 at 19–21.)

First, Plaintiff argues the First Document falsely showed the Criminal Case against Plaintiff was still pending because it was delivered after the Criminal Case was dismissed and there was "no occurrence of 'knowingly touch w/intent to inj[ure]/insult/provoke.'" (Doc. 46 at 19–20.)  However, regardless of when the First Document was received, it was dated September 14, 2020 and the criminal charges against Plaintiff were still pending at that time.  The First Document simply shows what Plaintiff was *charged* with as of that date.  Because this is all true, the Court finds Plaintiff's claims on this matter meritless.

Second, Plaintiff argues the first sentence is false because "[n]othing 'occurred . . . in front of young children.'"[14]  (Doc. 46 at 18.)  The Court finds this portion of the first sentence substantially true based on the evidence in the record.  Although there was no classroom of children, Plaintiff admits one child was present and the video footage in the record shows children in the background of the nearby School hallway where this occurred. (PCSOF Exh. 3, Exh. 6 at 130.)

Third, Plaintiff argues a reasonable jury could find the second sentence to be false and defamatory because it is "a character assassinating statement to her employer."  (Doc. 46 at 19–20.)  The Court finds this statement unactionable because it does not reasonably

_____

[14]Plaintiff does not dispute the portion of the first sentence stating the incident related to the Criminal Case occurred at a K-8 school.

appear to state or imply assertions of objective fact.  Based on the context of the First Document, it appears to state a subjective fact related to what type of person should be training teachers and working with kids.  Therefore, Divijak is entitled to summary judgment as to any defamatory statements related to the First Document.

### 2.  Second Document: April 23, 2021 Letter to University

The Second Document was an unsigned letter dated April 23, 2021 stating:

> Please be advised that your professor, Rebecca I. Hartzell has, for at least the last two (2) years, been using her **University of Arizona** email account to <u>harass</u>, <u>bully</u>, <u>intimidate</u> and <u>threaten</u> people.
> A full audit of her account will verify these accusations.
> Additionally, I have great concern about her mental health.
>
> I send this without signature for fear of retribution but hope you will take this matter seriously.

(Doc. 47-14 at 4) (emphasis in original).

Defendant Divijak argues the first statement in the Second Document is unactionable because it is subjective and uses language "that 'cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false' because those words do not 'reasonably appear to state or imply assertions of objective fact.'"  (*Id.* at 17.)  Specifically, Divijak argues the "statement is not susceptible of being proven true or false because each of those words, in context, merely describe how the author of the Second Document interpreted Plaintiff's communications."  (*Id.*)  She also argues the statement related to an audit of Plaintiff's account and concerns about Plaintiff's mental health are unactionable because they are opinions incapable of being proven true or false.  (*Id.* at 17–18.)

In her Response, Plaintiff argues the statement regarding mental health "was particularly inflammatory given Hartzell's role in the University of Arizona's Disability and Psychoeducational Studies Department, which the author would have known."  (Doc. 46 at 20.)  Plaintiff does not address any of Defendant's other arguments.[15]  (Doc. 46 at

_____

[15]Defendant argues Plaintiff's failure to respond to legal arguments is sufficient for

18–20.)

The Court finds that the statements in the Second Document are not actionable because the "impression created by the words" and "the general tenor of the expression" do not "reasonably appear to state or imply assertions of objective fact." *Yetman*, 811 P.2d at 328. Therefore, Divijak is entitled to summary judgment as to any defamatory statements related to the Second Document.

### 3. Oral Statements to Husband and District staff

Defendant Divijak contends there is no actionable defamatory oral statement because it is substantially true that Plaintiff grabbed and assaulted her. (Doc. 56 at 10–11.) Specifically, Divijak argues Plaintiff "knowingly touched Divijak and the result was that Divijak was insulted and provoked." (Doc. 56 at 10–11.) Plaintiff argues a reasonable jury could find Divijak's statements are false and defamatory because she never grabbed or assaulted Divijak. (Doc. 46 at 1, 18–19.)

Under Arizona law, a person commits criminal assault by "knowingly touching another person with the intent to injure, insult or provoke such person." A.R.S. § 13-1203(A)(3).

Here, it is undisputed Plaintiff was not convicted of assault and that Plaintiff physically touched Divijak during a heated discussion. Therefore, the dispute centers around whether Plaintiff knowingly touched Divijak and whether she did so with the intention to injure, insult, or provoke her. It is irrelevant Divijak felt insulted or provoked. What is relevant is whether Plaintiff knowingly made physical contact with the requisite intention. Given the factual disputes about the nature of the contact discussed above, the Court cannot conclude the oral statements are substantially true. *Cf. Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. Ct. App. 2015) (affirming trial court denial of motion for judgment as a matter of law because legitimate questions of fact existed on defamation claims and jury was in best position to resolve material questions of fact). The

this Court to grant summary judgment in her favor. The Court disagrees but notes that Plaintiff's failure to respond places a burden on this Court and is a practice that should be discouraged.

Court finds sufficient evidence in the record for the jury to determine "whether the defamatory meaning of the statement was in fact conveyed" when Divijak told others Plaintiff grabbed and assaulted her.  *See Sign Here Petitions LLC*, 402 P.3d at 463–64. Therefore, the Court will deny Divijak's Motion for Summary Judgment on this argument.

### D. <u>Count V – False Light Invasion of Privacy</u>

Defendant Divijak argues she is entitled to summary judgment on Count V because "it is undisputed that [the First and Second Documents were] delivered to only one person: Plaintiff's supervisor in the first instance and the University's Compliance Office in the second."  (Doc. 38 at 19.)  Divijak also argues Plaintiff has not produced facts to show Divijak's oral statements "were made to a sufficient number of people that they were certain to become public knowledge." (Doc. 56 at 12.)  According to Divijak, "This limited publication is insufficient to establish a false light invasion of privacy claim."  (Doc. 38 at 19.)

Plaintiff argues there was widespread publication because these statements were "promulgated widely within [the District] and to the public University," and a District "employee also stated, 'I'm sure it's all over Facebook already.'"  (Doc. 46 at 20.)  In her Reply, Defendant Divijak argues Plaintiff's claim is "general and unsupported" and is not sufficient to overcome summary judgment because Plaintiff has not produced any facts to show that any comments were made to enough people.  (Doc. 56 at 11–12.)

> Under Arizona law, the tort of false light invasion of privacy occurs when:
> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Godbehere*, 783 P.2d at 784 (quoting Restatement (Second) of Torts § 652(E) (1977)).

In order to establish publicity in a false light claim, the matter at issue must be made

public "by communicating it to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge." *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 854 (Ariz. Ct. App. 1997) (emphasis omitted) (quoting Restatement (Second) of Torts §§ 652(D), (E)).  Plaintiff must produce evidence that would allow a reasonable juror to find in her favor on the issue to survive summary judgment. *Id.* at 855.

To establish the publicity element, Plaintiff relies on Divijak's deposition testimony and the investigating officer's body-camera footage where Divijak admits telling Ms. Sternberg, Mr. McKenna, and her husband that Plaintiff assaulted and intentionally grabbed her.  (*See* Doc. 46 at 18–20 (citing PRSOF ¶¶ 7, 66–68).)  Plaintiff also references a statement—heard in the body-camera footage—of a District employee saying, "I'm sure its all over Facebook already."  (*See* Doc. 46 at 18–20 (citing PRSOF ¶¶ 7, 66–68, 70).)  However, as Defendant points out, other than this statement, Plaintiff produced no evidence showing news of this incident was all over Facebook or any other social media.  Plaintiff also does not identify anyone within the University who learned of this matter other than Plaintiff's employer who received the First Document and the University employee who looked at the Second Document.  The Courts finds Plaintiff's evidence insufficient to establish that the matter at issue was communicated to so many people that the "matter must be regarded substantially certain to become one of public knowledge."  Because Plaintiff fails to meet the publicity element as a matter of law, Defendant is entitled to summary judgment as to Count V.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** Defendants' Motion for Summary Judgment (Doc. 38) is GRANTED as to Counts II, III, and V and GRANTED in-part as to Counts I and IV. Defendant Divijak is entitled to summary judgment on the individual capacity claim against her in Count I based on qualified immunity.  She is also entitled to summary judgment on any defamation claims in Count IV related to the First and Second Documents.

1    **IT IS FURTHER ORDERED** Defendants' Motion for Summary Judgment (Doc.

2    38) is DENIED in-part as to Count I and IV.  Count I remains against the District and the

3    defamatory oral statements in Count IV remain against Defendant Divijak.

4    **IT IS FURTHER ORDERED** the parties shall file a Joint Proposed Pretrial Order

5    within 30 days of this Order.  (*See* Doc. 24 (Scheduling Order).)

6    Dated this 8th day of March, 2023.

Honorable Scott H. Rash
United States District Judge