DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Lisa Anne Smith (AZ # 16762)
lasmith@dmyl.com
Tyler H. Stanton (AZ # 34526)
tstanton@dmyl.com
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE STATE OF ARIZONA**

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>Plaintiff,<br><br>vs.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; and Andrea Divijak, in her individual capacity,<br><br>Defendants. | NO. 4:21-cv-00062-SHR<br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**<br><br>(Assigned to Hon. Scott H. Rash) |

Pursuant to Rule 51, Fed.R.Civ.P., Defendants Marana Unified School District (the "District"), and Andrea ("Ms. Divijak") and Joseph Divijak hereby submit the following objections to Plaintiff's Proposed Jury Instructions.

**Defendants' Objections:**

**1.    RAJI (Civil) – Defamation 5 (Repetition of Defamation):**

Plaintiff's proposed instruction is a pattern jury instruction and Defendants do not object to the instruction so far as it accurately states the law. Defendants object on the grounds that the repetition of the defamatory statements allegedly made by Ms. Divijak has never been an issue in this case. Notice pleading standards do not require Plaintiff to have identified

every instance of repetition in order to recover damages for any repetition of the statement(s) at issue, but Plaintiff is required to have at least alleged *one* instance of repetition or, at bare minimum, the word "repetition." Nowhere in Plaintiff's Complaint, First Amended Complaint, Second Amended Complaint, initial or supplemental disclosure statements, or Joint Proposed Pretrial Order did Plaintiff allege that the repetition of the allegedly defamatory statements would be an issue at trial. As a result, this instruction is irrelevant and should not be given to the jury.

**2.    Section 1983 Claim – Elements and Burden of Proof (Model 9th Circuit Jury Instruction 9.7)**

Plaintiff's proposed Instruction 9.7 is an accurate statement of the law. But Instruction 9.7 is improper and should not be given because it seeks to instruct the jury on a theory of liability not at issue in this case. A local governing body may not be held liable for claims under 42 U.S.C. § 1983 based solely on *respondeat superior*. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). A municipal entity can only be held "liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Theories number (1) and (2) above are reflected in element 3 in Instruction 9.5:

> 3.    "*[Name of defendant's official or employee]* acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the defendant *[name of local governing body]*."

Theory number (3) above—failure to train— is not at issue in this matter. Theory number (4) above is reflected in the fourth and fifth elements of Instruction 9.7 proposed by Plaintiff:

> 4.    [*name of final policymaker*] had final policymaking authority from defendant [*name of local governing body*] concerning the [act[s]] [failure to act] of [*name of defendant's employee*]; and

     5.    [*name of final policymaker*] ratified [*name of defendant's employee*]'s [act[s] [failure to act], that is, [*name of alleged final policymaker*] knew of and specifically made a deliberate choice to approve [*name of defendant's employee*]'s [act[s]] [failure to act] and the basis for it.

As shown in the relevant instructions, these two theories involve distinct elements and different defenses to liability. For example, in a case involving an allegation of an official policy or a widespread or longstanding practice or custom, a local governing body can defend by demonstrating the lack of an express policy or prior instances of similar constitutional violations demonstrating a widespread practice. In a "final policymaker" case, the defense would need to develop evidence related to whether the alleged actor was in fact a "final policymaker" and the facts and circumstances surrounding that final policymaker's choice and the basis for it.

In this case, Plaintiff's First Amendment retaliation claim against the District has always been based on allegations that the District maintained a custom, policy or practice that caused Plaintiff's alleged constitutional injuries. At no point until the parties met and conferred regarding motions *in limine* — after the Parties filed the Joint Proposed Pretrial Order— did Plaintiff raise the "final policymaker" theory of *Monell* liability. Nor did she allege in her original, First Amended, or Second Amended Complaint that Dr. Doug Wilson had final policymaking authority concerning the acts at issue. In the § 1983 cause of action in each of her Complaints, Plaintiff alleged only that the District has a "custom, practice, or policy that amounts to deliberate indifference toward parents' First Amendment rights." *See* Complaint ¶ 94, First Amended Complaint ¶ 93, Second Amended Complaint, ¶ 93. Plaintiff explicitly relied on the first and second theories set forth in *Monell* for municipal liability.

More telling, Plaintiff did not propose any factual or legal contentions related to the "final policymaker" theory of liability in the Joint Proposed Pretrial Order. The only factual contention relevant to Plaintiff's § 1983 claims is found in Paragraph 42 of Section VI, Contested Issues of Fact: "Whether the District has a custom, policy, or practice which was

the moving force behind the alleged First Amendment Retaliation." And Plaintiff did not raise the issue of whether Dr. Doug Wilson was a final policymaker as a contested issue of law. Instead, the relevant contested issue of law included in the Joint Proposed Pretrial Order was: "Whether the District has a custom, policy, or practice which was the moving force behind the alleged First Amendment retaliation, sufficient to impose municipality liability under 42 U.S.C. § 1983." Simply, Plaintiff has never raised the "final policymaker" theory of *Monell* liability. This is a distinct theory of liability under § 1983 with different elements and defenses. Nothing prevented Plaintiff from asserting both theories of *Monell* liability at any prior stage of litigation. There was no new evidence discovered at a late stage in the litigation justifying the addition of this theory. For the above reasons alone, Plaintiff should not be allowed to assert this brand-new theory of liability.

Additionally, the Court should reject this proposed instruction on its substance. Dr. Wilson did not have final policy-making authority from the District concerning the acts at issue. This is a question of law for the Court to decide. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (holding that there "can be no justification for giving a jury the discretion to determine which officials are high enough in the government that their actions can be said to represent a decision of the government itself."). The "identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

The question of who qualifies as a "final policymaker" is a question of state law. *Id.* at 737; *Praprotnik*, 485 U.S. at 123 (1988). "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the District." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). But just because a particular individual may make the final decision in a specific case does not mean that person is the final policymaker on that issue: the individual must actually be responsible for

establishing the municipal entity's policy in the relevant area. *See Gillette v. Delmore,* 979 F.2d 1342, 1350 (9th Cir. 1992). And federal courts cannot assume "that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Praprotnik*, 485 U.S. at 126 (1988

In Arizona, the governing board of school districts are solely responsible for "prescrib[ing] and enforc[ing] policies and procedures to govern the schools" within their district. A.R.S. § 15-341(A)(1). Governing boards "*may* delegate in writing to a superintendent…the authority to prescribe procedures that are consistent with the governing board's policies." *Id.* at (F) (emphasis added). But governing boards do not have the power to delegate the authority to make *policy* to superintendents; they may only delegate the creation of *procedures* to carry out the board's policies. The District has adopted policies confirming that the District's Governing Board is authorized under Arizona law to "adopt all needed policies and regulations for the … governance of the District." Marana Unified School District Policy BBA.[1]  That policy also confirms that the "executive function of Board is concerned with placing in operation *existing* Board policy" and it is this limited function that "is delegated by the Board to … the Superintendent." *Id.* District Policy BDD confirms that the "establishment of policies is the responsibility of the Board, and the execution of those policies is a function of the Superintendent." *Id.* at Policy BDD.[2] The District also has an express policy for addressing complaints by members of the public, including parents, whose concerns or complaints were not adequately resolved by school officials or the Superintendent: "The Board will consider hearing citizen complaints when they have not been resolved by the administration. Matters referred to the Board as a whole must be in writing, should clearly identify the problem, and specifically state the desired action.  The Board will not consider or act on complaints that have not been explored at the appropriate

---

[1] https://policy.azsba.org/asba/browse/allmanuals/marana/BBA
[2] https://policy.azsba.org/asba/browse/allmanuals/marana/BDD

administrative level." District Policy KE.[3] Based on the above, it is clear that Dr. Wilson was *not* a final policymaker of the District. Arizona law expressly vests all policymaking authority in the District's governing board. While Dr. Wilson was delegated the authority to carry out existing Board policy, he was not delegated the authority to *make* policy, as required to impose § 1983 liability on the District in this case. For the above reasons, even if the Court were to overlook the Plaintiff's failure to timely raise this legal theory, the Court should reject Plaintiff's proposed Model 9th Circuit Jury Instruction 9.7, on the grounds that neither Dr. Wilson nor any other school employee was a final policymaker and, as a result, the instruction is not appropriate.

Finally, if the Court believes it may be inappropriate to decide whether Dr. Wilson was a "final policymaker" without hearing evidence at trial, Plaintiff cannot make a showing that Dr. Wilson was a final policymaker based on the witnesses and evidence identified in Plaintiff's portion of the Joint Proposed Pretrial Order. Plaintiff failed to list any past or present members of the District's Governing Board who would be necessary to provide testimony regarding governance of the District. Of course, Plaintiff cannot establish that Dr. Wilson was a final policymaker of the District because he was not, but Plaintiff cannot even put on any evidence regarding this issue. For all of the above reasons, the Court should not give this proposed instruction to the jury.

3. **Model 9th Circuit Jury Instruction 9.11 – First Amendment Retaliation**

Defendants do not object to the text of Instruction 9.11 but believe the Court should add additional language to this instruction or provide an additional instruction regarding the distinction between protected speech and unprotected conduct. Defendants' position is and will be that Dr. Hartzell was banned from campus due to touching Ms. Divijak, *i.e.*, unprotected conduct. To prevail, the District must show that to be the case factually, but the

---

[3] https://policy.azsba.org/asba/browse/allmanuals/marana/KE

1  jury can only know that the touching is not legally protected if given such an instruction by
2  the Court. While the jury will already be instructed to determine whether Dr. Hartzell's
3  protected speech was a substantial or motivating factor behind her ban from campus, the
4  District wants to ensure the jury is appropriately instructed that Dr. Hartzell physically
5  touching Ms. Divijak is not part of that protected speech.

6  DATED this 27th day of October, 2022.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By: */s/ Tyler H. Stanton*
Lisa Anne Smith
Tyler H. Stanton
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, I electronically transmitted the attached document to:

Jeffrey Willis
Jacob C. Jones
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
jwillis@swlaw.com
jcjones@swlaw.com
*Attorneys for Plaintiff*

/s/  Edwina Campbell

I:\FILES\DOCS\ARIZ31\20200813\DOC\1873172.DOCX