DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Lisa Anne Smith (AZ # 16762)
lasmith@dmyl.com
Tyler H. Stanton (AZ # 34526)
tstanton@dmyl.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>Plaintiff,<br><br>vs.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; and Andrea Divijak in her individual capacity and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | NO. 4:21-cv-00062-SHR<br><br>**DEFENDANT'S TRIAL BRIEF**<br><br>(Assigned to Hon. Scott H. Rash) |

Pursuant to the Court's Jury Trial Scheduling Order (Doc. 71) and Order at the Final Pretrial Conference held in this matter on October 30, 2023, (Doc. 94) Defendants Marana Unified School District (the "District") and Andrea and Joseph Divijak ("Defendants"), through counsel undersigned, hereby submit their Trial Brief ("Brief") for the trial scheduled to commence on Tuesday, November 14, 2023. In accordance with that order, this Brief addresses Defendants' affirmative defenses and anticipated evidentiary disputes to those defenses as well as Defendants' position regarding i) competing jury instructions proposed by the Parties related to municipal liability under 42 U.S.C. § 1983 and ii) the Parties'

proposed verdict forms, in accordance with this Court's direction at the final pretrial conference.

## I.    42 U.S.C. § 1983 Jury Instructions

The Parties have proposed different jury instructions regarding the alleged legal basis for the District's liability on Plaintiff's First Amendment retaliation claims pursuant to 42 U.S.C. § 1983.  Plaintiff proposed Model 9th Circuit Jury Instruction 9.5 to instruct the jury as to municipal liability based on the acts of a "final policymaker." Defendants proposed Model 9th Circuit Jury Instruction 9.7 to instruct the jury as to municipal liability based on a "policy, practice, or custom" of the municipal entity. The Court should not give Plaintiff's proposed instruction 9.5 because it instructs the jury on a legal theory of liability which has never been at issue in this case and which is not supported by Arizona state law regarding school districts.

A.    <u>Plaintiff is attempting to insert a brand new legal theory into the case</u>.

Plaintiff's argument in support of Instruction 9.5 rests on the premise that the grounds for imposing municipal liability under § 1983 are not, in fact, distinct legal theories. The Court should reject this argument. According to Plaintiff, because the United States Supreme Court in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) generally summarized the various grounds for imposing liability against municipal entities, there are no differences between those grounds. It should be clear, however, that the theories have different elements and, therefore, different factual predicates to liability. As evidenced by the existence of two, distinct model jury instructions, they are not interchangeable legal theories.

Plaintiff cites a number of allegations contained in her Complaint which she claims put the District on notice that she was pursuing a "final policymaker" theory of liability. *See* Plaintiff's Objections to Defendants' Proposed Jury Instructions, pp. 2-3. All of the paragraphs cited simply allege that the District, school, or District agents took certain acts or made certain statements. Not one of the cited allegations so much as hints at the fact that any of the agents identified therein was a final policymaker of the District. Plaintiff certainly never alleged that any particular individual was a final policymaker of the District.

In her objection to Defendants' proposed jury instructions, Plaintiff misinterprets Defendants' argument as to whether this new theory was at issue in this case. Defendants do not argue that Plaintiff was required to plead or disclose the specific legal theory on which her claim of *Monell* liability was based. Rather, Defendants' position is that because Plaintiff *did* affirmatively plead a specific legal theory, she should be held to it. Plaintiff could have simply pled in her Complaint that the facts she alleged are sufficient to give rise to municipal liability under *Monell*. That would have left any *Monell* grounds available to her. In that case, the District would have propounded written discovery in an effort to determine which *Monell* grounds were at issue. But she did not do that. She pled a specific type of *Monell* liability on which her whole case against the District was based: custom, policy or practice. *See* Complaint ¶ 94, First Amended Complaint ¶ 93, Second Amended Complaint, ¶ 93 (specifically alleging that the District has a "custom, practice, or policy that amounts to deliberate indifference toward parents' First Amendment rights.") As a result, Defendants did not need to propound written discovery to determine on which theory or theories Plaintiff would proceed to trial. The legal theory at issue was crystal clear. The Court noted in its

ruling on Defendants' Motion for Summary Judgment, raising a legal theory for the first time at the motion for summary judgment stage, where the complaint clearly alleges a different theory, is inappropriate. Doc. 59 at p.12-13, ftnt. 10 and 11, citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1293 (9th Cir. 2000) (refusing to allow plaintiff to "turn around and surprise" defendant with a new theory at the summary judgment stage and noting plaintiff should have moved to amend the operative complaint). Turning around and surprising defendants a month before trial is even more inappropriate.

Indeed, it seems Plaintiff was not even aware of this legal theory until recently. It was not until the Parties met and conferred regarding Defendants' Motion *in Limine* that Plaintiff's counsel suggested that he may propose an instruction based on the "final policymaker" theory of liability. In that conversation, Plaintiff's counsel stated that he had reviewed the Model 9th Circuit Jury Instructions and he might propose an instruction on the final policymaker or ratification theory of liability. Defendant should not be deemed to have been on notice of which legal theories Plaintiff may assert at trial when Plaintiff herself did not even know the theory existed until approximately a month ago. Moreover, there is not a single fact or issue of law set forth in the Joint Proposed Pretrial Order that would support liability under this instruction: Plaintiff did not list as a contested issue of Fact or a contested issue of law whether or not Defendant Divijak or Superintendent Doug Wilson is or was a final policymaker. This further demonstrates that Plaintiff never relied on this theory and this omission is sufficient reason to reject the proposed instruction. For all of the above reasons, the Court should not instruct the jury on a legal theory that was never pled, disclosed, or relied upon by Plaintiff.

B.      Only the District's Governing Board is a final policymaker as a matter of Arizona state law.

As the proposed instruction makes clear, whether or not a particular actor is a final policymaker is a question of law for the Court to decide. Plaintiff argues that this legal conclusion can be reached only after the facts are developed. However, in this case, no facts will change the law: the question of who is a final policymaker is a matter of state law, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989), and in Arizona, school district governing boards are solely responsible for "prescrib[ing] and enforc[ing] policies and procedures to govern the schools" within their district. A.R.S. § 15-341(A)(1); *see also D.G. v. Tucson Unified School Dist.*, 2020 WL 7041348 (D. Ariz. 2020) (Judge Zipps noting that under Arizona law, the governing board is the policymaker). As is outlined further in the District's opposition to Plaintiff's proposed Jury Instructions, school district policy (none of which is in evidence due to the fact that this legal theory was never before proposed) confirms that the Superintendent's authority is limited to placing Board adopted policy into practice.

In *Jett*, after remand from the Supreme Court, the Fifth Circuit held that even where final *decision-making* authority was delegated to a superintendent, his decision could not lead to municipal liability because he was not the final *policymaking* authority. *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246-50 (5th Cir. 1993). Similarly, in *D.G.*, *supra*, this Court noted that the fact that an official has discretion in an area does not give rise to municipal liability unless the official is also "responsible for establishing *final government policy* respecting such activity." 2020 WL 7041348 at *6 (emphasis in original) (quoting *Pembauer v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986)). Because Arizona law is clear on this point, the Court can determine now, as a matter of law, that the final policymaker theory of

liability is not viable in this matter and neither the principal nor the superintendent are final policymakers. Therefore, no municipal liability can attach under this theory.

    C.     <u>The evidence at trial will not support liability under the policy, practice, or custom prong of *Monell*, either.</u>

Although Plaintiff now proposes that the Court give both Model Jury Instructions 9.5 and 9.7, Plaintiff initially opposed giving instruction 9.7. If Plaintiff chooses not to pursue the policy, practice, or custom theory of liability, then there is no First Amendment claim to go to the jury at all, because, as a matter of law, no final policymaking authority acted in this case. Clearly, Defendants have no objection to that result. Even if Plaintiff elects to change course (again) and revert to the policy, practice, or custom theory of liability, there will be no evidence at trial to support it.

Municipal liability attaches only where an individual actor is authorized to take the action in question by a policy of the entity, or where the action taken accords with a custom or practice of the municipality. *See Oakry v. Tempe, City of*, 629 F. Supp. 3d 974, 987 (D. Ariz. 2022) (stating that acts of individual agents "may support municipal liability *only if* the employees were acting *pursuant to* an official policy or custom of the municipality.") (emphasis added) (citing *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005)). The Ninth Circuit has previously held that a municipality was not liable under 42 U.S.C. § 1983 for violating a plaintiff's procedural due process rights where the plaintiff's car was impounded and city employee informed the plaintiff that he had "no basis to complain about the tow," contrary to the city's express policy allowing for a hearing to "contest the deprivation of [the plaintiff's] vehicle." *Miranda v. City of Cornelius*, 429 F.3d 858, 868-69 (9th Cir. 2005). Marana Unified School District has no policy, practice, or custom authorizing

a principal to ban a parent from campus or even authorizing a principal to ask a police officer to ban a person from campus. (Neither of these things actually happened, but those factual issues will be addressed at trial). The District has no custom or practice of banning parents who make complaints, and it has no policy authorizing anyone – including the superintendent – to do so. And, similar to *Miranda*, any person banned from campus would have the right to appeal to the District's governing board, regardless of any hypothetical instruction to the contrary made by a District employee. Such instruction would be contrary to District policy. Ultimately, there will be insufficient facts adduced at trial to provide the jury with either jury instruction. No evidence at trial will support this theory of liability.

## II.    Verdict Forms

The Court may require the "jury to return only a special verdict in the form of a special written finding on each issue of fact" or to provide the jury with "forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide." Fed.R.Civ.P., Rule 49(a),(b). Defendants' proposed verdict forms (Doc. 86) constitute an appropriate special verdict. Each question raised in Defendants' proposed verdict form is written to allow the jury to make a written finding on each issue of fact necessary to resolve this case. The following questions related to Plaintiff's defamation claim are all questions of fact for the jury to decide:

- Whether Andrea Divijak made a particular statement;
- Whether that statement was defamatory;
- Whether the statement was true or substantially true;
- Whether Andrea was negligent in failing to determine the truth of the statement;
- Whether the statement damaged Plaintiff; and
- The amount of Plaintiff's damages.

There is no dispute that these are all issues of fact the jury must resolve before a verdict can be entered in Plaintiff's favor. The special verdict form gives the jury a roadmap to reaching an appropriate conclusion.

The following questions related to Plaintiff's § 1983 claim are also questions of fact for the jury to decide:

- Whether Plaintiff engaged in First Amendment protected activity on or before February 7, 2020;
- Whether the District took actions to preclude her from school property;
- Whether Plaintiff was precluded from school property *because of* Plaintiff engaging in the protected activity;
- Whether the District had a policy, practice, or custom pursuant to which the District's agents acted.

The above are all questions of fact which the jury is required to resolve before the District may be held liable under 42. U.S.C. § 1983.

Rule 49(a) is intended, in part, "to make it possible to preserve individual findings and save them from being swallowed up in a general verdict." *Lawrence v. Gulf Oil Corp.*, 375 F.2d 427, 429 (3d Cir. 1967). "The purpose of a Rule 49(a) special verdict is to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for additional proceedings." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310 (2d Cir. 1993). Because general verdicts introduce uncertainty as to the sufficiency of the jury's findings, "courts often submit special interrogatories to juries, to establish a factual basis for testing the correctness of verdicts and ascertaining their extent." *Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991). A special verdict essentially incorporates interrogatories into the form of verdict, and either is an acceptable way clarify the jury's findings and the basis for an ultimate decision. *See Berkey Photo, Inc., v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.

1979) (discussing practice of requiring "special verdicts *or* the submission of interrogatories to the jury" and how both options preserve "the right to a jury trial of all factual issues" while reducing "the probability of a laborious and expensive retrial.") (emphasis added).

At the final pre-trial conference held in this matter on October 30, 2023, the Court questioned whether Defendants' proposed verdict forms constituted written interrogatories under Rule 49(b). Defendants intended to use special verdict forms, by which the jury would make its factual findings and the Court would draw the legal conclusions flowing therefrom. But Defendants do not object to providing the jury with a general verdict form so long as the jury is asked to answer written interrogatories regarding their factual findings. Defendants want to preserve the jury's individual findings and "save them from being swallowed up in a general verdict," *Lawrence*, 375 F.2d at 429, in order "to identify the basis for the jury's verdict, and thus to avoid confusion, appellate uncertainty, and the need for additional proceedings." *McGuire*, 1 F.3d at 1310. "Rule 49, F.R.Civ.P., was 'designed to encourage and facilitate the use of the special verdict, or, in the alternative, the general verdict accompanied by the jury's answers to interrogatories as to issues of fact.'" *Nollenberger v. United Air Lines, Inc.*, 216 F.Supp. 734 (C.D. Cal 1963) (quoting *Pacific Greyhound Lines v. Zane et al.*, 160 F.2d 731, 737 (9th Cir. 1947)). Defendants are amenable to either alternative approach. For the above reasons, Defendants request that the Court either 1) provide Defendants' proposed verdict form to the jury or 2) add written interrogatories to Plaintiff's proposed general verdict form and require the jury to provide its findings on the questions of fact at issue in addition to providing its verdict.

## III.    Affirmative Defenses and Anticipated Evidentiary Disputes

Defendants anticipate they will assert the following affirmative defenses:

- That any statement made by Defendant Divijak that is the subject of Plaintiff's defamation claim was true or substantially true.

- That if the District violated Plaintiff's First Amendment free speech rights, Plaintiff failed to mitigate her damages by failing to follow up with the District regarding the ban.

- That the District's acts did not proximately cause a portion of Plaintiff's claimed damages, specifically, any of the damages arising from Plaintiff's home renovations.

Defendants do not anticipate any evidentiary issues regarding the defense of truth or substantial truth; one of the primary disputes in this case is what happened in the interaction between Hartzell and Defendant Divijak and what Divijak said about it. Plaintiff has withdrawn her initial objection to Defendants' proposed mitigation jury instruction, and Defendants do not anticipate any evidentiary issues with regard to that defense. The evidence will show that Dr. Hartzell knew she was supposed to contact Dr. Wilson in April to see if the ban would be lifted, that if she had done so, it would have been lifted, but that she elected not to do so. Finally, Plaintiff has objected to Defendants' proposed jury instruction regarding proximate causation. Plaintiff argues that the "substantial and motivating factor" element of the First Amendment claim precludes the need for a proximate cause instruction, but the two address completely different issues. The substantive instruction goes to what conduct by Plaintiff motivated the ban from campus, while the proximate cause instruction goes to the issue of whether Plaintiff's alleged damages (i.e., the choice to sell her house and move) were proximately caused by any action by the District. Nevertheless, Defendants do not anticipate any evidentiary objections on this topic. Whether Plaintiff is entitled to the proposed

instructions is a question of law for the Court to decide. Defendants' arguments regarding these instructions are found in Section I, *supra*, and in Defendants' Proposed Jury Instructions – Opposed (Doc. 85).

## IV.   Demonstrative Exhibits

Defendants plan on using the document attached as Exhibit 1 hereto as a demonstrative chart summarizing certain of Plaintiff's real estate transactions at trial.

DATED this 9th day of November, 2023.

DeConcini McDonald Yetwin & Lacy, P.C

By: */s/  Lisa Anne Smith*
Lisa Anne Smith
Tyler H. Stanton
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Plaintiff

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2023, I electronically transmitted the attached document to:

Jeffrey Willis
Jacob C. Jones
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
jwillis@swlaw.com
jcjones@swlaw.com
*Attorneys for Plaintiff*

/s/  Edwina Campbell

12