Jeffrey Willis (ASB#004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>Plaintiff,<br><br>v.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | No. 4:21-cv-00062-SHR<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>**(SECOND TRIAL)** |

Plaintiff Rebecca Hartzell, through counsel, submits the following trial brief, per the Court's Amended Jury Trial Scheduling Order, Doc. 151, at 3.

## I.   STIPULATIONS AND UNCONTESTED FACTS[1]

1.   In August 2019, the District opened Dove Mountain CSTEM K-8 ("Dove Mountain"), a new kindergarten through eighth grade school.

---

[1] These were submitted jointly at ECF 138, at 6-8.

2.    Five of Plaintiffs children were enrolled in Dove Mountain the Fall 2019 – Spring 2020 year, and one of Plaintiff's children attended Dove Mountain's parent-paid preschool program that year.

3.    Divijak is the principal of Dove Mountain and was the principal during the 2019-2020 academic year.

4.    Both before and after February 7, 2020, Plaintiff was employed by the University of Arizona's (the "University") College of Education as 1) the Director of the Master's Program in Applied Behavior Analysis, and 2) an Assistant Professor of Practice.

5.    Prior to February 7, 2020, Plaintiff had expressed (orally and via email) numerous viewpoints to MUSD personnel, including school event scheduling, overheated busses, children accessing pornography on school computers, availability of books in the school library, opining that children should be allowed to speak to one another in the cafeteria during lunch, IEP/504 meeting procedures, proper treatment of children with disabilities, special education funding, and the like.

6.    On February 7, 2020, Dove Mountain hosted a student-showcase event during which students would present certain projects the students had completed to teachers, parents, and other students.

7.    The event had an open house format, where children stood next to their project and parents could move about the room to hear different presentations.

8.    Two of Plaintiff's children were scheduled to present in the first of two time-slots at the event.

9.    At the event, Plaintiff approached Defendant Divijak to provide her opinions about ways to improve scheduling and to complain about the scheduling of her children's presentations.

10.    At the conclusion of his interview of Plaintiff, Officer Ysaguirre informed Plaintiff that she was trespassed from Dove Mountain property.

11.    Officer Ysaguirre stated that the trespass was at the school's request.

12.    Officer Ysaguirre explained the ramifications of that determination.

- 1 -

4899-9732-3923

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

13.     The Marana Town Attorney's Office initiated prosecution of Plaintiff for assault pursuant to A.R.S. § 13-1203(a)(3) in Marana Municipal Court Case No. CM202000276, on March 30, 2020.

14.     The Criminal Case was dismissed on September 22, 2020.

15.     The District's spring break occurred from March 16 to March 20, 2020.

16.     After spring break, the District closed all schools for the rest of the school year as a result of the COVID-19 pandemic.

**II.     PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

### a.  General[2]

1.     Plaintiff did not grab or assault Defendant Divijak.

2.     Plaintiff did not "hold on" to Defendant Divijak.

3.     Defendant Divijak did not have to yank her arm vigorously away from Plaintiff in order to break an alleged grab.

4.     Any touching was inadvertent and incidental (on Plaintiff's part), and in reaction to Defendant Divijak moving toward Plaintiff's personal space in the process of walking away during the middle of an oral discussion.

5.     Prior to walking away (and prior to any touch), Defendant Divijak was already visibly annoyed and upset at Plaintiff's verbally expressed opinions and criticisms about school event scheduling.

6.     While Plaintiff was at times speaking with a tone of annoyance or sarcasm, she was not using a threatening, yelling, intimidating, or angry tone.

### b.  First Amendment Violation

7.     MUSD deprived Plaintiff of rights, privileges, or immunities secured by the First Amendment of the United States Constitution.

8.     MUSD initiated a ban/trespass against Plaintiff from MUSD property at Dove Mountain (where her children attended school and had events that were open to

---

[2] These headings are intended primarily for organization, but they are not intended to limit any of the facts to any one particular claim or element.

4899-9732-3923

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

parents and the public), including banning her from speaking to any MUSD personnel about the February 7, 2020 occurrence.

9. MUSD's ban prevented Plaintiff from attending events including her children's parent-teacher conferences, a preschool-to-kindergarten transition meeting, classroom project display events, soccer games, music performances, community fun runs, and other events that parents – and the public at large – were invited to attend.

10. MUSD's ban prevented (initially) Plaintiff from having the freedom to retrieve her children from the school in the event of illnesses or doctors' appointments and drop them off and pick them up, without fear of being arrested. Consequently, Plaintiff initially withheld her children from school for a few days due to her fears about the situation.

11. MUSD (through Defendant Divijak) requested that the trespass be issued.

12. MUSD personnel found Plaintiff's speech (criticizing school personnel and policies, including on February 7, 2020, and on prior occasions) "offensive or inappropriate."

13. The provision of MUSD Policy KFA banning "speech . . . that is offensive or inappropriate" was a substantial or motivating factor (i.e. a significant factor, though not necessarily the only factor) in banning Hartzell for her speech criticizing school personnel and policies (including on February 7, 2020, and on prior occasions); thus Plaintiff's protective speech was a substantial or motivating factor for the ban.

14. MUSD noted that Plaintiff had sent scathing emails to Defendant Divijak prior to the February 7, 2020 interaction.

15. Defendant Divijak characterized those emails as "personal attacks" and accusing Plaintiff Divijak of not caring.

16. On February 7, 2020, Defendant Divijak was having an emotional reaction to the emails Plaintiff had sent.

17. Defendant Divijak's request that the trespass be issued was an official act of MUSD, pursuant to MUSD Policy KFA.

- 3 -

4899-9732-3923

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

18. Marana Police Department (MPD) Officer Ysaguirre, who issued the trespass at MUSD's request, treated it as an official MUSD request, in conveying the order to Plaintiff.

19. Plaintiff was told she would be arrested on the spot if she did not comply with the official trespass order issued at MUSD's request, including if she were seen on the Dove Mountain campus in the future.

20. Superintendent Doug Wilson ratified the initial decision of Defendant Divijak to issue the trespass order against Plaintiff.

21. MUSD did not tell Plaintiff when the trespass would be lifted.

22. MUSD did not lift the trespass until about June 7, 2023.

23. MUSD's actions against Plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity.

24. Parents and others within MUSD have had speech chilled because of MUSD's actions against Plaintiff at issue here.

25. Paul Gute, not a party, witnessed the February 7, 2020 interaction.

26. Paul Gute told Marana Police Department at or about the time of the incident that there was no hit or grab.

27. MUSD knew Mr. Gute witnessed the interaction.

28. MUSD never questioned Mr. Gute in connection with investigating the interaction, because the ban was due to the KFA Policy's prohibition of "offensive speech," not because of any alleged hit or grab.

29. MUSD knew, and communicated through an internal text message, that the surveillance video did not show a grab.

30. Plaintiff emailed MUSD with several requests following the February 24, 2020 meeting, but MUSD never responded.

31. Defendant Divijak asked MUSD to "have her back so to speak," meaning to support and endorse the ban due to Plaintiff's "offensive speech," which MUSD did.

- 4 -

4899-9732-3923

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

32.     Plaintiff was damaged by MUSD's First Amendment retaliation (facts about the damages are addressed further below).

### c. Defamation

33.     Defendant Divijak caused the Defamation Document (i.e. Exhibit 84) to be delivered to Plaintiff's employer (the University of Arizona, including Plaintiff's supervisor, the department head Dr. Carl Liaupsin), directly or through Defendant Divijak's husband, co-Defendant Joseph Divijak.

34.     The statements in the Defamation Document tended to bring Plaintiff into disrepute, contempt or ridicule, or to impeach Plaintiff's honesty, integrity, virtue, or reputation.

35.     The statements in the Defamation Document suggested that Plaintiff was unfit for the proper conduct of her lawful business, trade, or profession.

36.     Defendant Divijak was *at least* negligent in failing to determine the truth of the statements in the Defamation Document (more likely, she knew they were untrue or acted in reckless disregard of whether the statements were true or false).

37.     The statements in the Defamation Document were not true or substantially true (Plaintiff notes that proving truth or substantial truth is Defendant's burden). w

38.     Plaintiff did not intentionally, knowingly, or recklessly cause any physical injury to Defendant Divijak. *See* A.R.S. 12-1203(A)(1) (assault definitions).

39.     Plaintiff did not intentionally place Defendant Divijak in reasonable apprehension of imminent physical injury. *See* A.R.S. 12-1203(A)(2) (assault definitions).

40.     Plaintiff did not knowingly touch Defendant Divijak with the intent to injure, insult or provoke Defendant Divijak.  *See* A.R.S. 12-1203(A)(1) (assault definitions).

41.     The event described in the Defamation Document and referenced in the note as "this occurred" never actually occurred at all, and it did not occur in a classroom full of children.

42.     As of the time the Defamation Document was delivered to Plaintiff's

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

- 5 -

4899-9732-3923

employer, the criminal case referenced had already been dismissed, but the Defamation Document gives the false impression that the case was still pending at the time.

43.    Plaintiff was damaged by the statements made in the Defamation Document.

44.    Defendant Divijak's defamatory statements caused damage to Plaintiff (facts about the damages are addressed further below).

### d. Damages

45.    Because of the speech retaliation, Plaintiff sold her home and property within MUSD's geography and relocated her family elsewhere.  (This is not being sought as damage for the defamation).

46.    The property sales and purchase transactions costs exceeded $72,000, which was a damage to Plaintiff.  This reflects the approximate *transactional costs*[3] (closing costs, loan fees, title, escrow, tax, broker fees, and other customary transactional costs) incurred by Plaintiff for both buying and selling Plaintiff's home as a result of Defendant's misconduct.

47.    Plaintiff had incurred home improvement expenses of at least $45,000 in the months prior to February 7, 2020, which she would not have incurred if she had known she was about to be wrongfully exiled from MUSD.  She did not recover those improvement costs in the sale price of her home, thus they are also a separate damage to Plaintiff.

48.    Because of the defamation and the speech retaliation, Plaintiff has suffered reputational and emotional harm, of at least $200,000 *as of about April 29, 2022*.  This includes impairment of reputation and standing in the community, emotional distress, humiliation, inconvenience, and anxiety experienced.

---

[3] The damages sought by Plaintiff in this category do not seek to measure gains or losses in property value, as the properties sold and the property bought have all comparatively gained some value since 2020 consistent with the overall residential real estate market in the area, as it is well known.  Thus, gains or losses in particular property value itself is irrelevant and confuses the issues.

- 6 -

4899-9732-3923

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

49.   Because of the defamation and the speech retaliation, Plaintiff has suffered at least $400,000 as further general damages since April 29, 2022, reflecting a conservative measurement of emotional, reputational, and related harm suffered by Plaintiff as a result of Defendants' misconduct, which continues to increase with the passage of time.

50.   Because of the defamation and the speech retaliation, Plaintiff has suffered at least $600,000 as further physical pain and suffering damages since April 29, 2022, not accounted for above.

51.   Because of the defamation and the speech retaliation, Plaintiff anticipates she will suffer at least $500,000 in approximate future pain and suffering and emotional and reputational harms related to the items described above.

52.   Specific examples of the reputational harm since April 29, 2022 include:

a.   Plaintiff Hartzell was asked to do a podcast that would have generated additional significant profit, but she was not able to consider it because of the risk that—if the podcast became popular—the issue with MUSD would surely arise, and Plaintiff Hartzell did not, at the time, feel emotionally in a sufficiently strong place to publicly talk about those issues in the professional context.

b.   Plaintiff Hartzell was approached by an assistant superintendent to ask if she would consider throwing her hat in the ring to be the Arizona Superintendent of Public Instruction. Again, she did not consider the invitation, for the same reasons.

c.   Plaintiff Hartzell was approached about publishing a book, but would not consider that, for the same reasons.

d.   Plaintiff Hartzell was approached about joining the licensure board for BCBAs and felt the need to decline, again for the same reasons.

e.   Plaintiff Hartzell has felt the need to keep herself as "invisible" as she can on a professional level, because increased visibility

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona  85701-1630
520.882.1200

- 7 -

exacerbates her anxiety and the emotional harm caused by the MUSD's misconduct at issue in this case.

### III.   LEGAL ISSUES

#### a.  First Amendment Protected Speech

Stipulated Jury Instruction 9 states the requirements for First Amendment Retaliation and includes an appropriate instruction that Dr. Hartzell's speech about scheduling events, etc., were protected under the First Amendment:

> **Under the First Amendment, a citizen has the right to free expression. To establish the defendant deprived Dr. Hartzell of this First Amendment right, Dr. Hartzell must prove the following additional elements by a preponderance of the evidence:**
>
> **1. Dr. Hartzell was engaged in a constitutionally protected activity;**
>
> **2. the defendant's actions against Dr. Hartzell would chill a person of ordinary firmness from continuing to engage in the protected activity; and**
>
> **3. Dr. Hartzell's protected activity was a substantial or motivating factor in the defendant's conduct.**
>
> **I instruct you that Dr. Hartzell's speech in this case about *the scheduled school events, her statements regarding unwelcoming environment at Dove Mountain, the principal's standoffishness to parents, the negative impact of the scheduling on parents* was protected under the First Amendment and, therefore, the first element requires no proof.**

Furthermore, the Ninth Circuit has settled the law of the case on this specific retaliation claim.  *See* Doc. 126-1 at 26. Consistent with the Ninth Circuit's Mandate, and as the stipulated Proposed Jury Instruction 10 provides:

> **The provision of Marana Unified School District's Policy KFA barring "speech . . . that is offensive or inappropriate" is unconstitutional if the District applied it to ban Hartzell because of her criticism of Divijak.**
>
> **Therefore, in order to prevail on the plaintiff's § 1983 claim against defendant Marana Unified School District alleging liability based on an official policy, the plaintiff must prove each of the following elements by a preponderance of the evidence:**

4899-9732-3923

**1. Principal Divijak acted under color of state law[4];**

**2. the acts of Principal Divijak deprived the plaintiff of her First Amendment rights under the United States Constitution, as explained in the previous instruction;**

**3. Principal Divijak acted pursuant to the KFA Policy; and**

**4. Marana Unified School District's Policy KFA caused the deprivation of plaintiff's rights by Principal Divijak; that is, Policy KFA is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.**

According to the Ninth Circuit's Mandate, the foregoing legal theory is legally sufficient to establish Defendant MUSD's liability under *Monell*. As for Defendant Divijak, her qualified immunity on this claim was affirmed by the Ninth Circuit.

### b. Defamation

Plaintiff believes that the legal elements for defamation are well established and provided in the Stipulated Jury Instructions. Plaintiff believes and respectfully submits that any legal questions remaining on the defamation claim are addressed by the Parties in their pending motions in limine and summary judgment briefing.

The focus of Plaintiff's defamation claim will be on the Defamatory Document. Plaintiff does not concede Defendant's contention that the Ninth Circuit did not disturb the verdict as to the other defamatory statements. As explained in Plaintiff's opposition to Defendant's Renewed Motion for Summary Judgment (*see* Doc. 150 at 2 and 10-12), Defendant's argument about the scope of remand is baseless because "the Ninth Circuit clearly accepted Plaintiff's tainted verdict argument" and the Ninth Circuit expressly remanded the defamation claim against Divijak "for retrial." *Id.* Although, without waiving or conceding this issue, Plaintiff's defamation claim will be focused on the Defamatory Document, Plaintiff reserves the right to refer to other false statements (whether legally defamatory or not) that Defendant Divijak made to others (such as being "grabbed" by Plaintiff Hartzell and the like), at least because such statements (when taken

---

[4] A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

4899-9732-3923

together with all the evidence as a whole) have relevance in showing that Defendant Divijak more likely than not was the source of the Defamatory Document.

## IV.    EVIDENTIARY ISSUES

One substantial evidentiary issue – admissibility of the Defamatory Document—is thoroughly addressed by the Parties in their briefing on Defendant's Motion in Limine and Renewed Motion for Summary Judgment (Doc. 142, Response at Doc. 150, Reply at Doc. 158).

Another evidentiary issue relates to supplemented damage disclosures, which are addressed in Defendant's Motion in Limine (Doc. 140/141, Response at Doc. 145).

For efficiency, those arguments are not repeated here.

Otherwise, based on the current expectations at trial, Plaintiff at this time believes her evidentiary objections primarily will relate to inadmissible hearsay and lack of personal knowledge issues. However, it is difficult to predict with specificity and certainty at this time whether and in what context such objections—or any other objections—might arise. The Parties have in good faith attempted to narrow objections, and objections that the Parties anticipate may be raised to specific exhibits are specifically noted in the prior joint submissions to the Court.

## V.    OTHER PERTINENT ISSUES

Plaintiff respectfully submits that Defendants' complicated verdict forms are confusing and essentially duplicate the jury instructions. Because of their complicated nature, they could create confusion and mislead the jury. The jury should be trusted to follow the law set forth in the Court's instructions, and the general verdict form supplied by Plaintiff is sufficient for them to do so.

Snell & Wilmer
L.L.P.
LAW OFFICES
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
520.882.1200

4899-9732-3923

DATED this 2nd day of March, 2026.

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*
Jeffrey Willis (ASB#004870)
One South Church Avenue
Suite 1500
Tucson, Arizona  85701-1630

Jacob C. Jones (ASB #029971)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*

- 11 -

4899-9732-3923