Jeffrey Willis (ASB #004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone:  520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com
          mracioppo@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

SNELL
& WILMER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D,<br><br>Plaintiff,<br><br>v.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | No. 4:21-cv-00062-SHR<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** |

Plaintiff Rebecca Hartzell ("Dr. Hartzell") moves for an award of reasonable attorneys' fees and non-taxable costs as the prevailing party on her First Amendment retaliation claim under 42 U.S.C. § 1983, pursuant to 42 U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and LRCiv 54.1 and 54.2. The jury returned a verdict for Dr. Hartzell (ECF 195), finding that Marana Unified School District retaliated against her protected speech (by banning her from the school) and awarding her $200,000 in damages. Final judgment was entered in her favor on April 10, 2026 (ECF 198), making her eligible for a fee award under § 1988(b) as the prevailing party. For her successful civil rights action, Dr. Hartzell requests an award of $837,050 in attorney and paraprofessional fees (plus fees incurred to bring this motion), and $59,397.58 in costs, minus the amount the Clerk enters as taxable costs. The Court should grant this motion because Dr. Hartzell achieved excellent results on a significant constitutional claim, the requested fees are reasonable under the lodestar methodology for a case with two jury trials and an appeal over five years, and her non-taxable costs are recoverable under applicable law.

## I. Introduction and Preliminary Statement

Marana Unified School District (the "District") strenuously fought to prevent justice, but Dr. Hartzell finally found it. After more than five years of litigation and erroneous positions urged by the District, a unanimous jury of eight peers vindicated Dr. Hartzell. She obtained what she sought: a $200,000 damages award for the harms the District caused, unconditional lifting of the unlawful ban, and public vindication that the ban was implemented because of her protected speech (not the fictitious assault invented by Principal Divijak).[1] A news article has already called attention to the fact that almost every school district in Arizona still has this unconstitutional policy. In every way, this case was a Win for Dr. Hartzell and a Win for free speech advocates across Arizona and the nation.

Although this case was never primarily about money, Dr. Hartzell's six-figure jury award was significantly more than her many early settlement offers (zero dollars with an apology; $50,000; $75,000; $90,000; $160,000), and *eight times higher* than Defendants'

---

[1] Harassing anonymous missives to her employer have also stopped; another win.

highest offer of $25,000. These settlement efforts are detailed in Section IV.B.8 below and in the Declaration of Jacob C. Jones, attached hereto as Exhibit A.

Dr. Hartzell is the prevailing party on her federal civil rights claim, having secured a unanimous jury verdict and $200,000 damages award on her First Amendment retaliation claim under 42 U.S.C. § 1983. She now timely seeks reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b), Fed. R. Civ. P. 54(d), and LRCiv 54.1 and 54.2. The requested fee award is based on the lodestar methodology—hours reasonably expended multiplied by reasonable hourly rates—supported by detailed task-based billing and summary tables, and the accompanying documentation satisfies the Local Rules.

## II.     Factual and Procedural Background

This civil rights action arises from the District's indefinite ban of Dr. Hartzell from her children's school after she voiced concerns about school scheduling and student-related issues, which the jury found was retaliation for protected speech in violation of the First Amendment. The Ninth Circuit reversed the first trial error and held that a reasonable jury could conclude the District relied on Policy KFA's prohibition of "offensive or inappropriate" speech to ban Dr. Hartzell, and that such a ban would be unconstitutional as applied to her protected criticism. On remand, the jury found precisely that. In addition to a general verdict for Dr. Hartzell, the jury specifically and unanimously found:

- District principal Andrea Divijak "act[ed] to preclude Rebecca Hartzell from school property;"

- Rebecca Hartzell's protected speech was a "substantial or motivating factor in Andrea Divijak's action in precluding her from school property;"

- Marana Unified School District would *not* have "taken the same action against Rebecca Hartzell . . . if she had not engaged in the protected activity;" and

- Rebecca Hartzell was "precluded from school property pursuant to Marana Unified School District Policy KFA."

ECF 195. The jury awarded Dr. Hartzell $200,000 in damages (ECF 195, 197). At a pretrial conference, the District lifted the ban in 2023, eliminating the restraint on her school access while this litigation vindicated her rights to speak without state-sponsored retaliation.

In settlement negotiations, Dr. Hartzell repeatedly attempted to resolve this matter, including indicating her willingness to accept non-monetary relief and an apology at the first settlement conference, but the District refused and countered with offers that substantially undervalued her claims. Given the Ninth Circuit's guidance on the constitutional defect, the jury's damages award, and the lifting of the ban, the results achieved justify a full lodestar fee award.

**III.    Legal Standard**

A few high-level principles are worth highlighting. First, Congress has recognized that private enforcement of civil rights legislation relies on fee awards: "If private citizens are to be able to assert their civil rights, and **if those who violate the Nation['s] fundamental laws are not to proceed with impunity**, then **citizens must have the opportunity to recover what it costs them to vindicate these rights in court**." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (quoting S.Rep. No. 94–1011, at 2 (1976)) (emphasis added). Second, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.* at 1112.

Section 1988(b) authorizes district courts to award reasonable attorneys' fees to prevailing parties in § 1983 actions. A plaintiff is a prevailing party if she "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although the victory here was more than nominal, even "an award of nominal damages" or "a final victory on a material even if not predominant claim" qualifies a plaintiff as a "prevailing party." *Lackey v. Stinnie*, 604 U.S. 192, 202 (2025); *see also Farrar v. Hobby*, 506 U.S. 103, 113 (1992).

Courts determine reasonable fees under § 1988(b) using the lodestar methodology— multiplying hours reasonably expended by a reasonable hourly rate for comparable services in the relevant market. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Hours that are excessive, redundant, or unnecessary are not compensable, and the fee applicant bears the burden of documenting appropriate hours and reasonable rates, with the lodestar deemed

presumptively reasonable. *Hensley*, 461 U.S. at 434; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). In cases of exceptional success, an enhanced award may be justified. *Hensley*, 461 U.S. at 435.[2]

When a case involves some successful and some unsuccessful claims, there is a two-step analysis. *See Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1169 (9th Cir. 2024). *First*, when claims involve "different facts and legal theories," hours spent on an unsuccessful claim "distinct in all respects" from successful claims should be excluded. *Hensley*, 461 U.S. at 434–35, 440. *Second*, if claims are related—with similar legal theories or a common core of facts—"the most critical factor is the degree of success obtained." *Edmo*, 97 F.4th at 1169. "If the plaintiff achieves a high degree of success, then . . . time spent on unsuccessful claims may be included in the lodestar calculation." *Id.*

Fees-on-fees (*i.e.* fees incurred on a motion for fees) are recoverable under § 1988(b). *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986), *overruled on other grounds by Berry v. Air Force Cent. Welfare Fund*, 115 F.4th 948 (9th Cir. 2024). A request for fees-on-fees is "treated the same as for work done on the merits of a case." *Winterstein v. Stryker Corp. Grp. Life Ins. Plan*, 262 Fed. App'x 841, 843 (9th Cir. 2008).

Reasonable out-of-pocket expenses normally charged to a fee-paying client may be awarded under § 1988 as part of attorneys' fees, in addition to taxable costs under 28 U.S.C. § 1920. Rule 54(d)(1) creates a presumption in favor of awarding taxable costs to the prevailing party, and LRCiv 54.1 and 54.2 govern the procedure. LRCiv 54.1(d) provides that "[t]he party entitled to costs shall be the prevailing party" and "[t]he prevailing party need not succeed on every issue to be entitled to costs." The costs portion of this motion includes all taxable and nontaxable costs; nontaxable costs will be the sum minus the amount allowed as taxable costs by the Clerk under the concurrently filed Bill of Costs.

---

[2] Although Ms. Hartzell maintains her success in this case was "exceptional," she is not urging an enhanced award multiplier here. Rather, the *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) factors present in this case that could support an enhancement should simply be applied to counter any possible reduction urged by the District against the lodestar amount.

SNELL & WILMER

## IV.    Argument

### A.    Eligibility and Entitlement

Dr. Hartzell is eligible for and entitled to a fee and nontaxable cost award because she prevailed under a federal statute authorizing fee and cost shifting. *See Hensley*, 461 U.S. at 433; *Farrar*, 506 U.S. at 113 (a "judgment for damages in any amount" is a material alteration leading to prevailing party status). Final judgment was entered on a jury verdict awarding Dr. Hartzell $200,000 in compensatory damages on her § 1983 First Amendment retaliation claim, which plainly confers prevailing-party status under § 1988(b).

The Ninth Circuit reversed the earlier judgment and held that a jury could find the District applied Policy KFA's unconstitutional "offensive or inappropriate" speech provision to ban Dr. Hartzell, leading to the verdict. Section 1988(b) expressly authorizes a reasonable attorneys' fee for the prevailing party in § 1983 actions, and the Ninth Circuit directed this Court to consider Dr. Hartzell's request for fees incurred on the successful appeal. *See* ECF 128. Dr. Hartzell is also entitled to fees incurred in bringing this motion. *See Clark*, 803 F.2d at 992; *Winterstein*, 262 Fed. App'x at 843. She respectfully requests leave to submit a supplemental declaration showing the fees incurred in bringing this motion and any reply.

Accordingly, Dr. Hartzell's reasonable attorneys' fees and costs incurred in this action (and on the appeal, and for bringing this motion) are eligible for an award.

### B.    Reasonableness of the Requested Award

The requested award is reasonable under the lodestar methodology and the relevant factors listed in LRCiv 54.2(c)(3).

#### 1.    *The time and labor required of counsel were substantial and necessary.*

Under the lodestar method, the prevailing party is generally entitled to recover fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 486 (D. Ariz. 2019) (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)).

This case involved multi-year federal litigation including complex pleadings and nuanced legal theories, written discovery, four depositions, over 100 trial exhibits including hours of video, two sets of dispositive motions, extensive trial preparations, a week-long trial in 2023, an appeal to the Ninth Circuit in 2024 (resulting in a published opinion), a writ petition to the Supreme Court in 2025[3], reversal and remand, and a second week-long jury trial in March 2026. All of this is reflected in detailed contemporaneous, task-based billing records showing: the timekeeper name, task description, date, hours (one-tenth increments), rate, total charged, and phase.[4] The Ninth Circuit proceedings required comprehensive review and legal research, complex briefing, and oral argument preparation.[5] Following remand, counsel devoted significant hours to trial-readiness, including exhibit preparation, another deposition, jury instructions, motions in limine, and witness examinations.

A summary of attorney and paraprofessional fees and hours by phase, and the calculated effective rate[6] (derived from those records) are shown here:

| Phase | Sum of Fees | Sum of Hours | Combined Effective Rate |
|---|---|---|---|
| Pre-suit Investigation & Notice of Claim | $ 15,759.48 | 54.6 | $ 288.64 |
| Pleadings | $ 27,280.50 | 56.5 | $ 482.16 |
| Case Management | $ 9,625.52 | 21.4 | $ 449.79 |
| Settlement Efforts | $ 22,431.00 | 38.9 | $ 576.63 |
| Discovery & Disclosure | $ 54,337.00 | 112.3 | $ 483.86 |
| Dispositive Motions | $ 43,650.00 | 90.0 | $ 485.00 |
| Jury Trial 1 (2023) | $ 189,985.00 | 406.9 | $ 466.91 |
| 9th Cir. Appeal (2024) | $ 166,616.00 | 309.4 | $ 538.51 |
| Jury Trial 2 (2026) | $ 307,365.50 | 502.6 | $ 611.55 |
| **Grand Total** | **$ 837,050.00** | **1592.6** | **$ 525.59** |

[3] The Supreme Court petition (relating to parents' rights and qualified immunity) was handled by *pro bono* counsel at the Goldwater Institute. The Supreme Court declined to hear the case. Dr. Hartzell is not seeking any fees for Goldwater Institute's work.

[4] The "Phase" column was added for convenience in organizing the records for purposes of this motion; the other columns originated from contemporaneous billing records.

[5] Ninth Circuit directed this Court to consider Dr. Hartzell's request for fees incurred on the successful appeal. *See* ECF 128 ("Any motion by Appellant to recover the attorneys' fees she incurred in prosecuting this appeal shall be considered by the district court.")

[6] As further explained in Exhibit A and shown in the detailed billing records, the hourly rates changed over the five years of this action; the calculation here shows combined rates by dividing the fees by the hours spent.  Exhibit B shows similar information by timekeeper.

SNELL
& WILMER

A more detailed summary of the hours and fees per timekeeper per phase for the attorneys (blue) and paraprofessionals (green) on this case—as well as the detailed time records—is attached as Exhibit B. The detailed time records show several tasks for which time was recorded and billed but the "Total" column is "-", indicating courtesy deductions totaling $18,165.28. Similarly, from time to time at least nine other experienced litigators within the firm were consulted for strategic advice, for total fees of $4,223. Dr. Hartzell has removed those charges from this fee request. Thus, she has already reduced her fee request by at least $22,388.28 from the presumptively reasonable lodestar figure.

### 2. *Novelty and difficulty support the reasonableness of the hours and rates.*

The Ninth Circuit's published opinion in this matter addressed an underdeveloped question concerning application of a school district's "offensive or inappropriate" speech policy to a parent's speech on school grounds and confirmed constitutional limits, which demanded careful analysis and presentation on appeal and at trial. Indeed, following the Ninth Circuit's opinion, numerous news sources and law firms across the nation wrote about the case. *See* collective Exhibit D (compiling multiple news and legal alert articles).

Run-of-the-mill cases do not enjoy this extent of news coverage; novel ones do.[7] The Ninth Circuit's opinion (130 F.4th 722) was selected for the Federal Rules Service (121 Fed.R.Serv.3d 109) and already has sixty citing references (as of April 23, 2026), including 22 from federal courts.

The qualified immunity aspect remains important even though Dr. Hartzell did not prevail against Principal Divijak personally. The Ninth Circuit's published opinion can now be cited as "clearly established law" that a principal cannot ban a parent in retaliation for unwanted speech—an additional remedy Dr. Hartzell's lawsuit created for future litigants.

*Monell* liability is inherently difficult to establish. A recent scholarly article, "Pleading Failures in *Monell* Litigation," observes that "municipal liability claims are

---

[7] Interestingly, despite all this news in 2025 about the District's unconstitutional policy, a Spokesperson from the Arizona School Board Association reportedly said that "the association wasn't aware of the incident in Marana before The Arizona Republic brought it to their attention" (because of the recent verdict). *See* Exhibit G.

difficult for plaintiffs to win" and "holding municipalities accountable for constitutional violations committed by their employees is a formidable task." 73 EMORY L.J. 803 (2024) (attached as Exhibit E) (citing Karen M. Blum, *Section 1983 Litigation: The Maze, the Mud, and the Madness*, 23 WM. & MARY BILL RTS.J. 913, 922 (2015) (describing challenges of pleading and proof); Alexander Reinert et al., *New Federalism and Civil Rights Enforcement*, 116 NW. U. L. REV. 737, 755 (2021) ("[T]he Supreme Court's limitation on municipality liability operates as a significant barrier to relief for those injured by unconstitutional conduct."); Fred O. Smith, Jr., *Beyond Qualified Immunity*, 119 MICH. L. REV. ONLINE 121, 131 (2021) (noting limitations on recovery created by municipal liability doctrine after *Monell*). These novel and difficult questions support the reasonableness of Dr. Hartzell's fee request.

### 3. *The skill required supports the reasonableness of the hours and rates.*

Significant skill was required to integrate constitutional doctrine, *Monell* liability, evidentiary strategy, and jury presentation, on top of the general skill required to litigate civil cases in federal court. The record demonstrates effective trial performance supporting the reasonableness of hours expended.

Statistically, defendants win 86% of civil rights cases. *See* Alexandre Mojon et al., *Data-driven law firm rankings to reduce information asymmetry in legal disputes*, 5 Nature Computational Sci. 1011 (2025) (analyzing "a dataset of 60,540 federal civil lawsuits"), attached as Exhibit F. Obtaining a unanimous plaintiff verdict from eight jurors requires substantial skill, and here, careful cross-examination successfully unraveled the defense. On top of his significant federal court experience, Dr. Hartzell's lead counsel had previously handled two *pro bono* prisoner civil rights cases at the request of former Chief Judge Snow—experience that prepared him for this difficult area of practice. Despite the skill required, the rates charged were comparatively modest, further supporting reasonableness.

### 4. *Preclusion of other employment supports the reasonableness.*

Lead counsel Mr. Jones consistently had a full caseload, including federal patent litigation and other intellectual property and technology litigation that generally commands

higher rates.[8] He is admitted in Massachusetts and Arizona and regularly appears *pro hac vice* in other districts. Preclusion of other employment is specifically reflected in trial- and appeal-intense periods where he devoted substantial time to this matter, as seen in the concentrated billing around both trials and the appeal.

A specific conflict arose when the March 16, 2026 Final Pretrial Conference was scheduled for the same date as an oral argument Mr. Jones was ordered to attend in Massachusetts. To facilitate the needs of both courts, he arranged for a colleague to argue the Massachusetts appeal while he appeared in Tucson—a concrete example of preclusion.

### 5. *Customary fees support the reasonableness.*

First, Arizona (not Tucson) is the relevant community for a case like this:

> Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits. Because the District of Arizona is a singular district, it encompasses both Tucson and Phoenix. The relevant community, then, is Arizona.

*Williams v. Campas*, No. CV-17-00029-TUC-EJM, 2024 WL 4182236, at *5 (D. Ariz. Sept. 13, 2024) (cleaned up, citations omitted).

Second, most civil rights plaintiffs are prisoners subject to the Prison Litigation Reform Act's low fee cap and total preclusion (while inapplicable to Dr. Hartzell's case) from recovering fees for unsuccessful claims even if related to successful claims, dampening the legal market for civil rights lawyers. *See Edmo*, 97 F.4th at 1169–70. The dearth of analogous Arizona cases should not drive the rate lower; it explains why a reasonable rate may be higher.

Third, rates have increased significantly in the past six years due to inflation and other pressures. The Thomson Reuters Institute's Law Firm Rates in 2026 report (Exhibit G) shows massive rate growth across all sectors, especially from 2019 to 2025:

> [W]orked rates have surged 122% since 2006, with especially sharp acceleration after 2019, with rates jumping from 61% above baseline to double that metric in just six years.

---

[8] *See, e.g., Rsch. Corp. Techs. Inc. v. Eli Lilly & Co.*, No. 24-4786, 2026 WL 524183 (9th Cir. Feb. 25, 2026) (reversing ~$278 million judgment in biotechnology case).

Thus, data points before 2020 are essentially useless for establishing reasonable rates in 2026, and even recent data should be adjusted upward.

Fourth, three years ago Dr. Hartzell's lead counsel Mr. Jones obtained a decision in this District, finding reasonable his rate in that matter of $499.50 per hour for work done in 2022, and a higher rate of $590 for a more experienced Snell & Wilmer partner. *New Freedom Ops LLC v. Iovino*, No. C22-1635 PHX MJP, 2023 WL 7048857, at *1 (D. Ariz. July 28, 2023). That court credited the declaration of counsel and also referred to older cases (now over a decade old with highly deflated rates) including *DocRx, Inc. v. DocRx Dispense, Inc.,* No. CV-14-00815-PHX-PGR, 2015 WL 3959351, at *1 (D. Ariz. June 30, 2015) (approving Snell & Wilmer partner hourly rates between $370 to $490 in 2014/2015); and *PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 4480342, at *2 (D. Ariz. July 21, 2015) (approving an hourly rate of $590 for a partner with Snell & Wilmer). Other cases support this range, but these references should be adjusted upward for the significant rate inflation discussed above. *See, e.g., Sw. Fair Hous. Council v. WG Scottsdale LLC*, No. CV-19-00180-TUC-RM, 2022 WL 16715613, at *5 (D. Ariz. Nov. 4, 2022) ($425 per hour); *Bell v. VF Jeanswear LP*, No. CV-14-01916-PHX-JJT, 2019 WL 1409433 (D. Ariz. Mar. 28, 2019), *aff'd in part, rev'd in part and remanded*, 819 F. App'x 531 (9th Cir. 2020); ($515 per hour); *Figueroa v. Gannett Co. Inc.*, No. CIV 19-022-TUC-CKJ, 2023 WL 2464997, at *7 (D. Ariz. Mar. 10, 2023), *amended on denial of reconsideration,* No. CIV 19-022-TUC-CKJ, 2023 WL 3079545 (D. Ariz. Apr. 25, 2023) ($450 per hour); *see also Stein v. Depke*, No. CV-20-00102-TUC-JCH, 2025 WL 2062696, at *9 (D. Ariz. July 23, 2025) ($450 per hour); *Miles v. Thomas Suites Campus of Care LLC*, No. CV-24-01286-PHX-SMM (JZB), 2025 WL 3251709, at *4 (D. Ariz. Nov. 3, 2025), *report and recommendation adopted as modified,* No. CV-24-01286-PHX-SMM (JZB), 2025 WL 3237453 (D. Ariz. Nov. 20, 2025) ($445 per hour).

The fact that the client paid the rate charged is evidence of its reasonableness. *Barrio v. Gisa Invs. LLC*, No. CV-20-00991-PHX-SPL, 2021 WL 1947507, at *2 (D. Ariz. May 14, 2021). Dr. Hartzell agreed to pay these rates, has paid most of these fees, and continues

making substantial payments against the remaining balance.

The customary fee charged for similar work, together with rate determinations in similar actions and counsel's experience, supports the requested rates, as further supported by the Declaration of Jacob C. Jones (Exhibit A). This chart summarizes the experience, rate ranges (which increased over time), and hours worked for each attorney or paraprofessional. As shown in the previous chart, the combined effective rate is about $525.

| Name | Years of Practice | Lowest Rate | Highest Rate | Sum of Hours |
|---|---|---|---|---|
| Willis, Jeff | 40+ | $ 685.00 | $ 975.00 | 5.7 |
| Dove, Kelly H. | 19 | $ 730.00 | $ 940.00 | 10.7 |
| Weaver, Amanda | 8 | $ 535.00 | $ 675.00 | 11.3 |
| Jones, Jacob | 13 | $ 460.00 | $ 645.00 | 1197.9 |
| Racioppo, Matthew | <1 | $ 475.00 | $ 475.00 | 108.2 |
| Jonas, Sandra | 11 | $ 321.04 | $ 445.00 | 94.7 |
| Whitney, Nicole L. | Litigation Paralegal | $ 215.00 | $ 285.00 | 18.8 |
| Zachow, Maureen L | Sr. Litigation Paralegal | $ 275.00 | $ 300.00 | 71.9 |
| Hicks, Natalie | Litigation Paralegal | $ 200.00 | $ 245.00 | 15.0 |
| Moreno, Jorge Arm | Litigation Paralegal | $ 255.00 | $ 290.00 | 16.8 |
| Overlund, Kacey | Jr. Litigation Paralegal | $ 225.00 | $ 225.00 | 41.6 |

These facts show that the requested rates are reasonable.

### 6. *The fee is hourly, invoiced regularly, and due upon receipt.*

Dr. Hartzell agreed to pay hourly rates based on Snell & Wilmer's billing practices—her bills are not based on a percentage of the award nor a fixed fee. Given the case economics, it is unlikely she would have found a qualified attorney willing to take this case on percentage or fixed fee basis through two trials and an appeal.

### 7. *Time limitations put stress on counsel's schedule.*

Based on two trials and an appeal, combined with long pendency of motions and briefing, months-long periods of uncertainty were followed by months of heavy workload. Flexibility in counsel's schedule was at a premium.

### 8. *Results obtained were excellent.*

This factor compellingly shows that the fee request is reasonable. Perhaps the best yardstick for Plaintiff's success is the parties' settlement negotiations. *See Stein v. Depke*, No. CV-20-00102-TUC-JCH, 2025 WL 2062696, at *6–7 (D. Ariz. July 23, 2025). In *Stein*, where the plaintiff's recovery (*after adding a fee award*) significantly exceeded Defendant's best offer and her own early settlement efforts, the court concluded that counsel achieved an "excellent result."

Compared to *Stein*, Dr. Hartzell's result was perhaps better than "excellent" (*i.e.* exceptional) because her jury verdict *without adding the fee* award greatly exceeded the earlier settlement offers. Early in the case, she offered to settle for $160,000 (December 2021), then $50,000 at the settlement conference, and even *zero dollars if Defendants would simply apologize* (they refused). On April 1, 2022, she offered $75,000. The District rejected each offer and never exceeded $25,000. After the 2023 trial, Dr. Hartzell's appeal-stage offer was $90,000; Defendants maintained $25,000. After she *won* the appeal, their offer inexplicably got *worse*—$10,000 in May 2025. She ultimately obtained a verdict *eight times higher* than Defendants' best offer (and *twenty times* their most recent one).

Beyond the financial recovery, Dr. Hartzell proved the District banned her because of her speech and paved the way for reform so parents will no longer fear retaliation. An Arizona Republic article highlighted that *most Arizona school districts still have this unconstitutional policy*:

> The continued existence of the policy across Arizona schools, however, poses a risk to districts and parents alike. **What happened to Hartzell could happen to more parents** . . . .

AZ Central, April 12, 2026 (emphasis added), attached hereto as Exhibit H. This litigation has been a major victory for Dr. Hartzell, her family, her community, and anyone who values the First Amendment.[9]

---

[9] Although she did not prevail on her defamation claim against Divijak, the unsuccessful claim arose from the same nucleus of facts (*i.e.* a vindictive school official retaliating against Dr. Hartzell to chill her speech) and does not negate prevailing status on the federal claim. Moreover, the qualified immunity is irrelevant for two reasons: (1) the relief sought

This factor—her six-figure monetary and non-monetary results contrasted with Defendants' unreasonable settlement positions—alone would likely justify awarding a lodestar enhancement. Dr. Hartzell argues only that the lodestar should not be reduced.

### 9. *Undesirability also favors a full fee award.*

The undesirability factor favors a full fee. Litigating against a school district over parental speech involves public controversy and institutional resistance, as this case's five-year arc reflects. The attorney-client relationship spanned more than five years, requiring durable commitment through several litigation phases and a difficult period following the first trial loss before reversal. Awards in similar actions confirm fully compensatory lodestar fees are appropriate where plaintiffs secure substantial constitutional relief; the $200,000 verdict and relief obtained warrant no downward adjustment.

Recent scholarship shows a need to make these cases more desirable. *See* Schwartz, *Civil Rights Without Representation*, 64 Wm. & Mary L. Rev. 641 (2023), attached hereto as Exhibit I. Schwartz observes that "**the lack of lawyers able and willing to represent people whose constitutional rights have been violated" is "the biggest threat to civil rights enforcement**," and "few civil rights attorneys practice outside" major urban areas; expensive and low damage cases—even meritorious ones—are routinely declined. *Id.* (emphasis added). *See also* Advocate, Feb. 2021 ("[M]any firms . . . have purposely steered clear of civil-rights litigation. . . . [T]he subject matter is extremely polarizing."), attached hereto as Exhibit J.

The undesirability of plaintiff civil rights work will not improve if this Court discounts reasonable attorney fees. If lack of representation is a problem, as scholars have observed, haircutting this award will only worsen that situation.

---

was the same regardless of the identity of the defendant, and (2) the published Ninth Circuit decision in this action has now "clearly established" the unlawful conduct such that if Principal Divijak repeated the same conduct she would *not* be immune. As to the other state law claims and procedural due process, Defendants aptly pointed out they were merely redundant methods of obtaining the same relief that Dr. Hartzell did eventually obtain.

### *10. Length of Relationship Supports Reasonableness.*

Lead counsel's representation of Dr. Hartzell began in June 2021. When prior counsel Ms. Jonas changed employment, Ms. Jonas introduced Dr. Hartzell to Mr. Jones, and Dr. Hartzell has been satisfied with her representation since.

### *11. Similar Awards Support Reasonableness.*

Two full federal civil jury trials, one appeal, and five years of tough litigation. Attorneys' fees under one million for that is a bargain by today's standards.

Many cases support fee awards that are higher than—or even multiples of—a damages award. *See, e.g.*, *Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1105 (9th Cir. 2014) (upholding $579,000 in fees for $50,000 in damages); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468 & 1473 (9th Cir. 1983) ($100,000 in fees for $18,455 recovery); *Cuff v. Trans States Holdings, Inc.*, 768 F.3d 605, 610-11 (7th Cir. 2014) ($325,000 in fees for less than $50,000 in damages). Furthermore, the Ninth Circuit has instructed that "courts should not reduce lodestars based on relief obtained simply because the amount of damages recovered on a claim was less than the amount requested." *Quesada*, 850 F.2d at 539. The Supreme Court, in the civil rights context, expressly rejected the proposition that fee awards must be proportional to damages recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (affirming $245,456.25 in fees for $13,300 in damages).

A recent award reference point is *Anderson v. Perez*, 2026 WL 1048202, at *16 (C.D. Cal. Apr. 15, 2026) ($680,000+ in fees and $44,000+ in costs for a First Amendment retaliation case with only one trial). A second trial there would have exceeded the amount sought here.

### *12. Other Matters.*

The District could have walked away from this case in 2021 by merely apologizing—zero dollars. Or $50,000 would have resolved it years ago, before hundreds of thousands in fees were expended and much of the Court's and jury's time spent. Although the Court has expressed dissatisfaction that the case had to go as far as it did, *the fault lies solely with the District*. The Court should give ample weight to the District's unreasonable settlement

positions. By requiring the District to pay full costs and fees, perhaps they will take more reasonable positions in the future.

### C.    Nontaxable Costs

Dr. Hartzell also requests an award of reasonable non-taxable expenses customarily billed to clients in this community (and indeed billed to and paid by Dr. Hartzell in this case), as reflected in the costs ledger (*e.g.*, PACER, printing, travel, computerized research), to be awarded under § 1988 in addition to taxable costs under Rule 54(d)(1) and LRCiv 54.1. The costs listed here include both taxable and nontaxable costs; the request for nontaxable costs is equal to the total minus the amount allowed by the Clerk as taxable costs. A separate Bill of Costs will be submitted for taxable items.

These charges were all necessarily incurred, reasonable and customary, billed to and paid by Dr. Hartzell, and should thus be allowed as nontaxable cost (to the extent any of them are not taxable). *See, e.g., McNamara v. Infusion Software, Inc.*, No. CV-17-04026-PHX-SPL, 2020 WL 4921984, at *8 (D. Ariz. Aug. 21, 2020) (allowing computerized research charges); *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006) ("Neither tradition nor statutory usage distinguishes computer-based legal research costs from attorney's fees," allowing such costs as part of statutory fee award); *Johnson v. Astrue*, No. C-07-2387 EMC, 2008 WL 3984599, at *3 (N.D. Cal. Aug. 27, 2008) ("it would not be duplicative if an attorney were to charge both for her time spent on legal research as well as the computer fee itself"); *B & H Mfg. Co. v. Lyn E. Bright*, No. CVF01-6619 AWI LJO, 2006 WL 547975, at *16 (E.D. Cal. Mar. 3, 2006) (finding "$18,500.00 for computerized legal research [averaging $500 per month during the case] reasonable" in case with "difficult legal questions").

As shown in the provided detail (Exhibit C), the travel was in some cases from Phoenix to Tucson and in some cases from Massachusetts (Mr. Jones relocated there in 2022, after beginning his representation of Dr. Hartzell on this case) to Arizona, as necessary. Where possible, necessary work was done remotely to minimize costs. All travel was contracted commercially at the lowest available rates (coach rates, although such rates

have fluctuated over the period of the case and depending on demand), and no extravagant or unnecessary charges were incurred.

| Cost Type | Sum of Amount |
|---|---|
| WestLaw Research | $17,420.00 |
| Transcripts | $16,868.29 |
| Hotel Accommodations | $10,940.43 |
| Airfare | $3,587.40 |
| Travel (Ground) | $2,106.53 |
| Service of Process & Witness Fees | $2,022.19 |
| Copy & Scanning Expenses | $1,482.60 |
| Document Storage | $1,185.00 |
| Filing Fees | $1,007.00 |
| Meals | $877.41 |
| Parking | $730.00 |
| Mileage | $617.25 |
| FedEx/UPS/Postage | $482.78 |
| Pacer Service | $70.70 |
| Grand Total | $59,397.58 |

## V.     Conferral Certification

The undersigned certifies that on April 24, 2026, he personally consulted via telephone conference with Defendants' counsel Lisa Anne Smith to meet and confer regarding this fees and costs motion (having provided on April 23 category summaries of the fees and costs to be sought) to attempt to reach an agreement. Good faith efforts were made to discuss and mutually understand the disputed issues in an attempt to resolve them, however no agreement was reached.

## VI.     Conclusion

For the foregoing reasons, the Court should grant Plaintiff's motion and award: (1) a reasonable attorneys' fee under § 1988 based on the lodestar in the amount of $837,050.00; (2) reasonable non-taxable and nontaxable expenses totaling $59,397.58; and (3) fees incurred in preparing and litigating this motion, to be submitted by supplemental declaration. In view of the excellent results obtained, the constitutional rights vindicated, and the reasonableness of the hours and rates, the full lodestar should be awarded without reduction.

SNELL & WILMER

DATED this 24th day of April, 2026.

SNELL & WILMER L.L.P.


By: *s/ Jacob C. Jones*
Jeffrey Willis (ASB #004870)
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*