# EXHIBIT D

https://tucson.com/news/local/subscriber/article_97ed7124-fab2-11ef-a910-53e26880c879.html

TOP STORY    EDITOR'S PICK

# Ruling: Marana wrong to boot mom from school over 'offensive' language

**Howard Fischer**

Mar 7, 2025



Howard Fischer

Schools can't ban parents from campus because they said something "offensive or inappropriate," a federal appeals court has ruled in a case out of Marana.

In a unanimous ruling, a panel of the 9th Circuit Court of Appeals said there is nothing wrong with a school having a policy that prohibits interference with or disruption of an educational institution.

But the judges said Marana Unified School District expanded on that to also include "use of speech or language that is offensive or inappropriate to the limited forum of the public school environment."

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," wrote Judge Milan Smith for the panel. Because the district's policy allows it to prohibit such speech, "it runs afoul of this principle."

## People are also reading…

1   **Judge: Arizona broke law in stopping new homes needing groundwater in Phoenix area**

2   **Tucson boy fatally shoots alleged robber**

3   **U.S. to drastically alter Colorado River releases, Arizona officials warn**

4   **Man dies days after rollover crash on Tucson's north side**

The ruling does not mean Rebecca Hartzell, who filed the lawsuit, will ultimately win her case against the district. But, unless overturned, it gives her a chance to convince a jury that her words are what got her banned from schools her children attend.

There was no immediate response from the district.

According to court records, the case stems from what had been a years'-long dispute between Hartzell and the district, going back to 2008 when she expressed numerous concerns to district personnel about issues ranging from event scheduling, to children

Rulings: Schools can't ban parents for offensive speech

allegedly accessing pornography on school computers, to restrictions on children speaking with one another during lunch.

Hartzell testified that her advocacy resulted in a district employee telling her she was not welcome at any school except those attended by her children.

In 2020, the Dove Mountain school hosted an event where students presented their projects.

Hartzell complained to Principal Andrea Divijak about two of her children presenting at the same time. She acknowledged being sarcastic.

Divijak said when she tried to walk away Hartzell grabbed her wrist. Hartzell characterized it as accidentally touching the principal's arm and saying, "stop, I'm talking to you."

That eventually resulted in a call to Marana police. An officer told Hartzell she could not enter school property and would have to arrange for someone else to drop off and pick up her children.

That order eventually was lifted, and misdemeanor charges of assault against her were eventually dropped at the request of the town prosecutor.

Hartzell filed suit in federal court. A trial judge threw most of it out before trial, citing a number of legal and procedural issues; a jury subsequently sided with the school on a separate claim of defamation.

But Smith noted that the trial judge did not allow Hartzell to pursue her complaint of a First Amendment violation. That was an error, the appellate court said.

"A reasonable jury could have concluded that Hartzell was unconstitutionally banned based on official district policy," Smith wrote.

"The provision of (the policy) banning 'speech … that is offensive or inappropriate' would be unconstitutional if applied to ban Hartzell for criticizing Divijak," the appellate judge continued. "And Hartzell presented sufficient evidence to conclude that the district relied on this policy, rather than Hartzell's alleged assault on Divijak, to ban Hartzell from the Dove Mountain school premises."

Smith said the district defends the policy on the basis that schools have substantial authority to regulate speech on school grounds.

"It is certainly true that courts must apply the First Amendment in light of the special characteristics of the school environment," he wrote. "Even so, for school officials to justify prohibition of a particular expression of opinion, they must be able to show that their action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."

What that could include, Smith said, is a showing that the conduct materially and substantially interfered with the need to maintain appropriate discipline in school operations.

"Here, the district failed to make this showing," he wrote.

For example, the appellate judge said schools may have an interest in protecting children from some types of language.

"But although Hartzell's speech was critical and sarcastic, it was not vulgar or lewd," he said.

"The district cannot constitutionally prohibit all speech on school property that it finds 'offensive or inappropriate,'" Smith said. "Nor can the district prohibit that speech by defining it as disruptive or intrusive."



Get your morning recap of today's local news and read the full stories here: tucne.ws/morning

Howard Fischer is a veteran journalist who has been reporting since 1970 and covering state politics and the Legislature since 1982. Follow him on X, formerly known as Twitter, **Bluesky**, and Threads at @azcapmedia or email **azcapmedia@gmail.com**.

## By Howard Fischer

Case 4:21-cv-00062-SHR   Document 201-4   Filed 04/24/26   Page 7 of 61



(/)

Select a newspaper

Main menu

Log in (/login.html)   Subscribe (https://www.yourvalley.net/subscribe-today/?lcid=567848)

LEGAL

# Appeals court rules schools can't ban parents for 'offensive or inappropriate' conduct



(https://gamma.creativecirclecdn.com/yourvalley/original/20250306-134937-232-Schools%20First%20Ammendment%20from%20Howie%20031125.jpg)
JEFF CHIU

**The James R. Browning United States Courthouse building, a courthouse for the 9th U.S. Circuit Court of Appeals, is seen in San Francisco on Jan. 8, 2020. Schools can't ban parents from campus because they said something that was "offensive or inappropriate," the court ruled on Thursday, (Associated Press/Jeff Chiu)**

Posted Thursday, March 6, 2025 1:49 pm

 **By Howard Fischer (/browse.html?byline=Howard%20Fischer)**
**Mail (mailto:azcapmedia@gmail.com) | X: @azcapmedia (https://twitter.com/azcapmedia)**

PHOENIX — Schools can't ban parents from campus because they said something that was "offensive or inappropriate," a federal appeals court has ruled.

In a unanimous ruling, a panel of the 9th Circuit Court of Appeals said there is nothing wrong with a school having a policy that prohibits interference with or disruption of an educational institution. But judges said Marana Unified School District expanded on that to include "use of speech or language that is offensive or inappropriate to the limited forum of the public school environment."

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," wrote Judge Milan Smith for the panel. And he said because the district's policy allows it to prohibit such speech "it runs afoul of this principle."

The ruling does not mean that Rebecca Hartzell, who filed the lawsuit, will ultimately win her case against the district. But, unless overturned, it gives her a chance to convince a jury that her words are what got her banned from schools that her children attend.

There was no immediate response from the district.

According to court records, the case stems from what had been a yearslong dispute between Hartzell and the district, going back to 2008 where she had expressed numerous concerns to district personnel about everything from event scheduling and children accessing pornography on school computers to restrictions on the ability of children to speak with one another during lunch.

Hartzell testified her advocacy resulted in a district employee telling her she was not welcome at any school except those attended by her children. In 2020, the Dove Mountain school hosted an event where students presented projects on which they had been working.

Hartzell complained to principal Andrea Divijak about two of her children presenting at the same time.

And she admitted being sarcastic.

Divijak said when she tried to walk away Hartzell grabbed her wrist. Hartzell characterized it as accidentally touching the principal's arm and saying, "Stop, I'm talking to you."

That eventually resulted in a call to Marana police with an officer telling her she could not enter school property and would have to arrange for someone else to drop off and pick up her children.

 (https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?

oaparams=2__bannerid=3696__zoneid=12__cb=8d0b2a76cf__oadest=http%3A%2F%2Fwww.thesharpehaus.com)

That order eventually was lifted and misdemeanor charges of assault were eventually drooped at the request of the town prosecutor.

Hartzell filed suit in federal court. A trial judge threw most of it out before trial, citing a number of legal and procedural issues; a jury subsequently sided with the school on separate claim of defamation.

But Smith noted the trial judge did not allow her to pursue her complaint of a First Amendment violation. That, the appellate court said was in error.
"A reasonable jury could have concluded that Hartzell was unconstitutionally banned based on official district policy," Smith wrote.

"The provision of (the policy) banning 'speech … that is offensive or inappropriate' would be unconstitutional if applied to ban Hartzell for criticizing Divijak," the appellate judge continued. "And Hartzell presented sufficient evidence to conclude that the district relied on this policy, rather than Hartzell's alleged assault on Divijak, to ban Hartzell from the Dove Mountain school premises."

Smith said the district defends the policy on the basis that schools have substantial authority to regulate speech on school grounds.

"It is certainly true that courts must apply the First Amendment in light of the special characteristics of the school environment," he wrote. "Even so, for school officials to justify prohibition of a particular expression of opinion, they must be able to show that their action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."

4/24/26, 9:57 AM
Appeals court rules schools can't ban parents for 'offensive or inappropriate' conduct | Daily Independent

Case 4:21-cv-00062-SHR   Document 201-4   Filed 04/24/26   Page 9 of 61

What that could include, Smith said, is a showing that the conduct materially and substantially interfered with the need to maintain appropriate discipline in school operations.

"Here, the district failed to make this showing," he wrote.
For example, the appellate judge said schools may have an interest in protecting children from some types of language.

"But although Hartzell's speech was critical and sarcastic, it was not vulgar or lewd," he said.

"The district cannot constitutionally prohibit all speech on school property that if finds 'offensive or inappropriate,'" Smith said. "Nor can the district prohibit that speech by defining it as disruptive or intrusive."

**Howard Fischer**

**@azcapmedia (https://twitter.com/azcapmedia)**

**Mr. Fischer, a longtime award-winning Arizona journalist, is founder and operator of Capitol Media Services.**

---

**Subscribers make this story possible.**

**Support the journalists of Independent Newsmedia (https://www.yourvalley.net/subscribe/?lcid=567848).**

---

Have an opinion on this story? Click here to send a letter to our editors. (/letters/)

---

OTHER ITEMS THAT MAY INTEREST YOU

**12 Valley students named as Flinn Scholars (/stories/12-valley-students-named-as-flinn-scholars,685107)**

**North Peoria area shut down due to hazmat incident (/stories/north-peoria-area-shut-down-due-to-hazmat-incident,685269)**

**Sections of SR 51, Loops 101, 202 close Friday night for weekend work (/stories/sections-of-sr-51-loops-101-202-close-friday-night-for-weekend-work,685255)**

**East Valley mayor, council campaign finance: Few candidates have small donations (/stories/chandler-mayor-council-campaign-finance-few-candidates-have-small-donations,685178)**

---

MOST POPULAR STORIES IN DAILY INDEPENDENT

**Third-party may investigate inappropriate sexual misconduct at Centennial High (/stories/third-party-may-investigate-knowledge-of-inappropriate-sexual-misconduct-at-centennial-high,685000)**

**Peoria GOP lawmaker suggests using historic Jewish names for West Bank in Israel (/stories/peoria-gop-lawmaker-suggests-using-historic-jewish-names-for-west-bank-in-israel,685014)**

**Glendale hits recycling targets — sometimes (/stories/glendale-hits-recycling-targets-sometimes,685022)**

**Gilbert Giving Machines boost East Valley nonprofits (/stories/gilbert-giving-machines-boost-east-valley-nonprofits,685020)**


(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?

oaparams=2__bannerid=3547__zoneid=12__cb=43c409b529__oadest=https%3A%2F%2Flernerandrowe.com%2Farizona%2Fpeoria%2F)


(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?

oaparams=2__bannerid=3111__zoneid=12__cb=4f109fc19d__oadest=https%3A%2F%2Fwww.swhbank.com%2F)



## Subscribe to the Daily Independent newsletter

**Sign up for the latest news from around the Phoenix area delivered 7 days a week**

**\*** indicates required

**Email Address \***



Subscribe



**Community News**

Some unhappy with options for renaming former Cesar Chavez Library; **2**

**Sports**

Mercury, WNBA getting set to kick off 30th season; **37**

PHOENIX
**INDEPENDENT**

April 24, 2026  Volume 4 Issue 57      Arizona's Nonpartisan Newspaper · YourValley.net      $4.00

## State of the City: Phoenix creating quantum strategy

**By Mark Carlisle**
INDEPENDENT NEWSMEDIA

After large investments in the fields of bioscience and semiconductor manufacturing in recent years, Mayor Kate Gallego and the city of Phoenix are turning their attention to "the next frontier of advanced tech:" quantum computing communications and sensing.

"I'm proud to announce that we will create a Phoenix Quantum Strategy — a focused initiative to position our city as a quantum hub in the United States," Gallego said during her State of the City address on Tuesday.

Quantum computing is an emerging field of computer science that can have develop more powerful and much faster computer power than traditional binary code.

"Together, we will unite industries,

• See **Strategy** on page **18**

## Flight paths over the Valley could soon change

### FAA hosting virtual public workshops in May

**By Mark Carlisle**
INDEPENDENT NEWSMEDIA

The number of planes flying over Valley residents' houses could soon increase or decrease, pending an upcoming report from the Federal Aviation Administration.

The agency will release a draft of its Phoenix Area FAA Modernization Project, which will reorganize flight paths into and out of both Phoenix Sky Harbor International Airport and the surrounding smaller airports, on Wednesday, April 29.

Residents will have a chance to submit comments about the draft in upcoming FAA virtual meetings.

• See **FAA** on page **9**



A Southwest Airlines plane takes off from Phoenix Sky Harbor International Airport on Oct. 3, 2025. (Independent Newsmedia/Mark Carlisle)

(/stories/the-latest-



**your news your way**

One price, endless news

edition-of-the-phoenix-independent,684803)

# The latest edition of the Phoenix Independent (/stories/the-latest-edition-of-the-phoenix-independent,684803)

View this issue (/stories/the-latest-edition-of-the-phoenix-independent,684803)

Browse other issues (/eeditions/)

**LATEST OPINIONS**



(/stories/why-arizonans-should-embrace-rooftop-solar,685054)

**Why Arizonans should embrace rooftop solar (/stories/why-arizonans-should-embrace-rooftop-solar,685054)**

OPINION — I'd like to respond to Jim Branton's letter regarding rooftop solar. The installation of rooftop solar is by far the best decision a homeowner can make, regardless of ...



(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?
oaparams=2__bannerid=3548__zoneid=13__cb=15ffd1aa49__oadest=https%3A%2F%2Flernerandro

**MOST RECENT**

**Phoenix-area gas prices see slight increase this week (/stories/gas-prices-see-slight-increase-this-week,685283)**

Gas prices in Arizona rose by a cent this week to top out at $.63 a gallon according to AAA Arizona on Friday. Prices rose two cents in the Valley to hit $4.78 a gallon.

Case 4:21-cv-00062-SHR   Document 201-4   Filed 04/24/26   Page 13 of 61

**Alcaraz won't defend his French Open title due to wrist injury (/stories/alcaraz-wont-defend-his-french-open-title-due-to-wrist-injury,685281)**

**12 Valley students named as Flinn Scholars (/stories/12-valley-students-named-as-flinn-scholars,685107)**

**From tragedy to triumph, the Thunder and their fans bond and put Oklahoma City on the world stage (/stories/from-tragedy-to-triumph-the-thunder-and-their-fans-bond-and-put-oklahoma-city-on-the-world-stage,685278)**

**From tragedy to triumph, the Thunder and their fans bond and put Oklahoma City on the world stage (/stories/from-tragedy-to-triumph-the-thunder-and-their-fans-bond-and-put-oklahoma-city-on-the-world-stage,685280)**



(https://yourvalleybanners.creativecirclemedia.com/www/delivery/ck.php?
oaparams=2__bannerid=3372__zoneid=1__cb=b6675ce031__oadest=http%3A%2F%2Fwww.verochi…

### Calendar of events

| Fri 24 | Together We Thrive - Meet the Leadership Team! Join us for an exclusive opportunity to meet the … (/stories/together-we-thrive-meet-the-leadership-team,671946) |
|---|---|
| Fri 24 | Miracle Mile Deli turns pastrami into purpose … Supports Make-A-Wish® Arizona during World Wish … (/stories/miracle-mile-deli-turns-pastrami-into-purpose-this-april,674766) |
| Mon 27 | Woman's Acappella Chorus Seeking Singers All … Weekly rehearsals Mondays at Seton Catholic Prep … (/stories/womans-acappella-chorus-seeking-singers-all-voice-parts,323055) |
| Tue 28 | Financial Preparedness Starts with a Plan. Join … Come discover how thoughtful planning today can … (/stories/financial-preparedness-starts-with-a-plan-join-our-free-seminar,668854) |
| Thu 30 | Discover Sun Health Expo Meet the people behind the programs that support … (/stories/discover-sun-health-expo,670949) |

📅 Browse full calendar     ➕ Post an event

*Celebrating & Connecting*
*Our Communities*

YourValley.net (/)
Advertising:
623-972-6101
Circulation:
888-665-3848
17220 N Boswell Blvd
Suite 230E
Sun City AZ 85373

Email: customerservice@iniusa.org (mailto:customerservice@iniusa.org)

**OUR SERVICES**

Advertising (/advertising/)

Contact Us (/contact-us/index.html)

Privacy Policy (/privacy-policy/)

Public Notices (https://www.arizonapublicnotices.com)

About Us (/about/index.html)

Start a digital subscription (https://www.yourvalley.net/subscribe-today/?lcid=567848)

Submit A Letter (/letters/)

Civility Checklist (/civility-checklist/)

Our History (/our-history/)

Copyright Terms of Service (/stories/copyright-language,447427)

Work for Us (/stories/join-our-teams,73431)

Our Vision & Values (/stories/our-vision-and-values,86397)

Print With Us (/valley_newspapers/)

**OUR COMMUNITIES**

Apache Junction (/detail.html?sub_id=73414)

Cave Creek (/detail.html?sub_id=600162)

El Mirage (/detail.html?sub_id=73442)

Fountain Hills (/detail.html?sub_id=422297)

Glendale (/detail.html?sub_id=73415)

Goodyear (/detail.html?sub_id=73445)

Mesa (/detail.html?sub_id=73447)

Queen Creek (/detail.html?sub_id=73418)

Sun City (/detail.html?sub_id=73420)

Surprise (/detail.html?sub_id=73423)

Town of Paradise Valley (/detail.html?sub_id=73416)

Buckeye (/detail.html?sub_id=73441)

Chandler (/detail.html?sub_id=322928)

Florence (/detail.html?sub_id=195634)

Gilbert (/detail.html?sub_id=73443)

Gold Canyon (/detail.html?sub_id=73444)

Litchfield Park (/detail.html?sub_id=73446)

Peoria (/detail.html?sub_id=73417)

Scottsdale (/detail.html?sub_id=73419)

Sun City West (/detail.html?sub_id=555417)

Tempe (/detail.html?sub_id=556167)

Youngtown (/detail.html?sub_id=73448)

© COPYRIGHT 2026 INDEPENDENT NEWSMEDIA INC.

POWERED BY CREATIVE CIRCLE MEDIA SOLUTIONS (HTTP://CREATIVECIRCLEMEDIA.COM)

https://www.eacourier.com/news/state/court-rules-against-school-district-in-free-speech-case/article_01032e5c-fb89-11ef-9c11-af52a6e28a82.html

# Court rules against school district in free speech case

BY HOWARD FISCHER Capitol Media Services

Mar 7, 2025



The appellate court's ruling concerns a lawsuit filed by a parent against the Marana Unified School District.

COURTESY PHOTO



PHOENIX — Schools can't ban parents from campus because they said something that was "offensive or inappropriate," a federal appeals court has ruled.

In a unanimous ruling, a panel of the 9th Circuit Court of Appeals said there is nothing wrong with a school having a policy that prohibits interference with or disruption of an educational institution. But the judges said that Marana Unified

4/24/26, 10:10 AM
Court rules against school district in free speech case | State | eacourier.com
Case 4:21-cv-00062-SHR    Document 201-4    Filed 04/24/26    Page 16 of 61

School District expanded on that to also include "use of speech or language that is offensive or inappropriate to the limited forum of the public school environment."

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," wrote Judge Milan Smith for the panel. And he said because the district's policy allows it to prohibit such speech "it runs afoul of this principle."

The ruling does not mean that Rebecca Hartzell who filed the lawsuit will ultimately win her case against the district. But, unless overturned, it gives her a chance to convince a jury that her words are what got her banned from schools that her children attend.

There was no immediate response from the district.

According to court records, the case stems from what had been a years-long dispute between Hartzell and the district, going back to 2008 where she had expressed numerous concerns to district personnel about everything from event scheduling and children accessing pornography on school computers to restrictions on the ability of children to speak with one another during lunch.

Hartzell testified that her advocacy resulted in a district employee telling her she was not welcome at any school except those attended by her children.

In 2020, the Dove Mountain school hosted an event where students presented projects on which they had been working.

Hartzell complained to principal Andrea Divijak about two of her children presenting at the same time.

And she admitted being sarcastic.

Divijak said when she tried to walk away Hartzell grabbed her wrist. Hartzell characterized it as accidentally touching the principal's arm and saying, "stop, I'm talking to you."

That eventually resulted in a call to Marana police with an officer telling her she could not enter school property and would have to arrange for someone else to drop off and pick up her children.

That order eventually was lifted. And misdemeanor charges of assault were eventually dropped at the request of the town prosecutor.

Hartzell filed suit in federal court. A trial judge threw most of it out before trial, citing a number of legal and procedural issues; a jury subsequently sided with the school on separate claim of defamation.

But Smith noted that the trial judge did not allow her to pursue her complaint of a First Amendment violation. That, the appellate court said was in error.

"A reasonable jury could have concluded that Hartzell was unconstitutionally banned based on official district policy," Smith wrote.

"The provision of (the policy) banning "speech ... that is offensive or inappropriate" would be unconstitutional if applied to ban Hartzell for criticizing Divijak," the appellate judge continued. "And Hartzell presented sufficient evidence to conclude that the district relied on this policy, rather than Hartzell's alleged assault on Divijak, to ban Hartzell from the Dove Mountain school premises."

Smith said the district defends the policy on the basis that schools have substantial authority to regulate speech on school grounds.

"It is certainly true that courts must apply the First Amendment in light of the special characteristics of the school environment," he wrote. "Even so, for school officials to justify prohibition of a particular expression of opinion, they must be able to show that their action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."

What that could include, Smith said, is a showing that the conduct materially and substantially interfered with the need to maintain appropriate discipline in school operations.

"Here, the district failed to make this showing," he wrote.

For example, the appellate judge said schools may have an interest in protecting children from some types of language.

"But although Hartzell's speech was critical and sarcastic, it was not vulgar or lewd," he said.

"The district cannot constitutionally prohibit all speech on school property that if finds 'offensive or inappropriate,'" Smith said. "Nor can the district prohibit that speech by defining it as disruptive or intrusive."

Tags
First Amendment To The United States Constitution | Jury | Lawsuit | Law | Justice
Public Law | Judiciaries | Law Of The United States | Defamation | Courts | Court
Judge | Trial | Legal Procedure | United States Law | Common Law
Federal Government Of The United States | Constitutional Law | Prosecutor
Government | United States Courts Of Appeals



March 2025

# LCW

# Education Matters

# TABLE OF CONTENTS

03
Department Of
Education

04
Title IX

05
First Amendment

07
Desgregation

09
Labor Relations

10
Negligence

12
Special Bulletin

12
DEI

13
Executive Orders

15
Business and
Facilities

17
Consortium Call of
the Month

## Contributors:

**Amy Brandt**
Partner | San Francisco
**Jordan Carman**
Associate | San Francisco

**Stephanie J. Lowe**
Senior Counsel | San Diego
**Madison Tanner**
Associate | San Diego

## Connect With Us!



Copyright © 2025 LCW LIEBERT CASSIDY WHITMORE

Requests for permission to reproduce all or part of this publication should be addressed to Cynthia Weldon, Director of Marketing and Training at 310.981.2000.

Cover Photo: Attributed to pexels.com

*Education Matters* is published monthly for the benefit of the clients of Liebert Cassidy Whitmore.  The information in *Education Matters* should not be acted on without professional advice.  To contact us, please call 310.981.2000, 415.512.3000, 559.256.7800, 916.584.7000 or 619.481.5900 or e-mail info@lcwlegal.com.

# DEPARTMENT OF EDUCATION

March 2025

## President Trump Directs the Closure of the U.S. Department of Education.

On March 20, 2025, President Trump signed an Executive Order directing the closure of the Department of Education to the extent permitted by law. The Order, "Improving Education Outcomes by Empowering Parents, States, and Communities," aims to deemphasize federal authority over education in favor of state and local control.

The Order specifically directs the Secretary of Education to "take all necessary steps to facilitate the closure of the Department of Education and return authority over education to the States and local communities while ensuring the effective and uninterrupted delivery of services, programs, and benefits on which Americans rely." The Order also provides that, to the extent the Department of Education continues to disburse federal funds, the Secretary of Education shall insure that the funding recipient "terminate illegal discrimination obscured under the label 'diversity, equity, and inclusion' or similar terms and programs promoting gender ideology."

LCW will provide updates regarding the implementation of the Order.



Did you know that we are on LinkedIn?

Connect with us @Liebert Cassidy Whitmore to stay up to date on our latest trainings, firm news, blogs, and to find out what our skilled attorneys are up to!

# TITLE IX

## U.S. Department of Health and Human Services Finds Maine Violated Title IX by Allowing Transgender Athletes to Participate in Women's Sports.

On February 5, 2025, President Trump signed Executive Order 14201, titled "Keeping Men out of Women's Sports." The order directs federal agencies to enforce Title IX in a manner that excludes transgender female athletes from participating in women's sports, basing eligibility strictly on biological sex.

Since 2005, the Maine Human Rights Act has prohibited discrimination based on gender identity, including in educational settings. In 2024, the Maine Principals' Association (MPA) updated its policies to explicitly allow transgender students to compete on sports teams matching their gender identity.

On February 21, 2025, the U.S. Department of Education's (DOE's) Office for Civil Rights (OCR) launched a Title IX investigation into the Maine Department of Education and Maine School Administrative District #51 (MSAD #51). MSAD #51 oversees Greely High School, where a transgender student competes on a girls' sports team. DOE's OCR stated that it initiated the investigation "amid allegations that [the Maine Department of Education and MSAD #51] continues to allow male athletes [transgender girls] to compete in girls' interscholastic athletics and that it has denied female athletes female-only intimate facilities, thereby violating federal antidiscrimination law."

That same day, the U.S. Department of Health and Human Services (HHS) Office for Civil Rights (OCR) initiated a Title IX compliance review of the Maine Department of Education and the University of Maine System. HHS stated that the review was "based on information that Maine intends to defy" Executive Order 14201 by permitting transgender female athletes to compete in women's sports.

On February 22, the U.S. Department of Agriculture (USDA) initiated a Title IX compliance review of the University of Maine System (UMS) due to concerns that the State of Maine was not complying with Executive Order 14201.

On February 25, 2025, the U.S. Department of Justice (DOJ) issued a formal letter warning to Maine Governor Janet Mills. Attorney General Pam Bondi asserted that federal law overrides state law and that "requiring girls to compete against boys in sports and athletic events violates Title IX." The letter warned that the DOJ is prepared to take "all appropriate enforcement actions" to ensure compliance, including litigation or terminating federal funds.

On March 5, 2025, HHS expanded its investigation, adding the Maine Principals' Association (MPA) and Greely High School to the compliance review.

On March 11, 2025, USDA suspended funding to UMS, affecting various agricultural and research programs. UMS assured USDA that its athletic programs comply with state and federal laws, as well as the National Collegiate Athletic Association's (NCAA) updated policy, which restricts athletes assigned male at birth from competing in women's sports. USDA restored the funding on March 13, 2025.

On March 17, 2025, HHS issued a formal determination letter, concluding that the Maine Department of Education, the MPA, and Greely High School had violated Title IX by permitting transgender female athletes to compete in girls' sports. HHS gave the entities 10 days to voluntarily comply. HHS warned that if they failed to do so, it would refer the case to the DOJ for legal action.

NOTES:

*This matter represents one of the first major enforcement actions under Executive Order 14201 and demonstrates a coordinated effort by HHS, DOE, the DOJ, and USDA to enforce the Trump administration's interpretation of Title IX. Under this interpretation, eligibility for women's sports must be based strictly on biological sex.*

# FIRST AMENDMENT

March 2025

## Ninth Circuit Rules School District's Policy Barring Offensive or Inappropriate Speech is Unconstitutional.

Rebecca Hartzell is the mother of eight children. During the 2019-2020 academic year, five of her children attended Dove Mountain CSTEM K-8, a school within the Marana Unified School District in Arizona. Hartzell earned a master's degree in special education and a doctorate focusing on applied behavioral analysis and autism. She worked as an associate professor of practice at the University of Arizona and served as the director of the master's program in applied behavioral analysis.

Since 2008, Hartzell advocated for improved services in the District. She frequently raised concerns with District personnel about school policies, student safety, IEP procedures, and special education funding. Hartzell argued that District employees responded negatively to her advocacy. In 2011, a District employee wrote to Hartzell that she was "asking for the moon!!!" Hartzell claimed District employees barred her from volunteering at District schools because of her emails. In 2018, a District assistant superintendent told her she was not welcome at District schools unless her children were enrolled there. A teacher also told Hartzell that her criticisms made her "pissed," and that she had "nicknames" for Hartzell, and called Hartzell her "first nasty parent."

In 2019, as the District prepared to open Dove Mountain School, Hartzell directed her concerns to Principal Andrea Divijak. At one point, Hartzell offered to help at the school, but Divijak responded that Dove Mountain was "not interested in help." Hartzell continued to email Divijak various complaints. On December 10, 2019, Hartzell complained to Divijak that a school event had scheduled her children to perform simultaneously in different locations, causing her to miss some of their performances.

On February 7, 2020, Dove Mountain hosted an event where students presented long-term projects. The school scheduled two of Hartzell's children to present at the same time. Hartzell approached Principal Divijak in a classroom and sarcastically thanked her for "making [her] choose which kid [she was] going to support again today." As Hartzell turned to leave, Divijak responded that Hartzell was "never happy."

Hartzell turned back and continued speaking, but Divijak began walking away. According to Hartzell, she accidentally touched Divijak's arm as she passed and said, "Stop, I'm talking to you." Divijak loudly told Hartzell not to touch her.

A hall monitor ordered Hartzell to leave immediately, informed her police would be called if she did not comply, and escorted her out of the building. Outside, Marana Police Department Officer Jerry Ysaguirre informed Hartzell that the school had requested a trespass order against her. He said she could not enter school property and could be arrested for trespassing if she returned.

Divijak told Ysaguirre that as she tried to walk around Hartzell, Hartzell yelled "Damn it," said the conversation was not over, and demanded she stop. Divijak said Hartzell then grabbed her left wrist and held on, forcing Divijak to pull her arm away. The alleged wrist grab was not visible on security footage, but Ysaguirre believed Divijak's reaction in the security footage was more consistent with her version of events.

On February 24, 2020, Hartzell, her husband, and her attorney met with Superintendent Wilson and a District attorney. According to Hartzell, the District stated that the ban was final and would remain indefinitely, as lifting it would upset the assistant superintendent and principal. However, the District allowed Hartzell to enter school

grounds to pick up her preschooler as long as she did not speak to anyone. In June 2023, the District's counsel informed Hartzell that the ban had been lifted.

On March 30, 2020, the state filed misdemeanor assault charges against Hartzell. On September 22, 2020, the court dismissed the charges at the prosecutor's request.

In October 2020, someone delivered a document to Hartzell's employer. It included a docket sheet listing her criminal charges and a note stating, "[t]his occurred at a K-8 school in front of young children. Doesn't seem like this is the kind of person that should be training teachers let alone working with kids." In April 2021, an anonymous sender mailed another document to the University of Arizona's Compliance Office. The note accused Hartzell of using her university email account to "harass, bully, intimidate, and threaten people." It further stated, "[a] full audit of her account will verify these accusations. Additionally, I have great concern about her mental health."

Hartzell sued the District and Divijak for First Amendment retaliation, arguing they banned her for her advocacy under an unconstitutional policy restricting "offensive or inappropriate" speech. She also sued the District and Divijak for procedural due process violations, alleging they violated her right to direct her children's education by banning her without due process. Lastly, she sued Divijak for defamation, claiming she sent the anonymous notes to her employer.

The District denied retaliating against Hartzell and argued that it banned her because of her conduct, not her speech. The District also contended that Divijak was entitled to qualified immunity, shielding her from liability for the First Amendment and procedural due process claims. Divijak did not deny sending the notes to Hartzell's employer but contended they were not defamatory. The District moved for summary judgment, asking the trial court to dismiss Hartzell's claims.

The trial court largely agreed with the District and granted summary judgment on all claims except for part of Hartzell's defamation claim. It ruled that Hartzell had no constitutional right to access school property, that Divijak was entitled to qualified immunity on the First Amendment retaliation claim, and that one of the allegedly defamatory documents contained non-actionable opinions. The jury ultimately ruled in Divijak's favor on the remaining defamation claim. Hartzell appealed.

The Ninth Circuit ruled that the District's policy prohibiting "offensive or inappropriate" speech was unconstitutional under the First Amendment. The District argued that the policy did not restrict free speech but instead prevented "harassment and disruption of the educational environment." However, the Ninth Circuit pointed out that the policy broadly defined disruption to include "use of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." The Ninth Circuit emphasized that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." The Ninth Circuit found a reasonable jury could conclude the District banned Hartzell based on the policy rather than her conduct.

However, the Ninth Circuit ruled that Divijak had qualified immunity on the First Amendment claim. Qualified immunity protects government officials from personal liability unless they violate clearly established constitutional rights. The Ninth Circuit ruled that Hartzell's speech rights in the school context were not clearly established. It noted that Hartzell only identified one similar case arising in a public school context and it was not controlling. Without widespread legal guidance, it would be unreasonable to hold Divijak personally liable.

The Ninth Circuit affirmed the dismissal of Hartzell's procedural due process claim. It held that she had no constitutional right to access school property and that the ban did not interfere with her right to direct her children's education.

The Ninth Circuit ruled that a reasonable jury could find the docket sheet and attached note defamatory, since it could interpret the note as falsely accusing Hartzell of criminal conduct. However, the Ninth Circuit found that the second note, accusing Hartzell of harassment and questioning her mental health, contained statements that were non-actionable opinions.

The Ninth Circuit affirmed the trial court's dismissal of Hartzell's procedural due process claim and its ruling that Divijak had qualified immunity on the First Amendment claim. It reversed the dismissal of Hartzell's First Amendment claim against the District and part of her defamation claim against Divijak, and remanded the case for further proceedings.

*Hartzell v. Marana Unified Sch. Dist.* (9th Cir. Mar. 5, 2025, No. 23-4310) 2025 U.S. App. LEXIS 5128.

# DESGREGATION

## Ninth Circuit Ends Federal Oversight of School District, Finding No Link Between Present Racial Disparities and Past Segregation.

In 1955, the Supreme Court ruled that racially segregated public schools violate the Equal Protection Clause of the Fourteenth Amendment in the landmark case of *Brown v. Board of Education*. In *Green v. County School Board*, the Supreme Court held that local school authorities have an affirmative duty to take all necessary steps to transition to a unitary school system. In subsequent cases, the Supreme Court held that federal district courts have the authority to enforce desegregation decrees and ensure that school systems eliminate the vestiges of state-imposed segregation, although this supervision is intended to be temporary. Desegregation decrees must be lifted once a school district has complied in good faith and eliminated the vestiges of past discrimination to the extent practicable. The Supreme Court further held in *Freeman v. Pitts*, that federal oversight can be incrementally withdrawn as districts achieve unitary status in specific areas of their operations.

The Tucson Unified School District No. 1 (TUSD) historically operated a dual school system that separated Black and non-Black students. In 1974, African American and Latino students, represented by the Fisher and Mendoza plaintiffs, filed class-action lawsuits against the district, alleging racial discrimination. These lawsuits resulted in a 1978 settlement agreement and desegregation decree, which placed TUSD under federal district court supervision. The decree required the district to implement policies and programs aimed at eliminating segregation and improving educational opportunities for minority students. Over the following decades, the federal district court directed TUSD to take corrective actions, including modifying student assignments, hiring practices, transportation policies, discipline procedures, and curriculum standards to comply with its desegregation obligations.

In 2005, TUSD petitioned to unity status and an end of federal oversight. The federal district court made preliminary findings that TUSD had achieved unitary status, approved a Post-Unitary Status Plan, and relinquished federal supervision. In 2011, the Ninth Circuit Court of Appeals reversed, holding that the district court's own findings contradicted its conclusion. The district court had determined that TUSD failed to track and analyze data necessary to assess whether desegregation efforts were effective, making it impossible to confirm that past discrimination had been eliminated. It had also identified ongoing deficiencies in student assignment, transportation, faculty hiring, and discipline, showing that TUSD had not yet fully complied with desegregation mandates. The Ninth Circuit ordered continued judicial supervision until TUSD could demonstrate sustained compliance

On remand, the federal district court appointed a special master to develop a Unitary Status Plan (USP). The USP outlined detailed requirements across several key areas, including student assignments, transportation, staffing, discipline policies, educational quality, family and community engagement, extracurricular activities, and accountability and transparency. The USP required TUSD to ensure students had equitable access to schools and programs, address disparities in transportation for magnet schools, increase diversity among teachers and administrators, reduce racial disparities in student discipline, expand advanced learning opportunities for African American and Latino students, and implement data-driven reporting to track compliance.

Between 2018 and 2022, the district court issued multiple rulings, gradually granting unitary status in various areas as TUSD demonstrated compliance. In July 2022, the district court found that TUSD had eliminated the vestiges of past discrimination in student assignments, transportation services, staff hiring practices, and discipline policies. The district court determined that any remaining racial disparities were not directly linked to past segregation but instead resulted from external factors, such as Arizona's open enrollment policies and demographic changes. The district court noted that student disciplinary disparities affecting African American students had been reduced and that TUSD had implemented policies to address discipline in a race-neutral manner. Regarding academic achievement, the district court stated that achievement gaps are not automatically presumed to be vestiges of segregation and that plaintiffs failed to provide evidence that linked

these disparities to past discrimination. The district court thus found that TUSD had attained unitary status, and it relinquished federal supervision over the District, dissolved the 1978 settlement agreement, and entered judgment for TUSD.

The Mendoza plaintiffs appealed to the Ninth Circuit Court of Appeals. They argued that TUSD had not yet achieved unitary status because racial disparities remained, particularly in student discipline and academic achievement. They contended that TUSD had failed to fully implement certain USP provisions and had not shown a long-term commitment to desegregation. The United States government, as an intervenor, supported the plaintiffs' claims and urged continued judicial oversight. TUSD opposed continued supervision, asserting that it had complied in good faith with the USP and that remaining disparities were due to external socioeconomic and policy factors rather than past segregation.

The Ninth Circuit Court of Appeals applied the Supreme Court's two-part test for unitary status. First, the Ninth Circuit Court of Appeals examined whether TUSD had complied in good faith with the desegregation decree. Second, the Ninth Circuit Court of Appeals evaluated whether the vestiges of past discrimination had been eliminated to the extent practicable.

The Ninth Circuit Court of Appeals found that TUSD met both prongs. It ruled that TUSD had acted in good faith in implementing the USP, modifying policies, and demonstrating commitment to non-discriminatory practices. The Ninth Circuit rejected the argument that perfect compliance was required, stating that the law only requires the practicable elimination of segregation's effects. The Ninth Circuit also affirmed the district court's findings that remaining disparities in academic achievement and discipline were not caused by past segregation but were instead influenced by broader external factors such as open enrollment laws, family socioeconomic status, and demographic shifts.

The Ninth Circuit affirmed the district court's ruling. The Ninth Circuit emphasized that judicial oversight is meant to be temporary and that once a district demonstrates compliance with its constitutional obligations, federal intervention must end. The Ninth Circuit concluded that TUSD had met the necessary legal threshold for unitary status in all required areas and that continued federal district court supervision was no longer warranted.

*Mendoza v. Tucson Unified Sch. Dist.* (9th Cir. 2025) 125 F.4th 1262.

# Premium Perks on Liebert Library!



Welcome to the Liebert Library

The Liebert Library is LCW's online collection of trusted legal training and reference materials.

LEARN MORE

**Visit our <u>Liebert Library</u> today.**

# LABOR RELATIONS

March 2025

## PERB Dismisses Unfair Practice Charge That Sought Confidential Peace Officer Investigation Report.

Erin Salcedo was a dispatcher at the California State University, Stanislaus (University). The California State University Employees Union (CSUEU) represented Salcedo.

Around December 2022, Salcedo submitted a formal complaint to the University alleging that a University Police Department (UPD) peace officer subjected her to harassment, disparate treatment, and a hostile work environment. The Stanislaus County Sheriff's Department investigated the allegations, created a report, and shared the report with the University. In February 2023, the University informed Salcedo that her allegations were not sustained.

In August 2023, CSUEU submitted a request for information seeking the report. The University declined, on the grounds that California Penal Code section 832.7 precluded the University from distributing copies of the report absent a court order. Section 832.7 generally shields a peace officer's personnel records from disclosure and designates them as confidential. If a party to litigation or an administrative hearing wants the records, the party must file a *Pitchess* motion to have a judge determine whether there is good cause to grant limited access to the records.

CSUEU then demanded that the University meet and confer over confidentiality concerns raised by its request for the report. The University declined. CSUEU filed an unfair practice charge (UPC) concerning both the University's denial to provide the report and to meet and confer. The PERB Office of General Counsel sent CSUEU a warning letter that it would dismiss the case unless CSUEU could timely amend the UPC to state a case for a violation of the Higher Education Employer-Employee Relations Act (HEERA). CSUEU declined and appealed to PERB.

PERB upheld the dismissal. PERB found that despite a union's general right to information, an employer is not required to provide confidential peace officer personnel records to the union outside of a legal or administrative proceeding in which the judge or hearing officer orders disclosure.

PERB noted that the safeguards afforded to these records include, but are not limited to: notification to the affected peace officer; the burden of establishing relevance and materiality of the records; and a hearing officer's review of the records at issue. These safeguards are available in a legal, arbitration or unfair practice proceeding, not in a pre-dispute information request where no hearing officer has been assigned. Therefore, PERB reasoned that meeting and conferring over CSUEU's request for information would have been futile in this case, and affirmed the dismissal of the UPC.

*California State University Employees Union v. Trustees of the California State University*, Case No. SA-CE-427-H; PERB Decision No. 2940-H, January 31, 2025.

## PERB Says University Unlawfully Transferred Union Work and Added New Work.

The UCLA Lab School serves pre-kindergarten through sixth-grade students and employs "Demonstration Teachers." Demonstration Teachers engage in research-based teaching, mentor other educators, and serve as models of innovative teaching practices. The University Council-American Federation of Teachers (UC-AFT) represents these UCLA Lab School employees.

Demonstration Teachers' job duties included, but were not limited to: creating lesson plans; providing

instruction; assessing student performance; and mentoring other Demonstration Teachers, Teaching Assistants, and outside visiting teachers.

In 2022, the Lab School created a new classification, Teacher Apprentice, and implemented an apprenticeship program. Teacher Apprentices were unrepresented. The Lab School assigned Teacher Apprentices instructional and lesson-planning duties that had been performed exclusively by Demonstration Teachers. In addition, the Lab School required Demonstration Teachers to mentor Teacher Apprentices, which was a new job duty.

The University did not notify UC-AFT before implementing the program. UC-AFT filed an unfair practice charge (UPC), alleging that the University violated the Higher Education Employer-Employee Relations Act (HEERA) by: 1) transferring bargaining unit work to non-unit employees; and 2) unilaterally adding a material new duty—mentoring Teacher Apprentices—to the Demonstration Teachers.

An administrative law judge (ALJ) found in favor of UC-AFT on both claims.  The University appealed to PERB.

On appeal, PERB upheld the ALJ's findings. PERB agreed that the University unlawfully transferred bargaining unit work by assigning lesson-planning and instructional duties to unrepresented Teacher Apprentices. PERB also held that assigning Demonstration Teachers to mentor the Teacher Apprentices was a material change to their job responsibilities. While Demonstration Teachers had occasional, ad hoc mentoring duties in the past, the new requirement imposed a structured, ongoing obligation that was not reasonably comprehended within their prior duties. Because the University unilaterally implemented this requirement without bargaining, it violated its duty to meet and confer in good faith.

As a remedy, PERB ordered the University to rescind the transfer of bargaining unit work and the unilateral addition of mentoring duties by the beginning of the next academic term.

*University Council-American Federation of Teachers v. Regents of the University of California (Los Angeles)*, Case No. LA-CE-1384-H; PERB Decision No. 2942-H; February 10, 2025.

# NEGLIGENCE

## California Court Upholds Jury Verdict, Finds No Negligence in Teacher's Intervention During Student Fight.

I.C., a then 15-year-old student at Dominguez High School in the Compton Unified School District, was injured during a classroom fight. I.C. and a friend, C.L., began horse playing and slap-boxing in their art class. When their teacher, Marco Godinez, saw them, he told them to stop. The two students stopped briefly, but then began punching one another. Godinez attempted to intervene. During the struggle, Godinez lost his balance and fell onto I.C., breaking the student's leg. The incident was captured on video by another student.

I.C. sued Godinez and the District for negligence, arguing that the teacher should not have intervened due to his weight (375 pounds) and physical condition. In particular, Godinez suffered from sciatica, had gone to the emergency room for back pain three days prior to the fight, and had been using a walker to get around. I.C. argued that Godinez should have done something else, sooner, to prevent the fight.

I.C. also argued that the District failed to adequately train teachers on safe methods for breaking up student fights. The District provided training to teachers through its Non-Violent Crisis Intervention and Positive Behavioral

Interventions and Supports programs, which focused on de-escalation techniques and maintaining a positive classroom environment. However, the District did not provide specific training on physical intervention or restraint techniques.

After a 15-day jury trial, the jury determined that neither Godinez nor the District was negligent and assigned equal responsibility (50%) to I.C. and C.L. for the incident.

I.C. filed a judgment notwithstanding the verdict, which is a motion that asks the trial court to overturn the jury's verdict on the grounds that no reasonable jury could have reached that conclusion based on the evidence presented. I.C. argued that the evidence did not support the jury's conclusion that neither Godinez nor the District was negligent. I.C. argued that Godinez acted negligently by physically intervening in the fight despite his physical limitations and lack of training. He also contended that the District failed to properly train its teachers on safe intervention techniques, creating an unreasonable risk of harm.

The court of appeal disagreed and upheld the jury's finding. The court of appeal reasoned that the jury reviewed the video evidence multiple times and concluded that Godinez did not act unreasonably. Witnesses, including another student involved in the fight, testified that Godinez fell accidentally while trying to protect the students from injury. Additionally, the District's training program, which focused on de-escalation and professional discretion rather than strict physical intervention techniques, was consistent with national education standards.

Since the jury's verdict was supported by substantial evidence, the court of appeal concluded that the trial court properly denied the motion.

I.C. also argued that he should be given a new trial because the trial court erred by refusing to give special jury instructions emphasizing the special duty of care that schools owe to students. In particular, I.C. argued that schools have an affirmative duty to take reasonable steps to protect students, school authorities must provide adequate supervision and proper training to staff, and the District's duty includes protecting students from foreseeable harm, even from third parties.

The court of appeal disagreed. It reasoned that the jury was already properly instructed on negligence, including the duty of care owed by school personnel. The core issue was not whether the District had a duty to protect students, which was undisputed, but whether Godinez acted negligently. The Court found that the rejected instructions would not have changed the outcome since the instructions adequately addressed the standard of care.

Finally, I.C. argued that the trial court improperly excluded I.C.'s expert, Douglas Dickerson. The trial court excluded Dickerson because he lacked relevant expertise in teacher training and classroom management. The court of appeal affirmed the trial court's decision. It noted that Mr. Dickerson's background was in law enforcement and juvenile delinquency, not in education policy or teacher training. Mr. Dickerson's testimony would not have provided meaningful insight into how teachers should intervene in student altercations. The court of appeal found that the jury could evaluate the video evidence themselves without needing an expert to interpret what happened. Additionally, the trial court also excluded the District's expert on school safety policies, ensuring neither side had an expert advantage.

The court of appeal affirmed the trial court's ruling, rejecting all of I.C.'s arguments.

*I.C. v. Compton Unified School Dist.* (2025) 108 Cal.App.5th 688.



ON-DEMAND TRAINING

Don't Delay. Train Today.

Visit our website for all our on-demand offerings: www.lcwlegal.com/events-and-training/on-demand-training

# SPECIAL BULLETIN

## U.S. Supreme Court Issues Decision On Schools and E-Rate Reimbursements.

LCW published a Special Bulletin on a recent U.S. Supreme Court case regarding E-Rate reimbursement for schools. On February 21, 2025, the U.S. Supreme Court issued a unanimous decision in *Wisconsin Bell, Inc. v. United States ex rel. Heath*. The Court ruled that E-Rate reimbursement requests qualify as "claims" under the False Claims Act (FCA) when any portion of the funding comes from the federal government.

The E-Rate Program was established under the Telecommunications Act of 1996 and subsidizes telecommunications services for schools and libraries. Funds come from telecommunications carriers and are administered by the Universal Service Administrative Company under Federal Communications Commission (FCC) regulations. Todd Heath, a telecommunications auditor, alleged that Wisconsin Bell overcharged schools in violation of the "lowest corresponding price" rule, resulting in inflated reimbursement claims.

Wisconsin Bell argued that E-Rate funds were not government money subject to the FCA. The Supreme Court disagreed. It affirmed the Seventh Circuit's ruling that federal contributions, including Treasury transfers and penalties, made the funds "government-provided."

# DEI

## California Attorney General Rob Bonta Issues Guidance Affirming DEI Policies.

California Attorney General Rob Bonta, along with a multistate coalition of Attorney Generals, issued guidance to K-12 schools and higher education institutions affirming their ability to maintain diversity, equity, and inclusion (DEI) policies under federal civil rights laws and the U.S. Constitution. The guidance is a response to the U.S. Department of Education's February 14, 2025 Dear Colleague letter, which threatened to withdraw federal funding and investigate institutions that retain DEI policies. The coalition asserts that longstanding legal precedent allows schools to foster diverse student bodies and that the federal government cannot prohibit these efforts through a Dear Colleague letter.

The guidance emphasizes that DEI policies remain legally permissible and essential for promoting educational opportunity. It rejects the idea that an executive order or administrative directive can override settled legal principles protecting educational access for students from diverse backgrounds. Attorney General Bonta reaffirmed his commitment to keeping California schools inclusive and safe, citing recent efforts to protect transgender and nonbinary students and to address concerns about immigration enforcement on school campuses. The coalition includes the Attorney Generals of California, Massachusetts, New York, Illinois, Connecticut, Delaware, the District of Columbia, Maine, Maryland, Minnesota, New Jersey, Nevada, Oregon, Rhode Island, and Vermont.

Attorney General Bonta's press release can be found here and the guidance can be found here.

## U.S. Department of Education Releases FAQs Regarding Racial Preferencing.

On February 28, 2025, the U.S. Department of Education, Office for Civil Rights (OCR) published Frequently Asked Questions (FAQ) pertaining to its February 14 Dear Colleague Letter. The FAQ discusses OCR's interpretation of the scope of the U.S. Supreme Court's decision in *Students for Fair Admissions v. Harvard, 600 U.S. 181 (2023)*. The FAQ states that "school-sponsored or school-endorsed racially segregated aspects of student, academic, and campus life, such as programming, graduation ceremonies, and housing, are legally indefensible." The FAQ acknowledges that events "that celebrate or recognize historical events and contributions and promote awareness" would not violate Title VI but asserts that "extreme practices at a university—such as requiring students to participate in privilege walks, segregating them by race for presentations and discussions with guest speakers, pressuring them to participate in protests or take certain positions on racially charged issues, investigating or sanctioning them for dissenting on racially charged issues through DEI or similar university offices, mandating courses, orientation programs, or trainings that are designed to emphasize and focus on racial stereotypes, and assigning them coursework that requires them to identify by race and then complete tasks differentiated by race—are all forms of school-on-student harassment that could create a hostile environment under Title VI."

It also states that OCR may rely on the three-part *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) Title VII employment discrimination burden shifting test to "assess indirect evidence of individual discrimination" against students.

# EXECUTIVE ORDERS

## Weekly Executive Order Roundups.

Since taking office, President Trump has issued a series of executive orders, several of which have direct implications for public agencies, including institutions of public education. In light of the volume and rapid issuance of executive orders, beginning in early February, LCW launched a weekly roundup of new executive orders that may impact public agency clients, including those in public education. Our Week 4 Executive Order Roundup describes multiple EOs, including the following, which are likely to be of particular interest to educational institutions:

- **Executive Order: Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative (February 26, 2025).** On February 26, 2025, President Donald Trump signed an Executive Order titled "Implementing the President's 'Department of Government Efficiency' Cost Efficiency Initiative." The Order directs federal agencies to review, modify, or terminate discretionary contracts and grants to reduce spending and promote efficiency, with a focus on funds given to educational institutions and foreign entities to prevent waste, fraud, and abuse. While this may affect California employers receiving federal funds, it does not impose new obligations on them.

Our Week 5 Executive Order Roundup describes multiple EOs, including the following, which are likely to be of particular interest to educational institutions:

- **Executive Order: Restoring Public Service Loan Forgiveness (March 7, 2025)**. On March 7, 2025, President Donald Trump signed an Executive Order redefining eligibility for the Public Service Loan Forgiveness (PSLF) Program. The Order directs the Secretary of Education to exclude from PSLF eligibility employees of organizations engaged in activities deemed illegal, including aiding violations of federal immigration laws, supporting terrorism, engaging in child abuse, abetting illegal discrimination, or violating laws related to trespassing, vandalism, and public obstruction.

- **Update: Trump Administration Cancels $400 Million in Federal Funds to Columbia University Pursuant to Executive Order re Anti-Semitism (March 7, 2025)**. On March 7, 2025, the Trump administration took a step toward enforcing the January 29, 2025 Executive Order directing federal agencies to address anti-Semitic discrimination, particularly in educational institutions. In a joint statement from the U.S. Department of Justice, U.S. Department of Health and Human Services, U.S. Department of Education and the U.S. General Services Administration, the administration announced that it has canceled $400 million in federal grants and contracts to Columbia University over what it described as the school's failure to police antisemitism on campus. The decision was carried out, the statement said, "due to the school's continued inaction in the face of persistent harassment of Jewish students."

Our Week 6 Executive Order Roundup describes multiple EOs, including the following, which are likely to be of particular interest to educational institutions:

- **Executive Action: Department of Education to Lay Off 1,300 Workers (March 11, 2025)**. The U.S. Department of Education announced plans to lay off over 1,300 employees, nearly halving its workforce. Education Secretary Linda McMahon said student loans, Pell Grants, funding for special needs students, and competitive grant making would remain unaffected. The Department's Office for Civil Rights already has a heavy backlog of civil rights investigations, and the layoffs may result in further delays.

- **Executive Action: Department of Education Investigates 45 Universities for Race-Based Discrimination**. The U.S. Department of Education's Office for Civil Rights (OCR) launched Title VI investigations into 45 universities following OCR's February 14 Dear Colleague Letter reiterated schools' civil rights obligations to end the use of racial preferences and stereotypes in education programs and activities.

- **Update: Fourth Circuit Lifts Injunction on DEI Executive Orders (March 14, 2025)**. The Fourth Circuit Court of Appeals lifted a Maryland court's injunction on President Trump's DEI-related executive orders, finding the orders are "of distinctly limited scope." This decision allows the Trump administration to proceed with its ban on DEI programs in federal agencies and among federal contractors.

## Federal Court Orders Trump Administration to Release Funds to States.

On January 27, 2025, the Office of Management and Budget (OMB) issued a memo ordering federal agencies to freeze congressionally approved funds. The next day, 22 states and the District of Columbia sued in the U.S. District Court for the District of Rhode Island. They argued the freeze bypassed Congress and disrupted critical services like healthcare, education, and law enforcement. They sought an injunction, citing evidence that states couldn't access federal reimbursements for programs like Medicaid.

On March 6, 2025, U.S. District Judge John McConnell granted a preliminary injunction, blocking the freeze and ruling it violated separation of powers and caused irreparable harm. He ordered federal agencies to resume payments and denied the administration's motion to stay the injunction pending appeal. The ruling ensures funding continues while the case proceeds.

*N.Y. v. Trump*, No. 1:25-cv-00039 (D.R.I. 2025).

# BUSINESS AND FACILITIES

March 2025

## Permitting Third Party Discovery in Employee Arbitration Agreements.

Thomas Vo was hired by Technology Credit Union (TCU) in 2020. RCU required that he sign an arbitration agreement. TCU terminated Vo after he contracted COVID-19 and was facing long-term health issues.  Vo sued TCU for wrongful termination, discrimination, and harassment under the Fair Employment and Housing Act (FEHA).

TCU sought to enforce arbitration on Vo's claims based on the signed arbitration agreement. Vo argued the arbitration process was unfair because it restricted his ability to perform discovery and collect evidence from third parties before the hearing.

The trial court denied TCU's motion to compel arbitration, ruling that the arbitration agreement was unconscionable as it was unfairly one-sided. The court referenced Aixtron, Inc. v. Veeco Instruments Inc. (2020), which determined that the JAMS arbitration rules in place at the time did not permit arbitrators to compel third-party discovery before a hearing. The judge concluded that this restriction could prevent Vo from securing critical evidence to support his claims, making the arbitration agreement fundamentally unfair.

The court of appeal reversed the trial court's ruling. The court of appeal relied on the California Supreme Court's recent decision in *Ramirez v. Charter Communications, Inc.* (2024), which clarified that arbitration agreements should be interpreted to give arbitrators broad discretion in allowing necessary discovery, including from third parties. The court took a pro-arbitration approach, emphasizing that arbitration rules should be read expansively to ensure fair access to evidence and due process.

As a result, the appellate court directed the trial court to grant TCU's motion to compel arbitration and pause the lawsuit.

NOTE:

*This ruling reinforces the enforceability of arbitration agreements, particularly those structured to allow arbitrators to permit necessary discovery. Employers should ensure their arbitration agreements are crafted carefully to explicitly allow for reasonable discovery to avoid enforceability challenges.*

Vo v. Technology Credit Union (2025) 108 Cal.App.5th 632.

## Sign-In Wrap Agreements May Not Provide Sufficient Notice to Consumers.

On February 27, 2025, the U.S. Court of Appeals for the Ninth Circuit issued a decision in *Chabolla v. ClassPass, Inc.*, addressing the enforceability of arbitration agreements presented through online "sign-in wrap" agreements - an agreement where users are informed that by proceeding with registration, they agree to the terms, typically via a hyperlink rather than an explicit acknowledgment like a checkbox.

Katherine Chabolla subscribed to ClassPass in January 2020. ClassPass is an online service that offers access to various fitness facilities and classes to allow users to try out different exercise experiences without a formal commitment with that facility. Due to the COVID-19 pandemic, ClassPass temporarily suspended billing consumers, but then resumed billing in 2021.

Ms. Chabolla filed a class-action lawsuit against ClassPass alleging that the resumption of charges violated California consumer protection laws, including the Automatic Renewal Law, Unfair Competition Law, and the Consumers Legal Remedies Act. ClassPass sought to compel arbitration in accordance with its online Terms of Use. ClassPass argued that by signing up for the service, Ms. Chabolla agreed to these terms through a sign-in wrap agreement.

The Court of Appeals applied a two-pronged analysis to determine the enforceability of ClassPass's arbitration

agreement. First, the Court considered whether the consumer, Ms. Chabolla, was provided with a reasonably conspicuous notice of its Terms of Use. The Court reviewed the website's design and overall clarity and found that the Terms of Use were not sufficiently clear or conspicuous. Next, the Court examined whether the consumer had manifested clear assent to the Terms of Use. Here, there was no clear assent to the arbitration clause because ClassPass did not sufficiently inform Ms. Chabolla that proceeding with the sign-up would constitute agreement to the Terms of Use, including the arbitration clause.

As a result, the Court affirmed the lower court's decision and refused to compel arbitration as Ms. Chabolla did not clearly agreed to the Terms of Use and ultimately the arbitration provision.

This decision underscores the limitations of sign-in wrap agreements and the necessity for businesses to provide clear and conspicuous notice of contract terms. While clickwrap agreements (where users actively agree to terms) are typically enforceable, sign-in wrap agreements require careful design and disclosure to ensure users are properly informed. Moving forward, entities must ensure that users receive explicit notice and have an opportunity to clearly manifest assent to online terms—especially when including mandatory arbitration provisions.

*Chabolla v. ClassPass, Inc.*, 2025 S.O.S. 23-15999 (9th Cir. Feb. 27, 2025)

# Don't Miss Our Upcoming Webinars!



## What Labor Code Sections Apply to the Public Sector?

**June 9, 2025**
**10:00 a.m. - 11:00 a.m.**

## Harassment Prevention: Train the Trainer

**September 17, 2025**
**9:00 a.m. - 4:00 p.m.**

**Visit the above links for more information.**

# CONSORTIUM CALL OF THE MONTH

March 2025

Members of Liebert Cassidy Whitmore's consortiums are able to speak directly to an LCW attorney free of charge to answer direct questions not requiring in-depth research, document review, written opinions or ongoing legal matters. Consortium calls run the full gamut of topics, from leaves of absence to employment applications, student concerns to disability accommodations, construction and facilities issues and more. Each month, we will feature a Consortium Call of the Month in our newsletter, describing an interesting call and how the issue was resolved. All identifiable details will be changed or omitted.

## Question:

## Answer:

| | |
|---|---|
| A Community College District client asked about whether non-credit courses count toward minimum requirements for student workers. | A LCW attorney responded that the Education Code does not set minimum course requirements for student workers employed at a CCD. There are also no regulations that set minimum course requirements. Therefore, unless the position is funded through a federal grant that requires a specific unit amount or the District has a Board Policy or Administrative Procedure that sets minimum course requirements, the District may determine these minimum requirement calculations and whether non-credit classes should count towards its minimum requirements. However, the District should make a determination and apply it consistently. |



Case 4:21-cv-00062-SHR   Document 201-4   Filed 04/24/26   Page 37 of 61

https://www.wmicentral.com/community_beat/federal-court-rules-against-az-school-district-in-first-amendment-case/article_438cbcd4-fb75-11ef-98d0-ab7708545302.html

# Federal court rules against AZ school district in First Amendment case

By Howard Fischer Capitol Media Services
Mar 7, 2025



PHOENIX – Schools can't ban parents from campus because they said something that was "offensive or inappropriate," a federal appeals court has ruled.

In a unanimous ruling, a panel of the 9th Circuit Court of Appeals said there is nothing wrong with a school having a policy that prohibits interference with or disruption of an educational institution. But the judges said that Marana Unified School District expanded on that to also include "use of speech or language that is offensive or inappropriate to the limited forum of the public school environment."

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," wrote Judge Milan Smith for the panel. And he said because the district's policy allows it to prohibit such speech "it runs afoul of this principle."

The ruling does not mean that Rebecca Hartzell who filed the lawsuit will ultimately win her case against the district. But, unless overturned, it gives her a chance to convince a jury that her words are what got her banned from schools that her children attend.

There was no immediate response from the district.

According to court records, the case stems from what had been a years'-long dispute between Hartzell and the district, going back to 2008 where she had expressed numerous concerns to district personnel about everything from event scheduling and children accessing pornography on school computers to restrictions on the ability of children to speak with one another during lunch.

Hartzell testified that her advocacy resulted in a district employee telling her she was not welcome at any school except those attended by her children.

In 2020, the Dove Mountain school hosted an event where students presented projects on which they had been working.

Hartzell complained to principal Andrea Divijak about two of her children presenting at the same time.

And she admitted being sarcastic.

Divijak said when she tried to walk away Hartzell grabbed her wrist. Hartzell characterized it as accidentally touching the principal's arm and saying, "stop, I'm talking to you."

That eventually resulted in a call to Marana police with an officer telling her she could not enter school property and would have to arrange for someone else to drop off and pick up her children.

That order eventually was lifted. And misdemeanor charges of assault were eventually drooped at the request of the town prosecutor.

Hartzell filed suit in federal court. A trial judge threw most of it out before trial, citing a number of legal and procedural issues; a jury subsequently sided with the school on separate claim of defamation.

But Smith noted that the trial judge did not allow her to pursue her complaint of a First Amendment violation. That, the appellate court said was in error.

"A reasonable jury could have concluded that Hartzell was unconstitutionally banned based on official district policy," Smith wrote.

"The provision of (the policy) banning "speech ... that is offensive or inappropriate" would be unconstitutional if applied to ban Hartzell for criticizing Divijak," the appellate judge continued. "And Hartzell presented sufficient evidence to conclude that the district relied on this policy, rather than Hartzell's alleged assault on Divijak, to ban Hartzell from the Dove Mountain school premises."

Smith said the district defends the policy on the basis that schools have substantial authority to regulate speech on school grounds.

"It is certainly true that courts must apply the First Amendment in light of the special characteristics of the school environment," he wrote. "Even so, for school officials to justify prohibition of a particular expression of opinion, they must be able to show that their action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint."

What that could include, Smith said, is a showing that the conduct materially and substantially interfered with the need to maintain appropriate discipline in school operations.

"Here, the district failed to make this showing," he wrote.

For example, the appellate judge said schools may have an interest in protecting children from some types of language.

"But although Hartzell's speech was critical and sarcastic, it was not vulgar or lewd," he said.

Federal court rules against AZ school district in First Amendment case | Community Beat | wmicentral.com

"The district cannot constitutionally prohibit all speech on school property that if finds 'offensive or inappropriate,'" Smith said. "Nor can the district prohibit that speech by defining it as disruptive or intrusive."

.



aa**l**rr Atkinson, Andelson
Loya, Ruud & Romo
A Professional Law Corporation

Alerts & Articles

# Ninth Circuit Reinforces First Amendment Protections of Parent Banned from School District in Response to Speech the District Found Offensive

07.23.2025

The U.S. Court of Appeals for the Ninth Circuit recently issued a decision in a case involving a school district's indefinite ban prohibiting a parent from coming onto school district property. The parent alleged the ban was implemented, in part, due to speech by the parent that the school district found offensive and contrary to its policies. (*Hartzell v. Marana Unified School District* (9th Cir., Mar. 5, 2025, No. 23-4310) 2025 WL 700173.)

In *Hartzell*, Rebecca Hartzell ("Hartzell") was the parent of several children who attended Marana Unified School District ("District") in Arizona. For years, Hartzell advocated on issues including treatment of students with disabilities, special education funding, individualized education program ("IEP") team meeting procedures, school event scheduling, and the availability of books in the school libraries. Hartzell testified that the District retaliated against her for her advocacy (i.e. engaging in free speech) by banning her from volunteering at school sites. Hartzell's struggles with the District eventually culminated in an incident (described below) after which the District permanently banned Hartzell from coming onto District property.

On February 7, 2020, Hartzell attended student presentations at Dove Mountain K-CSTEM school where two of her children were scheduled to present in different rooms, simultaneously. Hartzell spoke with the Dove Mountain K-CSTEM School Principal, and Hartzell sarcastically thanked the Principal for making her choose which child she was going to support. The Principal responded that Hartzell was "just never happy," and walked away. As the Principal walked away, Hartzell allegedly grabbed the Principal's wrist and said, "Stop, I'm talking to you." As a result of what the Principal termed an assault, [1] Hartzell was told to

## ATTORNEYS



Sara C. Young
Partner
sara.young@aalrr.com
562-653-3200



Georgelle C. Cuevas
Partner
gcuevas@aalrr.com
925-227-9200



# Ninth Circuit Reinforces First Amendment Protections of Parent Banned from School District in Response to Speech the District Found Offensive

leave District property permanently. Eventually the District permitted Hartzell to enter school grounds to retrieve her preschool child as long as she did not speak with anyone.

Hartzell sued the District and the Principal alleging, in part, a First Amendment retaliation claim related to her history of advocating against the policies of the District and a procedural due process claim related to her right to access the physical property of a school attended by her children. Following an adverse decision from the District Court, Hartzell appealed her case to the Ninth Circuit.

First Amendment Retaliation Claim

The Ninth Circuit found that, if the District banned Hartzell due to her criticism of the Principal and practices of the school site or District, then the District's policy of barring "speech … that is offensive or inappropriate" was unconstitutional. Further, the Ninth Circuit found that the District Court erred in making a judgment on the First Amendment retaliation claim without a jury because a reasonable jury could conclude that Hartzell was banned pursuant to the District's "expressly adopted official policy" rather than the perceived assault, as alleged by the Principal. The Ninth Circuit relied on established First Amendment principles from the U.S. Supreme Court, including that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." (*Snyder v. Phelps* (2011) 562 U.S. 443, 458.) Because the District's policy allowed it to prohibit speech that it found "offensive or inappropriate," the District's policy potentially permitted violations of its constituents' constitutional rights.

Although, there are recognized exceptions to this constitutional right depending on the nature of the speech being regulated, the Ninth Circuit found them inapplicable to the facts. First, the District failed to prove that Hartzell's speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." (*Tinker v. Des Moines Indep. Cmty. Sch. Dist.* (1969) 393 U.S. 503, 509.) Furthermore, barring Hartzell from entering District property did not advance an interest in disciplining or protecting students. (*Mahanoy Area Sch. Dist. V. B.L. ex rel. Levy* (2021)



Jeffrey Torres
Associate
jeffrey.torres@aalrr.com
951-683-1122



Emaleigh Valdez
Senior Associate
emaleigh.valdez@aalrr.com
858-485-9526



Meredith E. Brown
Partner
mbrown@aalrr.com
925-227-9200



# Ninth Circuit Reinforces First Amendment Protections of Parent Banned from School District in Response to Speech the District Found Offensive

594 U.S. 180, 187.) Finally, Hartzell's speech, although critical and sarcastic, was not "vulgar" or "lewd" speech that the District had a significant interest in protecting minor students from. (*Bethel Sch. Dist. No. 403 v. Fraser* (1986) 478 U.S. 675, 684.) Accordingly, the Ninth Circuit held that if the District barred Hartzell from entering District property based on her statements to the Principal, they violated her constitutional right to free speech. This issue was remanded for further proceedings in the District Court.

However, the Ninth Circuit held that the Principal was entitled to qualified immunity on Hartzell's First Amendment claim against the Principal as an individual. Qualified immunity protects government agents from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 818.) This analysis centers around whether: 1) the Principal violated a constitutional right; and 2) whether the right was clearly established at the time of the incident. (*Id.*) The Ninth Circuit determined that although the Principal may have violated a constitutional right, she enjoyed qualified immunity because there was no consensus of case authority on this topic when she acted. (*Wilson v. Layne* (1999) 526 U.S. 603, 617.) We note that this analysis may reach a different conclusion as more established case law evolves in this area.

Procedural Due Process Claim

The Ninth Circuit noted that Hartzell was only "banned from accessing school property" and that "does not implicate Hartzell's right to direct her children's education." The Ninth Circuit, relying on prior precedent, stated that a parent's right to direct their child's education "establishes [] the right of parents to be free from state interference with their choice of the educational forum itself." (Citations omitted.) The Ninth Circuit stated that Hartzell had not properly alleged the right to choose where her children attended school was affected, and therefore, she had not properly alleged a procedural due process claim.

Impact on California School Districts

Kristin M. Myers
Partner
kmyers@aalrr.com
562-653-3200

**RELATED PRACTICE AREAS**

Education
Student Services and Disabilities

**RELATED INDUSTRIES**

Public Educational Agencies & Institutions



# Ninth Circuit Reinforces First Amendment Protections of Parent Banned from School District in Response to Speech the District Found Offensive

Local educational agencies should be cognizant of potential First Amendment violations when acting in a manner that affects the exercise of a protected right. Special education advocates as well as parents and members of the public are protected in their speech, even if their speech is critical of a school district. Policies that provide the ability to regulate speech on school grounds that is merely offensive, inappropriate, or intrusive may be deemed unconstitutional if applied incorrectly. As discussed in *Hartzell*, the offensive or inappropriate speech must cause or reasonably be likely to cause a substantial disruption or material interference with school activities.

We recommend local education agencies act cautiously when engaging in acts that could be viewed as retaliation for the exercise of a protected right. Because this area of law requires fact-specific analysis, we recommend consulting with legal counsel as appropriate. Should you have any questions concerning the topic of this alert, please do not hesitate to contact the authors or your usual counsel at AALRR for clarification and guidance.

[1] Hartzell was criminally charged with misdemeanor assault charges, but charges were later dismissed.

This AALRR publication is intended for informational purposes only and should not be relied upon in reaching a conclusion in a particular area of law. Applicability of the legal principles discussed may differ substantially in individual situations. Receipt of this or any other AALRR publication does not create an attorney-client relationship. The Firm is not responsible for inadvertent errors that may occur in the publishing process.

© 2025 Atkinson, Andelson, Loya, Ruud & Romo

Case 4:21-cv-00062-SHR   Document 201-4   Filed 04/24/26   Page 45 of 61

# Ninth Circuit Rules School District's Policy Barring Offensive or Inappropriate Speech is Unconstitutional

**CATEGORY:** Public Education Matters
**CLIENT TYPE:** Public Education
**DATE:** Mar 28, 2025

Rebecca Hartzell is the mother of eight children. During the 2019-2020 academic year, five of her children attended Dove Mountain CSTEM K-8, a school within the Marana Unified School District in Arizona. Hartzell earned a master's degree in special education and a doctorate focusing on applied behavioral analysis and autism. She worked as an associate professor of practice at the University of Arizona and served as the director of the master's program in applied behavioral analysis.

Since 2008, Hartzell advocated for improved services in the District. She frequently raised concerns with District personnel about school policies, student safety, IEP procedures, and special education funding. Hartzell argued that District employees responded negatively to her advocacy. In 2011, a District employee wrote to Hartzell that she was "asking for the moon!!!" Hartzell claimed District employees barred her from volunteering at District schools because of her emails. In 2018, a District assistant superintendent told her she was not welcome at District schools unless her children were enrolled there. A teacher also told Hartzell that her criticisms made her "pissed," and that she had "nicknames" for Hartzell, and called Hartzell her "first nasty parent."

In 2019, as the District prepared to open Dove Mountain School, Hartzell directed her concerns to Principal Andrea Divijak. At one point, Hartzell offered to help at the school, but Divijak responded that Dove Mountain was "not interested in help." Hartzell continued to email Divijak various complaints. On December 10, 2019, Hartzell complained to Divijak that a school event had scheduled her children to perform simultaneously in different locations, causing her to miss some of their performances.

On February 7, 2020, Dove Mountain hosted an event where students presented long-term projects. The school scheduled two of Hartzell's children to present at the same time. Hartzell approached Principal Divijak in a classroom and sarcastically thanked her for "making [her] choose which kid [she was] going to support again today." As Hartzell turned to leave, Divijak responded that Hartzell was "never happy."

Hartzell turned back and continued speaking, but Divijak began walking away. According to Hartzell, she accidentally touched Divijak's arm as she passed and said, "Stop, I'm talking to you." Divijak loudly told Hartzell not to touch her.

A hall monitor ordered Hartzell to leave immediately, informed her police would be called if she did not comply, and escorted her out of the building. Outside, Marana Police Department Officer Jerry Ysaguirre informed Hartzell that the school had requested a trespass order against her. He said she could not enter school property and could be arrested for trespassing if she returned.

Divijak told Ysaguirre that as she tried to walk around Hartzell, Hartzell yelled "Damn it," said the conversation was not over, and demanded she stop. Divijak said Hartzell then grabbed her left wrist and held on, forcing Divijak to pull her arm away. The alleged wrist grab was not visible on security footage, but Ysaguirre believed Divijak's reaction in the security footage was more consistent with her version of events.

On February 24, 2020, Hartzell, her husband, and her attorney met with Superintendent Wilson and a District attorney. According to Hartzell, the District stated that the ban was final and would remain indefinitely, as lifting it would upset the assistant superintendent and principal. However, the District allowed Hartzell to enter school grounds to pick up her preschooler as long as she did not speak to anyone. In June 2023, the District's counsel informed Hartzell that the ban had been lifted.

On March 30, 2020, the state filed misdemeanor assault charges against Hartzell. On September 22, 2020, the court dismissed the charges at the prosecutor's request.

In October 2020, someone delivered a document to Hartzell's employer. It included a docket sheet listing her criminal charges and a note stating, "[t]his occurred at a K-8 school in front of young children. Doesn't seem like this is the kind of person that should be training teachers let alone working with kids." In April 2021, an anonymous sender mailed another document to the University of Arizona's Compliance Office. The note accused Hartzell of using her university email account

to "harass, bully, intimidate, and threaten people." It further stated, "[a] full audit of her account will verify these accusations. Additionally, I have great concern about her mental health."

Hartzell sued the District and Divijak for First Amendment retaliation, arguing they banned her for her advocacy under an unconstitutional policy restricting "offensive or inappropriate" speech. She also sued the District and Divijak for procedural due process violations, alleging they violated her right to direct her children's education by banning her without due process. Lastly, she sued Divijak for defamation, claiming she sent the anonymous notes to her employer.

The District denied retaliating against Hartzell and argued that it banned her because of her conduct, not her speech. The District also contended that Divijak was entitled to qualified immunity, shielding her from liability for the First Amendment and procedural due process claims. Divijak did not deny sending the notes to Hartzell's employer but contended they were not defamatory. The District moved for summary judgment, asking the trial court to dismiss Hartzell's claims.

The trial court largely agreed with the District and granted summary judgment on all claims except for part of Hartzell's defamation claim. It ruled that Hartzell had no constitutional right to access school property, that Divijak was entitled to qualified immunity on the First Amendment retaliation claim, and that one of the allegedly defamatory documents contained non-actionable opinions. The jury ultimately ruled in Divijak's favor on the remaining defamation claim. Hartzell appealed.

The Ninth Circuit ruled that the District's policy prohibiting "offensive or inappropriate" speech was unconstitutional under the First Amendment. The District argued that the policy did not restrict free speech but instead prevented "harassment and disruption of the educational environment." However, the Ninth Circuit pointed out that the policy broadly defined disruption to include "use of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." The Ninth Circuit emphasized that "the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." The Ninth Circuit found a reasonable jury could conclude the District banned Hartzell based on the policy rather than her conduct.

However, the Ninth Circuit ruled that Divijak had qualified immunity on the First Amendment claim. Qualified immunity protects government officials from personal liability unless they violate clearly established constitutional rights. The Ninth Circuit ruled that Hartzell's speech rights in the school context were not clearly established.

It noted that Hartzell only identified one similar case arising in a public school context and it was not controlling. Without widespread legal guidance, it would be unreasonable to hold Divijak personally liable.

The Ninth Circuit affirmed the dismissal of Hartzell's procedural due process claim. It held that she had no constitutional right to access school property and that the ban did not interfere with her right to direct her children's education.

The Ninth Circuit ruled that a reasonable jury could find the docket sheet and attached note defamatory, since it could interpret the note as falsely accusing Hartzell of criminal conduct. However, the Ninth Circuit found that the second note, accusing Hartzell of harassment and questioning her mental health, contained statements that were non-actionable opinions.

The Ninth Circuit affirmed the trial court's dismissal of Hartzell's procedural due process claim and its ruling that Divijak had qualified immunity on the First Amendment claim. It reversed the dismissal of Hartzell's First Amendment claim against the District and part of her defamation claim against Divijak, and remanded the case for further proceedings.

*Hartzell v. Marana Unified Sch. Dist.* (9th Cir. Mar. 5, 2025, No. 23-4310) 2025 U.S. App. LEXIS 5128.

---

# View More News

Public Education Matters

## Ninth Circuit Ends Federal Oversight of School District, Finding No Link Between Present Racial Disparities and Past Segregation

Public Education Matters

## U.S. Supreme Court Issues Decision On Schools and E-Rate Reimbursements

READ MORE

Case 4:21-cv-00062-SHR    Document 201-4    Filed 04/24/26    Page 49 of 61

READ MORE

READ MORE



**April 2025**

# Washington School Law Update

*A brief summary of legal developments relevant to Washington public school districts from the previous calendar month.*

## Ninth Circuit Court of Appeals

### First Amendment

*Hartzell v. Marana Unified School District*
No. 23-4310 (3/5/25)

The Ninth Circuit Court of Appeals held that an Arizona school district's policy prohibiting speech "that is offensive or inappropriate" was unconstitutional as applied to a parent who was banned from campus following an altercation with a building principal. The Court further held that the parent had established a viable First Amendment retaliation claim because a reasonable jury could conclude that the parent was banned from campus due to her "offensive or inappropriate" speech per district policy, rather than her conduct. Rebecca Hartzell is the parent of eight school-aged children in the Marana Unified School District (District), five of whom attended Dove Mountain K-CSTEM school (Dove Mountain) during the 2019-20 school year. Hartzell repeatedly expressed concerns to Dove Mountain Principal Andrea Divijak that Hartzell's children were scheduled to perform simultaneously in different locations, which meant she could not watch all her children perform. On February 7, 2020, Dove Mountain hosted an event where

children presented on projects, and two of Hartzell's children were scheduled to present in different rooms simultaneously. Hartzell saw Divijak in a classroom, approached her, and "sarcastically" thanked Divijak for "making [her] choose which kid [she was] going to support again today." According to Hartzell, Divijak refused to speak with her further, turned away, at which point, Hartzell touched Divijak's arm and said, "stop, I'm talking to you." Divijak, on the other hand, claimed that Hartzell grabbed her wrist and prevented her from walking away. Marana Police Department officers approached Hartzell in the school parking lot, informed her they would be investigating an assault involving a teacher, and told her she was "trespassed from" the entire school property, meaning she could no longer drop off and pick up her children from Dove Mountain. Hartzell met with the superintendent on February 24, who informed her of the District's decision that she be banned from school grounds indefinitely. In doing so, the District relied on its policy, which prohibits in part "[u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." The District did not lift the ban until June 2023. Meanwhile, the state filed misdemeanor assault charges against Hartzell, which were eventually dismissed. On February 4, 2021, Hartzell filed a lawsuit against the District and Divijak, alleging in part a First Amendment retaliation claim. The case proceeded to trial, and at the close of evidence, the



District moved for judgment as a matter of law on the retaliation claim, which the district court granted, meaning that the district court decided in favor of the District on that claim without allowing the jury to decide based on the evidence presented. Hartzell appealed, and the Ninth Circuit Court of Appeals reversed, holding that Hartzell's First Amendment retaliation claim was viable to the extent it relied on District policy because the portion of the District policy prohibiting "offensive and inappropriate" speech was unconstitutional. The Court noted that the special characteristics of the school environment allow the District to restrict speech that materially and substantially interferes with the operation of the school, but held that the District cannot constitutionally prohibit all speech that it deems offensive or inappropriate. As a result, the Court held that to the extent the District applied the portion of its policy barring speech that is "offensive or inappropriate" to Hartzell, it violated the First Amendment. The Court further noted that at trial, the parties presented conflicting evidence as to whether Hartzell was banned for her speech or whether she was banned for her conduct of grabbing Divijak's wrist. The Court held that this conflicting evidence presented a question of fact for the jury to decide, and therefore, the trial court erred by resolving the issue as a matter of law in favor of the District. As a result, the Court reversed Hartzell's First Amendment retaliation claim and remanded for further proceedings.

## First Amendment
*Jensen v. Brown*
No. 23-2545 (3/10/25)

The Ninth Circuit Court of Appeals held that a math professor had a clearly established constitutional free speech right to criticize changes to his employer's curriculum without being disciplined. Lars Jensen is a math professor at a community college in Nevada, which is part of the state's higher education system. In June 2019, the Board of Regents adopted a new "co-requisite policy," which would place students in college level math classes even if they needed remedial math instruction. Jensen disagreed with the policy

changes, and in December 2019, he emailed the entire math department faculty his concerns regarding these new coursework standards. In January 2020, the College held a "Math Summit" to discuss the policy implementation with the community, and during a question-and-answer session, Jensen attempted to criticize the policy, but a College administrator cut him off and ended the session. Afterward, Jensen created a handout discussing his concerns, including argument that the curriculum changes would lower the technical skills of graduates in the program, which he argued would impact employers in the community. During a break in the Math Summit, Jensen distributed his handout room to room. The administrator collected the copies, informed Jensen that he was being disruptive, and instructed him to not distribute the handout. Jensen defied the directive and continued to distribute the handout. Jensen was later reprimanded for defying this order, and during his 2019-20 annual performance evaluation, he received an "unsatisfactory" rating based upon his insubordination. During the next year's annual performance review, Jensen again received an "unsatisfactory" rating based upon his criticism at the Math Summit. The College then decided to terminate Jensen's employment based upon him receiving two "unsatisfactory" performances in a row. Jensen challenged his termination by filing a First Amendment retaliation complaint in federal court, naming only various administrators in their personal capacities as defendants. The district court dismissed Jensen's complaint, finding that his lawsuit against the individual administrators was barred by qualified immunity, a doctrine that shields government officials from personal liability unless they violated a "clearly established" constitutional right. The Ninth Circuit reversed and held that the administrators violated clearly established law when they disciplined Jensen for his speech. The Court first held that Jensen's criticism of the way the College operated its math department, and the resulting lower standards among graduates, was a matter of public concern, and therefore implicated free speech protection. The Court next cited its precedent in which it previously held that speech "related to scholarship or teaching," including curriculum, is entitled to free speech protection, even



if the speech is made pursuant to the employee's official duties. Because the speech was entitled to First Amendment protection, the College needed to show its interest in promoting efficiency in the services it performs outweighed Jensen's free speech rights. The Court held that the College could not meet that burden here because there was no evidence of actual, material and substantial disruption or reasonable prediction of disruption to the workplace. In reaching this conclusion, the Court held that the disobedience of a directive is not sufficient to show disruptive impact, and that the College needed to provide some indication that Jensen's speech would have impaired the College's functioning, which it failed to do. Finally, the Court held that the individual administrators were not barred from personal liability in this case because Ninth Circuit case law clearly established that a professor has the right to speak about a school's curriculum without facing discipline. As a result, the Court reversed dismissal of Jensen's First Amendment retaliation lawsuit and remanded for further proceedings.

## Washington Court of Appeals

### Public Records Act
*Hood v. City of Vancouver*
No. 59242-8-II (3/4/25)

The Washington Court of Appeals reversed dismissal of a Public Records Act (PRA) lawsuit filed by Eric Hood, holding that there remained a disputed issue of material fact as to whether the agency had conducted an adequate search for responsive emails. In May 2022, Hood submitted a records request to the City of Vancouver seeking "all records" related to a recent audit of its "organization," including "all records of its response to the audit or to the audit report, including changes to policy or practices." The City interpreted the request as seeking records related to the recent audit of the City, not the recent audit of the Downtown Redevelopment Authority (DRA), a local entity created by the City to manage construction and maintenance projects. The City provided Hood a link to the audit report on the state auditor's website. The City's public records system then sent Hood an

automated email repeating his initial request, to which Hood responded that he "made a request to the Downtown Redevelopment Authority on 5/27." The City responded to this communication by providing Hood a link to the auditor's website and instructing him to type "Downtown Redevelopment Authority" in the search box to locate the DRA audit report. The City also requested clarification as to what documents other than the report Hood sought, to which Hood repeated his request almost verbatim. Internal emails showed that City staff believed Hood's request encompassed all "records sent/received; to/from; state auditor's office" regarding the DRA's recent audit. On June 21, 2022, the City disclosed 46 pages of responsive records, which did not include any emails, and it closed the request. Almost a year later, Hood filed a PRA lawsuit, claiming that the City had failed to search for and produce responsive records. Hood also submitted a records request to the state auditor, seeking the same documents he had requested from the City, and in response, the state auditor provided more than 100 emails, many of which were exchanged between its office and City employees mentioning the DRA. The trial court dismissed Hood's lawsuit on summary judgment, finding that the City's response was sufficient as a matter of law. The Court of Appeals reversed, holding that there remained a genuine issue of material fact as to whether the City performed an adequate search because it was not clear whether the City had searched for email records. The Court noted that the emails would have been responsive to Hood's request, and the City employees' declarations did not address whether the email databases were searched, and if not, why they were not searched. As a result, the Court reversed dismissal of Hood's lawsuit and remanded to the trial court for further proceedings.

### Wrongful Termination
*Contreras v. City of Yakima*
No. 39868-4-III (3/20/25) (unpublished)

The Washington Court of Appeals affirmed dismissal of a bus driver's wrongful discharge in violation of public policy lawsuit, holding that she failed to allege sufficient evidence for a jury to conclude that her employer terminated her based upon her union



activity. Isabel Contreras was terminated as a bus operator with Yakima Transit following a series of unsafe bus driving incidents. The first incident occurred when a citizen reported that she had almost been hit by a city bus that ran a stop sign, which was later confirmed to be true based on the bus camera recordings. Yakima Transit imposed a written reprimand on Contreras for this incident. Three years later, a passenger reported that Contreras had charged her full bus fare despite being a senior citizen. Contreras's direct supervisor, Jeff Beaver, reviewed the video footage and confirmed that Contreras had charged the passenger full fare because she had failed to present her reduced fare identification card. The video also showed Contreras failing to stop at five stop signs. Beaver did not have authority to discipline Contreras for misconduct and instead filed an incident report regarding the fare incident. Beaver then started a separate investigation into the conduct of failing to stop at the stop signs. Beaver asked Contreras to meet regarding the fare incident, and he did not intend any discipline to arise from the meeting. Instead, he planned only to tell Contreras that he had informed the passenger that she needed to present her identification card to ride the bus with reduced fare. Nevertheless, Contreras requested that a union representative be present at the meeting, which Beaver did not appreciate. Following that meeting, Beaver continued to investigate Contreras's failure to stop at stop signs, which was substantiated, and led to the City of Yakima suspending Contreras. Four days after Contreras returned to work, a different passenger filed a complaint with Yakima Transit, alleging that Contreras had rudely spoken to her and drove the bus forward before she had time to sit and remove her baby from a stroller. These allegations were substantiated by video, and the city manager decided to terminate Contreras based upon this incident. Contreras filed a wrongful termination lawsuit against the City, arguing that the City had terminated her in violation of public policy based upon her union activity. The superior court dismissed the wrongful termination claim on summary judgment, and the Court of Appeals affirmed. The Court held that Contreras failed to allege sufficient facts for a jury to conclude that the city manager decided to terminate her based upon her

requesting a union representative because there was no evidence the city manager knew of this request. The Court held that there was no evidence Beaver either directly or indirectly communicated about the union representation request to the city manager, or that the request influenced the city manager's decision to terminate. As a result, the Court affirmed dismissal of Contreras's wrongful termination claim.

## Tort Claim Requirements

*Flaherty v. Seattle Public School District*
No. 86778-4-I (3/31/25) (unpublished)

The Washington Court of Appeals reversed dismissal of a former teacher's tort claims against Seattle Public Schools ("District") even though she did not follow statutory pre-litigation notice requirements under chapter 4.96 RCW, holding that she had "substantially complied" with the notice requirements. Jacquelyn Flaherty is a former elementary school teacher who alleged that the District had retaliated against her for reporting abusive treatment and for advocating on behalf of disadvantaged students of color, and had discriminated against her based upon her racial identity and disability. In July 2022, Flaherty through her attorney submitted to the District a completed "Seattle Public Schools Discrimination Complaint Form" and a supplement she entitled, "Seattle Public School Tort Claim." She sent these materials to the District's Human Resources Department even though the District's general counsel was the agent appointed to receive notice of tort claims and even though the District had designated its "Personal Injury Claim" form for tort claim notice purposes. Flaherty filed a lawsuit against the District in October 2022, making similar allegations as in her notice. The District moved to dismiss the lawsuit based on Flaherty's failure to comply with RCW 4.96.020, the state statute that governs the presentation of claims for damages to local government entities, including school districts. The superior court granted the District's motion, ruling that Flaherty had failed to comply with the statute by providing the wrong form to the wrong person and by not including a monetary amount of claimed damages, all of which were required by statute. The Court of Appeals reversed, reasoning that strict compliance



with the notice requirements is not required under existing precedent, and that a claim can move forward so long as the claimant made "a bona fide attempt" to comply with the claim filing statute. The Court held that Flaherty had substantially complied with the statute because the cover letter for her materials requested that Human Resources notify the District's attorney of her claim, and the form she used was very similar to the one that the District had designated under the notice statute. Finally, the Court held that failure to provide a dollar amount of claimed damages was not required under RCW 4.96.020 so long as the notice provides a description of the damages claimed so as to allow the government an opportunity to investigate, negotiate, and possibly settle claims, which Flaherty's notice provided. As a result, the Court reversed dismissal of Flaherty's lawsuit and remanded for further proceedings.

## Washington School Law Update

The **Washington School Law Update** is published by Porter Foster Rorick LLP on or about the 5th of each month. To be added to or removed from our distribution list, simply send a request with your name, organization, and e-mail address to info@pfrwa.com.

### Update Editors





Liz Robertson
elizabeth@pfrwa.com

Jay Schulkin
jay@pfrwa.com

### April Masthead Photo Credit



Music class at Parkland School, Seattle, 1939. Seattle Post-Intelligencer Collection, Museum of History & Industry, Seattle. All rights reserved.



**PORTER FOSTER RORICK** LLP

601 Union Street | Suite 800
Seattle, Washington 98101
Tel (206) 622-0203 | Fax (206) 223-2003
www.pfrwa.com

Lance Andree
Lynette Baisch
Chase Bonwell
Collin Burns
Cliff Foster

Olivia Hagel
Josh Halladay
Parker Howell
Rachel Miller
Buzz Porter
Liz Robertson

Mike Rorick
Jay Schulkin
Greg Swanson
Christina Weidner
Lorraine Wilson

# The Volokh Conspiracy

Mostly law professors | Sometimes contrarian | Often libertarian | Always independent

About The Volokh Conspiracy ▼

FREE SPEECH

## School District Can't "Prohibit All [Parents'] Speech on School Property That It Finds 'Offensive or Inappropriate'"

**EUGENE VOLOKH** | 3.5.2025 5:48 PM

An excerpt from the 11,000-word opinion in _Hartzell v. Marana Unified School Dist._, decided today by Ninth Circuit Judge Milan Smith, joined by Judges Wallace Tashima and Bridget Bade:

> Following an incident on February 7, 2020, at Dove Mountain K-CSTEM school (Dove Mountain), Plaintiff-Appellant Rebecca Hartzell was banned from the school premises. Hartzell claims that she was banned from the school in retaliation for her protected speech. Defendants-Appellees, the Marana Unified School District (the District) and Andrea Divijak, the principal at Dove Mountain, assert that Hartzell was banned because of her conduct; specifically, they allege that Hartzell assaulted Divijak….
>
> Hartzell is the parent of eight school-aged children, five of whom attended Dove Mountain during the 2019–20 school year. Divijak was serving as the principal of Dove Mountain at that time. In August 2019, the District opened Dove Mountain, a new kindergarten through eighth grade school. Dove Mountain is a part of and run by the District….
>
> Hartzell has a master's degree in special education and a doctorate focusing on applied behavioral analysis and autism. She also became an associate professor of practice at the University of Arizona, and a director of the master's program in applied behavioral analysis at that institution….
>
> On February 7, 2020, Dove Mountain hosted an event where students presented projects they had been working on for a few months. Two of Hartzell's children were scheduled to present in different rooms simultaneously. While attending the event, Hartzell saw Divijak in a classroom and approached her. Hartzell was accompanied by one of her children, who attended preschool at Dove Mountain. No other children were present.
>
> Hartzell "sarcastically" thanked Divijak for "making [her] choose which kid [she was] going to support again today." Hartzell testified that she began to walk away, but Divijak responded that she was "sorry that [Hartzell was] just never happy." Hartzell testified that she turned back around and explained her proposed solution to the scheduling conflicts.

4/24/26, 10:12 AM
Case 4:21-cv-00062-SHR Document 201-4 Filed 04/24/26 Page 56 of 61
School District Can't "Prohibit All [Parents'] Speech on School Property that it Finds offensive or Inappropriate'"

According to Hartzell, Divijak refused to speak with her further and began to walk away while Hartzell was speaking. Hartzell says she responded that it seemed she and Divijak were never able to have a conversation. However, Hartzell denies doing anything to stop Divijak from walking away and specifically denies grabbing Divijak's wrist. Even so, Hartzell acknowledges that she accidentally touched Divijak's arm as she walked by and that she said "stop, I'm talking to you." Hartzell recalls that Divijak shouted, "Don't touch me." Hartzell testified that Divijak continued walking away and that Hartzell said, "Forget it. I'll just contact the District."

After her interaction with Divijak, Hartzell went to the room where one of her daughters was giving a presentation. Hartzell testified that she was approached by a hall monitor, who ordered Hartzell to leave immediately, informed her that the police would be called if she did not leave, and escorted her out of the building. Hartzell went to the parking lot and was approached by Marana Police Department Officer Jerry Ysaguirre.

According to Ysaguirre, Hartzell admitted placing her hand on top of Divijak's wrist to stop her so they could continue speaking. Hartzell said she immediately regretted this action and removed her hand. Hartzell insisted to Ysaguirre that she never grabbed Divijak's wrist.

Ysaguirre advised Hartzell about the procedures for investigating "an assault" involving a teacher. He told her that she was "trespassed from" the entire school property and that, while her children could continue to attend Dove Mountain, Hartzell could not enter school property and would have to arrange for someone else to drop off and pick up her children. Ysaguirre explained that Hartzell could be arrested for trespassing if she returned. Ysaguirre told Hartzell that the order would remain in effect until the District decided otherwise….

On March 30, 2020, the state filed misdemeanor assault charges against Hartzell in Marana Municipal Court for "knowingly touching another person with the intent to injury, insult of provoke such person," in violation of At the request of the town prosecutor, the charges were dismissed on September 22, 2020….

Hartzell sued, among other things arguing that she was excluded under "District Policy KFA," and that this policy is unconstitutional. The court allowed this case to go forward:

District Policy KFA … prohibits "[a]ny conduct intended to obstruct, disrupt, or interfere with" a school's operations, "[p]hysical or verbal abuse or threat of harm to any person on property owned or controlled by the District," and "[u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." The policy provides that "[a]ny member of the general public considered by the Superintendent, or a person authorized by the Superintendent, to be in violation of these rules shall be instructed to leave the property of the District," and that "[f]ailure to obey the instruction may subject the person to criminal proceedings pursuant to A.R.S. 13-2911 [for trespassing.]" …

Policy KFA defines "interfer[ing] with or disrupt[ing]" an educational institution to include, among other things, "[u]se of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Because Policy KFA allows the District to prohibit speech that it finds "offensive or inappropriate," it runs afoul of this principle.

The District defends Policy KFA by arguing that schools nevertheless have substantial authority to regulate speech on school grounds. It is certainly true that "courts must apply the First Amendment 'in light of the special characteristics of the school environment.'"Even so, for "school officials to justify prohibition of a particular expression of opinion, [they] must be able to show that [their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." "Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained."

Here, the District has failed to make this showing. First, Hartzell proffered testimony that she did not grab Divijak's arm, but merely accidentally touched Divijak's arm as she walked by. A reasonable jury could infer from this testimony that Hartzell was banned for her speech during her encounter with Divijak as opposed to any physical contact. "'[P]ure speech' … is entitled to comprehensive protection under the First Amendment."

Second, the District's interest in disciplining and protecting students was not in play. The speaker was a parent rather than a student, the parent was speaking to another adult, and the only child within earshot was the speaker's own. On these facts, the District does not have a special interest in regulating speech because it is not standing "in the place of parents," as sometimes occurs when regulating student speech.

Third, to be sure, schools have "an interest in protecting minors from exposure to vulgar and offensive spoken language." But although Hartzell's speech was critical and sarcastic, it was not vulgar or lewd like the speech described in *Bethel. Bethel* also recognized a school's interest in "prohibit[ing] the use of vulgar and offensive terms in public discourse." However, unlike a "school assembly or a classroom" with an "unsuspecting audience of … students," the need to teach students the "appropriate form of civil discourse" does not arise when the speech at issue is made by a parent to an administrator outside of the presence of students except for the parent's child….

Finally, although Hartzell's speech occurred on school property, Hartzell had been invited to attend the presentations of her children, and Divijak had been speaking with other parents. In that context, it was not disruptive or intrusive for Hartzell to approach Divijak and express concerns related to her children's education.

The District cannot constitutionally prohibit all speech on school property that it finds "offensive or inappropriate." Nor can the District prohibit that speech simply by defining it as disruptive or intrusive. Clearly, the District can prohibit offensive or inappropriate speech if it "materially and substantially interfere[s] with the requirements of appropriate discipline in the operation of the school[.]" Although "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression," "facts which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities" could be different. Such facts are not present here.

As a result, the provision of Policy KFA barring "speech … that is offensive or inappropriate" is unconstitutional if the District applied it to ban Hartzell because of her criticism of Divijak….

Start your day with *Reason*. Get a daily brief of the most important stories and trends every weekday morning when you subscribe to *Reason Roundup*.

Email Address    **Subscribe**

---

## _**NEXT:**_  See, I Told You So

---

**EUGENE VOLOKH** is the Thomas M. Siebel Senior Fellow at the Hoover Institution at Stanford, and the Gary T. Schwartz Distinguished Professor of Law Emeritus and Distinguished Research Professor at UCLA School of Law. Naturally, his posts here (like the opinions of the other bloggers) are his own, and not endorsed by any institution. He is also the co-host of the _Free Speech Unmuted_ podcast.

**FREE SPEECH**

Add Reason to Google    MEDIA CONTACT & REPRINT REQUESTS

💬 Show Comments (30)

## _RECOMMENDED_

**Major League Soccer fans disciplined after immigration protests**

**Campus Protest Hypocrisy Reveals Need For Student Education on Free Speech**

**Trump Calls For Jailing American Flag Burners**

About

Browse Topics

Events

Staff

Jobs

Donate

Advertise

Subscribe

Contact

Media

Shop

Amazon

Add Reason to Google

© 2026 Reason Foundation | Accessibility | Privacy Policy | Terms Of Use

This site is protected by reCAPTCHA and the Google **Privacy Policy** and **Terms of Service** apply.

# U.S. Ninth Circuit Court of Appeals weighs in on Marana Unified School District First Amendment policy

- Levi Bevis, Secular AZ Legal Intern



**SECULARAZ**
APR 18, 2025

♡ 3    ○    ↻ 1         Share

April 18, 2025

The First Amendment has long been a contentious area of law, especially when it comes to its application in public schools. While discussions over the inclusion of religious topics and materials, use of public property for religious purposes, or student and teacher speech may come to mind, today's discussions are increasingly focused on school district policies that were developed to prevent harassment of teachers, administrators, and others by community members and parents.

On March 5, 2025, the U.S. Ninth Circuit Court of Appeals weighed in on one such matter that arose from the Marana Unified School District (MUSD) in *Hartzell v. Marana Unified School District*. In this case, Rebecca Hartzell, whose children are enrolled at Dove Mountain K-8 CSTEM school, was banned from the school grounds after she allegedly assaulted the school principal, Andrea Divijak. Hartzell has previously sought opportunities to get involved in volunteering at Dove Mountain, and she claimed that she was banned in retaliation for protected speech in which she repeatedly criticized the school district, Dove Mountain school, and school administrator. Divijak and MUSD argued that Hartzell was banned because of her conduct that violated school policy, namely that she assaulted Divijak.

The incident at the center of the case occurred on February 7, 2020, when Dove Mountain held an event where students gave presentations on projects to parents. Hartzell's two children were scheduled to present in different rooms at the same time, and upset at this situation, Hartzell began making remarks about the situation to Divijak. The two disagreed on the matter and tensions rose. Divijak claims that, as she was walking away from the conversation, Hartzell grabbed her wrist and attempted to stop her from walking out of the room. Hartzell denies doing this, although she did acknowledge that "she accidentally touched" Divijak's arm.

Following the incident, Divijak asked the Marana Police Department to remove Hartzell from the school premises and issue an exclusion order that prevented Hartzell from returning to school property while her children attended the school. Divijak cited District Policy KFA, which prohibits conduct that seeks to "obstruct, disrupt, or interfere with" a school's operation, "physical or verbal abuse or threats of harm to any

person" on MUSD property, and "use of speech or language that is offensive or inappropriate to the limited forum of the public school." Violators of this policy may be instructed to leave school property, and failure to a[...] in criminal charges of trespassing under Arizona law.

Hartzell brought four claims in her suit: 1) First Ame[...] both the MUSD and Divijak, 2) a procedural due proce[...] defamation claim against Divijak for allegedly sending[...] Hartzell's employer, the University of Arizona, discuss[...]

The U.S. District Court for the District of Arizona init[...] ruling that 1) Hartzell did not have a protected liberty [...] property, 2) that Divijak was entitled to qualified imm[...] administrator on the First Amendment retaliation clai[...] favor of Divijak on the defamation claim since the inf[...] documents was either factually accurate or unactionab[...] proceed.

However, the Ninth Circuit reversed most of these hol[...] found that Hartzell's First Amendment claim of retaliation was valid because a reasonable jury could find the MUSD Policy KFA banning "offensive or inappropriate" speech was used against Hartzell based on previous criticism Hartzell directed at Divijak. The Court explained that District Policy KFA is unconstitutional because a school district cannot prohibit speech it deems "offensive or disagreeable" or "disruptive or intrusive," and since the action was directed at a parent instead of a student, limited First Amendment protections on school property does not apply.

The Ninth Circuit affirmed the lower court's finding that Divijak was entitled to qualified immunity based on this First Amendment retaliation claim, and as such, Hartzell's retaliation claim against Divijak fails. However, the retaliation claim was held as viable against MUSD because of District Policy KFA. The Court also affirmed that Hartzell's claim of a violation of her right to direct her children's education was not valid because that right only applies to a parent's ability to select the school of choice for their children. Since that right is not impacted here, the Ninth Circuit held that the claim was correctly dismissed.

However, on the final defamation claim, the Ninth Circuit ruled that the District Court incorrectly found in favor of Divijak. The Court of Appeals found that a reasonable jury could find the first one of the documents to be defamatory, but not the second document. The first document in question was a print out of a court docket sheet reflecting the criminal charges against Hartzell with the handwritten statement "This occurred in a K-8 school in front of young children. Doesn't seem like this is the kind of person that should be training teachers let alone working with kids" on it. The

Discover more from Secular AZ's Substack

We publish posts & musings from our staff, board memb[...] and guest authors on a range of topics related to church:state separation. *Opinions expressed here aren[...]

Over 6,000 subscribers

Enter your email...

Subscribe

By subscribing, you agree Substack's Terms of Use, and acknowle[...] its Information Collection Notice and Privacy Policy.

Already have an account? Sign in

Case 4:21-cv-00962-SHR    Document 201-4    Filed 04/24/26    Page 61 of 61

second document was a typed, unsigned single paragraph stating that Hartzell had used her university email account to "harass, bully, intimidate, and threaten people."

This case calls into question similar school district policies that seek to protect faculty, staff, and administrators from parents and community members who may engage in harassing, bullying, and even threatening behavior. While future legal action may expound on which school policies in this vein may stand, school administrators and districts will likely have to tread lightly in the future to prevent additional lawsuits over First Amendment claims. This approach will only leave more teachers and school administrators with fewer protections against harassment from parents and community members.



3 Likes · 1 Restack

## Discussion about this post

Comments     Restacks

Write a comment…

© 2026 Secular AZ · Privacy · Terms · Collection notice
Substack is the home for great culture