# EXHIBIT K

# Snell & Wilmer
### —— L.L.P. ——
LAW OFFICES

One South Church Avenue
Suite 1500
Tucson, AZ 85701-1630
520.882.1200
520.884.1294 (Fax)
www.swlaw.com

ALBUQUERQUE
BOISE
DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
PORTLAND
RENO
SALT LAKE CITY
SEATTLE
TUCSON
WASHINGTON DC

Sandra L. Jonas
520.882.1229
sjonas@swlaw.com

September 24, 2020

**VIA FIRST CLASS MAIL AND E-MAIL**

Ms. Rebecca Hartzell
12400 N. Camino del Plata
Tucson, AZ 85755
beccahartzell@gmail.com

Re:    Agreement for Legal Services

Dear Ms. Hartzell:

We are pleased that you have asked Snell & Wilmer to serve as counsel in connection with the matter described below. This letter will confirm the terms of our engagement and describe the basis on which our firm will provide legal services. If the following provisions are agreeable, please sign a copy of this letter where indicated below and return it to us. If you have questions about anything in this letter, please do not hesitate to call. Once again, we are pleased to have the opportunity to serve you.

1.      *Client; Scope of Engagement.* Our client in this matter will be only you, Rebecca Hartzell. The scope of our engagement will be prelitigation representation of you in notifying Dove Mountain School ("School"), the School's principal, Andrea Divijak, and Marana Unified School District ("District") of your claims which arise from allegations about you that resulted in the District limiting your ability to enter School property and the filing of criminal charges that were subsequently dismissed. The scope of the prelitigation representation includes researching, advising, communicating with representations for the School, Andrea Divijak, and the District, and preparing and serving a Notice of Claims and demand letter, but does not include filing litigation. For all other matters, you are represented, if at all, by separate counsel. Our acceptance of this engagement does not involve an undertaking to represent your interests in any matter other than as described in this paragraph. That means that, unless specifically included within the scope of the engagement, this engagement does not include advice on other areas including, but not limited to, business, investment, insurance, bankruptcy, tax or accounting advice. While our firm will be pleased to discuss expanding the scope of the engagement to include other areas, including filing or defending litigation for you, any expansion of the scope of engagement must be agreed to by both you and this firm in a separate written communication.

Snell & Wilmer is a member of LEX MUNDI, The Leading Association of Independent Law Firms.

## Snell & Wilmer
###### L.L.P.

Ms. Rebecca Hartzell
September 24, 2020
Page 2

2.    *Fees, Expenses and Staffing.*  I want to encourage you to bring to my attention at any time any questions or concerns relating to either our services or our fees.  To assist you in understanding our billing practices, I enclose a copy of our current Policy on Professional Fees. While hourly rates for attorneys and paraprofessional staff are adjusted from time to time, my current hourly rate is $345.00.  In addition to myself, Jeffrey Willis will most likely work with me representing your interests in the most cost effective and efficient manner.  The current hourly rate for Jeffrey Willis is $620.00.  Billings for professional services, however, will be based on all of the considerations discussed in the enclosed Policy on Professional Fees and not simply hours expended and hourly rates.  We will send statements for professional fees and expenses to your attention on a monthly basis.  Payment is due upon receipt.

Our firm normally requests a retainer before we begin working for new clients to secure the payment of our fees, costs and expenses that are either billed and unpaid or incurred but as yet unbilled.  The amount of any requested retainer is not intended to be an estimate of the total fees or expenses that may be incurred in this matter.  In supplying such a retainer, you are granting Snell & Wilmer an interest in that fund as security for payment. The initial retainer required is $7,500.00, which is to be applied to the final billing.  In the event that you and we agree to expand the representation to include litigation, an additional $5,000 retainer will be necessary prior to filing or appearing in litigation.  Any excess will be returned to you at the time our final billing is rendered.  In the event any interim statement for services remains unpaid for a period in excess of sixty (60) days, the firm may apply the retainer to the unpaid balance, but will then require restoration of the original retainer.  We would appreciate your prompt attention to this request as we cannot undertake the substantive tasks involved in representing you until we receive this initial retainer.

3.    *Cooperation and Communication; Termination; Withdrawal.*  We will provide legal counsel to you in accordance with this letter and in reliance upon information and guidance provided by you, will keep you or other Client representatives reasonably informed of progress and developments, and will respond to your inquiries.  To enable us to represent you effectively, you agree to cooperate fully with us in connection with this matter, and to fully and accurately disclose all facts and documents that may be relevant to the matter or that we may otherwise request.  You also will make necessary representatives reasonably available to attend meetings, conferences, and other proceedings as may be necessary.

Because it is important that we be able to contact you at all times to consult about your representation, you agree to inform us, in writing, of any changes in the name, address, telephone number, contact person, e-mail address, or other relevant changes regarding you. Whenever we need instructions or authorization to proceed with legal work on your behalf, we will contact you at the latest address we have received from you.

## Snell & Wilmer
—— L.L.P. ——

Ms. Rebecca Hartzell
September 24, 2020
Page 3


Either at the beginning or during the course of our representation, we may express opinions or beliefs concerning various courses of action and the results that might be anticipated. Any such statement made by any partner or employee of our firm is intended to be an expression of opinion only, based on information available to us at the time, and should not be construed by you as a promise or guarantee.

You may terminate our representation at any time by notifying us. Subject to any applicable rules of professional conduct, we may withdraw from representation if you fail to fulfill obligations under this agreement, including obligations to timely pay our fees and expenses, or for any other reason permitted or required under those rules. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the above matter, and you agree to take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to perfect our withdrawal. Termination of our representation will not affect your responsibility for payment of outstanding statements and accrued fees and expenses incurred before termination or in connection with an orderly transition of the matter.

Unless previously terminated, our representation will terminate upon our sending you our final statement for services in this matter. Upon the completion of our work on the last active matter we have for you, you will be considered a former client for all matters. Following termination of each matter, any otherwise nonpublic information you have supplied to us and that is retained by us will be kept confidential in accordance with the applicable rules of professional conduct and we will close the file for that matter. During the course of our representation and as part of the file closing process, we will endeavor to keep relevant information in the file. Consistent with the firm's records retention and disposal policy, however, we may, in our discretion, discard various documents including but not limited to drafts, notes, research, memoranda, correspondence, and other documents. We will be pleased to furnish you with a copy of the policy upon request, and to answer any questions about it. The contents of the closed file will be retained by the firm and stored for a reasonable period of time in accordance with the policy. Upon request, you may obtain at no cost, a copy of any such materials that have not been previously furnished. In addition, please let us know if you would like us to return any original papers or other property which is, or has been, furnished to us. In the absence of contrary instructions, we will dispose of such items in accordance with the policy. The period for which particular client files will be retained may vary depending on the nature of the matter and the engagement. Following the prescribed retention period, those files may be destroyed or otherwise disposed of without further notice or attorney review.

4.      *Conflicts of Interest.*  In undertaking this representation, our objective is to represent you to the best of our ability without forfeiting the representation of other existing or potential clients. One purpose of this letter, therefore, is to avoid our disqualification from

# Snell & Wilmer
### ——— L.L.P. ———

Ms. Rebecca Hartzell
September 24, 2020
Page 4

representing such existing or potential clients on matters unrelated to those for which you have engaged us. Given the limited nature of our representation, there are certain conditions to our engagement which we would like to explain to you and to which we would like to secure your approval and consent.

Snell & Wilmer is a large law firm that has represented, and continues to represent, many different corporate and individual clients with various business interests in numerous industries. It is possible that, during the time we are representing your interests in the matter for which we have been engaged, we may be asked to represent interests, belonging to one of the firm's present or future clients, that are adverse to yours. If such a conflict were to arise between your interests and those of another present or future client of the firm, the firm reserves the right to represent the interests of the other client with respect to that particular matter.

Therefore, as a specific condition to our undertaking your representation, you understand and agree that this firm may continue to represent, or may undertake in the future to represent, existing or new clients in any matter that is not substantially related to the matter we are handling on your behalf, even if the interests of such other clients in those other matters are directly adverse to yours and even if those other matters ripen into or involve litigation between such other clients and you.

We agree, however, that your prospective agreement and consent to such conflicting representation shall not apply in any instance where, as a result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to such other client, could be used to the material disadvantage of your interests in the matter involved. Nor shall it apply to permit us to represent any client against you in any litigation or similar proceeding in which we represent you.

We understand that you are likely familiar with the potential consequences of such a prospective conflict of interest waiver as a result of your business dealings. Nevertheless, you may want to consider consulting separate counsel regarding whether to grant such a waiver on the terms set forth herein. We encourage you to do so before agreeing to these terms of representation.

5. *Alternative Dispute Resolution* ("ADR"). In recent years, the law, lawyers, and clients have turned increasingly to alternative methods of resolving disputes, before filing suit, or without ever filing suit. These alternatives include, among other things, private mediation, arbitration, and shorter versions of court proceedings, like mini-trials. The alternative methods of dispute resolution can in some cases save clients money, time, and publicity, though they have their disadvantages as well, including, for most non-judicial methods of resolution, the loss of rights of appeal. Given the popularity and importance of ADR, we want you to know that we are available to discuss ADR options.



Ms. Rebecca Hartzell
September 24, 2020
Page 5


6.    *Tax Advice Policy.  Whether or not you have requested the firm to provide federal* tax advice in connection with this engagement, there is at least a possibility that federal tax issues requiring such advice may arise in the future.  For this reason, I am also enclosing with this letter a copy of the firm's "Statement of Policy Regarding Federal Tax Advice."  I encourage you to review it and call me with any questions.

Please review this letter carefully.  If the terms and conditions of our representation and the billing arrangements are acceptable, please sign a copy of this letter where indicated and return it to me with retainer so that we may begin work.  Please call if you have any questions.

We very much appreciate this opportunity to work with you.

Very truly yours,

Snell & Wilmer L.L.P.

Sandra Jonas


I have reviewed this letter and Snell & Wilmer's Policy on Professional Fees, and I agree to the terms and conditions of representation and the billing arrangements.

_____
Rebecca Hartzell


Enclosures

4852-4489-9788

**POLICY ON PROFESSIONAL FEES**

TO OUR CLIENTS:

The attorney-client relationship works best when there is a mutual understanding about fees and payment terms.  Accordingly, our Policy on Professional Fees is intended to explain briefly our current billing policies and procedures.  These policies and procedures are subject to change.  We encourage you to discuss with us at any time any questions you might have concerning these policies and procedures.

**How Fees Are Determined**.  To help us determine the value of our services, we ask each of our attorneys, paralegals, legal assistants and certain clerical personnel providing specialized support to maintain time records for each client and matter.  These individuals are assigned hourly rates, which are reflected on the billing statement sent to clients.  These hourly rates are adjusted from time to time (generally once a year) and can change during the course of our engagement.  Our rates are a benchmark, and not the sole determinant of the value of our services for billing purposes.  The billing attorney assigned to your account reviews the time records before a billing statement is rendered.  Pursuant to the applicable Rules of Professional Conduct, a reasonable fee takes into consideration, among other factors, the time and labor required, the novelty of the issues involved and the skill required to perform the legal services properly, the amount involved and the results obtained, any time limitations imposed by the client or by the circumstances, the nature and length of the professional relationship with the client, the experience, reputation and ability of the attorneys performing the services, and the degree of risk assumed by the attorney.  In accounting for the hours attributable to an assignment, the billing attorney may take into consideration efficiencies and value resulting from the firm's technology and other resources that provide benefit to the client that is greater than would be reflected in the hourly rate of the individual lawyer involved.

**Billing for Disbursements and Expenses**.  Snell & Wilmer L.L.P. obtains reimbursement for disbursements made on behalf of clients, such as filing fees, transcript and deposition fees, reasonable travel expenses and expert witness fees.  We also charge for certain expenses incurred on behalf of clients, such as copies, scans, facsimiles, postage, messengers, long-distance telephone calls and computerized research.  The charge for copies is $.20 per page, scans is $.10 per page, outgoing facsimiles is $1.50 per page and computerized research is $5.00 per minute.  There is no charge for incoming facsimiles, normal deliveries to local courts, secretarial overtime or similar activity.  We may forward to you large disbursement billings for direct payment to the vendor.

We make every effort to include disbursements and expenses in the statement for the month in which they are incurred.  Some disbursements and expenses are not available to us until the following months, in which case a subsequent statement will be rendered to you for these additional charges.

**Retainer Policy**.  It is also our policy to obtain a retainer from new clients, and from existing clients under certain circumstances to secure the payment of our fees and costs and expenses.  The amount and terms of a retainer arrangement are generally determined after

consultation with the billing attorney.  It may be appropriate to require an additional retainer after the commencement of the engagement, or to require an increase in a prior retainer, depending on the scope of the work or payment history.  For example, prior to a lengthy trial, we may require the posting of a retainer sufficient to cover expected fees.  We may also request a retainer for the purpose of paying out-of-pocket costs we incur on your behalf.  Retainer and other funds held in trust will be kept in a separate account maintained at a bank with offices in the state of Arizona.

**Fee Estimates**.  Any estimates of anticipated fees that we provide are, due to the uncertainties involved, necessarily only an approximation of potential fees.  Under no circumstances are such estimates a maximum fee quotation.  Our actual fees will be determined in accordance with the policies described herein.

In some cases, we may provide specific fee arrangements on a project basis.  A specific fee arrangement will always be confirmed in writing; otherwise, our normal billing policies will apply.

**Billing Statements**.  In the absence of other arrangements or factors, our billing statements ordinarily will be rendered to you on a monthly basis.  Any matter that is not billed monthly and which extends beyond three months ordinarily will be billed quarterly, unless otherwise agreed between us.

Our billing statements are due and payable upon receipt.  We ask and expect payment of our statements on a current basis, as delayed payment adds to our overall costs of providing services.  Interest at the rate of 12% per annum will be assessed on all amounts over 30 days past due.

**Dispute Resolution**.  Although we look forward to a mutually rewarding relationship, in the unlikely event of a dispute, including a dispute regarding the amount or payment of fees and expenses, the following dispute resolution terms will apply.

In the event of a dispute concerning the amount or payment of fees and expenses, we mutually agree that any such dispute will be submitted to mandatory binding arbitration to be held in Pima County, Arizona and conducted in accordance with procedures established by the State Bar of Arizona.  The decision of the arbitrator(s) will be final and binding on the parties.  Judgment on any arbitration award may be entered in accordance with the provisions of the Revised Uniform Arbitration Act, as adopted in Arizona, A.R.S. §§ 12-3001, *et seq.*, and of the Arizona Rules of Civil Procedure.  In the event that dispute resolution proceedings are instituted between us for any reason, the prevailing party shall be entitled to an allowance of reasonable attorneys' fees and other costs incurred as a result of the action or proceeding.

As to any claim or dispute arising out of or connected with our services, other than a fee dispute covered by the preceding paragraph, we mutually agree to attempt in good faith to settle the dispute by non-binding mediation in Tucson, Arizona before commencing any legal action or other dispute resolution procedure.  Unless we otherwise agree, the mediation will be conducted pursuant to the then current American Arbitration Association ("AAA") Commercial Arbitration Rules and Mediation Procedures.  Either of us may commence mediation by letter requesting

mediation delivered to the other party and to the AAA.  In the event we fail to agree upon a neutral mediator within ten (10) working days after the mediation request is delivered, either of us can apply to AAA to appoint a neutral mediator who has experience in the subject matter of the claim or dispute.

**Lex Mundi**.  Snell & Wilmer is a member of Lex Mundi, a global association of independent law firms that can be called upon to provide clients worldwide access to legal services.  Although a member of Lex Mundi, Snell & Wilmer is completely independent and does not have common operations, share fees or collaborate on a pre-arranged basis with other member firms.  If collaboration with other independent members of Lex Mundi is appropriate to serve client needs, Snell & Wilmer will discuss the specific engagement with the client to assure understanding and agreement of the roles and duties assumed by each involved law firm.

**Errors and Omissions Coverage**.  Some states require that a law firm disclose the existence of errors and omissions insurance coverage applicable to the services to be rendered. Snell & Wilmer hereby confirms the existence of such insurance coverage.

Finally, in closing, let us assure you that our goal has always been and will continue to be to provide legal services to you on the most cost-efficient basis possible.  If at any time you wish to discuss either our billing policies or procedures generally or a specific billing statement, we encourage you to contact us.

4834-3204-9335

**STATEMENT OF POLICY REGARDING FEDERAL TAX ADVICE**

Federal legislation and implementing regulations have established substantial penalties for taxpayers who fail to report on a special form tax return items arising from so-called "reportable transactions." "Reportable transactions" are transactions, events, plans, or other arrangements identified by Congress or the Treasury Department as including elements associated with potentially abusive tax shelters. However, it is well accepted that many legitimate transactions may also include such elements and, therefore, may also be classified as "reportable transactions."

The "reportable transaction" rules also impose duties upon law firms that provide tax advice or services relating to such "reportable transactions." Consequently, it is possible that Snell & Wilmer may become subject to these rules in connection with advice or services provided to you regarding a legitimate transaction or arrangement. If so, Snell & Wilmer will be obliged to notify the Internal Revenue Service that it has provided services in connection with what may be a "reportable transaction." Snell & Wilmer will also be required to maintain a file containing information and documents relating to the transaction or arrangement in question for production to the Internal Revenue Service upon written request. The existence of the attorney-client privilege is no excuse for non-compliance with these rules, although specific items of otherwise disclosable information may be privileged. Prior to taking any steps that may be required under the "reportable transaction" rules, Snell & Wilmer will consult with you concerning the possibility that a given transaction or arrangement may be a "reportable transaction" and, as appropriate, coordinate its disclosure and record-maintenance efforts with any taxpayer reporting obligations to which you may be subject. We will also discuss with you, as appropriate, the possible invocation of the attorney-client privilege. Because these consultations and related reporting and record-maintenance activities can sometimes involve a substantial effort by our attorneys and paralegals and because, by law, they are a necessary consequence of assisting you in connection with a transaction or arrangement that includes one or more elements making it a "reportable transaction," absent special arrangements to the contrary, Snell & Wilmer will treat them as an additional component of its engagement by you, for which you agree to compensate Snell & Wilmer in accordance with the attached Policy unrelated to any special fee arrangements that may otherwise apply.

Independent from the "reportable transaction" rules, the Department of the Treasury has issued regulations that govern practitioners, including Snell & Wilmer attorneys, who provide advice or services to clients in matters that may have federal tax consequences. Congressional legislation enacted in 2004 has confirmed the authority of the Treasury to implement these regulations. One consequence of these regulations is that a practitioner may not provide written advice, including electronic mail messages, upon which a taxpayer may rely for tax penalty protection purposes, unless the practitioner has engaged in a careful review of all potentially relevant facts and has evaluated all of the reasonably applicable tax issues, including judicial doctrines. In addition, under these regulations, certain categories of written advice (so-called "Covered Opinions"), including many opinions intended for penalty protection, must satisfy certain additional requirements. Among other things, Covered Opinions must describe in detail each of the facts and any

reasonable assumptions being relied upon, must address every reasonably applicable federal tax issue, including judicial doctrines, and must include, depending upon the circumstances, a variety of mandatory disclosures.

Because of the time, effort, and expense involved in preparing written advice that will satisfy the requirements applicable to Covered Opinions, Snell & Wilmer has adopted a policy now becoming common among many accounting and law firms:  In situations in which the Covered Opinion rules come into play only if the written advice is intended to provide tax penalty protection, Snell & Wilmer will not undertake the special efforts required to comply with the Covered Opinion rules unless you have expressly requested written advice for the specific purpose of tax penalty protection.  This disclaimer is not intended to limit Snell & Wilmer's obligation to you to provide competent tax advice.  Its only purpose is to avoid the necessity of complying with the Covered Opinion rules unless you have specifically requested a Covered Opinion for tax penalty protection purposes.

4831-7258-5538