DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Lisa Anne Smith (AZ # 16762)
lasmith@dmyl.com
Tyler H. Stanton (AZ # 34526)
tstanton@dmyl.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>                    Plaintiff,<br><br>vs.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; and Andrea Divijak in her individual capacity and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>                    Defendants. | NO. 4:21-cv-00062-SHR<br><br>**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL**<br><br>(Assigned to Hon. Scott H. Rash) |

Defendant Marana Unified School District (the "District"), through counsel undersigned, hereby moves for judgment as a matter of law in accordance with Rule 50, Fed. R. Civ. P. Judgment as a matter of law is appropriate in this case because Plaintiff failed to present sufficient evidence that would allow a reasonable jury to find in her favor on her First Amendment retaliation claim under 42 U.S.C. § 1983. The District previously moved for judgment as a matter of law on this claim at the close of Plaintiff's case-in-chief, but this renewed motion is expressly permitted under Rule 50(b) and similarly requests that the Court direct the entry of judgment as a matter of law in the District's favor. In the alternative, this Motion requests that the Court order a new trial because the verdict rendered in this case was

against the weight of the evidence. This Motion is supported by the following Memorandum of Points and Authorities and the entire record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   BACKGROUND

At trial, Plaintiff did not offer a scrap of evidence that any person involved in banning her from Dove Mountain K-8 CSTEM school relied on District Policy KFA, the only District policy at issue in this case. [Exhibit 85] Policy KFA, which is entitled Public Conduct on School Property, includes in a list of the ways in which a person may interfere with or disrupt the District function, "Use of speech or language that is offensive or inappropriate to the limited forum of the public school educational environment." [*Id.*] After much prompting from her attorney, Plaintiff testified that she believed Ms. Divijak may have found her speech offensive [Transcript Day 2, Part 1 at pp. 9:13-10:25], but no District witness testified that Plaintiff's speech on or before February 7, 2020, fell into this category. In fact, Dr. Dumler and Ms. Divijak both expressly denied that Plaintiff's speech was offensive or inappropriate. [Transcript Day 3, Part 1 at p. 104:6-11; Transcript Day 4, Part 1 at p. 37:21-23] Further, Policy KFA states that any member of the general public "considered by the Superintendent or a person authorized by the Superintendent to be in violation of these rules shall be instructed to leave the property of the District." [Exhibit 85] Policy KFA does not say that such people can be banned from District property in the future, but merely that they may be instructed to leave. The only authority provided in Policy KFA to actually ban a person from campus is found on the second page, in paragraph D, where the policy states, "Persons who engage in disorderly conduct of any kind may be subject to removal and exclusion from the facility." [*Id.*]

Moreover, Plaintiff admitted that no one at the District ever referred to or mentioned Policy KFA, or any other District policy for that matter, when Plaintiff was trespassed from campus. [Transcript Day 2, Part 1 at p. 14:16-19] Ms. Dumler similarly testified that no one

at the District said that they had relied on Policy KFA, and that she had never discussed Policy KFA with Ms. Divijak or among senior staff at the District in relation to Plaintiff's removal from campus. [Transcript Day 3, Part 1 at pp. 72:3-8, 99:3-11] Ms. Dumler also testified that if the District had relied upon Policy KFA to ban Plaintiff from campus, it would have cited that policy explicitly, just as it does with suspensions, expulsions, teacher discipline, teacher non-renewals, and teacher terminations. [Transcript Day 3, Part 1 at pp. 99:17-100:6] Ms. Dumler further testified that school principals are not trained on Policy KFA, and that she would not expect a principal to be aware of the policy. [Transcript Day 3, Part 1 at p. 97:15-21] This was confirmed by Ms. Divijak, who testified that she had never seen Policy KFA before this lawsuit began, and that even after reviewing it, she does not believe it would have allowed her to ban a parent from campus. [Transcript Day 3, Part 1 at pp. 49:6-50:23] In short, while Plaintiff pointed to Policy KFA as the basis for her § 1983 claim, there was no evidence introduced at trial that established a causal connection between Policy KFA and Plaintiff's removal from campus, let alone that the policy was the "moving force" behind the ban.

## II.    ARGUMENT

Under Rule 50, Fed. R. Civ. P., "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may resolve that issue against the party and "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." In other words, "[j]udgment as a matter of law is proper when the evidence permits a reasonable jury to reach only one conclusion." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (quoting *Lawson v. Umatilla County*, 139 F.3d 690, 692 (9th Cir. 1998)). If, at trial, the Court does not grant a motion for judgment as a matter of law, "the court is considered to have submitted the action to the jury subject to the court's

later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Following the entry of judgment, the movant "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59," and the Court may allow judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law. *Id.*

A motion for new trial under Rule 59(a), Fed. R. Civ. P., may be granted "after a jury trial, for any reasons for which a new trial has heretofore been granted" in federal court. Reasons for a new trial may include a verdict that is contrary to the weight of the evidence or a trial that was manifestly unjust to the nonmoving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). Unlike with a Rule 50 motion, the Court may make determinations as to the weight of the evidence and credibility of witnesses when determining whether a new trial is warranted. *See Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010).

Here, the evidence presented at trial would not have allowed a reasonable jury to find in Plaintiff's favor on her § 1983 claim because there was *no* evidence establishing a causal connection between Policy KFA and Plaintiff's ban from campus. As a result, the District is entitled to judgment as a matter of law in its favor on that claim. At a minimum, the verdict was contrary to the weight of the evidence, and the Court should grant the District a new trial to prevent a miscarriage of justice.

A government entity like the District "may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 404 (1997) ("direct causal link" between municipal action and deprivation of rights required to establish municipal liability). And in this case, Plaintiff may establish *Monell* liability against the District only by showing that the District acted pursuant to Policy KFA to ban her from the Dove Mountain school premises. *See Hartzell v.*

4

*Marana Unified Sch. Dist.*, 130 F.4th 722, 734-42 (9th Cir. 2025) (discussing ways to establish *Monell* liability and remanding on Plaintiff's "policy" theory only). Plaintiff failed to do so here.

Based on the evidence presented at the first trial in this matter, the Ninth Circuit concluded that "a reasonable jury could find that Policy KFA authorized Divijak to ban parents whose speech she found offensive and that Hartzell was banned almost immediately after saying things Divijak could reasonably find offensive," and that, therefore, "a reasonable jury could also find that Policy KFA was a moving force behind the ban on Hartzell." *Id.* at 740. In support of this conclusion, the Ninth Circuit relied entirely on *Eagle Point Education Association/SOBC/OEA v. Jackson County School District No. 9*, 880 F.3d 1097 (9th Cir. 2018). *Hartzell*, 130 F.4th at 740. The evidence introduced at trial, however, distinguishes this case from *Eagle Point*, as there was no evidence that would allow a reasonable jury to conclude that there was a causal link between Policy KFA and Plaintiff's removal from campus, or that Policy KFA was the moving force behind the removal.

In *Eagle Point*, the school district defendant adopted policies in anticipation of a teachers' strike that prohibited, among other things, signs and banners at any district facilities without prior approval of the superintendent. 880 F.3d at 1100. After a security guard prohibited a student from parking her car in a school lot with a sign in her back windshield, the student filed suit alleging violations of the First Amendment. *Id.* at 1101. On appeal, the Ninth Circuit rejected the school district's argument that the security guard's actions were not an application of the applicable district policies and were instead an independent decision of the security guard, pointing to numerous facts that supported the conclusion that the security guard's actions were an application of the school district's policies. *Id.* at 1108. In particular, the Ninth Circuit noted that (1) there was no suggestion that the security guard would have taken action but for the adoption of the policies, (2) the security guard's interpretation that the policies extended to the parking lot was plausible, and (3) at the time

of the incident, the principal did not tell the student that the guard had made a mistake; he told her that signs were prohibited. *Id.* at 1108.

In contrast, here, Plaintiff presented no evidence that Ms. Divijak, or anyone else, relied on Policy KFA to ban her from campus. It was undisputed that Ms. Divijak was not aware of Policy KFA prior to this lawsuit. *See James v. Harris County*, 577 F.3d 612, 619 (5 Cir. 2009) ("A reasonable jury could not find that the alleged policy was the moving force behind Wilkinson's alleged excessive force, when there was no evidence that Wilkinson had knowledge of such policy."). Similarly, there is no evidence that the District's Superintendent ever mentioned or relied upon Policy KFA in relation to the trespass. There is no evidence of a causal connection between Policy KFA and Plaintiff's ban. And as a matter of law, it is not sufficient for Plaintiff to merely point to Policy KFA and a constitutional injury, she must connect the two. *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged."). Plaintiff did not do so here. Unlike in *Eagle Point*, the outcome would have been exactly the same if Policy KFA had never been adopted. It did not factor into anyone's decision making and no one at the District believed they had the authority, express or implied, to ban Plaintiff from campus based on her speech.

Thus, even if Ms. Divijak banned Plaintiff from Dove Mountain based on her speech (she did not), a reasonable jury could not have concluded that Policy KFA was "the moving force" behind that decision as required to establish liability against the District. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). At best, it could have concluded that Ms. Divijak acted culpably, but that is not sufficient to establish municipal liability against the District. *See Brown*, 520 U.S. at 407 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably."); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 120

6

(1992) ("Nevertheless, proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.").

## III.    CONCLUSION

To establish liability against the District, Plaintiff was required to present evidence that would allow a reasonable jury to find that Policy KFA was the "moving force" behind the decision to ban her from campus. Plaintiff presented no evidence of a causal link between Policy KFA and her alleged constitutional injury as required by well-established legal authority. Without evidence to establish that affirmative link, there is no "substantial evidence that is adequate to support" the jury's verdict in this case, and the District is entitled to judgment as a matter of law in its favor. *Escriba v. Foster Poultry Farms*, Inc., 743 F.3d 1236, 1242 (9th Cir. 2014).

But even if the Court does not agree that the District is entitled to judgment as a matter of law, it should nevertheless grant a new trial in this case. In ruling on a motion for new trial, this Court is empowered to weigh the evidence presented at trial to determine whether the jury's verdict was contrary to the weight of the evidence, a power that appellate courts lack. *See Kode*, 596 F.3d at 612. And as further set forth above, the weight of the evidence in this case established the lack of a causal connection between Policy KFA and Plaintiff's ban from campus. The jury's verdict implicitly concluded that there was such a connection, which is contrary to the weight of the evidence presented at trial.

DATED this 7th day of  May, 2026.

DeConcini McDonald Yetwin & Lacy, P.C.

By: */s/ Lisa Anne Smith*
  Lisa Anne Smith
  Tyler H. Stanton
  2525 E. Broadway Blvd., Suite 200
  Tucson, AZ 85716-5300
  Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following CM/CEF registrant:

Jeffrey Willis
Jacob C. Jones
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
jwillis@swlaw.com
jcjones@swlaw.com
*Attorneys for Plaintiff*

By: */s/ C. Burkholder*