DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Lisa Anne Smith (AZ # 16762)
lasmith@dmyl.com
Tyler H. Stanton (AZ # 34526)
tstanton@dmyl.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D<br><br>Plaintiff,<br><br>vs.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; and Andrea Divijak in her individual capacity and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | NO. 4:21-cv-00062-SHR<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**<br><br>(Assigned to Hon. Scott H. Rash) |

Defendant Marana Unified School District (the "District"), through counsel undersigned, hereby submits this response to Plaintiff Rebecca Hartzell's Motion for Attorneys' Fees and Non-Taxable Costs (Doc. 201). For the reasons expressed herein, the Court should award Plaintiff no more than $357,732.18 in attorneys' fees and no more than $24,696.29 in non-taxable costs.

## I.      Factual and Procedural Background

In this action, Plaintiff asserted five causes of action:

    1)    First Amendment Retaliation pursuant to 42 U.S.C. § 1983 against the District and Divijak personally (the "Retaliation Claims");

    2)    Free Speech Retaliation under the Arizona Constitution against the District and Divijak personally;

3)      Denial of Procedural Due Process pursuant to 42 U.S.C. § 1983 against the District (the "Due Process Claim"),

4)      Defamation Per Se against Divijak based on alleged (i) oral and (ii) written statements of Divijak (the "Defamation Claims"); and

5)      Invasion of Privacy – False Light, against Divijak based on the same conduct alleged in support of Count Four.[1]

These claims can broadly be categorized as federal civil rights claims, which include the Retaliation and Due Process Claims against the District and the Retaliation claim against Divijak, and state law claims, which include the Arizona constitutional claim, the Defamation Claims, and the Invasion of Privacy claim (the "State Law Claims"). Divijak prevailed on all claims brought against her personally and summary judgment was entered in Defendants' favor, and upheld on appeal, on Count Two and on the Due Process Claim.

At the first trial, this Court granted the District's Rule 50(a) motion on the Retaliation Claim and the jury returned a defense verdict on the Defamation Claim. Plaintiff appealed the Rule 50(a) ruling and the entry of partial summary judgment. The Ninth Circuit: (i) affirmed the Court's ruling on the Due Process Claim, (ii) affirmed the grant of qualified immunity in Divijak's favor, (iii) reversed in part the entry of summary judgment in Divijak's favor on the Defamation Claim, and (iv) reversed the Court's Rule 50(a) ruling on the Retaliation Claim. Plaintiff unsuccessfully petitioned the Supreme Court for a writ of certiorari related to qualified immunity and the Due Process Claims.

Ultimately, the case was remanded to this Court to hold a second trial on the Retaliation Claim and the surviving portion of the Defamation Claims. The Defamation Claim was limited to the single alleged defamatory document. The jury found in Plaintiff's favor on her Retaliation Claim and awarded her $200,000 in damages. The jury found in Divijak's favor on the Defamation Claim. Based on the above, Plaintiff ultimately succeeded

---

[1] Plaintiff also brought a claim for violations of Arizona's Parents' Bill of Rights but omitted that claim from her First Amended Complaint filed on April 9, 2021. *See* Doc. 16.

2

on no more than 1/5 of her total claims and only 1/3 of her federal civil rights claims. She lost every claim she brought against Divijak personally.

## II.        Legal Standard

The starting point for determining a "reasonable" fee to be awarded "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In determining the "number of hours reasonably expended," Courts "exclude … excessive, redundant, or otherwise unnecessary" hours." *Id.* at 434. Additionally, Courts have the "authority to reduce hours that are billed in block format" because such block billing "makes it more difficult to determine how much time was spent on particular activities" and evaluate the reasonableness of that time. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

Courts must then apply a "reasonable hourly rate" to calculate the initial lodestar figure. This number is "to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (internal quotation marks and citations omitted). The burden remains on the "fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community" for similarly skilled, experienced, and reputable attorneys. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (emphasis added).

Courts also consider whether the plaintiff "fail[ed] to prevail on claims that were unrelated to the claims on which [she] succeeded[.]" *Hensley*, 461 U.S. at 434. Where a plaintiff brings "distinctly different claims for relief that are based on different facts and legal theories," "even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to

his work on another claim." *Id.* at 434-35. Courts must treat these unsuccessful claims "as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from [her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440.

## III.    Argument

### A.    Eligibility for Fees

For purposes of briefing Plaintiff's request for fees, the District concedes that Plaintiff is entitled to an award of reasonable attorneys' fees based on the jury's verdict in her favor on one of the three claims she brought under 42 U.S.C. § 1983.[2]

### B.    Lodestar Calculation

The Court must first determine the number of hours reasonably expended in the matter, excluding excessive, redundant, or unnecessary time, as well as block-billed entries which prevent the Court from assessing the reasonableness of the time billed. This number is then multiplied by a reasonable hourly rate based on the relevant locality. The billing records submitted by Plaintiff are replete with excessive, redundant, unnecessary, and unreasonable block-billed entries which should be excluded. And the rates charged are excessive in relation to the relevant market. Finally, a substantial number of hours were billed for distinct and separate legal claims which Plaintiff lost and those hours should not be included as hours reasonably expended. For the following reasons, the District requests the Court find that only 696.4 of the total 1581.3 hours be deemed "reasonably expended" in this matter and that the hourly rate be capped at $450/hour for Mr. Jones and $300/hour for Mr. Racioppo.

---

[2] By this concession, the District is not waiving its right to contest and/or appeal that verdict and resulting judgment, as it has preserved by the filing of its Motion for Judgment as a Matter of Law or New Trial (Doc. 204) on May 7, 2026.

4

i.    Time Entries to be Excluded

The Court should exclude the time entries marked on Exhibit A to this Response as excessive, redundant, unnecessary, related to distinct claims on which Plaintiff lost, or because they constitute block billing which makes it difficult or impossible to determine the reasonableness of the time spent.

a.    Block-Billing

The District cannot analyze each example of improper block-billing in detail in this Response but a number of entries are illustrative.[3] Perhaps the best example of Plaintiff's Counsel's excessive, redundant, and unnecessary block billing comes from immediately before trial, when Mr. Jones billed 9.3 hours for "direct witness examination outlines for Hartzell, Gute, Siebern, Dumler, and Divijak." As billed, it is impossible to tell how much time was spent on each witness outline. Mr. Jones did not even take Mr. Gute's testimony, which was not substantively different than his testimony in the first trial, and Ms. Siebern's testimony related only to the defamation claim, so preparing for it is not recoverable. In addition, Mr. Racioppo billed 10.4 hours the day before trial began to "Prepare witness outline for P. Gute, prepare for direct and cross examination with R. Hartzell, review and prepare exhibits for direct examination of R. Hartzell, test equipment and discuss trial with court staff in Judge Rash's courtroom, and assist with preparing and mooting opening statement with slideshow." He also billed 12.3 hours to "Prepare for day 3 of trial, attend trial, and prepare for final day of trial," on the day he conducted Mr. Gute's examination Somewhere in the 32 hours billed by two attorneys was preparation for the examination of Mr. Gute, but it is impossible to tell how much time was spent on this task, or on any other discrete task. Notably, neither Mr. Jones nor Mr. Racioppo made any other billing entries on

---

[3] A number of these block-billed entries are also excludable from the lodestar calculation because they are redundant, excessive, or otherwise improper. Entries which are objectionable for multiple reasons are indicated on the accompanying chart.

those days. This is precisely the type of "all day" billing that the restriction on block-billing is designed to prevent. *See Welch*, 480 F.3d at 945 n. 2, 948.[4]

For further example, following remand from the Ninth Circuit, Plaintiff's counsel billed 3.9 hours to:

> Evaluate additional issues of law and contentions of fact that should be in the final pretrial statement and review Ninth Circuit opinion and related research regarding why the defamation claim as to the earlier defamatory statements should still be a part of the ongoing trial, given defendants' new position that the jury verdict on those claims should be considered untouched.

At minimum, the time spent researching legal issues implicated in the Ninth Circuit's decision should be separate from the time spent evaluating additional issues of law and contentions of fact. And it is impossible to tell whether the time spent on research or evaluation as described was reasonable, or how much of this entry was related solely to the defamation claims on which Plaintiff lost. On October 28, 2025, 7.6 hours were billed for "Work on finalizing joint and opposed jury instructions and filing brief in opposition to defendant's opposed jury instructions, and voir dire and issues regarding verdict form, and meeting and conferrals with opposing counsel regarding same, in preparation for filing pretrial documents per court deadline." These are all discrete tasks, the reasonableness of which cannot be weighed when billed in this manner. On December 30, 2025, 6.2 hours were billed to "Review status of pending filings, work on strategy for ensuring all pretrial deadlines are met and all issues preserved, and continue working on witness and exhibit presentation strategy for trial." The Court should exclude all similar block-billing entries when determining a reasonable attorneys' fee.

b.      Excessive, Redundant, Unnecessary

In addition to the unreasonable entries contained in the above-described block-billed entries, Plaintiff's Motion is also replete with examples of excessive, redundant, or

---

[4] The billing to prepare for Mr. Gute's testimony was also excessive and redundant, as discussed further below.

unnecessary time entries. For example, on February 11, 2022, Plaintiff's counsel billed 2.1 hours for "Work on expert disclosure (including evaluating strategically whether and the extent to which one may be needed)." Plaintiff did not use or disclose an expert or any area of expert testimony. Plaintiff also requests fees for 13.8 hours related to written discovery requests drafted and propounded between January 19 and March 4, 2022. But Plaintiff propounded only five requests for production and nine interrogatories on the District and propounded the exact same requests on Divijak.  These discovery requests are attached hereto as Exhibit B. The only unique discovery request was a Rule 34 request for Divijak to produce a DNA sample, included in the requests for production directed to her. Not only is that not clear from the billing records, but that request was made in an effort to discover the identity of the person who sent or delivered the document to the University of Arizona giving rise to one of the Defamation Claims. Further, Divijak objected to that request and Plaintiff took no further action on it. Finally, five of the nine interrogatories were squarely aimed at discovery related to Plaintiff's state law claims. Plaintiff should not be able to recover fees for this work because the vast majority of it is unrelated to successful claims.

A number of excessive or redundant entries from the second trial should also be excluded. For example, between March 22 and March 24, 2026, Mr. Racioppo billed 5 hours for the examination of Plaintiff, which he did not conduct. This is in addition to the general trial preparation billing entries of at least 4.3 and 5.6 hours for days three and four of trial on March 26 and 27. And these entries do not include the 1.8, 6.8, and 2.4 hours Mr. Racioppo spent on March 21, 22, and 24, 2026, preparing for the examination of Mr. Paul Gute, which was duplicative of the 1.5, 0.8, 1.3 hours spent by Mr. Jones on March 23, 24, and 25, 2026 on the same activity, as well as the block-billed time discussed above, all to essentially re-create the examination of Mr. Gute done in the first trial.[5]  Remarkably, Plaintiff's counsel

---

[5] Mr. Jones spent 0.5 and 0.8 hours in separate billing entries on March 25, 2026, on this activity. For clarity, that time is combined here. Additionally, Mr. Racioppo's entry on March

spent 95.7 more hours for the second trial than for the first trial, even though the trials were essentially same length and had the same witnesses other than Siebern, whose testimony related exclusively to the failed defamation claim. The additional 95.7 hours was excessive.

Mr. Jones also billed 2.3 hours ($1,483.50) for legal research to exclude the police body camera footage central to this case based on the theory that Plaintiff was not Mirandized. But the body camera footage was disclosed by Plaintiff, was identified as Plaintiff's exhibit and introduced by Mr. Jones in the first trial (Doc. 104), and there was no good faith basis to argue that the exclusionary rule would apply to preclude the footage's admission, an argument which ultimately he did not urge before the Court.

Though involving a small billing entry, one example best encapsulates Plaintiff's counsel's conception of "billing judgment." On April 3, 2023, Mr. Jones billed 0.4 hours for the preparation of a joint settlement status report pursuant to this Court's order. *See* Doc. 60. Other than the date it was submitted, this joint settlement status report was identical to the joint settlement status report filed on July 6, 2022. *See* Doc. 45. Bizarrely, Mr. Jones billed 0.2 hours *more* to prepare the April 3, 2023, report than the identical July 2022 report. All similarly identified amounts should be excluded from the lodestar calculation.

ii.    Hourly Rate

A reasonable hourly rate is "to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (internal quotation marks and citations omitted). The burden remains on the "fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community" for similarly skilled, experienced, and reputable attorneys. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). Plaintiff has not met her burden

21, 2026, is for time spent strategizing regarding the direct examination of Plaintiff and Mr. Gute, another improper block bill.

8

to establish that the rates charged by her counsel over the years—including the $645 and $475 hourly rates for Mr. Jones and Mr. Racioppo at the time of the second trial—are in line with those prevailing in the community. She provided her counsel's own affidavit to support the assertion that the hourly rates were in line with relevant market rates. But she must produce satisfactory evidence "in addition to [her] attorney's own affidavits" that the rate requested is reasonable in the community. And as demonstrated by the Affidavits of Lisa Anne Smith, Barney Holtzman, and Denise Lowell-Britt, attached hereto as Exhibits C through E, these rates exceed the market rates of other similarly experienced, skilled, and qualified attorneys in Arizona, including Tucson and Phoenix. Indeed, a number of these attorneys have substantially more experience in the actual area of law at issue than Mr. Jones.

Plaintiff cites a slew of cases for the proposition that rates up to $600 per hour should be approved but the two most recent cases (July and November 2025) approved rates of $450 and $445 per hour. *See* Motion, p. 10.[6] Based on the above, the Court should set the reasonable hourly rate at $450/hour for Mr. Jones, Mr. Willis, Ms. Dove, and Ms. Weaver, $300/hour for Ms. Jonas and Mr. Racioppo, and $200/hour for the paralegals who rendered services in this matter.[7]

   iii. Other Factors

    a. Novelty and Difficulty

Despite Plaintiff's best efforts to elevate this case into the pantheon of Constitutional law decisions, the legal issues at play were remarkably straightforward. As the Court well knows, the only real question to be answered was whether Plaintiff was banned from campus due to her speech pursuant to District Policy KFA. There is nothing novel about the legal

---

[6] Excluding Mr. Jones own case, in 4 of the 5 cited cases from 2020 or after, the reasonable rate was $450/hour or less. The average rate in these five cited cases was $457/hour.

[7] Ms. Jonas had between 5 and 6 years of experience when she worked on this case. Plaintiff provides no support other than his own affidavit for the rates for the associates or the various paralegals who worked on the case. The associate rate proposed herein is slightly discounted from Mr. Stanton's current billing rate, even though he is a partner with 8 years of experience.

issues. Plaintiff touts the fact that the Ninth Circuit's opinion "already has sixty citing references … including 22 from federal courts" as evidence of its importance. But a brief review of these references reveals the irrelevance of the statistic. Nine are "Appellate Court Document" citations from pleadings filed by Plaintiff or her Supreme Court counsel.[8] In each of these, the Ninth Circuit's opinion was cited in connection with its Fourteenth Amendment analysis related to the right of parent's to enter school campuses. Plaintiff lost on that issue. Twenty-four of the citations are references in various secondary sources, and 13 of those relate to defamation or other reputational torts. Another three were related to pleading amendment or other procedural or evidentiary matters. Again, Plaintiff lost on these issues.

Finally, and most importantly, of the 23 cases citing the Ninth Circuit opinion, a grand total of zero cited the opinion for its First Amendment holding or analysis.[9] Instead, nine of these cases reference the proposition that a litigant cannot add new theories of liability at summary judgment; five cite the conclusion that the final policymaker theory of liability under 42 U.S.C. § 1983 is a distinct theory of liability; another cites the conclusion that words like "harass," "bully," "intimidate," and "threaten," are not actionable defamation; five more cite analysis related to modifying a scheduling or other interlocutory order; one cites the qualified immunity analysis; and one case cites it for the general statement of law related to a parent's right to direct the care and upbringing of their children.[10] Plaintiff lost on all of these issues. There was not, in fact, "an underdeveloped question concerning application of a school district's 'offensive or inappropriate' speech policy," that was further developed by Plaintiff's efforts. The analysis related to the Retaliation Claim was the *least* cited portion of

---

[8] The citations are to Plaintiff's Petition for a Writ of Certiorari, a Writ of Certiorari in *Lavigne v. Great Salt Bay Community School Board*, Docket No. 25-579 and a Brief of *Amicus Curiae* all filed by the Goldwater Institute.

[9] Under its "Citing References" tab, Westlaw shows 25 "Cases." These results include two orders from one case and two orders in another. Thus, there are only 23 "cases" citing the Ninth Circuit's opinion. A list of these cases is included herewith as Exhibit H.

[10] Two more cases cite the opinion for its general statement of the standard of review related to summary judgment and evidentiary issues.

the Ninth Circuit's opinion. Rather than break new Constitutional ground, the Ninth Circuit merely said the case should have gone to the jury.

b.   Skill Required

It is the Plaintiff's burden to establish facts in a fee application, but Plaintiff's only argument about the skill required is that plaintiffs rarely win civil rights cases: only 14% according to her. But Plaintiff does not present any further context or information about that statistic. For example, what percentage of those are prisoner civil rights lawsuits, which Plaintiff herself acknowledges are subject to additional restrictions. *See* Motion, p. 9. What percentage are police misconduct cases, which are notoriously difficult for plaintiffs? Once a civil rights case reaches a jury, what percentage of plaintiffs prevail?[11] Citing a single academic article about the nationwide success rate for "civil rights" claims does not establish the skill that was required. Plaintiff also cites her counsel's two prior *pro bono* prisoner civil rights cases as evidence of the skill required for this case. Having relevant experience is different than demonstrating that significant skill was required in a particular case.

c.   Preclusion of Other Employment

Plaintiff fails to sufficiently demonstrate that this factor weighs in her favor. She cites a single scheduling conflict of counsel as evidence that her case precluded her counsel from taking other work. Every case that goes to trial results in a period of time where an attorney has to put aside work on other matters. Notably absent from the Motion or Mr. Jones' affidavit is any assertion that Mr. Jones declined any work due to being engaged in this matter.

---

[11] In fact, the paper cited by Plaintiff appears to be based off a dataset created by analyzing "judges' textual decisions" and "judges' published opinions." *See* Doc. 201-6, pp. 3 Fig.1; p. 5. It is unclear from the paper, but suggests that the dataset does not include any jury decisions, which do not generally result in written or published opinions. Meritless claims are more likely to be resolved in a written decision by a judge, either on a motion to dismiss or for summary judgement. This statistic is likely skewed and should be disregarded.

11

d.     Method of Billing

The District does not dispute that Plaintiff agreed to pay her counsel hourly rates. But going into the second trial, Plaintiff was seeking damages over a million dollars. Assuming Plaintiff believed she had actually suffered such extensive damages and had legally sufficient proof to establish them, it is a stretch to say that the economics of the case made contingent-fee representation unfeasible. Further, as any skilled and experienced civil rights attorney knows, under 42 U.S.C. § 1988, "a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose." *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 944, 103 L. Ed. 2d 67 (1989).

e.     Time Limitations on Schedule

The District similarly does not dispute that, as with any case that goes to trial or involves an appeal, Plaintiff's counsel's schedule may have been full at various points in the litigation. But Plaintiff does not argue that anything about this case was out of the ordinary for civil litigation that proceeds to trial.

f.     Results Obtained

Plaintiff generally recites the monetary offers of settlement between the parties but materially misleads the Court as to the non-monetary terms of some of those offers. For example, Plaintiff asserts that she offered to settle her claims for "zero dollars if Defendants would simply apologize." Motion, p. 12. Plaintiff repeats this assertion later in stating that the "District could have walked away from this case in 2021 by merely apologizing—zero dollars. Or $50,000 would have resolved it years ago." Motion, p. 14. No offer of zero dollars was ever made.[12] Rather, at a settlement conference in 2021, Plaintiff offered to resolve this matter for $50,000 if Divijak and her husband provided a DNA sample to test against the

---

[12] In 2021, Plaintiff's counsel stated that his client wanted an apology, attorney's fees, and "to make it stop." This comment was never formalized in a settlement demand or offer.

envelope delivered to Plaintiff's employer. Plaintiff later made three offers on February 13, 2024. One option called for payment of $10,000 to Plaintiff and, among other acts, called for Principal Divijak to sign a letter addressed to Plaintiff, the University of Arizona, and others, stating that "Despite prior allegations to the contrary, Professor Hartzell: never grabbed me, never wrapped her fingers around my wrist or arm; and never held on to me, for any amount of time." The District was never offered the opportunity to settle the Retaliation Claim on the terms argued by Plaintiff in her Motion. The offer always contained an unreasonable demand related to the claims against Divijak—including the submission of DNA samples from her and her husband or requiring her to confess to perjury—or called for a substantially higher payment than Plaintiff identifies in her Motion. See Exhibit C.

Plaintiff overstates the import of her victory by asserting that "most Arizona school districts still have this unconstitutional policy." Motion, p. 12. But Policy KFA was not deemed unconstitutional *per se*. The Ninth Circuit held that *if applied* to Plaintiff's speech, that application of policy would be unconstitutional. The jury determined the policy was applied to Plaintiff's speech, but the constitutionality of the policy remains unchanged.

Plaintiff also casts her Defamation and Retaliation Claims as arising from the same nucleus of facts as the constitutional claim. This is untrue. The Defamation Claims involved numerous unrelated facts including who delivered the anonymous document and what Divijak said, to whom, and the alleged impact of those words. These facts are completely unrelated to the Retaliation Claim.

In any event, fee awards "should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief." *Fox v. Vice*, 563 U.S. 826, 834, 131 S. Ct. 2205, 2214, 180 L. Ed. 2d 45 (2011). Plaintiff lost each of the State Law Claims. These claims were either time-barred or factually and legally unsupported and resolved against Plaintiff at summary judgment or trial. The Court should exclude any time that is separately identifiable as having been incurred related to just these State Law Claims. For example, any fees incurred

for preparing or serving the notice of claim, a prerequisite to asserting state law claims against a public body in Arizona, should not be awarded. Any fees incurred related solely to the defamation claims, including the preparation of Clarissa Siebern for the second trial, should not be awarded. These entries are also identified on the chart attached as Exhibit A.

Next, Plaintiff should not recover any fees incurred for work done in connection with her Motion to Amend Scheduling Order and for Leave to File Second Amended Complaint (Doc. 65), the primary purpose of which was to try and revive her legally inadequate Due Process Claim after summary judgment was entered against her on that claim. The Court denied the Motion to Amend and the Ninth Circuit affirmed that denial. This work was completely unnecessary to prevail on the surviving Retaliation Claim (and the work done to add Divijak's husband is separately excludable for being related to the Defamation Claim). Plaintiff seeks to recover fees totaling $18,093.00 for 32.6 hours of work on this Motion to Amend. That amount should be excluded from any award.

Further, Plaintiff's fee request should be reduced to account for her actual level of success given the claims she brought. Plaintiff should not recover all of her fees incurred in defending against Defendants' Motion for Summary Judgment. Plaintiff can certainly recover for time spent defending her Retaliation Claim. That argument and relevant factual background took up no more than 3 of the 20 pages of her Response in Opposition. *See* Doc. 46. The remaining pages were dedicated to forcefully arguing that Defendant's argument regarding the Due Process claim lacked merit (9.5 pages; Defendants won), that the State Law Claims were not time barred (4 pages; Defendants won on all State Law Claims), that Divijak was not entitled to immunity (0.5 pages; Divijak won), and that various portions of her defamation claim should go to the jury (2.5 pages; Divijak won and that claim cannot provide for fees). As a result, to the extent not specifically identified as being related to the Retaliation Claim, Plaintiff should only recover no more than 15% of her fees incurred related

14

to summary judgment.[13] Plaintiff has included 5.7 hours totaling $2,907 related to fully excludable work related to defamation, due process, or qualified immunity. No entry is explicitly identified as relating to the retaliation issue, however, so based on the page count analysis, the total fees for this litigation phase should be reduced by the 85% that related to unsuccessful or non-recoverable claims. Unlike discovery of facts that can reasonably be said to relate to multiple claims, the legal arguments in the motion are discrete and do not overlap so this reduction is warranted.

Similarly, Plaintiff should recover, at most, 1/3 of her fees on appeal. Plaintiff asserted that the Court erred in: (1) granting the District's Rule 50(a) motion on the Retaliation Claim, (2) excluding the "Final Policymaker" theory of liability under 42 U.S.C. 1983, (3) granting Divijak qualified immunity, (4) granting summary judgment in the District's favor on the Due Process Claim, and (5) excluding certain defamation evidence at trial and granting summary judgment on portions of the defamation claim. Plaintiff prevailed entirely on one of these five issues and only partially on another.[14] Plaintiff's argument in her opening brief spanned 36 pages. DktEntry: 12.1. She spent 10 pages on the Retaliation Claim. The remaining 26 pages of her argument were dedicated to issues on which she lost or for which fees are not recoverable (or both). Thus, except to the extent the billing entries reflect work specifically done on the Retaliation Claim and Rule 50(a) ruling, those entries should be reduced by 2/3 to reflect Plaintiff's actual level of success.

On remand, Plaintiff had two surviving claims: the Retaliation Claim and the Defamation Claim based on the criminal docket delivered to the University of Arizona. Because she prevailed on only one of her claims and the other claim is factually and legally

---

[13] As already mentioned, to the extent specifically related to an issue on which Plaintiff lost or for which fees are not recoverable, Plaintiff should not recover any amount. For example, entries reflecting research done on defamation or due process should be excluded entirely.

[14] She prevailed in part on the defamation issue but for the reasons already expressed in this Response, she cannot recover fees incurred for her Defamation Claim.

distinct and does not provide for fee recovery, Plaintiff's fee recovery for work done in connection with the second trial should be reduced by 1/2 to the extent such work is not specifically related to only her Retaliation Claim.[15] To the extent Plaintiff argues that the Retaliation Claim was the main part of the litigation and the defamation was ancillary, that argument should be rejected. Throughout this litigation, Plaintiff has maintained that she could not specify what portion of her damages were associated with the Retaliation Claim as opposed to the Defamation Claim. *See* Exhibit F, Excerpts of Trial Transcript: Trial day 2, part 2, p. 9, 20, 26; *See also* Exhibit G, Excerpts of Deposition of Plaintiff. She believed these events equally contributed to her damages of over a million dollars. She cannot now turn around and argue that the defamation was an inconsequential part of her case. As a result, as reflected on Exhibit A, such amounts related to defamation claims in the second trial in this matter should be excluded from any fee award.

g.     Other Matters

Plaintiff asks the Court to require *the District* to pay "full fees and costs" because *Divijak* declined to settle Plaintiff's unfounded claims by admitting to perjury or providing a DNA sample. This would require the District to pay Plaintiff's attorneys fees incurred for claims against another defendant, for which fees are not recoverable. It was unreasonable for Plaintiff to be billed this amount. It is even more unreasonable to bill the District.

C.    Non-Taxable Costs

The Court should also deny or substantially limit Plaintiff's requests for non-taxable costs including electronic legal research expenses, airfare, car rentals, video depositions, parking fees, service of process and other charges related to Plaintiff's unsuccessful state law claims, and hotel stays. The bulk of these amounts should not be charged to the District.

i.    Legal Research

---

[15] As noted above, Plaintiff also billed an unreasonable 95.7 hours more for the second trial than for the first. As the Court is aware, the evidence presented in the second trial duplicated that presented in the first to a large extent.

16

Plaintiff seeks $17,420 in reimbursement for legal research. Defendant posits that in an era of all-electronic research, a subscription to Westlaw should no more be taxable as a cost than the cost of maintaining a library once was. Assuming, however, that the Court will award some portion of the legal research costs, that amount should be reduced by the substantial portion of these charges relating to unsuccessful claims. The research charges totaling $2,180 between April and June 2023 were likely related to Plaintiff's failed Motion to Amend and should not be chargeable to the District at all. In general, however, it is impossible to tell what research relates to which legal claims or pleadings. Dividing Plaintiff's claims into four general categories of legal research: Retaliation, Qualified Immunity, Due Process and Defamation, Plaintiff prevailed on one. The Court should grant no more than 25% of the total, or $4,355.[16]

ii.     Airfare, Car Rental, and Hotel Accommodations

Travel time for out-of-town counsel is not reimbursable unless the plaintiff shows that local counsel "could not have rendered the service involved and thereby obviated the necessity of employing an attorney who must necessarily spend billable time traveling from his normal home to the work site...." *Harvey v. Mohammed*, 951 F. Supp. 2d 47, 63 (D.D.C. 2013) (quoting *In re N. (Bush Fee Application)*, 59 F.3d 184, 194 (D.C.Cir.1995)). The District Court of Arizona is disinclined to grant nontaxable expenses for travel without justification for why such travel is necessary for the relevant case. *Dinsbach on behalf of Dinsbach v. Harris*, CV-18-03595-PHX-GMS, 2022 WL 742726, at *10 (D. Ariz. Mar. 11, 2022) (finding travel from San Diego unnecessary and deducting related travel expenses).

Plaintiff was initially represented by Ms. Sandra Jonas, who was located in Tucson. In June 2021, Mr. Jones formally appeared in this matter and was thereafter primarily responsible for the case. At the time, Mr. Jones was based in Arizona. Plaintiff elected to retain Mr. Jones after he moved across the country. Presumably, that means she consented to

---

[16] This calculation does not include a separate reduction for the motion to amend.

17

pay for Mr. Jones' travel. But her agreement to do so does not make it reasonable to charge the District for that travel when, at minimum, there were certainly other attorneys at Snell & Wilmer in Phoenix or Tucson fully capable of handling this matter. Plaintiff gives little attention to these travel and accommodation expenses, likely because she knows they are not reasonable. The best she can muster is to argue that some work was done remotely and services were contracted at the lowest available rates. This does not make them reasonable and Plaintiff has presented no legal authority justifying an award of these expenses. For example, Plaintiff puts forth no argument why the District, rather than she or her counsel, should bear the $3,587.00 cost to fly Mr. Jones from Boston to Tucson or Phoenix or the $2,106.53 in car rental, Uber, and bus charges to travel to and from the airport. Nor does she explain how $10,940.43 in hotel charges is reasonable, which includes $2,231.28 for hotel accommodations and $270 for hotel parking for paralegal Maureen Zachow. Plaintiff is required to demonstrate these charges are reasonable. She has not even attempted to do so. The District therefore requests that none of flight, rental car, hotel, and parking charges be granted to Plaintiff.

iii.    Video Depositions

Plaintiff also seeks reimbursement for $3,309.74 for the video recording of the depositions of Divijak and Dr. Carolyn Dumler. The District Court of Arizona has interpreted L.R. Civ. 54.1(e) to allow "recovery of video depositions costs" as a reasonable out-of-pocket expense. *McNamara v. Infusion Software, Inc.*, CV-17-04026-PHX-SPL, 2020 WL 4921984, at *8 (D. Ariz. Aug. 21, 2020). However, such costs must have been "reasonably incurred" by counsel "in preparation for a potential trial and in the course of litigation." *Id.* Plaintiff has provided no justification why these costs were "reasonably incurred," especially given that no video clips of the depositions were used at the second trial at all. But, in any event, Plaintiff has made no argument in support of these charges and they should be excluded.

iv.     Miscellaneous

Plaintiff also seeks to recover certain process server and other miscellaneous charges from the District. The $127, $99.60, and $271.80 charged for service on Divijak, the University of Arizona, and Mr. Divijak, respectively, are entirely unrelated to Plaintiff's claims against the District. Nor should the unjustified $463.79 in food and drink charges identified with Ms. Zachow in November 2023 be allowed. This amount is double the amount collectively spent by Mr. Jones and Ms. Kacey Overlund for the same trial. The District therefore asks that these amounts totaling $962.19 be disallowed.

## IV.     CONCLUSION

After prevailing on one of the five separate claims in the First Amended Complaint, one of five main arguments brought to the Ninth Circuit, and one of two claims tried to a jury, Plaintiff nevertheless seeks to recover 99% of the fees billed to her.[17]   She sued two defendants and prevailed against only one of them, but seeks to have the District responsible for all of her fees, even those incurred specifically related to her claims against Ms. Divijak personally. Block billing makes it impossible to review each entry to determine what claim it relates to or whether it was reasonable.

Several phases of litigation—Pre-suit Investigation, Pleadings, Case Management, Settlement Efforts, and Discovery and Disclosure—reasonably involved work that was related to more than one claim. For those phases, the District has identified only specific entries that are excludable because they relate to claims on which the District prevailed (such as the State Law Claims) or because they are excessive, redundant, or block billed. For the Dispositive Motion and Appeal phases, it is easy to estimate the amount of time reasonably spent on each discrete legal issue by reviewing the pages spent on those arguments. And after the two trials, Plaintiff prevailed on one of the two issues, and against one of the two

---

[17] Based on fees requested as a percentage of that amount plus the $4,223 billed to her by a variety of other attorneys that are not sought in the fee request.

Defendants. Therefore, these phases should be discounted by the percentages discussed above and set forth in Exhibit A on the Totals tab.[18]

Further, Plaintiff has not established that the rates sought by her are reasonable, as set forth above. Exhibit A also shows calculations of the reasonable time spent at reasonable hourly rates. Finally, the District should not be required to pay for unnecessary video depositions, travel to and from Massachusetts, or Westlaw research on the many meritless legal claims brought by Plaintiff.

For all of the foregoing reasons, the District respectfully requests that the Court limit Plaintiff's award of fees to no more than $357,732.18 and an award of non-taxable costs of no more than $24,696.29.

DATED this 15th day of May 2026.

DeConcini McDonald Yetwin & Lacy, P.C

By: */s/  Tyler H. Stanton*
Lisa Anne Smith
Tyler H. Stanton
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Plaintiff

---

[18] The Totals tab shows a proposed fee award based on specifically identified, line item exclusions along with the percentage discounts discussed above, but at the actually billed rates. It also sets forth the hours after specific, line item exclusions multiplied by the reasonable rates proposed herein. That calculation does not include the phase-based percentage reductions.

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, I electronically transmitted the attached document to:

Jeffrey Willis
Jacob C. Jones
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
jwillis@swlaw.com
jcjones@swlaw.com
*Attorneys for Plaintiff*

/s/  Lexi Gonzales

21