Jeffrey Willis (ASB #004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone:  520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com
           mracioppo@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D,<br><br>Plaintiff,<br><br>v.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | No. 4:21-cv-00062-SHR<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL** |

SNELL & WILMER

**I.      Introduction**

The Court should deny the District's motion for judgment as a matter of law and its alternative request for a new trial. The District's core argument is, in its own words:

> [E]ven if Ms. Divijak banned Plaintiff from Dove Mountain based on her speech (she did not), **a reasonable jury could not have concluded that Policy KFA was "the moving force"** behind that decision.

Motion (ECF 204) at 6 (emphasis added). The Ninth Circuit rejected that argument:

> Hartzell presented evidence from which a reasonable jury could infer that (1) Policy KFA allowed the District to ban those whose speech the District deemed offensive or inappropriate, (2) Divijak found Hartzell's advocacy offensive, and (3) she was banned after criticizing Divijak. Thus . . . Hartzell presented **sufficient evidence from which the jury could have concluded that the District banned her for offensive or inappropriate speech pursuant to an official policy in violation of the First Amendment**.

ECF 126-1 at 28 (emphasis added). The Ninth Circuit continued, holding the opposite of what the District asserts in its motion: "**a reasonable jury could also find that Policy KFA was a moving force behind the ban** on Hartzell." ECF 126-1 at 29 (emphasis added). And a reasonable jury so found. <u>Case closed</u>. If the District's motion is not a frivolous, vexatious multiplication of these proceedings, it certainly approaches that line.

The Court's reaction when the District raised its Rule 50(a) motion was apt:

> MS. SMITH: Let me move on to the Section 1983 claim. Obviously, there are disputed issues of fact, and I'm not going to argue about any of those. I understand those go to the jury. But what there isn't -- what the plaintiff hasn't brought any evidence of is that the policy KFA was the moving force behind any action taken by the school district. They haven't offered a scrap of evidence of that. And I looked --
>
> THE COURT: **Wasn't that true when I granted the motion for summary judgment and they sent it back**?
>
> MS. SMITH: Well, you granted the motion for judgment as a matter of law because you found the policy wasn't unconstitutional, because it wasn't. And what the Ninth Circuit ruled and what they talked about in the oral argument was, well, let's say we decide that the policy is unconstitutional.
>
> THE COURT: **Then it goes to the jury.**

SNELL & WILMER

ECF 183 at 101:20 – 102:10. From there onward, and in its motion, the District simply tries to relitigate what the Ninth Circuit already held.

One clear example demonstrating the motion's baselessness is the District's assertion in the beginning of its "Background," that "no District witness testified that Plaintiff's speech on or before February 7, 2020, fell into this category [*i.e.* offensive]" and "Dr. Dumler and Ms. Divijak both expressly denied that Plaintiff's speech was offensive or inappropriate." Motion at 2. Contrast those assertions with the trial record:

> Q. And you would agree that it is possible that on the day of February 7th someone in the district could have taken offense to Ms. Hartzell's words, right?
>
> A. (Assistant Superintendent Dumler): I guess that's possible.

ECF 181 at 74:8-14. [1] Bolstering this, the disinterested eyewitness Paul Gute (whose testimony the District does not address at all in its motion) also testified that Divijak appeared offended because of Plaintiff's words:

> Q. Did the exaggerated movement that you're describing appear to be performative to you?
>
> A. The reason why I said that, recalling back to that time, it appeared to be exaggerated. That's why I said that, more of kind of like a, you know, like that, not -- more of – more for -- maybe **feeling incensed or offended**, but not -- yeah, not -- more for show, yeah.
>
> . . .
>
> Q. In the clip we listened to, we heard you mention that Principal Divijak appeared **agitated** before the touch; is that correct?
>
> A. **Yes**.
>
> Q. So I want to be clear on the timeline. When it was you, your wife and Principal Divijak in the room that day, did Principal Divijak appear agitated?
>
> A. Not before -- not when it was just us there, no.
>
> Q. And when Rebecca Hartzell came in and said whatever it was that she said -- and we'll get to that -- after she said her words, did Principal Divijak appear to you to be **agitated**?

---

[1] For the trial transcripts: ECF 175 is Day 1 (Morning); ECF 176 is Day 1 (Afternoon); ECF 178 is Day 2 (Morning); ECF 179 is Day 2 (Afternoon); ECF 181 is Day 3 (Morning); ECF 182 is Day 3 (Afternoon); ECF 183 is Day 4 (Morning); ECF 184 is Day 4 (Afternoon); ECF 186 is Day 5. Herein, the ECF numbers will be used.

A. I would say both people did, **yes**.

Q. And that was before the touch occurred, correct?

A. That's correct.

Q. So you're saying that Principal Divijak **appeared offended** by whatever it was Rebecca said that day?

A. I -- yes, but I don't know exactly how they felt. But yeah, there was agitation, **whether it was offense, it could be, yes**.

ECF 181 at 14:9-15; 18:2-15. Divijak admitted that Hartzell used a "sarcastic, upset voice" to say, "thanks again for making me choose between my children." ECF 182 at 101:7-15. She also admitted the sarcasm went both ways: "[I]t was a fairly sarcastic interaction between the two of us." ECF 182 at 106:15-16. Divijak walked away during the conversation, without excusing herself. *Id.* at 100:5-18. Divijak "shouted at that point, don't touch me." ECF 176 at 96:12. Divijak even claimed she was "bawling [her] eyes out" in reaction. ECF 182 at 83:7-13. Divijak requested that Officer Ysaguirre give Plaintiff a trespass warning. *See, e.g.,* ECF 176 at 124:1-12; ECF 181 at 45:7-13; ECF 182 at 28:3-6; Exhibit 25. Divijak told Officer Ysaguirre that she wanted to press charges against Plaintiff. *See, e.g.,* ECF 181 at 77:20 – 78:15.

These details are significant because they track almost verbatim with what the Ninth Circuit has already decided:

> Next, a jury could infer that Divijak found Hartzell's criticisms offensive from the facts of the February 7, 2020 incident. Hartzell **sarcastically** thanked Divijak for "making [her] choose which kid [she was] going to support again today[,]" and a reasonable jury could find that Divijak **would be offended** by this statement. Divijak's **reaction** to Hartzell's speech would also support a jury finding that she was offended. For example, Divijak **walked away** from Hartzell while Hartzell was still speaking, and Divijak **shouted** at Hartzell after Hartzell touched her arm. And after the incident, Divijak was **"crying,"** she **requested that Ysaguirre give Hartzell a trespass warning**, and she told him that she wanted to **press charges** against Hartzell.

ECF 126-1 at 28-29. It is unclear why the District believes it is appropriate to raise these exact, settled issues again here and misrepresent the record in the process of doing so.

In sum: the Ninth Circuit already reversed this Court's prior Rule 50(a) ruling and remanded the § 1983 Monell claim for trial on the precise issue that the District relitigates here. The jury heard days of testimony, considered the video and written evidence, considered the District's witnesses' lack of credibility, and unanimously returned a verdict in Plaintiff's favor. The District now re-urges the same arguments the Ninth Circuit rejected. The motion should be denied.

## II.    Legal Standard

On the District's Rule 50(b) motion, for the matters preserved by its prior Rule 50(a) motion, "[t]he test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 995 (9th Cir. 2020) (quoting *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009); *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)). The court cannot overturn a verdict "merely because the jury could have reached the opposite conclusion based on the evidence." *Id.* Credibility determinations by the court are inappropriate, and the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)). The jury was "not required to believe" the District's evidence that was either contradicted, impeached, or from interested witnesses.[2] *See, e.g., Lytle*, 494 U.S. at 554–55.

A motion for new trial requires a showing that the verdict was "contrary to the weight of the evidence" or that the trial was "manifestly unjust." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The court's denial of a new trial motion will be affirmed unless "the record contains no evidence in support of the verdict" or if the court makes a "mistake of law." *Go Daddy*, 581 F.3d at 962; *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1190 (9th Cir. 2002).

---

[2] All the District's witnesses—current or former District employees—were interested.

- 4 -

SNELL
& WILMER

## III.    Argument

## A.    The Rule of Mandate and Law of the Case Preclude the Motion.

The District's Motion is not run-of-the-mill, good faith postjudgment litigation, because the Ninth Circuit has already squarely addressed the legal question raised. Thus, as a threshold matter, the District's motion is barred by both the rule of mandate and the law of the case doctrine. "When a case has been once decided by this court on appeal, and remanded to the [lower court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [lower court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate." *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255–56 (1895). That court "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* Violation of the rule of mandate is a jurisdictional error. *United States v. Thrasher,* 483 F.3d 977, 982 (9th Cir. 2007).

The Ninth Circuit has "repeatedly held, in both civil and criminal cases, that a district court is limited by this court's remand in situations where the scope of the remand is clear." *Mendez-Gutierrez v. Gonzales,* 444 F.3d 1168, 1172 (9th Cir. 2006); *see also Twentieth Century Fox Film Corp. v. Entm't Distrib.,* 429 F.3d 869, 883 (9th Cir. 2005) ("There is nothing in our prior decision that indicates that we issued an open remand. Rather, in remanding to the district court, our opinion contemplates a trial to resolve the only remaining genuine issue of material fact").

Likewise, the law of the case doctrine precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case. *See United States v. Lummi Indian Tribe,* 235 F.3d 443, 452 (9th Cir. 2000).

Here, the scope of the Ninth Circuit's remand was clear: the question whether Policy KFA was a moving force behind the ban was to be resolved by a jury. The Ninth Circuit held that "a reasonable jury could find that Policy KFA was a moving force behind the ban on Hartzell" and reversed this Court's prior judgment on that basis. The District's

- 5 -

Rule 50(b) motion asks this Court to reconsider that very determination—to hold, contrary to the Ninth Circuit's mandate, that no reasonable jury could so find. This Court lacks jurisdiction to do so. The District's motion does not even attempt to identify any issue that the Ninth Circuit left open; instead, it relitigates arguments the Ninth Circuit already addressed and rejected, including the significance of witness testimony denying reliance on KFA, and the applicability of *Eagle Point*. As to *Eagle Point* in particular, the District is effectively asking this Court to overrule the Ninth Circuit's own legal analysis— something a district court plainly cannot do. The deadline for any motion to reconsider the Ninth Circuit's mandate has passed, and the district court cannot reconsider it, regardless.

Moreover, several of the District's arguments were not raised in its oral Rule 50(a) motion at trial and therefore were not preserved. A party cannot properly "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003), and citing *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990)). Specifically, the District did not argue at the Rule 50(a) stage the following arguments it raises for the first time here: (1) the text of KFA only authorizes a person to be "instructed to leave" and does not authorize a future ban, with the only ban authority found in paragraph D for "disorderly conduct"; (2) witnesses "expressly denied" the speech was offensive, citing Dumler and Divijak's specific trial testimony; (3) if KFA had been relied upon, the District would have cited it explicitly, as it does for suspensions, expulsions, and teacher discipline; or (4) "the outcome would have been exactly the same if Policy KFA had never been adopted." Because these arguments were not raised in the Rule 50(a) motion, they are reviewed only for whether there is "any evidence" to support the jury's verdict—a standard the District plainly cannot overcome given the record described herein. *Go Daddy*, 581 F.3d at 961-62 (describing the "any evidence" standard).

**B.      The Ninth Circuit Ruled Against the District on a Thinner Record.**

The District's motion is remarkable for what it fails to acknowledge: the Ninth

Circuit squarely considered and rejected the very arguments the District advances here. The District spends its entire argument explaining why it believes the Ninth Circuit was wrong. Nowhere in the motion does the District analyze—let alone *identify*—any material differences between the trial record here and the record that led the Ninth Circuit to rule against the District on this exact question a year ago.

The Ninth Circuit held that "because a reasonable jury could find that Policy KFA authorized Divijak to ban parents whose speech she found offensive and that Hartzell was banned almost immediately after saying things Divijak could reasonably find offensive, a reasonable jury could also find that Policy KFA was a moving force behind the ban." ECF 126-1 at 29. The temporal proximity—"a short time after" and "almost immediately after"—was itself sufficient to support the causal link. *Id.* And those same facts regarding timing were not only supported at the second trial, they were indisputable because those events were all caught on video; nobody could have challenged the timeline.

The binding decision in this case is the only authority this Court should be concerned with, although other Ninth Circuit decisions likewise show that temporal proximity can be legally sufficient to support a causal link. *See, e.g., Thompson v. Cent. Valley Sch. Dist. No. 365*, 163 F.4th 654, 663 (9th Cir. 2025) ("The temporal proximity between the speech and the placement on administrative leave supports Thompson's *prima facie* claim for retaliation."); *Anthoine v. N. Cent. Cntys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010) (evidence of a substantial or motivating factor can be found from the fact that the speech and the action were proximate in time).

When this Court entertained the District's oral Rule 50(a) motion at trial, Plaintiff's counsel observed that this "specific issue of whether a reasonable juror could find that the policy was the reason she was banned" had already been decided by the Ninth Circuit on "like a third or a fifth of the record we have here." The Court opined it was "a slim read" but allowed the issue to proceed to the jury—exactly as the Ninth Circuit's mandate required.

The trial record now contains even more Plaintiff-favorable evidence than what the

Ninth Circuit reviewed. The jury's unanimous verdict reflects its evaluation of that fuller record. The District offers no basis for this Court to override either (let alone both) the Ninth Circuit's legal determination or the jury's factual findings.

**C.      The District's Specific Arguments Were Considered and Rejected by the Ninth Circuit.**

The District advances several sub-arguments, each of which the Ninth Circuit already addressed.

***1.      The argument that Divijak did not know about Policy KFA and that no one "mentioned" or "referred to" Policy KFA fails, again.***

The District emphasizes that Divijak "had never seen Policy KFA before this lawsuit began." Motion at 2. But the Ninth Circuit considered this and other related arguments and found them unpersuasive:

> [T]he District argues that various witnesses testified that it did not rely on Policy KFA to ban Hartzell. A jury could credit this testimony and reject Hartzell's claims, but because all reasonable inferences must presently be drawn in Hartzell's favor, this argument does not entitle the District to judgment as a matter of law. There is sufficient evidence in the record to permit a reasonable jury to find that Hartzell was banned pursuant to Policy KFA.

ECF 126-1 at 31. Moreover the Ninth Circuit noted that in *Eagle Point*, "the record . . . did not indicate that the assistant principal or the security guard invoked the policy challenged by the plaintiff." ECF 126-1 at 30 n.1.[3] It held that "a reasonable jury could conclude that Divijak relied on Policy KFA to ban Hartzell" even without explicit invocation of the policy, and that "Divijak's conduct in banning Hartzell would not have been an 'implausible interpretation' of the policy." ECF 126-1 at 30.

At trial, the evidence on this point was even stronger. Assistant Superintendent Dumler—the self-described "policy queen"—testified that a principal could, "in the heat

---

[3] [3] In addition, Divijak was impeached multiple times—giving self-contradicting testimony under oath regarding whether Plaintiff "held on" and the "grab" lasting for "two or three seconds" when the video showed that was impossible. And it was apparent that she was coached in her testimony about what she said in her initial encounter with the police officer (ECF 183 at 74:7 – 76:7; Exhibit 2XX (video)). Thus, the jury was entitled to not believe any of her testimony, and the jury was properly instructed to that effect.

of a moment," ask someone to leave campus, and that such action would be "under the KFA policy" even though the principal "wouldn't know that; they would just be acting as a normal administrator." ECF 179 at 21:15 – 22:5.[4] In other words, the District's own witness confirmed that a principal can act pursuant to KFA without knowing the policy by name. Plaintiff's counsel confirmed this directly: "So that's—in that case, the principal would be acting as a normal administrator, is acting under the KFA policy; although they might not even know that they're doing so?" Dumler answered: "Yes. They're acting in accordance with the policy." *Id.*

Assistant Superintendent Dumler also testified that the District does not always announce when a particular policy is being followed:

> Q: Does the district announce with words every time that it is following a specific policy on a particular day?
> A. No.
> . . .
> Q. I suspect you don't have the homework policy memorized, but I'll submit to you that there's a homework policy that generally provides the circumstances under which homework should be issued.
> A. Yeah. I'm sure there's a framework, yes.
> Q. And it is not the case that every time a parent issues homework -- a teacher issues homework, they say we're following policy QRS, or whatever it is, in issuing the homework, correct?
> A. Yeah. They would not be doing that.
> Q. That would seem a little ridiculous?
> A. Yes, it would.

ECF 181 70:7 – 71:4. She also could not point to what policy, if not the KFA policy, was the policy by which Plaintiff was indefinitely banned from school property. ECF 181 72:17-19. Her testimony that the District "did not issue the ban" (*id.*) was expressly rejected by the jury,[5] based on substantial evidence—including Exhibit 25 (the district's own email confirming Divijak requested the trespass) and the video Exhibit 2 where Divijak is seen speaking with the officer at the beginning of the interaction—that

---

[4] *See also* ECF 181 at 74:20 – 75:25 (Asst. Superintendent Dumler testifying that a school principal has authority under KFA to request someone to leave "in the heat of a moment," and it can be made "indefinite" subsequently by the Superintendent).

[5] ECF 195 Question Nos. 1-4.

Principal Divijak directly requested the trespass. The jury could choose to disregard any or all of Dumler's testimony.

Whether district employees knew the name of the KFA policy or memorized every word of it is not and never was the correct legal standard, and this red herring argument has already been rejected by the Ninth Circuit.

### 2.    *The argument that Policy KFA does not authorize a principal to ban a parent fails, again.*

The District argues that "Policy KFA does not say that such people can be banned from District property in the future." Motion at 2. But the Ninth Circuit already rejected this reading. It held that "a reasonable jury could find that Policy KFA authorized Divijak to ban parents whose speech she found offensive," and that "[t]he most significant evidence on this point is Policy KFA" itself. ECF 126-1 at 28-29. The court noted that Policy KFA expressly prohibits "speech or language that is offensive or inappropriate" and provides that violators "shall be instructed to leave the property of the District," with failure to comply subjecting the person to "criminal proceedings." *Id.*

While that evidence is alone sufficient, as the Ninth Circuit already determined, there is more. For example, at trial, Dumler confirmed that KFA permits the banning of a parent for offensive speech. ECF 181 at 73:25 – 74:7 (Q: And the word "speech" is right there plain as day, right? A. Yes). She also testified that the volleyball parent was banned because of the offensive speech under the KFA policy, not because of any physical conduct. *Id.* at 102:20 – 103:2; *see also* ECF 182 at 19:6 – 20:6.

And again, Assistant Superintendent Dumler testified that a principal could, "in the heat of a moment," ask someone to leave campus, and that such action would be "under the KFA policy" even though the principal "wouldn't know that; they would just be acting as a normal administrator." ECF 179 at 21:15 – 22:5.[6] "So that's—in that case, the

---

[6] *See also* ECF 181 at 74:20 – 75:25 (Asst. Superintendent Dumler testifying that a school principal has authority under KFA to request someone to leave "in the heat of a moment," and it can be made "indefinite" subsequently by the Superintendent).

principal would be acting as a normal administrator, is acting under the KFA policy; although they might not even know that they're doing so?" Dumler answered: "Yes. They're acting in accordance with the policy." *Id.*

And the argument about "instructing to leave" not amounting to a ban is contrary to both common sense and Dumler's own testimony:

> Q. And the policy further provides that "failure to obey the instruction to leave may subject the person to criminal proceedings." Do you see that?
>
> A. Yes, I do.
>
> Q. Now, it says "instruct them to leave." What if someone instructs the person to leave and they take ten steps off the property, so they left, and then they walk back on the property. Is this policy intended to cover that situation also? That's a violation of this policy, right?
>
> A. Yes. I would say yes, it's a violation.
>
> Q. So to some extent, it means leave and don't come back, right?
>
> A. Yes.

Day 3 (Morning) at 71:6-14. "Leave and don't come back," and if you do there are "criminal proceedings." That is a ban, by definition.

And importantly, Superintendent Wilson—who held the ultimate authority—did not revoke the ban but instead confirmed that it would remain in effect and told Hartzell the decision was "final" and that it "would be indefinite." ECF 176 130:24 – 131:16; 133:13 – 21. The Ninth Circuit already took that same fact into account in its decision and found this fact significant: "like the assistant principal in *Eagle Point*, here the superintendent did not revoke the ban as a mistake or suggest that Divijak lacked authority to ban Hartzell," instead saying it was "final" and "indefinite." ECF 126-1 at 30. Dumler confirmed the Superintendent could do so (ECF 181 at 74:20 – 75:25) and it is undisputed that he did so.

### 3. *The argument about distinguishing* **Eagle Point** *fails, again.*

The District argues that the evidence introduced at trial distinguishes this case from

*Eagle Point*. That does not matter for this Court because the Ninth Circuit already decided the issue, the Ninth Circuit already considered *Eagle Point*, and this Court lacks jurisdiction to question that analysis. Reconsideration of the mandate is improper here.

Tellingly, the District overstates the Ninth Circuit's reliance on *Eagle Point*, stating that "the Ninth Circuit **relied entirely** on" that case. Motion at 5 (emphasis added). Again, the Ninth Circuit disagrees with the District, and the District misrepresents the record:

> Our opinion in *Eagle Point Education Ass'n/SOBC/OEA v. Jackson County School District No. 9*, 880 F.3d 1097 (9th Cir. 2018), **further supports** Hartzell's theory of the District's Monell liability based on an official policy.

ECF 126-1 at 29. "Further supports" is not the same as "relied entirely." In other words, *Eagle Point* only "further supports" the Ninth Circuit's conclusion (*i.e.* that the KFA policy was the moving force for the ban) that was already supported by the analysis explained previously in the mandate.[7]

Nevertheless, the District contends that unlike in *Eagle Point*, the outcome would have been exactly the same if Policy KFA had never been adopted.

First, this is pure attorney argument raised for the first time here; no witness (impeached, interested, or otherwise) testified that the outcome would have been the same with no Policy KFA; it is something the District's attorneys have created for purposes of this motion.

Second, the Ninth Circuit already applied *Eagle Point* to this case, finding parallel circumstances: (1) a policy authorized the challenged action; (2) the actor's conduct was consistent with the policy; and (3) supervisors did not correct the action as unauthorized. At trial, the evidence supporting the *Eagle Point* analogy was stronger still.

---

[7] For example, the preceding paragraph (ECF 126-1 at 29) reads (with emphasis added):

> Finally, Hartzell was banned a short time after the encounter with Divijak. Because a reasonable jury could find that Policy KFA authorized Divijak to ban parents whose speech she found offensive and that Hartzell was banned almost immediately after saying things Divijak could reasonably find offensive, **a reasonable jury could also find that Policy KFA was a moving force behind the ban on Hartzell**.

Third, while the jury never heard any evidence supporting the District's post-hoc assertion (*i.e.* that the outcome would have been the same without Policy KFA), the jury did hear testimony that Policy KFA was the only policy that could possibly authorize what was done to Plaintiff—the District never identified any other basis. Plaintiff testified that no one ever mentioned any other district policy that would justify removing a parent from the school for three and a half years. The jury heard and saw evidence that when Superintendent Wilson asked for the "backstory" on the day of the incident, the information provided concerned Plaintiff's *speech*—her "pretty scathing emails," the fact that she was "very opinionated" and "very high maintenance"—not any physical contact. The jury saw and heard evidence including that the surveillance video did not clearly show a grab, and the District knew this on the day of the incident. Yet the District never interviewed the one neutral eyewitness, Paul Gute, who testified at trial that Plaintiff merely touched Divijak's arm and did not grab or hold her, which directly controverted Divijak's story.

Divijak told Superintendent Wilson she was "disappointed" because Plaintiff was going to be allowed back on campus (ECF 181 at 71:9-19); Wilson told Plaintiff that he would not lift the ban due to an upset principal; and Wilson responded by keeping the ban in place indefinitely rather than lifting it. ECF 176 at 131:12-16

From all of this, a reasonable jury could easily conclude—as this jury did—that the ban was motivated by Plaintiff's speech and effectuated through the authority conferred by KFA. The District's insistence that "the outcome would have been exactly the same if Policy KFA had never been adopted" ignores that without KFA, there would have been no policy basis for the ban whatsoever. The District essentially states that the "only one reasonable conclusion" the jury could have drawn was that the District was acting outside of its own policies, whereas Plaintiff's theory posits an unremarkable point—as a reasonable jury could also have concluded—that the District follows the District's own policies. Plaintiff's is certainly a "reasonable conclusion" and—although not the standard—objectively more likely than the alternative the District subtly suggests: rogue

conduct. Under the District's argument, the "only one reasonable conclusion" would have had to have been not only a rogue principal, but also two rogue Assistant Superintendents and a rogue Superintendent, as well as a rogue outside legal counsel for the District at the February 24 meeting. The more likely solution, and one certainly supported by substantial evidence, is simply that these individuals were not simultaneously all rogues but instead were following the District's policy KFA: a conclusion the Ninth Circuit already held that a reasonable jury could reach. And this jury did. "Did Andrea Divijak act to preclude Rebecca Hartzell from school property?" "Yes." "Was Rebecca Hartzell precluded from school property pursuant to Marana Unified School District Policy KFA?" "Yes." "Would Marana Unified School District have taken the same action against Rebecca Hartzell even if she had not engaged in the protected activity?" "No." "Was Rebecca Hartzell's protected speech a substantial or motivating factor in Andrea Divijak's action in precluding her from school property?" "Yes." ECF 195 (verdict form) at 5. And most importantly, "Do you unanimously find in favor of Plaintiff Rebecca Hartzell on her First Amendment Retaliation claim against Defendant Marana Unified School District?" "Yes." *Id.* at 3.[8]

**D.      The District's Reliance on *James v. Harris County* Is Misplaced.**

The District cites *James v. Harris County*, 577 F.3d 612, 619 (5th Cir. 2009), for

---

[8] The jury was properly instructed that they would have to find that the KFA policy was the "moving force," and they did so:

> Therefore, in order to prevail on the plaintiff's Section 1983 claim against Defendant Marana Unified School District, alleging liability based on an official policy, the plaintiffs must prove each of the follow elements by a preponderance of the evidence:

> Principal Divijak acted under color of state law; the acts of Principal Divijak deprived the plaintiff of her First Amendment rights under the United States Constitution, as explained in the previous instruction; **Principal Divijak acted pursuant to the KFA policy**; and Marana Unified School District's policy KFA caused the deprivation of plaintiff's rights by Principal Divijak. That is, **policy KFA is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury**.

ECF 183 at 114:4-16 (jury instructions) (emphasis added).

- 14 -

the proposition that "a reasonable jury could not find that the alleged policy was the moving force behind [the challenged action] when there was no evidence that [the actor] had knowledge of such policy." That case involves a major distinction the District failed to highlight: it was not about a written policy, it was about an "unwritten policy of under-investigating officer-involved shootings." *James v. Harris Cnty.*, 577 F.3d 612, 615 (5th Cir. 2009). A Plaintiff trying to prove the content and application of an unwritten policy faces many obstacles that are not present in a case like this one. This case involves an undisputedly *written policy* (Policy KFA), and beyond all of the other evidence supporting the verdict, there is also a reasonable and common-sense assumption that employees have knowledge of written policies (unlike unwritten ones like the one alleged in *James*).

Perhaps more importantly, that case is both from a different circuit while being directly contrary to the Ninth Circuit's mandate in this case and *Eagle Point*. Moreover, Dumler's own testimony confirmed that a school administrator could in fact be following policy KFA without knowing its name, or even without being specifically aware that they were doing so. ECF 179 at 21:15 – 22:5. Thus, this argument also fails.

**E.      The Verdict Was Not Contrary to the Weight of the Evidence.**

The District's alternative request for a new trial fares no better. The weight of the evidence supports the verdict. Under this new trial request, the District is allowed to ask the Court to make credibility determinations and weigh evidence to some degree. Yet, the District does not make a single credibility or weight-based argument—either by way of factual or legal analysis—so there is nothing of substance here to respond to; it appears to be a perfunctory argument.

And if the Court were to attempt any credibility analysis, it would inevitably have to favor Plaintiff and uphold the verdict. As an example, in *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1153 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1127, 220 L. Ed. 2d 423 (2025), the Ninth Circuit noted that the district court's Rule 59 analysis included that the non-moving party's testimony was "inconsistent with video," which went to credibility. Here, in contrast, the only person whose testimony

has been "inconsistent with video" (and also inconsistent with a neutral, disinterested eyewitness) is Principal Divijak, the District's witness.

The jury heard that Plaintiff's speech offended Divijak. The jury saw her physical reaction, heard that Divijak raised her voice in response, then went down the hall crying. It heard from Dumler that it's "possible" that "on the day of February 7th someone in the district could have taken offense to Ms. Hartzell's words." ECF 181 at 74. It both saw (in the Exhibit 2 video) and heard testimony that Hartzell was banned almost immediately after that speech. It heard that the District's leadership, when asked for the "backstory," discussed Hartzell's speech—her "scathing emails," her being "opinionated" and "high maintenance"—not any physical conduct. It saw the video and also read the District's text message admitting that the video did not clearly show a grab, that the District never interviewed the one neutral eyewitness, and that it never identified any policy basis other than KFA for the ban. It heard that the District banned one other parent under KFA—the volleyball parent—for speech that district officials found offensive, implemented by officials who did not know the policy by name. It heard that the Superintendent could turn a temporary ban under KFA into a permanent, indefinite one, and it heard that Superintendent Wilson did just that on February 24, 2020.

The jury weighed this evidence against the District's witnesses who denied reliance on KFA, despite Exhibit 25, as well as the police report and the video clearly showing that the District (Divijak) initiated the ban. It was the jury's province to assess credibility, and it found the District's denials unpersuasive. That conclusion was entirely reasonable given the totality of the evidence. The verdict was not contrary to the weight of the evidence; it reflected a rational assessment of it.

**IV.   Conclusion**

The Ninth Circuit held that the § 1983 claim must go to a jury. It went to a jury. The jury unanimously found for Plaintiff. The District's motion asks this Court to do what the Ninth Circuit said it could not do: resolve disputed factual questions against the non-moving party. The motion for judgment as a matter of law should be denied. The

alternative motion for new trial should likewise be denied, as the verdict is fully supported by the weight of the evidence and the District has not identified even a single issue of evidence weight or credibility for this Court to analyze.

The Court should deny the District's motion.

DATED this 21st of May, 2026.

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*
Jeffrey Willis (ASB #004870)
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*