DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
(520) 322-5000

Lisa Anne Smith (AZ # 16762)
lasmith@dmyl.com
Tyler H. Stanton (AZ # 34526)
tstanton@dmyl.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF ARIZONA

Rebecca Hartzell, Ph.D., BCBA-D

Plaintiff,

vs.

Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; and Andrea Divijak in her individual capacity and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,

Defendants.

NO. 4:21-cv-00062-SHR

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL**

(Assigned to Hon. Scott H. Rash)

Defendant Marana Unified School District (the "District"), through counsel undersigned, hereby submits its Reply in Support of its Motion for Judgment as a Matter of Law or New Trial (the "Motion"). Plaintiff primarily opposes the District's Motion on the grounds that the Ninth Circuit held that the prior jury in this matter could have found in Plaintiff's favor on a different record. But this does nothing to address whether the second jury, on remand, had a legally sufficient basis to find in Plaintiff's favor. Because it did not, the District's Motion should be granted. This Motion is supported by the following Memorandum of Points and Authorities and the entire record in this case.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

I.   **THE NINTH CIRCUIT'S DECISION DOES NOT PRECLUDE GRANTING THE MOTION**

Neither the rule of mandate nor the law of the case doctrine preclude the Motion. "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Herrington v. Cnty. of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quoting *Maag v. Wessler*, 993 F.2d 718, 720 n.2 (9th Cir. 1993). And while "broader than the law of the case doctrine, the so-called rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Herrington*, 12 F.3d at 904. The law of the case doctrine is also "subject to three exceptions that may arise when '(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial.'" *Mortimer v. Baca*, 594 F.3d 714, 721 (9th Cir. 2010) (quoting *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir. 2005)).

The Ninth Circuit decided that based on the record in the first trial, the question of whether Policy KFA was the moving force behind Plaintiff's alleged Constitutional injuries should have been sent to the jury. In Plaintiff's telling, because the Ninth Circuit said the case should have been submitted to the jury on a different record, the District is precluded from requesting or receiving judgment as a matter of law based on a new record. Plaintiff's conception of this doctrine would, in effect, cut off a defendant's ability to request judgment as a matter of law even if a plaintiff failed to put on any evidence of their claims on remand. Obviously, this is not the law. The Court's "ultimate task is to distinguish matters that have been decided . . . from matters that have not." *Montana v. Talen Montana, LLC*, 130 F.4th 675, 692 (9th Cir. 2025) (quoting *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000)). Clearly, the Ninth Circuit did not conclusively determine that Plaintiff already met

her burden to send the case to the jury on remand, a year before the trial on remand had even occurred.

But, even if the law of the case doctrine is otherwise applicable, an exception to its application exists where "substantially different evidence was adduced at a subsequent trial." *Mortimer*, 594 F.3d at 721. That exception is met here. For example, in the first trial, it does not appear that Plaintiff asked Dr. Dumler any specific questions about Policy KFA, other than to ask whether "one of the district's own policies allow[s] someone to be banned due to speech." Trial Tr. 80:12–16, Dkt. No. 112. But on remand, there was substantial testimony related to District policies in general. For example, in the second trial, Dr. Dumler testified that District principals are only trained on policies related to their day-to-day functions and Ms. Divijak would not have been specifically trained on, or even aware of, Policy KFA. Trial Tr. 97:9–21, Dkt. No. 181. Dr. Dumler also testified that the Superintendent and senior administrative staff did not have any discussion related to Policy KFA in connection with this incident. *Id.* at 99:6–11. There was also unrefuted testimony from Dr. Dumler that if the District was acting to ban a parent from campus pursuant to Policy KFA, they would refer explicitly to the policy. *Id.* at 100:4–6. There was also substantial testimony from Dr. Dumler related to very specific application of various parts of Policy KFA and their inapplicability to Plaintiff's conduct on February 7, 2020. *Id.* at 101:19–104:8. Taken together, the testimony at the second trial, but not the first trial, was that there was no reason for Ms. Divijak to be aware of Policy KFA, that it was not likely that she would be aware of it——two pages out of over a fifteen hundred  pages of policies on which she was not trained and never relied—and that the policy could not possibly have been the "moving force" behind her decision if she was not aware of it. *Id.* at 96:24–97:2. This testimony was not elicited in the first trial in this matter and constitutes "substantially different evidence adduced at a subsequent trial" justifying an exception to the law of the case doctrine, as described above. Based on the above, the Court must analyze the District's Motion based on the actual evidence adduced at

3

the trial on remand; not based on what the Ninth Circuit held a reasonable jury could have concluded from the evidence at the first trial in this matter.

## II.        THE DISTRICT MAKES NO "NEW" ARGUMENTS IN ITS MOTION.

The purpose of the rule prohibiting a party from raising arguments in a Rule 50(b) motion that were not made in its Rule 50(a) motion "is twofold. First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to engage in an impermissible reexamination of facts found by the jury. Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (quoting *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1428–29 (9th Cir. 1986)) (internal citations and quotation marks omitted).  But this requirement "may be satisfied by an ambiguous or inartfully made motion for a directed verdict." *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989). In this case, the District made a single relevant argument related to Plaintiff's First Amendment claim: that there was no, i.e., insufficient, evidence to allow a reasonable jury to conclude that Policy KFA was the moving force behind Plaintiff's ban.

At trial, the District argued that "the plaintiff hasn't brought *any* evidence [] that the policy KFA was the moving force behind any action taken by the school district" and that "in this case, there is *no* evidence that that policy played any role in anyone's mind the relates to this trespass." Trial Tr. 101:23–25, 103:10–11, Dkt. No. 183. (emphasis added). Plaintiff argues that the District is raising the following arguments for the first time:

> (1) the text of KFA only authorizes a person to be "instructed to leave" and does not authorize a future ban, with the only ban authority found in paragraph D for "disorderly conduct"; (2) witnesses "expressly denied" the speech was offensive, citing Dumler and Divijak's specific trial testimony; (3) if KFA had been relied upon, the District would have cited it explicitly, as it does for suspensions, expulsions, and teacher discipline; or (4) "the outcome would have been exactly the same if Policy KFA had never been adopted."

4

Plaintiff's Response in Opposition to Defendant's Motion for Judgment as a Matter of Law or New Trial, Dkt. 209 (the "Response"), 5:17–23. But these were all portions of the record directly related to points made by Plaintiff's counsel in opposition to the Rule 50(a) motion. Trial Tr. 103:15–104:13, Dkt. No. 183. In short, the District raised a "sufficiency of the evidence" challenge to Plaintiff's First Amendment Retaliation claim and identified how there was no evidence in the record to allow a reasonable jury to find in Plaintiff's favor on that claim. That is all that is required to allow it to renew its motion here. For example, in *Acosta v. Honda Motor Co*., the Third Circuit held that a defendant's request for directed verdict as to particular counts of a complaint satisfied the "notice-giving function" of the rule, as evidenced by the fact that plaintiff's counsel argued in opposition to the Rule 50(a) motion that "the record contained evidence sufficient to sustain a finding that defendants" were liable on the counts identified by the defendant. 717 F.2d 828, 832 (3d Cir. 1983); *see also Lewis v. Nelson*, 277 F.2d 207, 208 (8th Cir. 1960) (holding that Rule 50(a) argument "that 'there is want of any evidence to sustain the charges of primary negligence against the defendant'" was sufficient for purposes of preserving the issue for a renewed motion under Rule 50(b)). Based on the above, it was clear the District was making a sufficiency of the evidence challenge related to whether Policy KFA was the moving force behind Plaintiff's ban.

## III.   NO REASONABLE JURY COULD HAVE CONCLUDED THAT POLICY KFA WAS THE "MOVING FORCE" BEHIND PLAINTIFF'S BAN FROM CAMPUS

Properly considered, Plaintiff's evidence was plainly insufficient to allow a reasonable jury to find that Policy KFA was the moving force behind her ban. For example, while Plaintiff forcefully argues that the jury was free to discredit Defendant Divijak's testimony that she was unaware of Policy KFA, there was *no* evidence to rebut that testimony. Plaintiff does not even attempt to argue otherwise. *See generally*, Response; Trial Tr. 5:5–31:4, Dkt. No. 184. It is entirely undisputed that Ms. Divijak was unaware of Policy KFA. As a result, no reasonable jury could have concluded that Policy KFA was the moving force behind any

of Ms. Divijak's actions. *See James v. Harris County*, 577 F.3d 612, 619 (5th Cir. 2009) ("A reasonable jury could not find that the alleged policy was the moving force behind Wilkinson's alleged excessive force, when there was no evidence that Wilkinson had knowledge of such policy.").

Plaintiff argues, without support, that *James v. Harris County* is inapplicable where the policy is written because there is "a reasonable and common-sense assumption that employees have knowledge of written policies" of their governmental employer. And even if the jury discredited Ms. Divijak's testimony entirely, Dr. Dumler testified that there are over 1,500 pages of District policies and "no one could just have them all in [their] head." Trial Tr. 96:24–97:2, Dkt. No. 181. And again, Dr. Dumler testified that Ms. Divijak would not have been trained on or aware of Police KFA. *Id.* at 97:9–9:21. In any event, Plaintiff provides no legal or factual support for the assertion that all employees of a public body are charged with personal knowledge of every written policy of their employer for purposes of imposing municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Based on the evidence at the first trial, perhaps a jury could have reasonably concluded that Ms. Divijak must have been aware of the policy. However, nowhere in the better developed factual record at this trial was there any evidence to indicate that she was actually aware of, was constructively aware of, or should have been aware of Policy KFA.

There was similarly no evidence that the only person identified by Plaintiff with any knowledge of Policy KFA had any decision-making involvement with allowing Plaintiff on school grounds: the record is devoid of any evidence or argument that Dr. Dumler advised Superintendent Doug Wilson that Policy KFA existed and could be utilized to ban Plaintiff from school property, or even that she supported the trespass or prolonged it. Plaintiff put forth various disconnected "facts," but nothing links those facts into a web supporting municipal liability. Plaintiff argued that Ms. Divijak and/or Superintendent Wilson banned Plaintiff from campus. But there was no evidence or argument that those individuals were

aware of or relied on Policy KFA.[1] Thus, the policy cannot be the moving force behind their actions. Plaintiff argued that Dr. Dumler was aware of Policy KFA and its applications. But there was no evidence that Dr. Dumler had any role in imposing or maintaining Plaintiff's ban. Thus, there is no evidence in the record that the two people Plaintiff claims acted to ban her from campus had knowledge of the relevant policy. And there is no evidence that the person with knowledge of the policy acted to ban her from campus.

In fact, Plaintiff herself testified that nobody from the District ever mentioned, expressly or implicitly, Policy KFA, or *any portion thereof*, in their dealings with Plaintiff. Trial Tr. 7:2–8:18, 14:8–19, 17:6–23, Dkt. No. 178. A proper reading of *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cnty. Sch. Dist. No. 9*, 880 F.3d 1097 (9th Cir. 2018), and the Ninth Circuit's Opinion in this case makes this critical. The Ninth Circuit in this case referenced that neither the security guard nor assistant principal in *Eagle Point* expressly invoked the policy at issue. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 740 n.9 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 298 (2025).  But in *Eagle Point*, even if the security guard did not expressly invoke the policy, the assistant principal *at the time of the incident* told the plaintiff that "signs supporting teachers or 'protesting' were forbidden." *Eagle Point*, 880 F.3d at 1101. The only thing that made the signs forbidden was the policy. This was in fact, a clear, though not express, invocation of the recently adopted policy providing that "[s]igns and banners will not be allowed in or upon buildings and other facilities unless written approval of the Superintendent is obtained in advance." *Id.* (brackets original). Thus, *Eagle Point* is distinguishable from the record here, in which there is no evidence that any District employee alleged to have acted to ban Plaintiff from campus had any knowledge of

---

[1] The jury expressly found that Ms. Divijak banned Plaintiff from campus. Verdict p. 5, Dkt. 195. As set forth above, she could not have been motivated to do so by a policy of which she was entirely unaware.

the policy at issue or relied on it in any way.[2] Had Superintendent Wilson told Plaintiff that he was maintaining her ban because offensive language is not allowed on school property, for example, this portion of *Eagle Point* would be relevant. But it is undisputed that is not what happened here. In this case, there is no evidence that any District employee would have acted any differently in a world where Policy KFA did not exist.

## IV. ALTERNATIVELY, THE JURY'S VERDICT WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND JUSTIFIES A NEW TRIAL

For the reasons expressed above, the evidence presented at trial would not have allowed a reasonable jury to find in Plaintiff's favor on her § 1983 claim because there was *no* evidence establishing a causal connection between Policy KFA and Plaintiff's ban from campus. As a result, at a minimum, the verdict was contrary to the weight of the evidence, and the Court should grant the District a new trial to prevent a miscarriage of justice.

Plaintiff argues that because the District did not provide argument related to the relative credibility of the witnesses in its Motion, it hasn't offered any argument related to the weight of the evidence. But the District is not to asking the Court to weigh the credibility of any witnesses. Rather, it asks the Court to weigh how any of Plaintiff's proposed evidence bears on whether she was banned *pursuant to* Policy KFA.

Plaintiff argues that the jury received evidence that Divijak was offended by Plaintiff's speech; that Plaintiff was banned immediately after that speech; that Hartzell's speech was referenced in text messages related to the "backstory;" that the District did not interview Mr.

---

[2] *Eagle Point* was not raised in briefing in the prior appeal until Plaintiff's Reply Brief, and only for the point that where an application of a policy is "not illogical," a governmental entity can be held liable for the employee's act, *see* Pl's. Reply Br., *Hartzell v. Marana Unified Sch. Dist.*, 9th Cir. No. 23-4310, Dkt. No. 30.1, 27–28, which still requires the employee to apply the policy at issue. The District did not have the opportunity to brief *Eagle Point*'s application or attempt to demonstrate its inapplicability to the Ninth Circuit.

Gute; that the District never identified a policy basis for the ban;[3] and that one other parent was banned pursuant to Policy KFA. Response, 17:3–17. Even accepting Plaintiff's oft-misleading framing of the above-described testimony, not a single one of these pieces of evidence supports a conclusion that Policy KFA was *the moving force* behind Plaintiff's ban. The Court can weigh this evidence, put forth by Plaintiff, to determine whether it supports the conclusion that the ban was pursuant to Policy KFA. Based on all of the above, the jury's verdict was based on nothing more than mere speculation that because Policy KFA existed, it must have been applied against Plaintiff.

## V.    CONCLUSION

"That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397, 407 (1997). Rather, a plaintiff must show that a policy of the municipality was the "moving force" behind the deprivation. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting *Monell*, 436 U.S. at 694). Plaintiff was required to present evidence that would allow a reasonable jury to find that Policy KFA was the "moving force" behind the decision to ban her from campus. As described in the Motion and herein, Plaintiff presented *no* such evidence between her ban from campus and Policy KFA. The District is entitled to judgment as a matter of law in its favor. *Escriba v. Foster Poultry Farms*, Inc., 743 F.3d 1236, 1242 (9th Cir. 2014).

Further, for the reasons expressed in the Motion and herein, at minimum, the Court should grant a new trial in this case. The weight of the evidence here demonstrated the complete lack of a causal connection between Policy KFA and Plaintiff's ban from campus.

---

[3] Plaintiff states that the jury heard that the District "never identified any policy basis other than KFA for the ban." But Plaintiff even testified that the District never identified *any* policy basis for the ban, including KFA. Trial Tr. 14:8 – 19, Dkt. No. 178.

The jury's verdict implicitly concluded that there was such a connection, which is contrary to the weight of the evidence presented at trial.

DATED this 28th day of May, 2026.

DECONCINI MCDONALD YETWIN & LACY, P.C.

By: */s/ Lisa Anne Smith*
Lisa Anne Smith
Tyler H. Stanton
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 85716-5300
Attorneys for Defendants

10

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic filing to the following CM/CEF registrant:

Jeffrey Willis
Jacob C. Jones
Matthew Racioppo
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701
jwillis@swlaw.com
jcjones@swlaw.com
mracioppos@swlaw.com
*Attorneys for Plaintiff*

By: */s/ Chloe Burkholder*

11