Jeffrey Willis (ASB #004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone:  520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com
          mracioppo@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Rebecca Hartzell, Ph.D., BCBA-D,<br><br>Plaintiff,<br><br>v.<br><br>Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,<br><br>Defendants. | No. 4:21-cv-00062-SHR<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** |

**I.      Introduction**

This case is about one core issue: government defendants who retaliated against Dr. Hartzell because of her protected speech and advocacy for children, then tried to cover up their unlawful retaliation with a false story about a grab. Now, and 250 years from now, the books and records will correctly reflect: Dr. Hartzell won her case against the government for speech retaliation; the requested fees and costs are reasonable.

The District's Response (ECF 206) asks this Court to slash Plaintiff's fee request by more than 57%—from about $896K to about $384K[1]—based on a fundamentally flawed premise: that Dr. Hartzell's five causes of action were "distinctly different claims" warranting separate-lawsuit treatment under *Hensley v. Eckerhart*, 461 U.S. 424 (1983). They were not. Every claim arose from one course of retaliatory conduct (and its coverup), and the jury's $200,000 verdict—eight times the District's highest settlement offer—confirms the "excellent result" foreclosing a lodestar reduction.

In addition to the originally requested fees and costs, Dr. Hartzell should further be awarded the following: $40,377 in fees incurred in preparing and litigating this Motion and Reply (fees-on-fees, as presaged in the Motion); $19,930.50 for responding (ECF 209) to the District's Rule 50(b) motion filed recently; and $5,031 in additional fees for recent post-judgment settlement efforts, for a total of $961,786.08.

**II.      Plaintiff's Claims Shared Common Facts**

Most the District's Response hinges on characterizing Plaintiff's unsuccessful claims and appeal arguments as "distinctly different" under *Hensley*'s first step. Adopting that argument would be an abuse of discretion and legal error.

---

[1] The District has objected only to "non-taxable" costs. The District did not address "taxable" costs and all, and it filed no objection to the Bill of Costs seeking taxable costs, which was required under LRCiv 54.1(b). The Bill of Costs was filed April 24, 2026 (ECF 200); the 14-day objection period expired on May 8, 2026, and the 30-day period has expired; thus, the Clerk must immediately allow the allowable items. *Id. See also* LRCiv 54.1(d) ("The prevailing party need not succeed on every issue to be entitled to costs.")

SNELL & WILMER

**A.**    ***Hensley* Step One: Work on unsuccessful related claims cannot be excluded or separated, and the claims in this case were related.**

Under *Hensley*, "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). *Hensley* describes related cases as cases wherein:

> . . . the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. **Such a lawsuit cannot be viewed as a series of discrete claims**. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435 (emphasis added). The Ninth Circuit emphasized that "claims are *unrelated* if the successful and unsuccessful claims are 'distinctly different' *both* legally *and* factually," that "the focus is on whether the claims arose out of a common course of conduct," and that claims may be related if there is commonality in *either* the facts *or* the legal theories. *Webb v. Sloan*, 330 F.3d 1158, 1168–69 (9th Cir. 2003) (citing *Schwarz v. Secretary of Health & Human Services,* 73 F.3d 895, 902–03 (9th Cir.1995)) (emphasis in original). Under the Supreme Court's rule, the only claims that can be considered not recoverable are those that are "distinct in all respects from" the successful claim. *Hensley*, 461 U.S. at 440. None of Plaintiff's unsuccessful claims meet that standard; they were all related. *See, e.g. Lewis v. Donley*, 487 F. App'x 373, 374 (9th Cir. 2012) (court properly awarded plaintiff "nearly all the fees she requested" ($274,479 on 1774+ hours) even though "she prevailed on only one of the ten claims," the "$100,000 verdict" on a retaliation claim "was substantial" even though much less than plaintiff sought) *affirming Lewis v. Donley*, No. 3:06-CV-0053 JWS, 2011 WL 13182988, at *1 (D. Alaska June 14, 2011); *Stonebrae L.P. v. Toll Bros.*, 521 F. App'x 592, 594–95 (9th Cir. 2013) (rejecting argument that unsuccessful contract claim was unrelated; "Where, as here, a party achieves an excellent result, the court should refuse to reduce the lodestar amount."); *see also, e.g., Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th

SNELL & WILMER

Cir. 2001) (all claims related to improving disability determination system, which was accomplished; affirming no fee reduction).

### 1. First Cause of Action: First Amendment Retaliation

This claim was listed first because retaliation is the core of the litigation; she won. The claim against Ms. Divijak (for which she was granted qualified immunity) is obviously related; it is virtually identical to the successful claim against the District and did not even warrant a separate heading or count number in the Complaint. Moreover, the District did not refute Dr. Hartzell's argument that the grant of qualified immunity, though *technically* rendering the claim unsuccessful here, is not a failure at all because the Ninth Circuit's published opinion can now be cited as "clearly established law" that a principal cannot ban a parent in retaliation for unwanted speech. Stripping qualified immunity creates a new remedy for future litigants (and probably improves the training that principals in this circuit will receive in the future). That is a major success, fruit of Dr. Hartzell's lawsuit here.

### 2. Second: Free Speech Retaliation (Arizona Constitution)

The factual allegations and relief sought here are identical to the First, the only difference is source of law: state versus federal constitutions. It was time-barred because the notice of claim was given after the 180-day statutory deadline, a procedural dismissal. *See* ECF 59 at 10. There can be no dispute that this claim is factually related to the First.

### 3. Third Cause of Action: Procedural due Process (Fourteenth Amendment)

This claim is, at a minimum, factually related to the First because it arises from a common core of facts as the first claim: the school ban—the exact same ban that the jury found was an unlawful retaliation by the District under the First claim. Indeed, this Court's MSJ Order confirms that this claim arose from the same ban at issue in the retaliation claim: "Because Plaintiff had no constitutional right to access school property, no procedural due process was required before Plaintiff was banned from the property." ECF 59 at 14. Its dismissal on separate legal grounds does not transform it into a claim "distinct in all respects" from the retaliation claim; it factually arose from the exact same retaliatory ban.

Furthermore, referring to this claim, the District argued that "any liability under such

a theory would be entirely duplicative of Plaintiff's retaliation claim." ECF 66 at 8. Something "entirely duplicative" is necessarily "related" under *Hensley*. *See also, e.g., Duffy v. City of Desert Hot Springs*, 342 F. App'x 279, 282 (9th Cir. 2009) (district court erred in finding first amendment and due process claims unrelated) (citing cases).

### 4. Fourth Cause of Action: Parents' Bill of Rights:

This claim was voluntarily dismissed very early, and little time was spent on it, but it was nevertheless related to the First claim. It alleged that Defendants "interfered and obstructed Dr. Hartzell's protected, fundamental parental rights by, in part, imposing an unreasonably overbroad ban on Dr. Hartzell for an indefinite period of time as described above." ECF 1 at ¶ 120. Both were based on the same retaliatory ban, thus factually related.

### 5. Fifth Cause of Action: Defamation[2]

This claim alleged that "Divijak made false statements about Dr. Hartzell," including "that Dr. Hartzell physically assaulted her." ECF 1 at ¶ 128.[3] The District argues only that *some* facts differ (Opp'n at 13), misapplying the standard; the test is whether claims are "distinct in <u>all</u> respects." *Hensley*, 461 U.S. at 440. Similarity in *some* respects is enough.

The retaliation claim arose from the February 7, 2020 interaction where Dr. Hartzell spoke with Ms. Divijak to complain about event scheduling. The defamation claim is based on subsequent **<u>false statements about that exact same incident</u>**. The key antagonist in both claims was Ms. Divijak. Indeed, both parties jointly recognized this connection in pretrial filings, explaining that both claims hinged on whether the alleged grab was true:

> Plaintiff alleges the ban was in retaliation for Plaintiff's protected speech. Defendant contends the ban was **because Plaintiff grabbed Defendant Divijak**. . . . Plaintiff also alleges that Defendant Divijak engaged in defamation when she told others that **Plaintiff assaulted and grabbed Defendant Divijak**. Defendant Divijak denies the defamation claim, contending that any statements she made were **true or substantially true**.

---

[2] Defendants do not address the Sixth Cause of Action (False Light), but the Complaint showed it has the same core factual basis as the defamation claim (ECF 1 at 16-17), and thus the successful retaliation claim, as explained herein. Therefore, it is also related.

[3] As the factual record developed beyond the Complaint, the allegation on this claim included statements that she was "grabbed." *See* ECF 63 at 3.

ECF 63 at 2 (emphasis added).[4] The District's entire defense to the retaliation claim—that Dr. Hartzell grabbed Ms. Divijak—shows these claims are factually related because those false assertions were also the basis of the defamation claim. Agreeing, the District asserted in its summary judgment motion that the retaliation claim and the grab were factually intertwined (based on the physical touching allegation), ECF 38 at 8, and the District told the Ninth Circuit that "**the key factual issue in this case was whether . . . Dr. Hartzell grabbed Ms. Divijak**." Exhibit 1 (Defendants' Appellate Brief excerpts) at 2. The District cannot argue the claims are unrelated after admitting they have the same "key factual issue."

The presentation of evidence at the Second Trial underscored this common theme of retaliation and coverup. The opening statement explained that Ms. Divijak "sent an anonymous document . . . **implying that she had committed an assault that never happened**. That's defamation." ECF 175 at 62:5-8. Closing argument tied the claims together arguing about defamatory document sent to Dr. Hartzell's employer as further retaliation: "Kicking her out of the district wasn't enough; pressing frivolous criminal charges wasn't enough; it wasn't working." ECF 184 at 23:10-18.

The Ninth Circuit has held that courts evaluating relatedness should consider "whether testimony on the successful and unsuccessful claims overlapped, and whether the evidence concerning one issue was material and relevant to the other issues." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Here, work on the defamation claim substantially contributed to the retaliation claim because it revealed facts showing retaliatory motive—including Ms. Divijak's involvement in the criminal case and her frustration when it was dismissed—and exposed her inconsistent testimony. The defamation document itself (Trial Exhibit 84) was a docket printout of the criminal case from *the exact same February 7, 2020 interaction*. To say this is unrelated defies logic.

The theme was retaliation and coverup. The core factual dispute was the fictional grab. Defendants defended the ban by contending Ms. Divijak's assertion of an assault was

---

[4] Dr. Hartzell clearly explained early in this case that the dispute "at the core of [all] Hartzell's claims is whether, as Principal Divijak told third parties and testified, Hartzell assaulted her and intentionally grabbed her wrist." ECF 46 at 2.

"true or substantially true"—identical to their defamation defense. Interestingly, the District highlights (Opp'n at 16) that Plaintiff could not distinguish damages from retaliation versus defamation, further showing the claims were related.[5]

The District admitted, and the evidence showed, that the retaliation and defamation claims were not "distinct in <u>all</u> respects," thus they cannot be considered unrelated under *Hensley*. The Ninth Circuit's two-step framework, recently reaffirmed in *Edmo v. Corizon, Inc.,* 97 F.4th 1165, 1169 (9th Cir. 2024), makes this clear: exclusion of hours is appropriate only for claims "distinct in all respects" from the successful claims. Here, the factual core of every claim was the same: the District banned Dr. Hartzell from her children's school after she engaged in protected speech, and Principal Divijak fabricated a physical assault to cover up the retaliatory ban and further the retaliation. The defamation claims arose from the very same fabrication—Divijak's false statements that Dr. Hartzell grabbed her were both the pretext behind the retaliation and the basis for the defamation. They were the same facts viewed through different legal lenses. Although the jury did not find all elements of the defamation claim,[6] that does not retroactively turn the claims to "unrelated." *Hensley* is about *unsuccessful related* claims, therefore, a related claim does not become unrelated merely because it was ultimately unsuccessful.[7]

**B.    *Hensley Step Two:* <u>High degree of success justifies no reduction.</u>**

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. Dr. Hartzell obtained *at least* "excellent results."

---

[5] Again, the District gets the standard wrong (Opp'n at 16). Dr. Hartzell does not have to prove the defamation claim "was an inconsequential part of her case," she has only to show it was "related" to her successful claim, and she has done so.

[6] For example, the jury may have found—*as Defense counsel argued in closing*—that Mr. Divijak acted on his own and not as Ms. Divijak's agent. *See* ECF 184 at 43:17-23.

[7] Even if there were unrelated claims, hours can be excluded "only if those hours can be isolated." *Webb*, 330 F.3d at 1169. The District's attempt to reduce trial work by "1/2" or other gross mathematical reduction violates this rule. Under *Webb*, a percentage reduction applies only if there is "limited success" overall, which is not the case here. *Id.* at 1167.

Because the claims are all related, the Court must reject the District's entire analysis that wholesale eliminates claims from the case, whether by a percentage or itemized basis. Instead, the "most critical factor is the degree of success obtained." *Edmo*, 97 F.4th at 1169 (citing *Hensley*, 461 U.S. at 435, 440). Such success is not measured by the success of individual claims, but the "overall relief obtained." *Id.* Where, as here, the plaintiff achieves a "high degree of success," time spent on related but unsuccessful claims are rightly "included in the lodestar calculation." *Id.*

Dr. Hartzell achieved an exceptional result: a unanimous $200,000 damage award and speech retaliation finding under the written District KFA policy, the lifting of the unconstitutional ban, public vindication through a published Ninth Circuit opinion, and constitutional precedent benefiting parents and free-speech advocates throughout the state, circuit, and country. This is precisely the scenario in which no reduction is warranted.

The District's mechanical page-counting approach—*e.g.* proposing that only 15% of summary judgment fees are recoverable because only 3 of 20 pages addressed retaliation— misapplies *Hensley*. The District argues (Opp'n at 13) that *Fox v. Vice*, 563 U.S. 826 (2011), supports its contention to wholly exclude unsuccessful claims. It does not. Instead, the Supreme Court reinforced that "[a] court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" *Id.* at 834. Aside from this, *Fox* was about frivolous plaintiff claims; that analysis does not apply here because Defendants have never claimed, nor could they, that Dr. Hartzell's unsuccessful claims were frivolous. *Fox* reinforced *Hensley* and did not change the *Hensley* analysis excluding work on *unrelated* claims. Again, no claims were "unrelated" in this case. In short, a page-count of legal arguments is not a proxy for the actual hours expended on factual development, legal analysis, brief drafting, and case preparation.

### 1. Finding Unconstitutional Statewide Written Policy Is Exceptional Success

As Dr. Hartzell explained in her Motion, the Ninth Circuit's published opinion in this matter was significant for civil rights, particularly parents' speech rights in schools. The

District did not address, and thus concedes (as Exhibit H to the Motion shows), that the Arizona School Board Association is "conducting policy review" including the KFA policy. That article encourages readers to check if their own Arizona school district has this same problematic policy. *Id.* The District also did not address the importance of the numerous news articles on this case, compiled in Exhibit D of the Motion.

Although the District spends significant ink (Opp'n at 9-11 and Ex. H) talking about its views about the importance of the numerous case citations to the Ninth Circuit's opinion, it misses the bigger point: this case is now the ***second case*** listed and quoted in the Comment to the Ninth Circuit's Model Civil Jury Instruction 9.11, describing a citizen's "right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future," and nearly 1/3 of a page is dedicated to it under that model instruction alone. Exhibit 2 (model jury instruction excerpts). The case is also cited now for Model Civil Jury Instruction 9.6 regarding *Monell* liability. *Id.* Run-of-the-mill cases do not become comments to Ninth Circuit model jury instructions, let alone two separate model instructions. This was an important case, and it will be important for untold year to come.

Furthermore, when determining an appropriate fee, "[t]he district court may also consider the public benefit of deterring unconstitutional conduct" by the government. *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009) (affirming decision considering successful and unsuccessful claims related). "To determine this impact, the district court should consider whether the plaintiff has affected a change in policy or a deterrent to widespread civil rights violations." *Id.* Dr. Hartzell has done both, and unrefuted Exhibit H shows that policy changes are afoot. Given the news coverage of this case, school officials will now think twice before banning parents from school grounds because of speech they think is "offensive" or unpopular. This further justifies a full fee award for this exceptional success. *Id.*

### 2. *$200,000 vs. Defendants' Settlement History Is Exceptional Success*

The District denies that Dr. Hartzell made an offer of "zero dollars if Defendants

would simply apologize." Opp'n at 12. Dr. Hartzell and her counsel recall making this offer verbally during a separate caucus of the first settlement conference, through a magistrate judge who was going back and forth between each party via Zoom. *See* Supplemental Declaration at ¶ 4. What they heard back was that the Defendants would never apologize, which Dr. Hartzell interpreted as a rejection of the offer. It is conceivable, however, that the precise offer was, in the reasonable judgment of the mediator, not explicitly conveyed to Defendants.

More importantly, the District now *falsely* asserts it "was never offered the opportunity to settle the Retaliation Claim on the terms argued by Plaintiff in her Motion." Opp'n at 12-13. The District *falsely* states the offers were all contingent on other terms and statements Ms. Divijak was unwilling to make, but that is not true. For example, on April 1, 2022, Dr. Hartzell offered to settle for a single payment of "**$75,000**, **dismissal with prejudice**, each side to bear their own costs/fees," not a single string attached. Exhibit 3 (emphasis added). And On January 17, 2024, after losing at the first trial, Dr. Hartzell offered to settle for a single payment of **$25,000**, first trial judgment and verdict vacated; judgment (in the agreed amount of $25,000) entered for Plaintiff (inclusive of costs and fees), appeal dismissed with prejudice. Exhibit 4. That offer was reiterated on January 29, 2024 with further detail, and at that time the District countered at $10,000. On February 8, 2024, the offer was simplified: $25,000, cost judgment waived, notice of satisfaction of cost judgment filed by Defendants, appeal dismissed. Exhibit 5. Compared to the scant settlement offers given by the District and prior offers the District unreasonably refused, the $200,000 verdict show an exceptional success.

### 3. The District's Rate Arguments Lack Merit

Dr. Hartzell provided substantial rate evidence beyond her attorney's affidavit, including evidence of recent rate inflation (Exhibit G, unrefuted), other cases, and Mr. Jones's own 2022 work approved by a court in this district at $499.50 per hour (with a supervising partner at $590 per hour). Based on documented rate inflation and Mr. Jones's role here as lead counsel, the current rates of $645 and $475 are justified. The Holtzman

SNELL
& WILMER

and Lowell-Britt affidavits do not help the District—neither declarant has plaintiff's civil rights experience (as opposed to EEOC employer defense, in the case of Holtzman—Lowell-Britt gives no indication of relevant experience), and neither identifies any Arizona attorney who does plaintiff's civil rights work like this case. Their online resumes only confirm this case is not the kind of experience they have. This shows why the market for such attorneys is not well developed in Arizona, supporting—not undermining—the requested rates.

The fact that the District found no comparable civil rights plaintiff's attorneys in Arizona demonstrates why the requested rates are reasonable and why an upward pressure on rates is appropriate. The market for constitutional plaintiff's lawyers will not improve if courts adopt baseless arguments to reduce fees.

### 4. *The District's Other Arguments Lack Merit*

The District complains about 9.3 hours for preparing witness examination outlines without subdivision, but entries like this have been upheld as reasonable when tasks are related and well-understood. *See Clark v. Golden Specialty, Inc.*, No. C14-1412 TSZ, 2017 WL 516163, at *3 (W.D. Wash. Feb. 8, 2017). The complaint about both Mr. Jones and Mr. Racioppo preparing for Mr. Gute's examination ignores that courts typically expect senior and junior attorneys to work together during trial preparation. Mr. Racioppo was staffed weeks before trial, and Mr. Gute's examination was his first federal jury witness examination. The preparation paid off because Mr. Gute's powerful testimony, skillfully elicited by Mr. Racioppo, was one of the keys to Dr. Hartzell's success.

The District's other billing complaints similarly lack merit. Mr. Racioppo's 12.3-hour trial day was typical. The 3.9-hour, 7.6-hour, and 6.2-hour entries involved related tasks reasonably described. The District fails to identify a single actual block billing problem.

The complaint about 2.1 hours on expert disclosure ignores that deciding whether to retain a damages expert (or disclose a non-retained expert) is proper litigation strategy; the decision not to use one—while somewhat risky—saved costs, and the jury did not find

expert testimony necessary. The 14 hours on written discovery over six weeks was reasonable, particularly given the unique DNA request attempting to identify who sent the defamatory document. This is not boilerplate discovery.

There is nothing unreasonable about a junior attorney assisting with preparation of the key witness (Dr. Hartzell).

The fact that counsel spent more hours for the second trial than the first does not make the time "excessive"—the trials were different, with different themes, witnesses, and focus informed by the Ninth Circuit's decision. *See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case").

Spending 2.3 hours researching exclusion of Dr. Hartzell's unmirandized statements was reasonable—Defendants used that evidence extensively, and it was proper to search for precedent to exclude it given that it clearly would have been excludable in a criminal case.[8]

The 0.4 hours on a required status report was similarly reasonable given the need to review months of communications and coordinate a joint filing. Although the report substantively was the same as before, diligent review was still required (and expected by the Court) to ensure the information given to the Court was accurate and up-to-date.

The District provides no legal basis for denying the legal research costs, which courts in this district have granted.

The District's travel cost objections lack merit. Mr. Jones did not *bill time* for travel; the *Harvey* case cited by the District was about *billing travel time*. Dr. Hartzell retained Mr. Jones when he lived in Phoenix; when he relocated to Massachusetts in 2022, she chose to continue with him given the dearth of suitable alternatives (and a party's right to choose her own lawyer is fundamental). The District's citation to *Dinsbach*, 2022 WL 742726, supports Dr. Hartzell—that court declined travel costs from California in an Arizona case for an attorney who works "primarily" from Arizona, unlike Mr. Jones who, since 2022, lives in

---

[8] *See, e.g., United States v. Mora-Alcaraz*, 986 F.3d 1151, 1153 (9th Cir. 2021) (affirming suppression of statements that "were the product of a custodial interrogation conducted without the required Miranda warnings and therefore inadmissible").

and works exclusively from Massachusetts. The relatively small airfare and ground transportation costs over the course of this case are reasonable nontaxable costs. Hotel charges are likewise reasonable—none of the primary attorneys or paralegal staff are from Tucson, and daily commutes from Phoenix during trial would have been unreasonable.

The video depositions were necessary and reasonable—they were used at the first trial, and a screenshot of Ms. Divijak's video deposition showing the "grab" during her testimony was used effectively in opening statement slides at the second trial.

The complaint about Ms. Zachow's food/drink charges for the first trial ($463.79 total) ignores that this senior paralegal oversaw keeping the trial team fed—she purchased most of the food for the team.

Service of process on all parties was necessary; this argument again rests on the District's flawed contention that the other claims were unrelated.

## III. Fees on Fees and Supplemental Fees Since Filing Motion

Fees-on-fees (*i.e.* fees incurred on a motion for fees) are recoverable under § 1988(b). *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986). A request for fees-on-fees is "treated the same as for work done on the merits of a case." *Winterstein v. Stryker Corp. Grp. Life Ins. Plan*, 262 Fed. App'x 841, 843 (9th Cir. 2008). For simplicity (and although it underestimates the time actually spent and reasonable fees actually incurred), Dr. Hartzell is only including Mr. Jones's time spent on this briefing, as shown in the Supplemental Declaration of Jacob C. Jones, attached:

**Fee Motion: 36.8 hours ($645 per hour): $23,736**

**Fee Reply: 25.8 hours ($645 per hour): $16,641**

In addition, Dr. Hartzell has reasonable expended attorneys' fees responding to Defendants' Rule 50(b) Motion, which was filed May 7, 2026, and she adds the request for those fees here, again underestimating the figure by only including Mr. Jones's time:

**Review and Oppose Rule 50(b) Motion: 30.9 hours ($645 per hour): $19,930.50**

Finally, Dr. Hartzell has reasonably spent over **7.8 hours ($5,031) in post-judgment settlement efforts.** Working to settle a case is a necessary part of litigation. Although Dr.

SNELL & WILMER

Hartzell's counsel reasonably thought the parties were close to a final settlement (*see* ECF 214), that was based on Defense counsel's settlement proposals that were *contingent on approval by the governing board*. Yet, despite two governing board meetings since the judgment (where discussion this case was on their executive session agenda) including most recently on June 11, 2026, the District has refused to authorize *any* settlement offer, even with a final judgment and pending fee request—demonstrating the intransigence that further justifies a full fee award. *See* Exhibit 5.

**IV.    Conclusion**

For the foregoing reasons, the Court should grant Plaintiff's motion and award: (1) a reasonable attorneys' fee under § 1988 based on the lodestar in the amount of $837,050.00; (2) reasonable non-taxable and nontaxable expenses totaling $59,397.58; (3) $40,377 in fees incurred in preparing and litigating this motion and reply; (4) $19,930.50 for responding to the District's Rule 50(b) motion; and (5) $5,031 in fees for post-judgment settlement efforts, for a total of $961,786.08. In view of the excellent results obtained, the constitutional rights vindicated, and the reasonableness of the hours and rates, the full lodestar should be awarded without reduction.

Just as the adjuster would reject an arsonist's opinion about the value of the barn he burned down, the Court should reject the District's arguments about the reasonableness of the fees they forced Plaintiff to expend in this case. Their arguments are legally erroneous. They could have settled for much less long ago, and they chose not to.

SNELL & WILMER

- 13 -

DATED this 15th day of June, 2026.

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*
Jeffrey Willis (ASB #004870)
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*

- 14 -