Jeffrey Willis (ASB #004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com
mracioppo@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

SNELL & WILMER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Rebecca Hartzell, Ph.D., BCBA-D,

Plaintiff,

v.

Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,

Defendants.

No. 4:21-cv-00062-SHR

**PLAINTIFF'S SUPPLEMENTAL AUTHORITIES AND OBJECTIONS REGARDING DEFENDANTS' RULE 59 MOTION FOR NEW TRIAL**

SNELL & WILMER

**I. Introduction, Procedural History, and Procedural Objections**

On May 7, 2026, Defendants filed (ECF 204) a combined Rule 50 and Rule 59 Motion. The Rule 50 Motion was flatly contrary to the Mandate in this case, "failed to meaningfully distinguish the evidence presented in this trial from the evidence presented in the first trial," and was properly denied. (ECF 217). As to the Rule 59 Motion, the only legal argument Defendants made was that "the verdict was contrary to the weight of the evidence." ECF 204 at 4, 7. It is beyond dispute that this does not state a correct legal standard (the correct legal standard refers to the "clear weight" or the "great weight" of the evidence).[1] Plaintiff's response, filed May 21, 2026 (ECF 209), noted that Defendants provide no valid ground for a new trial under Rule 59 and that Defendants' motion did not specify any specific "weight" or "credibility" issues to be analyzed under any appropriate standard. *Id*. at 15, 17.

Defendants replied on May 28, 2026 (ECF 212), expressly waiving any credibility determination: "But the District is not to [sic] asking the Court to weigh the credibility of any witnesses." ECF 212 at 8.[2] Again, Defendants provided no specific argument to meet any cognizable standard for a new trial.

On July 14, 2026, the Court entered an Order (ECF 217) indicating that the Court was "inclined to grant the District's Motion for New Trial based on the following":

> At trial, Defendant Divijak testified she was not aware of the policy and did not believe the policy gave the District authority to ban parents based on offensive speech. *See James v. Harris County*, 577 F.3d 612, 619 (5th Cir. 2009) ("A reasonable jury

---

[1] At oral argument, on rebuttal, Defendants' counsel repeatedly emphasized that it is the *Plaintiff's* burden to establish that the clear weight of the evidence, or something beyond substantial evidence, *supports* the verdict. Defendants' desperate approach wrongly reverses the proper burden and is not a correct statement of law. "In order to prevail on their motion for a new trial, Defendants have the burden of convincing this Court that the verdict was against the clear weight of the evidence." *Jimenez v. Reno*, No. CV 99-3455-PJW, 2007 WL 4862128, at *4 (C.D. Cal. July 13, 2007), *aff'd sub nom. Jimenez v. Franklin*, 333 F. App'x 299 (9th Cir. 2009) (citing *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007)). The Court should not be persuaded by Defendants' attempts to apply the wrong legal standard and flip the burden.

[2] It does not appear that any credibility evaluation has been done by Defendants or by the Court. To be sure, based on this express waiver by Defendants, Plaintiff submits it would be improper to grant any new trial based on any type of credibility evaluation.

> could not find that the alleged policy was the moving force behind Wilkinson's alleged excessive force, when there was no evidence that Wilkinson had knowledge of such policy."). Additionally, Assistant Superintendent Dumler testified no one at the District had stated they relied on the policy and she had never discussed the policy with Divijak or senior staff at the District in relation to Plaintiff's removal from campus. The Court finds no reason to discredit this testimony. Further, it was police, rather than District administrators, who trespassed Plaintiff from campus, and Plaintiff presented no evidence police knew about or acted pursuant to the policy in doing so.

Order, ECF 217 at 7. The Court ordered "additional argument regarding the issues related to a new trial outlined above." *Id.*

The first two reasons – the testimony of Ms. Dumler and Ms. Divijak amounting essentially to "it wasn't the District's fault" were not the subject of much discussion at the oral argument; the Court raised new issues such as damages, relevance of prior offensive speech instances, and Mr. Gute's status as the home buyer, for which no prior notice was given in the Court's Order (ECF 217).

Plaintiff believes that the reason these first two reasons (the ones noted in the Court's order) were not deeply discussed was because they have already been rejected by the Ninth Circuit. The jury was not required to credit the Defendants' self-serving testimony that Principal Divijak's professed ignorance of written District policies (because there too many pages of policies[3]). If defendants' denials had to be credited, every government defendant could always win by simply saying, as they essentially did here, "we didn't do it," and no Plaintiff could ever win because district courts would keep ordering new trials until some set of jurors finally sided with the government.

Indeed, here, credibility is not even at issue, based on Defendants' waiver. But even if it were, there was ample record evidence impeaching these witnesses, including at least two specific admissions by Ms. Divijak that she gave inconsistent testimony under

---

[3] The defense that the District could not be liable under a written policy on the basis that the District has too many written policies for its employees to memorize every one of them—is unconscionable. A government could avoid liability for unconstitutional policies by creating thousands of unconstitutional policies such that an employee could, at trial, deny knowledge or recollection of any given one of them. That is not how the Civil Rights Act or the U.S. Constitution work.

SNELL & WILMER



4925-0217-6462

oath about material issues (once about the "email" giving her an "emotional reaction" and once about whether or not Plaintiff "held" her arm—she testified both affirmatively and negatively under oath on both those issues, which the jury heard). In addition, Principal Divijak's story about her memory and what she said on her first encounter with the Police also changed after she talked to her lawyer during a break, casting credibility doubt on the precise question of whether she asked for the trespass (which, again the video and documentary evidence clearly shows she did, regardless of her litigation-driven denial). Neither of Defendants' witnesses were credible, they both gave the self-serving, litigation-driven narratives that were convenient to the defense, regardless of how inconsistent they were with the contemporaneous hard evidence.

Ms. Dumler's attempt to testify about the identity of who requested the trespass order, when *she was not present*, was also appropriately rejected by the jury, especially when it directly contradicted clear video and documentary evidence showing that Principal Divijak requested the trespass to the Marana Police Department (which occurred after she had first had her assistant principal and hall monitor effectuate policy KFA by instructing Plaintiff to leave).

The jury also appropriately rejected the District's baseless excuse that the trespass had nothing to do with the District, based on the unrebutted testimony regarding the February 24, 2020 meeting, which was further explained during the oral argument. At that meeting the District admitted it was their trespass order and that they refused to lift it because of a principal and assistant superintendent who would be "upset" if the District lifted it. The District lifted it either two or more than three years later, based on unrefuted evidence, so their witnesses' testimony that the District had nothing to do with the trespass was simply a not believable, post hoc, cover-up, litigation-driven excuse. *See, e.g., Reeves v. Sanderson Plumbing Prods.,* Inc., 530 U.S. 133, 147 (2000) (a defendant's unbelievable explanations on material issues "may be quite persuasive" proof of liability). The concept that this trespass was caused or maintained by the Marana Police Department (and not the District), as the Court's Order suggests as the third reason, is completely

SNELL & WILMER

SNELL & WILMER

unsupported by any evidence and, indeed, refuted by unrebutted testimonial and documentary evidence. None of these three reasons is a proper basis for a new trial here.

On August 26, 2026, the Court held that oral argument, in person. (ECF 219). During that argument, the Court, on its own and without any prompting by any party, raised for the first time the words “excessive damages.” Neither the Court nor any party had ever mentioned that issue previously, and certainly not during the approximately five months since the unanimous, eight-person Jury Verdict entered on March 31, 2026 (ECF 195) awarding Plaintiff $200,000.00 in damages the Jury found were caused by the District’s First Amendment retaliation. During that nearly five-month period: Defendants filed a Rule 59 Motion and a Reply, and the Court filed an order considering the Rule 59 Motion and grounds on which the Court was “inclined” to grant it. Nowhere during that lengthy post-verdict period did *anybody* mention on record that they believed the damages were excessive in this case. As explained further below, it would be reversible error to conclude these damages were excessive in this case.

During the oral argument, Plaintiff’s counsel timely preserved an objection based on Rule 59, which provides:

> (d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. **After giving the parties notice and an opportunity to be heard**, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

Fed. R. Civ. P. 59(d) (emphasis added).[4]

---

[4] Rule 59 gives a non-extendable, 28-day deadline for either the Court on its own or a party to file a Motion for a New Trial. *See also* Fed. R. App. P. 6(B)(2) (“A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).”)

One reason for this mandatory period is because judgments must be promptly made final and appealable. *See, e.g.,* Rule 1, Fed. R. Civ. P. (federal rules “should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.”) Continuing to keep pending a motion for new trial and citing new grounds nearly five months after the verdict is not consistent with the letter of Rule 1 and is contrary to the spirit of Rule 59’s prompt and non-extendable deadlines.

Plaintiff respectfully submits that springing this issue for the first time upon Plaintiff's counsel during the oral argument that was set for different, clearly specified topics does not comport with the "notice and an opportunity to be heard" that Fourteenth Amendment due process and due process under Rule 59 both require. *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) ("For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.") (cleaned up). On that basis, Plaintiff further objects to any new trial based on the "excessive damages" ground, particularly given that oral argument and this instant filing do not provide adequate notice and opportunity to be heard.[5]

**II. Express Reservation of Seventh Amendment Objection**

The Court's contemplated grant of a new trial in this case would be unconstitutional. The United States Constitution's Seventh Amendment contains a re-examination provision that, with certain limited exceptions, forbids judges from overturning or changing factual findings made by a jury.

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

Seventh Amend., U.S. Const. "The basic purpose behind [the Seventh Amendment] was to maintain the right to jury trial as it existed when the Amendment was adopted in 1791."

---

[5] Furthermore, to the extent the Court raised yet another new ground – relevance of prior speech by the Plaintiff that was admitted at trial with no objection – that would be an inappropriate basis not only because no notice was given, but also because Defendants never preserved a timely objection to admission of that evidence at trial, and any error (there was no error) would have been harmless. *See also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, *no error in admitting or excluding evidence*—or any other error by the court or a party—*is ground for granting a new trial*. . ..") (emphasis added).





SNELL & WILMER

SNELL & WILMER

*In re U. S. Fin. Sec. Litig.*, 609 F.2d 411, 421 (9th Cir. 1979).[6]

Thus, to find the exceptions, courts look to the common law as it existed in 1791 to determine if a given procedure is constitutional or whether it violates the Seventh Amendment. Plaintiff agrees that—in a case that has not already been reversed on appeal based on facts sufficient to support a jury verdict—there is undeniable common law support for a trial court to order a new trial based on a jury verdict being against "the great weight of the evidence."

However, this case presents a different procedural posture than the run-of-the-mill suggestion of a new trial. While proving a negative can be difficult, the thorough legal research of Plaintiff's counsel has not revealed any common law precedent for a court granting a new trial on this ground (i.e. the verdict being against "the great weight of the evidence") *when the matter had previously been taken to a reviewing appellate court, which found that the facts were sufficient to support a jury verdict*. Because this procedural tool in this procedural context does not appear to have existed in the common law, Plaintiff objects entirely to its application here because granting a new trial on this basis under the unique procedural posture of this case would be unconstitutional under the Seventh Amendment.

**III. New Trial Based on Excessive Damages Would Be Improper**

Plaintiff's counsel explained at the oral argument (without the benefit of prior notice to which Plaintiff was entitled) some of the record evidence supporting the damages. The out-of-pocket expenses for Plaintiff's move from the District (caused by the indefinite banishment from her children's school) were further reviewed and explained.[7]

---

6 *See also* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties *inviolate*.") (emphasis added).

7 Because Plaintiff was not given notice of this issue, Plaintiff's counsel did not have the exact record citations in hand and was going off recollection from about five months earlier. The figure $70,000 was mentioned orally, but in fact the total of direct evidence out-of-pocket damages was about $120,000: about $60,000 in home upgrades that were not recovered and would not have been incurred if she would have known she would have to move shortly due to District's First Amendment retaliation, plus an additional approximately $60,000 in out-of-pocket transactional charges. *See* Trial Day 2 (Morning, ECF 178) pp. 28 and 37 (explaining the reason for the move was the District's speech-

The emotional, reputational, and pain-and-suffering damage figures were first presented *by Defendants* during the trial.[8] The jury selected a number at the lower end of the range of numbers presented by *Defendants*.[9]

The record is full of many examples of Plaintiff testifying about these damages, and she testified at length about her reputational, emotional, and pain and suffering damages.

Plaintiff's "testimony alone is enough to substantiate the jury's award of emotional distress damages." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (9th Cir. 2003). Emotional distress damages do not need to be supported "by substantial evidence" or any other higher standard of proof. *Id.*

"If the evidence is sufficient to support even a high award, there is no need to compare cases." *Bell v. Williams*, 108 F.4th 809, 832 (9th Cir. 2024):

> In this way, we do not restrain the effects of social change on damages awards. Whether due to inflation or changing attitudes toward certain types of official misconduct, a damages award based on emotional distress can be substantial if a plaintiff presents sufficient evidence to support it.

*Id.*

Even if cases could be compared, which they need not be here, the *Zhang* court affirmed emotional damages in the six figures. *Id.*; *see also Passantino v. Johnson &*

---

retaliatory ban from the school, thus tying the damages to the constitutional violation); 44-45 ($60,000 in transactional costs, supported by Exhibits 13 and 14); 37-40 ($60,000 in home improvements costs not recovered, supported by Exhibits 15-21).

In closing argument, Plaintiff suggested "the approximately $60,000, the transactional cost of moving, is a damage you can easily find and award for her in connection with that claim, as is the lost value of some substantial improvements that had been done hoping it would be her dream home, the flooring, et cetera, but aren't the kind of improvements like a kitchen or a bathroom that usually get you a better sales price. So that was about another 60.") Trial Day 4 (Afternoon, ECF 184) p. 24.

[8] *See* Trial Day 2 (Afternoon, ECF 179) at 19: (Defendants eliciting testimony of $200,000 of "reputational and related harms between February 7, 2020, and April 29, 2022"); at 20 (Defendants eliciting testimony about further $400,000 "in emotional, reputation, and related harm" since April 29, 2022); at 27 (Defendants eliciting testimony about further $600,000 for pain and suffering since April 29, 2022).

[9] *See* Trial Day 4 (Afternoon, ECF 184) at 25 (Defendants explaining the disclosed damages were between $200,000 and $1.8 million).





SNELL & WILMER

*Johnson Consumer Prods., Inc.,* 212 F.3d 493, 513 (9th Cir. 2000) (upholding a $1,000,000 compensatory emotional distress damage award—in addition to $2,200,000 in economic damages—for a retaliatory discharge of an employee who complained of sex discrimination).

Here: pain, suffering, emotional, and reputational damages were described at length, and Plaintiff also explained that they are ongoing and expected to continue in the future. Even in *Bell*, arising from facts now several years old (since then Arizona has experienced an extremely high level of inflation) where the claimed damage was for a few moments of uncomfortable transportation within a jail, and there was no claim for *future* damages, the Court found that $150,000 was a reasonable figure for emotional distress and pain and suffering damages. 108 F.4th 809 at 832; *see also, e.g., Tortu v. Las Vegas Metropolitan Police Dept.*, 556 F.3d 1075 (9th Cir. 2009) (reversing court's finding that $175,000 in compensatory and $5,000 in punitive damages were excessive, noting that Section 1983 damages may include "impairment of reputation, personal humiliation, and mental anguish and suffering.").

There is no basis for granting a new trial when the Jury issued its unanimous, well-reasoned verdict that was amply supported by evidence, including evidence elicited by Defendants themselves. And nothing about the passage of five months since then has suddenly turned that verdict excessive. The Court should not grant a new trial on this new basis, and in the event the Court continues to be inclined to do so, Plaintiff requests an opportunity to be heard *following* proper notice, which is her right under Rule 59 and the U.S. Constitution.

**IV. New Trial Is Not Proper and Will Be Reversed, Wasting Significant Resources**

"[A] decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter." *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987) (citations omitted). The Court is not permitted to grant a new trial "merely because it might have come to a

SNELL & WILMER

different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990); *see also Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003) ("It is not the courts' place to substitute our evaluations for those of the jurors."). Thus, if the jury's verdict is not clearly against the great weight of the evidence, the trial court abuses its discretion in ordering a new trial. *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir.), *opinion amended on denial of reh'g,* 920 F.2d 618 (9th Cir. 1990). The Supreme Court has explained the jury's proper role, which should not be undermined by the Court:

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. . . . That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.

*Tennant v. Peoria & P. U. Ry. Co.,* 321 U.S. 29, 35 (1944).[10]

In *United States v. 4.0 Acres of Land*, a jury trial was held concerning the damages caused by the government's taking of the land on which the Federal Court in Tucson now sits. 175 F.3d 1133, 1140 (9th Cir. 1999). The district court granted a new trial based on the district court's view of "the weight of the evidence." After significant time and money

---

[10] At the argument, Plaintiff's counsel referenced an old contract case involving "infancy." Here is the citation:

> That is, there may be some evidence to sustain every element of the case, competent both in quantity and quality in law to sustain it, and yet it may be met by countervailing proof so potent as to leave no reasonable doubt of the opposing conclusion. This is illustrated by the case of *Algeo v. Duncan*, 39 N. Y. 313. That was an action upon a promissory note, and the plaintiff's prima facie case was fully made out. The defense arose upon a plea of infancy, which was also fully proved, there being no evidence to contradict or discredit the testimony upon that point, and yet the jury returned a verdict for the plaintiff. In that case it was decided that a motion to set aside the verdict 'for insufficient evidence' was properly made and entertained

*Metro. R. Co. v. Moore*, 121 U.S. 558, 569 (1887). In that case, there was "no evidence" to "discredit" the infancy defense that was "fully proved." Here, both witnesses on whose testimony the Court relies (Ms. Dumler and Ms. Divijak) were soundly discredited, and, regardless, Defendants expressly waived the issue of crediting or discrediting witnesses.

SNELL & WILMER

was wasted by the parties and the Court (and jurors and prospective jurors) in a second trial, the Ninth Circuit reversed and reinstated the original verdict. *Id.* The Ninth Circuit is not reluctant to reverse such errors. *See also, e.g., Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1230 (9th Cir. 2001) (reversing grant of new trial because "the district court concluded only that the jury verdict was, on the court's own assessment of the evidence, wrong"); *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1175 (9th Cir.), *opinion amended on denial of reh'g,* 920 F.2d 618 (9th Cir. 1990) (district court erred in granting the new trial, reversing and reinstating the original jury verdict for the plaintiffs); *Digidyne Corp. v. Data Gen. Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984) (noting that the jury's verdict, rather than being clearly contrary to the weight of the evidence, was a more-than-defensible resolution of a difficult issue); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1420 (9th Cir. 1989), *as amended on reh'g* (Apr. 28, 1989) (district court abused its discretion in ordering new trial because verdict was not clearly against the weight of the evidence); *Morse v. City of Fresno*, 21 F.3d 1114 (9th Cir. 1994) (same).

**V. Conclusion**

For the additional reasons stated above, Plaintiff reserves her objections as set forth above and again urges the Court to deny Defendants' Motion for a New Trial. It is long past time for this judgment to reach finality and for Plaintiff to finally begin recovering for some of the harm that the District caused her by its unconstitutional conduct.

SNELL & WILMER

DATED this September 10, 2026.

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*
Jeffrey Willis (ASB #004870)
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff*
*Rebecca Hartzell Ph.D., BCBA-D*

SNELL
& WILMER