Jeffrey Willis (ASB #004870)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
E-Mail: jwillis@swlaw.com

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602-382-6000
E-Mail: jcjones@swlaw.com
mracioppo@swlaw.com

*Attorneys for Plaintiff*
*Rebecca Hartzell, Ph.D., BCBA-D*

SNELL & WILMER

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Rebecca Hartzell, Ph.D., BCBA-D,

Plaintiff,

v.

Marana Unified School District, a governmental entity organized and existing under the laws of the State of Arizona; Andrea Divijak, in her individual capacity, and the Marital Community of Joseph Divijak and Andrea Divijak, husband and wife,

Defendants.

No. 4:21-cv-00062-SHR

**PLAINTIFF'S SUPPLEMENTAL MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**

SNELL & WILMER

Plaintiff Rebecca Hartzell ("Dr. Hartzell") moves this Court pursuant to 42 U.S.C. § 1988(b), Federal Rule of Civil Procedure 54(d), and Local Rule of Civil Procedure 54.2 for a supplemental award of additional attorneys' fees and non-taxable costs reasonably incurred in this matter since July 14, 2026, which were not (and could not have been) included in Plaintiff's Motion for Attorneys' Fees and Related Non-Taxable Expenses (ECF 201) ("Motion") or Reply in Support of Motion for Attorneys' Fees (ECF 216) ("Reply"). Plaintiff seeks $81,368.50 in supplemental attorneys' fees and $5,708.84 in non-taxable costs, for a total supplemental request of $87,077.34. This Motion is supported by the Supplemental Declaration of Jacob C. Jones (Exhibit A), itemized time records (Exhibit B), costs detail (Exhibit C), and Exhibits D through G comprising official public meeting agendas/minutes and communications showing Marana Unified School District's unreasonable refusal to minimize further costs and delay since losing this case at trial.

## I. Relevant Procedural and Factual Background

### A. Dr. Hartzell Won.

Dr. Hartzell prevailed on her civil rights claim against Marana Unified School District for MUSD's unconstitutional speech retaliation. In this battle that started *before COVID*, Dr. Hartzell ultimately obtained a unanimous jury verdict, finding in her favor and awarding her $200,000 in damages, after two full jury trials and an appeal. Indeed, this Court recently observed that those damages were "not reasonable," *i.e.*, too high, in the Court's opinion (although "not grossly excessive"). *See* ECF 222 at n.4. Dr. Hartzell respectfully believes the damages were reasonable, but regardless, it is beyond reasonable dispute that this case was an "exceptional success" for Dr. Hartzell by any metric.

As was her right, Plaintiff timely filed her original motion for fees and costs, and a Bill of Costs[1], on April 24, 2026 (ECF 200, 201). The Reply was filed on June 15, 2026. (ECF 216). That motion is fully briefed and awaiting a decision.

[1] The Bill of Costs should have been allowed by the Clerk months ago under LRCiv 54.1(b) because Defendants never filed any objection to the Bill of Costs: "Once the fourteen (14) day objection period has expired, the Clerk shall have thirty (30) days to tax the costs and allow such items as are properly allowable."

**B. MUSD Maintained Meritless Positions and Approved Appealing, Simply to Delay Final Judgment.**

MUSD's hard work to deprive Dr. Hartzell of her rights did not end with the verdict against MUSD. Rather than reach a reasonable settlement to finally resolve the case,[2] MUSD instead deliberately chose to aggressively continue pursuing post-judgment attempts to nullify the jury's verdict and further trample on the United States Constitution.

For example, on April 17, 2026, rather than try to reasonably and promptly settle this case after the jury verdict, the board of directors of the Arizona School Risk Retention Trust, Inc.[3] voted following the recommendation from its executive director to "appeal the jury's verdict" in this case. *See* Exhibit D (highlighted). And on April 23, 2026, the Governing Board for MUSD met to "instruct attorney regarding litigation" and "notice of appeal" regarding this matter. *See* Exhibit E (highlighted). Based on that, it was no surprise that MUSD filed its Rule 50 and 59 motions—as precursors to an appeal employed by MUSD solely to add further delay and costs to this case—a little over two weeks later, on May 4, 2026. ECF 202. Both of those motions lacked merit and eventually were denied.

After Plaintiff filed her opposition brief (ECF 209, May 21, 2026) rebutting MUSD's meritless arguments (which were plainly contrary to the Mandate of the Ninth Circuit in this case), the MUSD Governing Board had another meeting, on June 11, 2026. The agenda said it was to discuss "potential settlement of fees" and "instruct attorney regarding litigation" regarding this lawsuit. *See* Exhibit F (highlighted). The Meeting Minutes show that they did not approve any settlement and instead "direct[ed] legal counsel to proceed as discussed and as directed." (Exhibit F). That meant: *no* settlement offer *whatsoever* was approved by MUSD. The Court need to guess what those instructions were, they were conveyed to Dr. Hartzell's counsel that same evening. *See* Exhibit G (Governing Board

---

[2] As a reminder, over the years MUSD has rejected many reasonable settlement offers including, for example, to fully resolve the case and dismiss her appeal for merely $25,000. *See* ECF 201 and 216.

[3] "The Trust," as it is known, is effectively MUSD's insurer for this matter.



SNELL & WILMER

"rejected [Dr. Hartzell]'s offer" and "has declined to make a counter-offer"). To be clear, whatever MUSD's attorneys (or the MUSD Superintendent) may or may not have been willing to recommend as a fair settlement amount, *the Governing Board, the ultimate approving authority, refused to approve* ***any settlement offer whatsoever***, a deliberate decision that was objectively unreasonable and indefensible.

As shown in their minutes, instead they instructed their attorneys to continue fiercely fighting and maintaining meritless positions and threatening appeal, to continue delaying this case and driving up Plaintiff's fees. Money is no factor to them, after all; it's not their own money they are playing with. Nor does the MUSD Governing Board apparently have the courage to do what is right after their own expressly adopted KFA policy has resulted in serious harm to a family that had eight school children in their district at the time.

Despite MUSD's express decision not to *even make any settlement offer whatsoever*, Plaintiff respectfully submits that any further appeal by MUSD in this case would be frivolous. But winning is no longer MUSD's goal: as goes for most defendants, a delayed judgment is the next best thing to a win.[4] If the MUSD Governing Board and the board of directors for The Trust could push the significant amounts they owed Plaintiff for the judgment and eventual fee award to a future quarter or fiscal year, that would be a successful outcome for those elected board members and their re-election cycles. But that decision came at the cost of significant further litigation, causing Plaintiff to continue incurring reasonable attorneys' fees and costs. MUSD must now pay for the add-on results of its intentional decision to—rather than enter a reasonable settlement in June 2026[5]—continue pursuing meritless positions and cause unnecessary delay, and it should do so simply by making Plaintiff whole.

---

[4] *Cf., e.g., Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021) ("[O]ne of the basic principles of our legal system" is that "justice delayed is justice denied").

[5] To be clear, attorneys for the parties had fully negotiated at length the form of a settlement agreement and all its detailed provisions—the main point being discussed as of the June 11, 2026 meeting was the precise amount of the settlement and, of course, approval by the Governing Board (without which nothing else mattered).



SNELL & WILMER

SNELL & WILMER

### C. The Court Was Inclined to Toss the Verdict and Grant a Third Trial, Requiring Dr. Hartzell's Counsel to Work Hard to Save Her Case.

On July 14, 2026, the Court entered an order (ECF 217) explaining that "the Court . . . is inclined to grant the District's Motion for New Trial,"[6] and the Court set oral argument for August 26, 2026. Plaintiff and her counsel prepared for and attended that oral argument. Most of the fees and costs requested herein were for that preparation. This naturally involved carefully reviewing the trial record (four days of transcripts and voluminous exhibits). But ensuring this verdict was protected did not only demand a detailed record review. Notably, as explained further below, extensive case and secondary resource legal research was necessary and reasonable, covering centuries of decisional law, common law from 1791, and evolution of an area of law that has always contended with the appropriate role of a jury's verdict, under the Seventh Amendment to the United States Constitution.[7] Indeed, the health and security of these United States and its citizens' respect for legal rights of others depends in large part on its citizens' ability to rest assured that a jury verdict will be the final arbiter of a factual dispute to which a right to trial by jury is constitutionally guaranteed. In short, it was a very important set of legal issues with a deep and often contested history, with contours that are not fully settled. The cost of losing this issue would have been devastating for Plaintiff because she would not have a right to appeal an order granting a new trial until *after* the third trial would have taken place. She was justified in having her counsel thoroughly prepared for the argument.

At the August 26, 2026 argument, additional new grounds were cited for potentially granting a new trial, such as possibly excessive damages or relevance of other speech.

---

[6] At the same time, the meritless Rule 50 motion was denied. MUSD's motion was plainly contrary to the Ninth Circuit Mandate in this case and does not appear to have been brought for a proper purpose, but only to delay and to drive up Plaintiff's fees.

[7] Given the odd, confusing, and badly defined juxtaposition of 1791 common law exceptions to the Seventh Amendment and the Reexamination Clause's express prohibition against overturning or re-examining jury factual findings, it was insightful for the Court to ask, "Explain to me why I even have the ability to grant a new trial." Transcript of August 26, 2026 Proceedings (ECF 220) at 12:15-16. Dr. Hartzell's counsel respectfully submits this deep research assisted in counsel's efforts to try to answer the Court's questions.

SNELL & WILMER

Credibility of Mr. Gute was also brought up by the Court, *sua sponte*, even though MUSD had expressly waived any consideration of witness credibility. Aside from taking away time to address the matters originally noticed for the argument, those new matters raised yet another legal issue: failure to give the notice and opportunity to be heard as required under Fed. R. Civ. P. 59(d). That prompted Plaintiff to reasonably protect her rights by asserting her further objections and related positions in writing following the oral argument, both to try to steer the Court away from possible legal error and to preserve those issues for possible appeal[8] in case the Court did erroneously grant the new trial motion. *See* ECF 221.

In addition, the Court sensibly suggested at the end of the argument that the parties continue settlement discussions to try to resolve the case. They did so in early September (before the Court's Order (ECF 222) denying the new trial), although again MUSD's Governing Board did not approve any settlement offer.

Moreover, after the Court's September 11, 2026 denial of Defendants' new trial motion, the parties' counsel continued *yet again* attempting to reach a resolution. For example, on September 16, 2026, communications were exchanged about a possible resolution to the fees and costs issue, including a firm settlement proposal to resolve the case entirely. That proposal set a September 23, 2026 deadline for acceptance. Again, it was not accepted, and *no counteroffer was ever authorized by the MUSD Governing Board*. The only thing they have ever authorized (aside from speech retaliation against Dr. Hartzell through MUSD's KFA Policy): fight, fight, fight, delay, delay, delay.

Finally, even though there was no stay of execution, execution of federal money judgments follows state procedures. *See* Fed. R. Civ. P. 69(a). Under Ariz. R. Civ. P. 62(g)(1), a stay would be automatic if MUSD filed a notice of appeal, because it is a state entity. Therefore, Plaintiff patiently waited for the time to appeal to expire, to save resources

[8] Notably, in the Mandate, the Ninth Circuit denied at least one of Dr. Hartzell's qualified immunity arguments on the basis that it was not clearly spelled out in the limited record on that issue at the District Court (since no oral argument was granted in connection with that decision). That history gave Dr. Hartzell further reasonable basis to ensure that a full record of her objections was made and preserved in the event another appeal had been necessary.

in attempting to execute. However, as that deadline approached, it was prudent and reasonable for Dr. Hartzell through her counsel to begin preparing to execute on the judgment (especially given that months had passed and MUSD never said if or when it would pay the judgment). Because of potential Eleventh Amendment immunity issues, a special action in state court would be a prudent tool to legally *force* MUSD or another state official (such as the Pima County Treasurer holding MUSD funds) to pay the judgment. Those actions are governed by A.R.S. § 12-348 and separately would provide a basis for awarding fees to Dr. Hartzell, if she had needed to carry through and use that enforcement tool. Fortunately, within one day of Plaintiff's counsel sending an email threatening to go that route (after MUSD failed for months to pay the judgment), MUSD relented and finally authorized payment of the original judgment. It appears now that they may not appeal; indeed, an appeal by MUSD would be frivolous.

## II. Legal Standard

Congress has recognized that private enforcement of civil rights legislation relies on fee awards: "If private citizens are to be able to assert their civil rights, and **if those who violate the Nation['s] fundamental laws are not to proceed with impunity**, then **citizens must have the opportunity to recover what it costs them to vindicate these rights in court**." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (quoting S.Rep. No. 94–1011, at 2 (1976)) (emphasis added). The Ninth Circuit has further instructed that "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Id.* at 1112.

Section 1988(b) authorizes district courts to award reasonable attorneys' fees to prevailing parties in § 1983 actions. A plaintiff is a prevailing party if she "succeeds on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is no dispute that her success here was not "nominal," because even this Court has indicated it believes the

SNELL & WILMER

damage award was unreasonably high. *See* ECF 222 at n.4. But even "an award of nominal damages" or "a final victory on a material even if not predominant claim" qualifies a plaintiff as a "prevailing party." *Lackey v. Stinnie*, 604 U.S. 192, 202 (2025); *see also Farrar v. Hobby*, 506 U.S. 103, 113 (1992).

Courts determine reasonable fees under § 1988(b) using the lodestar methodology—multiplying hours reasonably expended by a reasonable hourly rate for comparable services in the relevant market. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Hours that are excessive, redundant, or unnecessary are not compensable, and the fee applicant bears the burden of documenting appropriate hours and reasonable rates, with the lodestar deemed presumptively reasonable. *Hensley*, 461 U.S. at 434; *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). In cases of exceptional success, an enhanced award may be justified. *Hensley*, 461 U.S. at 435.[9]

The fees sought here relate solely to Dr. Hartzell's post-judgment efforts to maintain and protect the jury's verdict in her favor; no work was spent on any unsuccessful claims. Thus, the two-step analysis for partially successful claims does not apply here. *See Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1169 (9th Cir. 2024). Indeed, Dr. Hartzell's counsel's preparation for the August 26, 2026 oral argument was fully reasonable and justified. The Court eventually agreed with Dr. Hartzell that the new trial request should be denied, even though the Court had previously indicated an inclination to *grant* the new trial. *See* ECF 217. Thus, these post-judgment efforts were also independently successful.

Fees-on-fees (*i.e.*, fees incurred on a motion for fees) are recoverable under § 1988(b). *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986), *overruled on other grounds by Berry v. Air Force Cent. Welfare Fund*, 115 F.4th 948 (9th Cir. 2024). A request for fees-on-fees is "treated the same as for work done on the merits of a case."

[9] Although Dr. Hartzell maintains her success in this case was "exceptional," she is not urging an enhanced award multiplier here. Rather, the *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) factors present in this case that could support an enhancement should simply be applied to counter any possible reduction urged by the District against the lodestar amount.



SNELL & WILMER

*Winterstein v. Stryker Corp. Grp. Life Ins. Plan*, 262 Fed. App'x 841, 843 (9th Cir. 2008).

Reasonable out-of-pocket expenses normally charged to a fee-paying client may be awarded under § 1988 as part of attorneys' fees, in addition to taxable costs under 28 U.S.C. § 1920. LRCiv 54.1(d) provides that "[t]he party entitled to costs shall be the prevailing party" and "[t]he prevailing party need not succeed on every issue to be entitled to costs."

**III. Argument**

**A. Eligibility and Entitlement**

Dr. Hartzell is eligible for and entitled to a fee and non-taxable cost award because she prevailed under a federal statute authorizing fee and cost shifting. *See Hensley*, 461 U.S. at 433; *Farrar*, 506 U.S. at 113 (a "judgment for damages in any amount" is a material alteration leading to prevailing party status). Final judgment was entered on a jury verdict awarding Dr. Hartzell $200,000 in compensatory damages on her § 1983 First Amendment retaliation claim, which plainly confers prevailing-party status under § 1988(b).

She also succeeded in defending MUSD's post-trial motion for a new trial, which attempted to throw out the jury's verdict. Accordingly, Dr. Hartzell's reasonable attorneys' fees and costs incurred as described herein are eligible for an award.

**B. Reasonableness of the Requested Award**

The requested award is reasonable under the lodestar methodology and the relevant factors listed in LRCiv 54.2(c)(3).

***1. The time and labor required of counsel were substantial and necessary, and the novelty and difficulty added to the reasonableness of these hours and rates***

Under the lodestar method, the prevailing party is generally entitled to recover fees for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 486 (D. Ariz. 2019) (quoting *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)).

SNELL & WILMER

A summary of attorney fees and hours by phase, and the calculated effective rate[10] (derived from those records), as well as a breakdown by attorney, are shown here:

| Phase | Hours | Sum |
|---|---|---|
| Defeating Rule 59 Motion | 94.4 | $60,148.00 |
| Judgment Collection | 7.9 | $5,095.50 |
| Settlement Efforts | 12.1 | $7,804.50 |
| Supplemental Fee Motion | 12.9 | $8,320.50 |
| **Grand Total** | **127.3** | **$81,368.50** |

| Name | Hours | Rate | Total |
|---|---|---|---|
| Jones, Jacob | 117.3 | $645 | $75,658.50 |
| Racioppo, Matthew | 5.2 | $475 | $2,470.00 |
| Weaver, Amanda | 4.8 | $675 | $3,240.00 |
| **Grand Total** | **127.3** | **$639.19 (combined rate)** | **$81,368.50** |

A more detailed summary of the hours and fees per timekeeper per phase for the attorneys—as well as the detailed time records—is attached as Exhibit B.

*a) Time Spent to Defeat the Rule 59 Motion Was Reasonable*

The bulk of this supplemental request—94.4 hours and $60,148.00—was spent defeating MUSD's Motion for New Trial. That was not time spent opposing a routine post-trial motion doomed to fail. At the time of the original opposition in May, Plaintiff's counsel reasonably thought there was no realistic chance the motion for new trial could succeed, and it looked like a "throwaway" argument tacked onto the end of MUSD's Rule 50 motion. But that all changed after the Court announced it was "inclined to grant the District's Motion for New Trial." ECF 217 at 7. In its July 14, 2026 Order, the Court denied the Rule 50 motion but, "in weighing the evidence itself," stated that it was "unconvinced" the *Monell* causation standards had been met, and it set oral argument because "additional argument regarding the issues related to a new trial . . . would be beneficial." *Id.* Dr. Hartzell thus went into the hearing needing to change the Court's mind, with a $200,000 verdict—obtained after two trials and an appeal—at stake. And if she failed to change the Court's

[10]The combined rate is calculated by dividing total fees by total hours.



SNELL & WILMER

mind, the verdict were thrown out, and a new trial ordered, then there would be no near-term resolution to her request to recover the hundreds of thousands of dollars in fees and costs that she has expended in this case so far. On top of that, she would have had to endure yet more costs and time and the physical and mental anguish of a *third* trial, all before having a right to appeal the decision to throw out the verdict, since a grant of a Rule 59 motion for new trial is not a final, appealable judgment.[11] *See, e.g., Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670, 671 (9th Cir. 1985) (grant of new trial is an interlocutory order, not appealable as a final judgment).

The issues were difficult. A new trial on the weight of the evidence sits precariously at the intersection of the trial court's discretion and the Seventh Amendment's Reexamination Clause, which provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. Rule 59 incorporates that history, permitting a new trial only "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Defining the limits of that power required counsel to research the common law of new trials as it stood in 1791, scholarly commentary on the relationship between Rule 59 and the Seventh Amendment, and Ninth Circuit and nationwide authority applying the "clear weight of the evidence" standard and its various iterations—including in the unusual posture of a verdict rendered on retrial after an appellate reversal.[12] *See* Ex. B (entries dated Aug. 13, 19, 20, 21, and 24, 2026). The value of that research was confirmed at the hearing, when the Court asked counsel: "Explain to

[11] Dr. Hartzell is confident she would have prevailed in a third trial, but the cost and pain to get to that point, as well as the risks inherent in any trial, would have been tremendous.

[12] Indeed, this latter point was one of the more difficult issues to nail down. Counsel attempted, unsuccessfully, to find any case anywhere under the common law in which a new trial was granted based on the verdict being against the "clear weight of the evidence" when an appellate court had previously (in the same case) determined that the evidentiary record supported a jury verdict. Because that precedent does not appear to exist, Dr. Hartzell made the point to preserve that objection under the Seventh Amendment, on the basis that no common law practice would have supported granting *a new* trial on the procedural posture of *this* case.



SNELL & WILMER

me why I even have the ability to grant a new trial." Tr. 12:15–16.

Additionally, because the Court's July 14 order added emphasis to "the" in the phrase "the moving force," it was reasonable and necessary for Plaintiff's counsel to dive deeper into the "a moving force" versus "the moving force" issue, which Plaintiff's counsel appropriately anticipated was an important issue. That preparation was aptly applied at the oral argument to address the Court's comments about the "a" versus "the" observation in relation to *Monell* and its precedential progeny.

The argument also demanded command of the trial record. The Court's stated inclination rested on specific testimony—Principal Divijak's testimony that she was unaware of the policy, Assistant Superintendent Dumler's testimony regarding reliance on the policy, and the role of police in trespassing Dr. Hartzell from campus. ECF 217 at 7. Answering those points required counsel to review four days of trial transcripts and the exhibits, and to tie each argument to the record and to the Ninth Circuit's mandate. *See* Ex. B (entries dated Aug. 7 and 25, 2026).

Counsel also distilled approximately thirty cases into hearing-ready references, clipped record excerpts supporting each point, and conducted a moot argument with appellate counsel. *Id.* (entries dated Aug. 25, 2026). At the hearing, the Court also raised matters that MUSD's motion had not presented—most notably, whether the damages were excessive, a ground MUSD conceded it had not raised. Tr. 9; Tr. 27–28. Counsel's follow-up research on those questions was a reasonable and necessary response to the Court's own inquiries, as well as to clearly preserve for appeal the objections triggered by the new issues raised at the oral argument. *See, e.g.,* Ex. B (entries dated Aug. 28, 2026).

The result confirms that the effort was warranted. After the argument, the Court changed course and denied the motion, concluding that "none of the District's arguments set forth in its briefing or offered at oral argument ultimately persuade[d] the Court it should disrupt the jury's verdict." ECF 222 at 3. A court that was inclined to order a third trial, and then did not, is compelling evidence both that the issues were hard and that the preparation

SNELL & WILMER

mattered. The stakes were high: had the motion been granted, Dr. Hartzell could not have appealed until after a third trial. The work was performed principally by Mr. Jones, with limited, targeted assistance from appellate counsel Ms. Weaver (4.8 hours) and a junior associate who performed admirably at the second trial, Mr. Racioppo (5.2 hours). This is precisely the kind of work that "a reasonable and prudent lawyer" would undertake "to advance or protect his client's interest." *Gary*, 398 F. Supp. 3d at 486. And the Court "should defer to the winning lawyer's professional judgment"—particularly where, as here, the lawyer won. *Moreno*, 534 F.3d at 1112.

*b) Time Spent on Judgment Collection Was Reasonable*

Counsel spent 7.9 hours ($5,095.50) on judgment collection. As explained above, Plaintiff waited for MUSD's time to appeal to near expiration before acting, to avoid unnecessary expense, because a notice of appeal by a state entity would have triggered an automatic stay. *See* Ariz. R. Civ. P. 62(g)(1); Fed. R. Civ. P. 69(a). Only when that deadline approached—months after judgment, with no indication from MUSD whether or when it would pay—did counsel prepare to enforce the judgment, including by evaluating viability of a state-court special action to address potential Eleventh Amendment immunity issues. That modest effort was effective: within twenty-four hours of being informed of Plaintiff's intention to file a special action, MUSD authorized payment of the judgment. Work necessary to secure payment of a civil rights judgment is part of the litigation for which § 1988 compensates, and the limited time spent here was reasonable.

*c) Time Spent on Settlement Efforts Was Reasonable*

Counsel spent 12.1 hours ($7,804.50) on settlement efforts. Earlier, in June 2026, counsel had negotiated at length the terms of a written settlement agreement, only for MUSD's Governing Board to decline to approve any offer at its June 11, 2026 meeting. *See* Exs. F, G (those efforts were addressed in the prior motion and are not sought here). Relevant here, at the close of the August 26, 2026 argument, the Court encouraged the parties to *continue settlement discussions*; Plaintiff did so in early September and again on

SNELL & WILMER

September 16, 2026, when she made a firm proposal with a September 23 deadline. MUSD neither accepted nor countered.

Reasonable efforts were also made to settle the instant fee motion to avoid the need for judicial determination, and an offer to settle for significantly less than the amount requested herein[13] was made by Dr. Hartzell and not accepted by MUSD. Good-faith efforts to resolve a case are precisely what courts expect of counsel, and the time spent was modest. Although settlement efforts have not yet succeeded, it would be counterintuitive to say that efforts to resolve a case through a non-judicial settlement cannot be compensated under § 1988, as that would incentivize not settling (which would be contrary to Rule 1). Settlement efforts are treated like any other reasonable work on the case. *See, e.g., Doud v. Yellow Cab of Reno, Inc.,* No. 3:13-CV-00664-WGC, 2015 WL 2379315, at *7 (D. Nev. May 18, 2015) (33.9 hours spent trying to settle the case "to no avail" was reasonable, further finding additional 42.95 hours "since the oral argument on efforts to resolve the dispute, along with the fees issue" to be "reasonable, with a few exceptions"). That those efforts failed is attributable to MUSD, not to Plaintiff.

*d) Time Spent on This Motion Was Reasonable*

Finally, counsel spent 12.9 hours ($8,320.50) preparing this Supplemental Motion and the supporting declaration and records. Fees incurred in establishing and litigating a fee request are recoverable under § 1988 and are "treated the same as for work done on the merits." *Winterstein*, 262 Fed. App'x at 843; *see Clark*, 803 F.2d at 992. Counsel reviewed each relevant time entry, excluded time already claimed previously, and excluded any time that, upon detailed review, counsel believed would not be justified in a fee request under the applicable standards. The time spent and claimed herein was reasonable and proportionate to the task. Although some of the standards cited herein have been reasserted from the original motion, the time spent doing that was so minuscule that it does not provide

[13] The fact that Dr. Hartzell made an offer to settle for a lesser amount does not diminish her entitlement to the full amount requested herein. This fact is only mentioned to show why the settlement efforts were reasonable and justified work to try to resolve this claim.

SNELL & WILMER

a reason for discounting the total number of hours spent. More than 12 of the 12.9 hours were spent on novel work unique to this motion. Less than an hour was spent determining how much of the prior motion work (like the legal standards) could be appropriately re-used herein, and which parts were not relevant. Indeed, the reason this fee request took significantly less time than the first fee request is in large part precisely because work on this motion was *not* duplicated, but the prior work was leveraged to make this work more efficient. Such is a hallmark of reasonableness.

***2. Remaining Factors Continue to Support Reasonableness***

Other factors, including skill required, preclusion of other employment, customary fees, invoicing and billing arrangement, time limitations placed on counsel, results obtained, undesirability, length of relationship, and similar awards, also support reasonableness here for the same reasons previously explained in Dr. Hartzell's original motion and reply (ECF 201 and 216) and, in the interest of efficiency, are not repeated here.

***3. Other Matters.***

MUSD cannot dispute that on February 8, 2024, after she lost the first trial, Dr. Hartzell was ready to fully settle the case, dismiss her appeal, and walk away, for $25,000. ECF 216-5. On April 1, 2022, *long before the first trial*, Dr. Hartzell offered to take $75,000 for "dismissal with prejudice, each side to bear their own costs and fees." ECF 216-3.

To date, the MUSD Governing Board has never approved *even a single* settlement offer or counter-offer. They have, however, expressly approved and directed their counsel to press forward with meritless post-trial motions and threats to appeal, solely for the purpose of delay and driving up Dr. Hartzell's costs. This, despite two settlement conferences with Magistrate Judges and a separate process with a Ninth Circuit mediation specialist. Obstinate does not even begin to fully describe MUSD's unreasonable approach to resolving this case. The Court's fee awards to Dr. Hartzell in this case should not be reduced to reward parties like MUSD for this kind of bad litigation conduct and for MUSD's failure to try in good faith to reach a non-judicial resolution.

SNELL & WILMER

In a case like this, Dr. Hartzell should be made fully whole. Her counsel has already deducted those fees and costs that it believes should not be requested. What is requested here should be granted in full.

**C. Non-Taxable Costs**

Dr. Hartzell also requests an award of reasonable non-taxable expenses customarily billed to clients in this community (and indeed billed to and paid by Dr. Hartzell in this case), to be awarded under § 1988.

These charges were all necessarily incurred, reasonable and customary, billed to and paid by Dr. Hartzell, and should thus be allowed as non-taxable costs (to the extent any of them are not taxable). *See, e.g., McNamara v. Infusion Software, Inc.*, No. CV-17-04026-PHX-SPL, 2020 WL 4921984, at *8 (D. Ariz. Aug. 21, 2020) (allowing computerized research charges); *Trs. of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006) ("Neither tradition nor statutory usage distinguishes computer-based legal research costs from attorney's fees," allowing such costs as part of statutory fee award); *Johnson v. Astrue*, No. C-07-2387 EMC, 2008 WL 3984599, at *3 (N.D. Cal. Aug. 27, 2008) ("it would not be duplicative if an attorney were to charge both for her time spent on legal research as well as the computer fee itself"); *B & H Mfg. Co. v. Lyn E. Bright*, No. CVF01-6619 AWI LJO, 2006 WL 547975, at *16 (E.D. Cal. Mar. 3, 2006) (finding "$18,500.00 for computerized legal research [averaging $500 per month during the case] reasonable" in case with "difficult legal questions").

As shown in Exhibit C, the travel costs were incurred for Mr. Jones to appear in person at the August 26, 2026 oral argument in Tucson: coach airfare between Boston and Phoenix (Mr. Jones relocated to Massachusetts in 2022, after beginning his representation of Dr. Hartzell in this case) and a rental car between Phoenix and Tucson. This flight would not have occurred but-for the oral argument in this case. Because the trip needed to be made, counsel chose to stay in Phoenix for more days to conduct further work at that location. As a result, counsel has *not* requested *any* award of the costs of the hotel lodging for the time

SNELL & WILMER

in Arizona. The only cost requested here is the cost of the flight (which would not have been incurred but-for this oral argument) and the cost of the car rental, which would not have been needed except to get from Phoenix to Tucson for the oral argument. In addition, flights to Phoenix are much cheaper and available at less inconvenient times than flights to Tucson. All other work was performed remotely to minimize costs.

The computerized research (Westlaw) was also reasonable and necessarily incurred, as is the billing practice agreed to by Plaintiff and is a routine and ordinary litigation cost. That cost is billed at $5 per minute, recorded contemporaneously by Westlaw and passed on through Plaintiff's bill. In this case, 881 minutes were expended on Westlaw for all of the research described within the scope of this motion. As shown in the billing records, much more than 881 minutes were spent researching the various issues, but once appropriate cases and secondary sources are identified for further analysis, those more interesting cases are separately taken for offline review and analysis while not logged into Westlaw (so charges stop being incurred). This is usual and customary practice.

| Cost Type | Amount |
|---|---|
| Westlaw Research (881 Minutes) | $4,405.00 |
| Airfare, Coach (Boston to Phoenix Round Trip) | $671.60 |
| Car Rental (Phoenix - Tucson) | $392.54 |
| Transcript of August 26, 2026 Argument | $239.70 |
| **Total Costs** | **$5,708.84** |

## IV. Conferral Certification

Pursuant to Local Rule of Civil Procedure 54.2(d), undersigned counsel certifies that on October 2, 2026, counsel for Plaintiff conferred with Lisa Anne Smith, counsel for Defendants, telephonically regarding this fees and costs motion. The parties were unable to reach agreement.

## V. Conclusion

For the foregoing reasons, the Court should grant this Supplemental Motion and award Dr. Hartzell, in addition to the amounts requested in the Motion and Reply (ECF 201,

SNELL & WILMER

216): (1) supplemental attorneys' fees under § 1988 in the amount of $81,368.50; and (2) supplemental non-taxable costs in the amount of $5,708.84, for a total supplemental award of $87,077.34. In view of the excellent results obtained, the constitutional rights vindicated, and the reasonableness of the hours and rates, the full amount should be awarded without reduction.

DATED this 2nd day of October, 2026

SNELL & WILMER L.L.P.

By: *s/ Jacob C. Jones*

Jeffrey Willis (ASB #004870)
One South Church Avenue
Suite 1500
Tucson, Arizona 85701-1630

Jacob C. Jones (ASB #029971)
Matthew Racioppo (ASB #040702)
SNELL & WILMER L.L.P.
One East Washington Street, Suite 2700
Phoenix, Arizona 85004

*Attorneys for Plaintiff Rebecca Hartzell, Ph.D., BCBA-D*

SNELL & WILMER